UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-2  CARLO WILSON,

    Defendant.

Case No. 2:16-cr-20460

Hon. Mark A. Goldsmith

_____/

**MOTION FOR DISCLOSURE OF EACH
CO-CONSPIRATOR STATEMENT THE GOVERNMENT
INTENDS TO INTRODUCE AT TRIAL**

Carlo Wilson, through counsel, pursuant to the Fifth, Sixth and Eighth Amendments to the United States Constitution and Federal Rule of Evidence 801(d)(2)(E), respectfully moves this Court for an order requiring the government to disclose all out-of-court statements that it will attempt to introduce under Federal Rule of Evidence 801(d)(2)(E). Mr. Wilson also moves the Court for an order setting a separate hearing for a pre-trial determination as to the admissibility of each alleged co-conspirator statement. In the alternative, Mr. Wilson moves the Court for an order requiring the government to submit pretrial written proffers outlining admissibility under Rule 801(d)(2)(E) for each coconspirator statement it

seeks to admit.[1]

In support of this motion, Mr. Wilson states:

1. The grand jury indicted Mr. Wilson in a Second Superseding Indictment filed February 28, 2018. Dkt. 292. Mr. Wilson pleaded not guilty to the charges. Dkt. 302.

2. The Second Superseding Indictment includes special findings that authorize the government to seek a sentence of death, pursuant to 18 U.S.C. § 3591. On March 1, 2018, the government filed its notice of intent to seek a sentence of death against Mr. Wilson. Dkt. 293. Trial is scheduled for April 21, 2020. Dkt. 475. Included in the Indictment are charges against ten alleged co-conspirators. The discovery received thus far indicates numerous uncharged alleged coconspirators.

3. In the Indictment, the government alleges that Mr. Wilson was part of the "6 Mile Chedda Grove" street gang, which appears by the government's allegations to be comprised of young men who grew up within a particular, approximate, square mile area of Detroit, Michigan. The government alleges that this group of young men, eleven of whom are included in the Indictment in this

---

[1] Mr. Wilson joined in the motion by codefendant Patrick Johnson, titled Motion for a Written Proffer and Hearing on Admissibility of Co-Conspirators' Statements Under FRE 801(d)(2)(E) [Dkt. 371]. See Dkt. 438. Mr. Wilson submitted a reply. See Dkt. 523. He submits this motion because he is being tried under penalty of death separately from Mr. Johnson and other Group 1 codefendants and seeks to have the Court separately rule on this motion.

case, participated in illegal narcotics distribution and incorporated various insignia to identify their group. The government alleges a conspiracy involving a pattern of racketeering activity, including murder, robbery, and dealing in controlled substances. Seven of the counts in the Indictment, as alleged by the government, concern Mr. Wilson.

4. Mr. Wilson respectfully moves this Court for an order requiring the Government to disclose all out-of-court statements that it will attempt to introduce under Federal Rule of Evidence 801(d)(2)(E). Mr. Wilson also moves the Court for an order setting a separate hearing for a pre-trial determination as to the admissibility of each alleged co-conspirator statement. In the alternative, Mr. Wilson moves the Court for an order requiring the government to submit pretrial written proffers outlining admissibility under Rule 801(d)(2)(E) for each co-conspirator statement it seeks to admit

5. The government, through its Assistant United States Attorney, does not concur in this motion.

                                                Respectfully submitted,

                                                By: <u>s/ Jacqueline K. Walsh</u>
                                                    Jacqueline K. Walsh
                                                    Washington State Bar #21651
                                                    705 2nd Ave., Suite 501
                                                    Seattle, WA  98104
                                                    206-325-7900x5
                                                    Jackie@jamlegal.com
DATED:  October 19, 2018       Attorney for Mr. Wilson

# MEMORANDUM IN SUPPORT OF CARLO WILSON'S MOTION FOR DISCLOSURE OF EACH CO-CONSPIRATOR STATEMENT THE GOVERNMENT INTENDS TO INTRODUCE AT TRIAL

## Issue Presented

The issue before this Court is whether the government must disclose pretrial each co-conspirator statement it intends to introduce. And if so, whether this Court should order the government to meet admissibility requirements under Fed. R. Evid. 801(d)(2)(E) either at a pretrial hearing or through a pretrial written proffer.

**Controlling Authority for the Relief Sought**

Fed. R. Evid. 801(d)(2)(E) and the Fifth, Sixth, and Eighth Amendments to the United States Constitution. *See also United States v. Vinson*, 606 F.2d 149 (6th Cir. 1979).

**ARGUMENT**

Based on a review of the discovery turned over thus far, defense counsel anticipates that the government will attempt to introduce numerous statements at trial allegedly made by the defendants (and others), under Federal Rule of Evidence (FRE) 801(d)(2)(E), as co-conspirator statements made in furtherance of a common conspiracy. The admissibility of such statements is wholly conditioned upon proof that a conspiracy existed between the declarant coconspirator and the defendant against whom the statements are sought to be introduced. The government bears the burden of establishing that the statements were made during the course of and in furtherance of the conspiracy.

Before any out-of-court statements are admissible at trial as co-conspirator statements, the government must prove the existence of a conspiracy that covered the time and context in which the statement was made. According to FRE 801 (d)(2)(E), statements of alleged co-conspirators are not considered hearsay testimony if it can be shown by a preponderance of the evidence that (1) a conspiracy existed to which the declarant and the defendant against whom the

statement(s) are offered were sufficiently connected; (2) that the statements were made in furtherance of the same conspiracy; and (3) that the statements were made during the course of the conspiracy prior to its termination or withdrawal. *See Bourjaily v. United States*, 483 U.S. 171(1987). Statements made to conceal criminal conduct after the main objective of the conspiracy has either failed or been achieved are not admissible as co-conspirator statements. *See Lutwak v. United States*, 344 U.S. 604, 616-18 (1953); *see also Dutton v. Evans*, 400 U.S. 74, 81 (1970) ("It is settled that in federal conspiracy trials the hearsay exception that allows evidence of an out-of-court statement on one conspirator to be admitted against his fellow conspirators applied only if the statement was made in the course of and in furtherance of the conspiracy, and not during a subsequent period when the conspirators were engaged in nothing more than concealment of the criminal enterprise.").

Beyond the proof of a conspiracy and the duration of each conspiracy, the government must prove that the statements were made "in furtherance of the conspiracy"; that is, the statements "were intended to promote the 'objectives of the conspiracy.'" *United States v. Warman*, 578 F.3d 320, 338 (6th Cir. 2009) (internal citation omitted); *see id*. ("Whether a statement was in furtherance of a conspiracy turns on the context in which it was made and the intent of the declarant in making it."). The Sixth Circuit has ruled it error to admit co-conspirator

statements that constituted "idle chatter or bragging" between a defendant and alleged coconspirator even though the subject matter of the statements involved discussion of criminal behavior. *Id*. at 339-40. The Court interprets "strictly" the "in furtherance" requirement." *Id*.

Under Sixth Circuit law, this Court has three options for considering the admissibility of coconspirator statements under Fed. R. Evid. 801(d)(2)(E). First, the Court may conduct a "minihearing" at which the government attempts to meets its burden of establishing admissibility. *United States v. Vinson*, 606 F.2d 149, 152 (6th Cir. 1979). This is appropriate "if the circumstances warrant." *Id*. Second, the Court may require the government to "produc[e] the non-hearsay evidence of conspiracy first prior to making" the admissibility findings. *Id*. at 152-53. An efficient means of making the findings is to require the government to submit pretrial written proffers for each coconspirator statement it seeks to admit outlining each statement's admissibility under Rule 801(d)(2)(E). *See, e.g., United States v. Rodriguez*, 975 F.2d 404, 406 (7th Cir. 1992) (describing use of pre-trial proffers—so-called "*Santiago* proffers"—that require the Government to establish admissibility elements of coconspirator statements and "suggest[ing] that the use of pre-trial *Santiago* proffers can be an efficient method of making the preliminary Fed. R. Evid. 801(d)(2)(E) determination."). The third method the Court may use to consider the admissibility of co-conspirator statements is to conditionally admit

the statements during trial subject to the government's later demonstration before the jury of their admissibility. Should the government fail to meet its burden, the inadmissible statements will have been put before the jury and therefore a mistrial may be required.

This Court should require a pretrial mini-hearing pursuant to *Vinson*. The circumstances warrant such a hearing. In this death penalty case at which the government seeks a death sentence, the Court must adhere to heightened standards of fact-finding. *California v. Ramos*, 463 U.S. 992, 998-99 (1983) (recognizing "the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination."); *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982) (internal citation omitted) ("[T]he imposition of death by public authority is . . . profoundly different from all other penalties"). For this reason, our system of justice must indulge "extraordinary measures to ensure that the prisoner sentenced to be executed is afforded a process that will guarantee, as much as is humanly possible, that the sentence was not imposed out of whim, passion, prejudice, or mistake." *Eddings*, 455 U.S. at 118 (O'Connor, J. concurring). Risks of improper imposition of the death penalty should be avoided due to the death penalty's finality and severity. *Beck v. Alabama*, 447 U.S. 625, 638 (1980). When the death penalty is sought by the government, criminal proceedings must conform to a heightened standard of

reliability, and will be subject to close appellate scrutiny. *Stringer v. Black*, 503 U.S. 222, 230 (1992).

In this case, Mr. Wilson is subject not only to a culpability finding, but also to a penalty phase determination by the same jury. Should the Court conditionally admit statements that are later determined to be inadmissible, even if the error is harmless for culpability purposes, there is an unacceptable risk that the inadmissible evidence will infect the penalty phase proceeding. In the context of this death penalty case, protestations that a pretrial hearing is burdensome, time-consuming, and uneconomic ring hollow. Other circuits, in fact, even in the run-of-the-mill case, indicate a "strong preference" for pretrial hearings to determine admissibility of co-conspirator statements. *United States v. Gonzalez-Montoya*, 161 F.3d 643, 648 (10th Cir. 1998). A pretrial hearing *is* economic in that it avoids the necessity of a mistrial should the Court conditionally admit hearsay statements for which the government fails later to establish admissibility under Rule 801(d)(2)(E). With respect to protestations about witness safety, particularly as the case moves closer to trial, the identities of informants and cooperating witnesses are not secrets.[2] Even at this juncture, the defense believes it knows at least some of the identities of cooperating witnesses. Any claim that witness safety is a basis to deny

---

[2] For example, in discovery, some informants' names have been revealed by the government, presumably inadvertently. If witness safety were so paramount as to be a basis to deny a defendant access to co-conspirators' statements, it is difficult to imagine that the government would permit such errors to happen.

Mr. Wilson access pretrial to co-conspirators' statements appears merely a means to convince the Court to avoid a pretrial hearing. There is no compelling reason why this Court should not require the government to meets its burden under Rule 801(d)(2)(E) at a pretrial mini-hearing. This Court has ample authority and discretion to do so.

Should the Court decide that it will not hold a pretrial mini-hearing concerning the admissibility of co-conspirator statements, in the alternative, the Court should require the government to submit pretrial written proffers outlining admissibility of each co-conspirator statement under Rule 801(d)(2)(E). There is no argument that this is burdensome, time consuming, or uneconomic. And this at least will avoid the jury hearing potentially inadmissible and unfairly prejudicial testimony that may infect both the culpability and penalty phase proceedings of Mr. Wilson's capital trial.

## CONCLUSION

Mr. Wilson, through counsel, respectfully moves this Court for an order requiring the government to disclose all out-of-court statements that it will attempt to introduce under Federal Rule of Evidence 801(d)(2)(E). Mr. Wilson also moves the Court for an order setting a separate hearing for a pre-trial determination as to the admissibility of each alleged co-conspirator statement. In the alternative, Mr. Wilson moves the Court for an order requiring the government to submit pretrial

written proffers outlining admissibility under Rule 801(d)(2)(E) for each co-conspirator statement it seeks to admit.

        Respectfully submitted,

        By: s/ Jacqueline K. Walsh
            Jacqueline K. Walsh
            Washington State Bar #21651
            705 2nd Ave., Suite 501
            Seattle, WA  98104
            206-325-7900x5
            Jackie@jamlegal.com
            Attorney for Mr. Wilson

DATED:  October 19, 2018

## CERTIFICATE OF SERVICE

I, Jacqueline K. Walsh, hereby certify that on October 19, 2018. I electronically served the forgoing document with the Clerk of the Court using the ECF system which will send notification to all parties.

        s/ Jacqueline K. Walsh
        Jacqueline K. Walsh