UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

EDWIN MILLS, et al.,

    Defendants.
_____/

Case No. 16-cr-20460

HON. MARK A. GOLDSMITH

**OPINION & ORDER**
**GRANTING IN PART AND DENYING IN PART DEFENDANTS PATRICK**
**JOHNSON'S AND CARLO WILSON'S MOTIONS REGARDING CO-CONSPIRATOR**
**STATEMENTS UNDER FEDERAL RULE OF EVIDENCE 801(d)(2)(E) (Dkts. 371, 561)**

This criminal case involves multiple defendants, all of whom have been charged with violating the Racketeering Influenced and Corrupt Organizations Act (the "RICO" Act), 18 U.S.C. § 1961 et seq. Defendant Patrick Johnson has filed a motion for the Government to submit a written proffer at least thirty days before trial addressing the basis for admission of any alleged co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E), and then to have this Court conduct a pretrial hearing—colloquially referred to as an Enright hearing—to determine the admissibility of these statements (Dkt. 371).[1] Defendant Carlo Wilson has filed a similar motion

---

[1] Defendants Edwin Mills, Carlo Wilson, Lomnil Jackson, and Donell Thompson have each filed a notice of joinder concurring in the relief sought in this motion. See Notices of Joinder (Dkt. 433, Mills; Dkt. 438, Wilson; Dkt. 481, Jackson; Dkt. 483, Thompson).

1

(Dkt. 561).[2] The Government has filed a response in opposition to each motion (Dkts. 510, 590, respectively), to which Wilson replied (Dkts. 523, 609, respectively).[3]

For the reasons discussed below, the Court grants in part and denies in part Defendants' motions, orders the Government to submit an offer of proof sixty days before trial, and reserves ruling on Defendants' requests for an Enright hearing.

**I. BACKGROUND**

A federal grand jury returned a second superseding indictment on February 28, 2018, charging the eleven defendants in this case with various crimes, including violations of the RICO Act. See generally 2d Superseding Indictment (Dkt. 292). That indictment claims that Defendants were members and associates of a criminal enterprise—the "6 Mile Chedda Grove" street gang in Detroit—one of whose purposes was to "preserv[e] and protect[] the power, territory, reputation, and profits of the enterprise through murder, robberies, intimidation, violence, and threats of violence." Id. at 2, 6. The indictment further alleges that the enterprise's profits derived primarily from the sale and distribution of controlled substances, including crack cocaine, heroin, and morphine. Id. at 5. The sale and distribution alleged was not limited to Michigan; gang members and associates purportedly sold and distributed controlled substances in Ohio, Kentucky, Tennessee, Alabama, and West Virginia. Id.

---

[2] Wilson acknowledges that he joined Johnson's motion, but he filed his own motion "because he is being tried under penalty of death separately from Mr. Johnson and other Group 1 codefendants and seeks to have the Court separately rule on [his] motion." Def. Wilson Mot. at 1 n.1.

[3] Because oral argument will not aid the decisional process, these motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2).

Five of the eleven defendants have since pleaded guilty.[4]  The six remaining defendants have been separated into two groups with separate trial dates.  See 8/7/2018 Order (Dkt. 425). Group One, composed of four defendants who are not subject to the death penalty upon conviction, has a trial date of April 23, 2019.  See Group One Scheduling Order (Dkt. 464); 9/21/2018 Status Conference (finalizing Group One trial date).  Group Two, composed of two defendants who are death-penalty eligible, has a trial date of April 21, 2020.  See Group Two Scheduling Order (Dkt. 475).

Defendant Patrick Johnson belongs to Group One and has been charged with one count of racketeering conspiracy in violation of 18 U.S.C. § 1962(d).  See 2d Superseding Indictment at 2. Defendant Carlo Wilson belongs to Group Two and has been charged with one count of racketeering conspiracy in violation of 18 U.S.C. § 1962(d); two counts of murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1); two counts of using and carrying a firearm during and in relation to a crime of violence causing death in violation of 18 U.S.C. §§ 924(c) and 924(j); two counts of assault with a dangerous weapon in aid of racketeering in violation of 18 U.S.C. § 1959(a)(3); and one count of using, carrying, and discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c).  See generally id.  On March 1, 2018, the Government filed its notice of intent to seek a sentence of death against Wilson (Dkt. 293).

## II. DISCUSSION

Under Federal Rule of Evidence 801(d)(2)(E), an out-of-court statement offered for the truth of the matter asserted against an opposing party is not hearsay if it "was made by the party's

---

[4] These five defendants include Mario Jackson, Michael Richardson, Corey Mills, Devontae Russell, and Phillip Peaks.

coconspirator during and in furtherance of the conspiracy." Before such statements can be admitted, however, Rule 104(a) requires the court to make a preliminarily finding that the co-conspirator statements satisfy the requirements of Rule 801(d)(2)(E). United States v. Childs, 539 F.3d 552, 559 (6th Cir. 2008).

For out-of-court statements of a co-conspirator to be admissible under Rule 801(d)(2)(E), the Government must establish the following three foundational prerequisites by a preponderance of the evidence: (i) the conspiracy existed, (ii) the defendant against whom the statement is offered was a member of the conspiracy, and (iii) the co-conspirator made the statement during the course and in furtherance of the conspiracy. Bourjaily v. United States, 483 U.S. 171, 175 (1987); United States v. Vinson, 606 F.2d 149, 152 (6th Cir. 1979) (discussing United States v. Enright, 579 F.2d 980 (6th Cir. 1978)).[5] The district court's finding as to whether the Government has met its burden is commonly referred to as an Enright finding. See United States v. Young, 847 F.3d 328, 352 (6th Cir. 2017) (citing United States v. Warman, 578 F.3d 320, 335 (6th Cir. 2009)). In making its factual findings, the court may consider the hearsay statements themselves. See Bourjaily, 483 U.S. at 181; Fed. R. Evid. 801(d)(2)(E) (providing that "[t]he statement must be considered but

---

[5] "A statement is made in furtherance of a conspiracy if it was intended to promote conspiratorial objectives; it need not actually further the conspiracy." United States v. Kelsor, 665 F.3d 684, 695 (6th Cir. 2011) (citation and quotation marks omitted); see also United States v. Payne, 437 F.3d 540, 546 (6th Cir. 2006) ("Statements designed to conceal an ongoing conspiracy are made in furtherance of the conspiracy for purposes of Rule 801(d)(2)(E)."); United States v. Martinez, 430 F.3d 317, 327 (6th Cir. 2005) (examples of statements made in furtherance of a conspiracy include statements "made to apprise a coconspirator of the progress of the conspiracy, to induce his continued participation, or to allay his fears," as well as "[s]tatements that prompt a coconspirator to act in a matter that facilitates the carrying out of the conspiracy"). Out-of-court statements that were made after the conclusion of the conspiracy, however, are not made "in furtherance of the conspiracy" and, therefore, are not admissible under Rule 801(d)(2)(E). United States v. Conrad, 507 F.3d 424, 430 (6th Cir. 2007). Similarly, "'mere idle chatter or casual conversation about past events is not considered a statement in furtherance of the conspiracy.'" Id. (quoting United States v. Darwich, 337 F.3d 645, 657 (6th Cir. 2003)).

does not by itself establish . . . the existence of the conspiracy or participation in it"). But because these statements are presumptively unreliable, there must be some independent corroborating evidence of the defendant's knowledge and participation in the conspiracy for these statements to be admissible. United States v. Benson, 591 F.3d 491, 502 (6th Cir. 2010); see also United States v. Conrad, 507 F.3d 424, 429 (6th Cir. 2007) (citing United States v. Clark, 18 F.3d 1337, 1341 (6th Cir. 1994)).

Although it has declined to set any "hard and fast procedures," Vinson, 606 F.2d at 152, the Sixth Circuit has outlined three possible methods for the district court to employ when making its admissibility determination. The first method is the so-called "mini-hearing," during which the district court "hears the government's proof of conspiracy and makes the preliminary Enright finding." Id. This pretrial hearing is also referred to as an Enright hearing, see United States v. Norwood, No. 12-CR-20287, 2014 WL 1795560, at *1 (E.D. Mich. May 6, 2014), and it is what Johnson and Wilson have requested in this case. This sort of hearing is often criticized as being "burdensome, time-consuming and uneconomic." Vinson, 606 F.2d at 152 & n.4 (citing United States v. James, 590 F.2d 757 (5th Cir. 1979) (en banc)); Norwood, 2014 WL 1795560, at *2 (same).

Under the second method, a court may require the Government to produce independent evidence establishing a conspiracy at trial before the court makes an Enright finding concerning the admissibility of any co-conspirators' hearsay statements. Vinson, 606 F.2d at 152-153; see also United States v. Stone, No. 10-20123, 2011 WL 17613, at *2 (E.D. Mich. Jan. 4, 2011) ("[T]he Court can require the Government to produce the independent evidence of conspiracy at trial, before it attempts to introduce the hearsay, and the Court can make the Enright findings then."). If, after considering the non-hearsay evidence, a district court finds that the co-conspirator

statements are admissible, the court will allow the Government to introduce the challenged statements. Vinson, 606 F.2d at 152.

Finally, under the third method, the court may conditionally "admit the hearsay statements subject to a later demonstration of their admissibility by a preponderance of the evidence." Id. at 153. This method of conditionally admitting co-conspirator statements is "firmly entrenched in this circuit's practice," United States v. Holloway, 740 F.2d 1373, 1375 n.2 (6th Cir. 1984), and it is the general and preferred practice within this circuit, see Norwood, 2014 WL 1795560, at *2 (collecting cases). Notably, if a district court conditionally admits co-conspirator statements but the Government fails to carry its burden at trial by a preponderance of evidence, the court "should grant a mistrial unless convinced that a cautionary instruction would shield the defendant from prejudice." United States v. Kelsor, 665 F.3d 684, 693 (6th Cir. 2011) (citing Vinson, 606 F.2d at 153).

In his motion, Johnson "requests a written proffer by the Government at least thirty (30) days prior to trial setting forth the basis for admission of co-conspirator statements and that the Court subsequently conduct a hearing on the admissibility of the statements." Def. Johnson Br. at 1. Johnson contends that an Enright hearing should be conducted in this case because it would ensure that the jury is not erroneously presented with prejudicial information, make trial more efficient by eliminating trial objections and rulings, lessen potential jury confusion, and aid appellate review. Id. at 3 (citations omitted).

Wilson makes a somewhat similar request in his motion. Wilson seeks a court order requiring the Government to disclose all out-of-court statements it intends to introduce at trial under Rule 801(d)(2)(E), followed by a separate Enright hearing. Def. Wilson Br. at PageID.3070,

3072. Alternatively, Wilson seeks a court order requiring the Government to submit pretrial written proffers outlining the admissibility of each co-conspirator statement. Id. at PageID.3072.

The circumstances of this case warrant a hearing, says Wilson, because the Government is seeking a sentence of death, which requires this Court to adhere to heightened standards of reliability and fact-finding. Id. at PageID.3070-3071. Because he may be subjected to a penalty phase in addition to a culpability finding by the same jury, Wilson avers that conditionally admitted co-conspirator statements later deemed to be inadmissible would create an "unacceptable risk" of "infect[ing] the penalty phase proceeding." Id. at PageID.3071. Moreover, a pretrial hearing would be economical because it would avoid the necessity of a mistrial if the Government fails to carry its burden of admissibility. Id. As for any purported concerns about witness safety and intimidation from disclosing co-conspirator statements, Wilson claims that the identities of informants and cooperating witnesses will no longer be secrets as the case progresses closer to trial. Id. ("Even at this juncture, the defense believes it knows at least some of the identities of cooperating witnesses.").

In its response to Johnson, the Government contends that an Enright hearing in this case would be "burdensome, time-consuming and uneconomic." Gov't Resp. to Johnson at 7 (Dkt. 510). Because of the anticipated length of trial, the nature of the charges, and the volume of co-conspirator statements that would be introduced, the Government claims that such a hearing would turn into a "mini-trial," which would cause significant pretrial delay. Id. This hearing would also be duplicative of trial, says the Government, because it would have to "prove evidence of the racketeering conspiracy, as well as the underlying racketeering and overt acts," only to "use the same evidence at trial to prove the same racketeering conspiracy and underlying racketeering and overt acts yet again." Id. The Government further claims that an Enright hearing would require it

7

to "provide early disclosure of witness names, many of whom face significant safety and intimidation concerns." Id. For these reasons, the Government prefers the third method of conditionally admitted any co-conspirator statements. Id. at 6-7.[6]

The Court believes that the best approach is to order the Government to submit an offer of proof identifying any alleged co-conspirator statements it contemplates introducing at trial under Rule 801(d)(2)(E), after which the Court will review the proffer and decide which of the three methods for determining admissibility is appropriate, e.g., hold an Enright hearing, have the Government submit non-hearsay evidence of a conspiracy at trial prior to making an Enright finding, or conditionally admit the co-conspirator statements at trial. See, e.g., United States v. Rodriguez, 975 F.2d 404, 406 (7th Cir. 1992) (explaining that "the Government may submit evidence of [the foundational] elements in a pre-trial proffer, and the district court may admit the statement(s) subject to its later determination during trial that the Government has established by a preponderance of the evidence the three foundational elements"); United States v. Radabaugh, 840 F.2d 18 (Table), at *3 (6th Cir. 1988) (per curiam) (noting that the district court acted within its discretion by listening to the Government's proffer and then admitting the statements conditionally); United States v. Sneed, No. 3:14 CR 00159, 2016 WL 4191683, at *3 (M.D. Tenn. Aug. 9, 2016) (ordering the Government to file its proffered co-conspirator statements so that the court could determine before trial whether the statements were admissible); Norwood, 2014 WL 1795560, at *3 (finding the Government's court-ordered written proffer adequate and "utilizing the option 'firmly entrenched in this circuit's practice'—i.e., conditionally admitting the statements without a pre-trial 'mini-hearing'" (quoting Holloway, 740 F.2d at 1375 n.2)).

---

[6] The Government's response to Wilson's motion is substantially similar and raises the same arguments in opposition.

Although the Court acknowledges that preparing this written proffer may be somewhat burdensome and time-consuming for the Government, see Gov't Resp. to Def. Wilson at 7-8, this approach is less burdensome and restrictive to the Government than the other options and more protective of Defendants' legitimate concerns about hearsay statements. Therefore, Johnson and Wilson's requests for a written proffer are granted.[7]

Insofar as either Johnson or Wilson seeks pretrial disclosure of the Government's evidence to be offered under Rule 801(d)(2)(E), see Def. Johnson Mot. at 1-2; Def. Wilson Br. at PageID.3072, such evidence is not discoverable under Federal Rule of Criminal Procedure 16, see United States v. Presser, 844 F.2d 1275, 1285 (6th Cir. 1988) (citing United States v. Roberts, 811 F.2d 257, 258-259 (4th Cir. 1987) (per curiam)). Therefore, any purported request for pretrial discovery of co-conspirator statements is denied.

### III. CONCLUSION

For the reasons stated above, Johnson and Wilson's motions (Dkts. 371, 561) are granted in part and denied in part. The Government shall file and serve a written proffer of any Rule 801(d)(2)(E) evidence it intends to offer at least sixty days before the trial date. The proffer shall include specific statement(s) from the different co-conspirators that the Government will seek to have admitted under this rule. The proffer shall also include a concise summary of evidence to be offered to establish the foundational prerequisites for admissibility—namely, that a conspiracy existed, the defendant against whom the statement is offered was a member of that conspiracy, and the co-conspirator made the statement during the course and in furtherance of the conspiracy.

---

[7] It is worth noting that there are two separate trials for the Group One and Group Two defendants, which are set almost a year apart from one another. Thus, insofar as the Government intends to introduce the same co-conspirator statements in the Group Two trial that it does during the Group One trial, the Court will have already determined the admissibility of these statements, regardless of the option it chooses concerning Group One.

Defendants may file a response within ten days of receiving the Government's proffer. The Government may then file a reply within ten days of receiving a Defendant's response. At that point, the Court will be in a better position to revisit Defendants' motions and determine whether any further pretrial action, including an <u>Enright</u> hearing, is necessary.

SO ORDERED.

Dated: January 2, 2019  
    Detroit, Michigan

<u>s/Mark A. Goldsmith</u>  
MARK A. GOLDSMITH  
United States District Judge