UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

D-1  EDWIN MILL,
D-2  CARLO WILSON,

      Defendants.

Case No. 2:16-cr-20460

Hon. Mark A. Goldsmith

---

### JOINT MOTION TO STRIKE AGGRAVATING FACTORS

Messrs. Edwin Mills and Carlo Wilson, through counsel, respectfully move this Court, pursuant to the Fifth, Sixth, and Eights Amendments to the United States Constitution, to strike all statutory and non-statutory aggravating factors.

In support of this motion, Messrs. Mills and Wilson state the following:

1.    The grand jury indicted Messrs. Mills and Wilson in a second superseding indictment filed February 28, 2018. Dkt. 292. Both pled not guilty to the charges. Dkt. 302. Trial is scheduled for April 21, 2020. Dkt. 475.

2.    The Notice of Intent to Seek a Sentence of Death alleges for both Messrs. Mills and Wilson the same statutory and non-statutory aggravating factors. Dkt. 293. It alleges the following statutory aggravating factors under 18 U.S.C. § 3592(c): grave risk of death to additional persons; substantial planning and

premeditation; vulnerability of victim; and, multiple killings or attempted killings. It alleges the following non-statutory aggravating factors under 18 U.S.C. § 3593(a)(2): criminal street gang participation and victim impact evidence.

3.    For the reasons set forth below, because the notice of aggravating factors violates the Federal Death Penalty Act as well as the Fifth, Sixth, and Eighth Amendments, this Court should strike all the aggravating factors.

4.    The government, through its Assistant United States Attorney, does not concur in this motion.

5.    Messrs. Mills and Wilson respectfully request that the Court enter an order striking all aggravating factors.

Respectfully submitted,

s/Gerald J. Gleeson                          s/ Jacqueline K. Walsh
Gerald J. Gleeson, II (P53568)              Jacqueline K. Walsh
Jeffrey Alan Crapko (P78487)                Washington State Bar No. 21651
Miller, Canfield, Paddock                   705 2nd Ave., Suite 501
and Stone, P.L.C.                           Seattle, WA  98104
840 West Long Lake Road, Suite 150          (206) 325-7900x5
Troy, Michigan 48098-6358                   Jackie@jamlegal.com
(248) 879-2000                              Counsel for Carlo Wilson
gleeson@millercanfield.com
Counsel for Edwin Mills


s/ Jean D. Barrett                          s/ Ashwin Cattamanchi
Jean D. Barrett                             Ashwin Cattamanchi
Ruhnke & Barrett                            Illinois State Bar No. 6289199
47 Park Street                              Federal Defenders of San Diego, Inc.
Montclair, NJ 07042                         225 Broadway, Suite 900
(973)744-1000                               San Diego, CA 92101
jeanbarrett@ruhnkeandbarrett.com            (619) 234-8467
Counsel for Edwin Mills                     ashwin_cattamanchi@fd.org
                                            Counsel for Carlo Wilson



DATED:      February 15, 2019

## MEMORANDUM IN SUPPORT OF JOINT
## MOTION TO STRKE AGGRAVATING FACTORS

### Issue Presented

Whether this Court should strike the non-statutory and statutory aggravating

factors.

## Controlling Authority for the Relief Sought

Federal Death Penalty Act ("FDPA"); U.S. CONST. art. I, § 9, cl. 3; the Fifth, Sixth, and Eighth Amendments to the United States Constitution.

## ARGUMENT

Messrs. Mills and Wilson present the following arguments: (I) the Court should strike all non-statutory aggravating factors in their entirety; (II) the Court should individually strike the non-statutory aggravating factor of victim impact evidence; (III) the Court should individually strike the non-statutory aggravating factor of criminal street gang participation; (IV) the Court should strike the statutory aggravating factor of substantial planning and premeditation; (V) the Court should strike the statutory aggravating factor of vulnerability of victim; and (VI) the Court should strike the statutory aggravating factors of multiple killings or attempted killings and grave risk of death to additional persons.

## I.     The Court should strike all non-statutory aggravating factors in their entirety.

Non-statutory aggravating factors play a specialized role in the jury's decision-making process in a federal death penalty case. The first decision a jury must make in the penalty phase is whether any of the gateway mental state elements set out at § 3591(a)(2) are present in the case. The (a)(2) elements involve state-of-mind determinations that require the government to prove that the killing at issue was intentional. If the government fails to prove to the jury's unanimous

satisfaction and beyond a reasonable doubt that one (and only one) of the (a)(2)

elements is present, the jury goes no further and the death penalty may not be

imposed. If, however, the government does succeed in establishing an (a)(2)

element, the jury proceeds to its second decision, whether one or more of the

specific statutory aggravating factors[1] set out at § 3592(c)(1) through (16) has been

established unanimously and beyond a reasonable doubt.

It is only if the government establishes, in sequence, both the existence of an

(a)(2) element and one or more of the (c)(1) through (16) factors that the jury may

consider so-called non-statutory aggravating factors.[2] At that point in the process,

the statute permits the jury to return a special finding identifying "any other

aggravating factor for which notice has been provided under subsection (a) which

is found to exist." 18 U.S.C. § 3593(d). In this case, as summarized above, the

government has put the defendant on notice that it will seek to prove, as a reason to

impose the death penalty, both statutory and non-statutory aggravating factors.

### A.  By its terms, the FDPA does not authorize the utilization of nonstatutory aggravating factors.

As interpreted by the government in this case, the FDPA allows the

---

[1] Although they are called "factors," because the existence of at least one factor is required by statute, they are potentially elements of the crime of a death-eligible murder in accordance with *Ring v. Arizona*, 536 U.S. 584 (2002).

[2] The government's failure to establish at least one statutory aggravating factor means that the sentence may not be death and the jury, therefore, need not reach the issue of mitigating circumstances and does not engage in weighing.

government, at virtual whim, to utilize non-statutory aggravating factors in

pursuit of a death sentence. In this case the government has now set forth two non-

statutory aggravating factors. However, a close reading of the FDPA reveals that

the statute does not permit the Government to pursue non-statutory factors beyond

victim-impact.

The FDPA statutory scheme requires the government, as part of its notice

obligations, to file with the Court, and serve upon the defendant, a notice of intent

to seek the death penalty that sets forth:

> [T]he aggravating factor or factors that the government,
> if the defendant is convicted, proposes to prove as
> justifying a sentence of death.
>
> The factors for which notice is provided under this
> subsection may include factors concerning the effect of
> the offense on the victim and the victim's family, and
> may include oral testimony, a victim impact statement
> that identifies the victim of the offense and the extent and
> scope of the injury and loss suffered by the victim, and
> the victim's family, and any other relevant information.

18 U.S.C. § 3593(a). The statute also sets out 16 specific aggravating factors as

relevant to this kind of case. 18 U.S.C. § 3592(c). The use of non-statutory

aggravating factors—with the possible exception of victim-impact evidence—is

simply not authorized by the statute. This is so because § 3592(c) of the statute

contradicts § 3591(a) of the statute. The former provides that the jury "may

consider whether any other aggravating factor for which notice has been given

exists." 18 U.S.C. § 3592(c). But § 3591(a) provides that a defendant may be sentenced to death only after a consideration by the jury of "the factors set forth in § 3592 . . . ." Section 3592(c) contains, as noted above, a listing of 16 statutory aggravating factors and 16 such factors only. Therefore, non-statutory factors may not be considered by a jury since they are not—and could not be—set out in § 3592.[3]

In *United States v. Nguyen,* 928 F. Supp. 1525, 1535 (D. Kan. 1996), the trial judge described, and rejected, the above-stated statutory argument as "hyper-literal." Yet, if Congress is going to go into the business of authorizing death sentences and executions, it has a concomitant responsibility to speak in language which is clear and unambiguous. Whatever political capital there is to be made in pursuit of the death penalty must be earned by clear legislative direction. Because the statute does not authorize non-statutory aggravating factors—except in the case of victim-impact—the other non-statutory aggravating factor in this case must be dismissed.

> **B.  Non-statutory aggravating factors do not constitutionally limit and guide the discretion of the jury, thus permitting wholly arbitrary and capricious death sentences in violation of the Eighth Amendment.**

The Eighth Amendment requires that "where discretion is afforded a

---

[3] This view of the requirements of the FDPA is reinforced by the fact that the section of the Act concerning appellate review, § 3595, makes reference only to aggravating factors considered by the jury under § 3592.

sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Gregg v. Georgia*, 428 U.S. 153, 189 (1976). In particular, the Supreme Court's Eighth Amendment jurisprudence since *Gregg* has explained that while sentencers may not be prevented from considering any relevant information offered as a reason for sparing a defendant's life, the decision to impose death must be guided by "carefully defined standards that must narrow a sentencer's discretion." *McCleskey v. Kemp*, 481 U.S. 279, 304 (1987). By simultaneously promoting both individualized sentencing decisions and uniform application of the death penalty, these two principles are designed to provide a "meaningful basis for distinguishing the few cases in which it is imposed from the many cases in which it is not." *Furman v. Georgia*, 408 U.S. 238, 313(1972) (White, J., concurring). By contrast, construing § 3592(c) as authorizing the government to unilaterally expand the list of aggravating factors on a case-by-case basis injects into capital proceedings precisely the uncertainty and disparate case results that *Furman* found to violate the Eighth Amendment. The statute provides no guidance to prosecutors in determining how to define or select non-statutory aggravating circumstances factors in a particular case. Under such a scheme, the factors that could be used to persuade jurors in any given case to impose death are not limited to "clear and

objective" criteria, *Gregg*, 428 U.S. at 197, but are restricted only by the imagination of the prosecutor. Particularly in conjunction with the evidentiary free-for-all created by the scope of "information" admissible at the penalty phase, the statute's standardless procedure creates an impermissible risk that the death penalty will be imposed arbitrarily and capriciously, in violation of the Eighth Amendment.

The arbitrariness this procedure injects into the weighing process mandated by the statute is clear. The government's unconstrained ability to allege various nonstatutory aggravating factors injects impermissible randomness into the process. To permit different prosecutors, in each individual case, to create and select the factors that may be placed on "death's side of the scale," injects the very arbitrariness and capriciousness into the sentencing process that *Furman* found constitutionally fatal. *Cf. Stringer v. Black*, 503 U.S. 222, 232 (1992) (When the sentencing body is asked to weigh a factor twice in its decision, a reviewing court cannot "assume it would have made no difference if the thumb had been removed from death's side of the scale.").

### C. Permitting the Department of Justice to define non-statutory aggravating circumstances after the crime but before trial violates the ban on ex post facto laws.

Article I, Section 9, clause 3 of the United States Constitution states: "No . . . ex post facto law shall be passed." But § 3592 permits the prosecution to

manufacture out of whole cloth aggravating factors to be applied retroactively to crimes committed before the aggravating factors are identified. A defendant's right to notice and to fair warning of the conduct that impacts upon his liberty or his life is a basic principle long recognized by the Supreme Court. *See, e.g.*, *Bouie v. City of Columbia*, 378 U.S. 347, 350–51 (1964); *In re Oliver*, 333 U.S. 257, 273 (1948). The statutory scheme which the government intends to use to deprive Messrs. Mills and Wilson of their lives "makes more burdensome the punishment for a crime, after its commission . . . ." *Beazell v. Ohio*, 269 U.S. 167 (1925); *see Lindsey v. Washington*, 301 U.S. 397 (1937) (statutory change from discretionary to mandatory death penalty held barred by ex post facto clause when retroactively applied).

In *Apprendi v. New Jersey*, the Supreme Court held that any fact that "expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict" is an "element" that must be submitted to a jury. 530 U. S. 466, 494 n.19 (2000). Two years later, in *Ring v. Arizona*, 536 U.S. 584, the Court recognized the import of *Apprendi* in the context of capital-sentencing proceedings. There, the Court held that aggravating circumstances that make a defendant eligible for the death penalty "operate as 'the functional equivalent of an element of a *greater offense*.'" *Id.* at 609 (emphasis added). That is to say, for purposes of the Sixth Amendment's jury-trial guarantee, the underlying offense of

"murder" is a distinct, lesser included offense of "murder plus one or more aggravating circumstances": Whereas the former exposes a defendant to a maximum penalty of life imprisonment, the latter increases the maximum permissible sentence to death. Accordingly, the Court held that the Sixth Amendment requires that a jury, and not a judge, find the existence of any aggravating circumstances, and that they be found, not by a mere preponderance of the evidence, but beyond a reasonable doubt. *Id.* at 608–09.

The Eighth and Fourth Circuits have rejected the argument that nonstatutory aggravating factors are the functional equivalents of elements of the crime. *See United States v. Higgs*, 353 F.3d 281, 322 (4th Cir. 2003) (non-statutory aggravators are not elements because "[t]hey do not increase the possible punishment or alter the elements of the offense"); *United States v. Allen,* 247 F.3d 741, 759 (8th Cir. 2001), *vacated on other grounds*, 536 U.S. 953 (2002).

There is also authority, however, that non-statutory aggravating factors are elements. *See United States v. Concepcion Sablan*, 555 F. Supp.2d 1205, 1221 (D. Colo. 2007) (Under the FDPA, "the existence of all the aggravating factors are constitutionally significant facts that should be found by the jury."); *United States v. Mills*, 446 F. Supp.2d 1115, 1130–31 (C.D. Cal. 2006) (same); *United States v. Green*, 372 F. Supp.2d 168, 175 (D. Mass. 2005) (same). The conflict in the cases has recently been resolved in *Hurst v. Florida*, 136 S. Ct. 616 (2016), in which the

Court ruled that Florida's statute was constitutionally flawed because "Florida does not require the jury to make the critical finding*s* necessary to impose the death penalty," including "the existence *and* weight of aggravating circumstances." *Hurst*, 136 S. Ct at 622–23 (emphasis added).

The non-statutory aggravating factors a jury finds at the prosecutor's urging are just as necessary to a jury's finding that the death penalty shall apply as are statutory aggravating factors. As Judge Gertner explained in *United States v. Green*, 372 F. Supp.2d 168, 177–78 (D. Mass. 2005):

> [A]ny aggravating factor is 'legally essential to punishment' because, while not linearly triggering a higher sentence within the statutory maximum, as Federal Sentencing Guidelines factors do, it may effectively tip the scale from life to death in combination with the other factors at play. . . . Because we will never know exactly how each factor influences the jurors' ultimate punishment determination, logic dictates that all aggravating factors—together—be considered legally essential to the punishment. Indeed, the government's argument that non-statutory factors are not essential is disingenuous; if the government does not require additional evidence to convince the jury to vote for death, why is it invoking non-statutory factors at all?

*See also United States v. Mills*, 446 F. Supp.2d 1115 (C.D. Cal. 2006) (non-statutory aggravating factors were elements because they involved "constitutionally significant fact finding").

Because their use in the jury's weighing process in penalty deliberations

violates the Eighth Amendment, the ex-post facto clause of the United States

Constitution, and the very face of the FDPA, the non-statutory aggravating factors

should be stricken from the government's Notice of Intent to Seek a Sentence of

Death.

## II.    The Introduction of Victim Impact Evidence at the Penalty Phase of a Capital Trial Violates the Eighth Amendment.

The Eighth Amendment prohibits the consideration of victim impact

evidence at the penalty phase of a capital trial. The Supreme Court's decision in

*Payne v. Tennessee*, 501 U.S. 808 (1991), which overruled the Court's prior

decision in *Booth v. Maryland*, 482 U.S. 496 (1987), and permitted the

introduction of certain types of victim impact evidence, was wrongly decided and

should be itself reversed.

"[D]eath is a 'punishment different from all other sanctions.'" *Booth*, 482

U.S. at 509 n.12 (quoting *Woodson v. North Carolina*, 428 U.S. 280, 303–304, 305

(1976) (plurality opinion of Stewart, Powell and Stevens, JJ.)) Accordingly, the

considerations that inform the capital sentencing determination may be different

from those in other liability or sentencing decisions. *Id.* For instance, "[i]t is well

settled that a jury's discretion to impose the death sentence must be 'suitably

directed and limited so as to minimize the risk of wholly arbitrary and capricious

action.'" *Id*. at 502 (quoting *Gregg v. Georgia*, 428 U.S. 153, 189 (1976) (joint

opinion of Stewart, Powell and Stevens, JJ.)). That means that a jury must make an

"individualized determination" of whether a particular defendant should be executed that is "based on the character of the individual and the circumstances of the crime." *Zant v. Stephens*, 462 U.S. 862, 879 (1983).

As the Court correctly held in *Booth*, these unbending principles require that the evidence presented in support of a sentence of death must have "some bearing on the defendant's 'personal responsibility and moral guilt.'" *Booth*, 482 U.S. at 502 (quoting *Enmund v. Florida*, 458 U.S. 782, 801 (1982)). Victim impact evidence has no such bearing; it is evidence that concerns the victim and his or her family, not the defendant, and in the majority of cases that defendant will have no knowledge of the personal characteristics of the victim nor the impact of the loss on his or her relatives. *Id.* at 504. Such evidence is therefore "wholly unrelated to the blameworthiness of a particular defendant." *Id.*

Victim impact evidence also injects constitutionally intolerable risks of arbitrariness into the capital sentencing decision in at least two ways. Allowing the jury to consider the personal characteristics of the victim invites them to conclude that a defendant who kills an upstanding, productive and well-liked victim is deserving of more severe punishment than a defendant whose victim is of questionable character or deemed by the jury to be of less value to society. *Id.* at 506. Inevitably, some jurors' judgments regarding the relative worth of the victim will turn on constitutionally repugnant factors such as race, religion or ethnicity.

*See id.* at n.8 ("We are troubled by the implication that defendants whose victims were assets to their community are more deserving of punishment than those whose victims are perceived to be less worthy. Of course, our system of justice does not tolerate such distinctions.").

The use of victim impact evidence also invites randomness and arbitrariness into the capital sentencing process by permitting the strength of the government's case for death to turn on factors such as how many family members a victim happened to have, or how able those family members are to compellingly articulate the impact of their loss in front of a jury. *Id.* at 505. Neither of these circumstances provides "a 'principled way to distinguish [cases] in which the death penalty was imposed, from the many cases in which it was not.'" *Id*. at 506 (quoting *Godfrey v. Georgia*, 446 U.S. 420, 433 (1980) (opinion of Stewart, J.)). Neither, therefore, are proper considerations in capital sentencing. *Id.* at 507.

It is true, of course, as the dissenting justices complained in *Booth*, that elsewhere in the criminal justice system the prescribed punishment for certain acts may change depending on the actual consequences that flowed from those acts, even though the defendant's mental state was the same in each instance. *Id*. at 516 (White, J., dissenting), 519 (Scalia, J., dissenting). Justice White gave the example of a driver who recklessly ignores a stoplight. *Id.* at 516. As he correctly stated, if the driver unintentionally kills a pedestrian, he will be eligible for significantly

more serious punishment than if he got lucky and no one was injured. *Id.* Justice Scalia cited the armed bank robber who points his gun at a security guard and pulls the trigger. *Id.* at 519. If the gun fires and kills the guard, he may get the death sentence; if the gun jams, he will not. *Id.*

There is a crucial difference, however, between these situations and the jury's determination in a capital sentencing proceeding. When the law proscribes a more severe punishment for vehicular homicide than for reckless driving it reflects a legislative judgment that, in all cases involving bad drivers, the harm caused by actually hitting and killing someone—anyone—justifies a greater punishment. When the law allows for the death penalty for homicide but not for attempted bank robbery, no matter who the defendant or the victim is, once again it reflects the legislative embodiment of a consensus regarding societal values. Both laws are straightforward and relatively easy for juries to understand and apply. If the driver killed a pedestrian, he may be found guilty of vehicular homicide. If no one was hit, reckless driving is the most serious offense of which he may be convicted.

What juries are asked to do in a capital sentencing proceeding is a totally different matter. They must consider a great deal of evidence about the defendant, some of it related to the offense, some of it not, and make sense of it in a way that enables them to come to a determination of whether the person should live or die. And they must do so in accordance with the standard of heightened reliability that

applies in capital cases, relying upon reason rather than emotion in cases in which

emotions always run high. That is why it is so critical that their discretion be

guided in as rational a way as possible and that the relevance of the evidence that

they may consider be carefully calibrated to lessen the risk of arbitrariness. *See id*.

at 504 ("While the full range of foreseeable consequences of a defendant's actions

may be relevant in other criminal and civil contexts, we cannot agree that it is

relevant in the unique circumstances of a capital sentencing hearing.")

The principal basis for the reversal of *Booth* by the sharply divided *Payne*

Court was the misguided belief that there is some inherent unfairness in allowing

the jury to consider any mitigating evidence that the defendant may put forth but

not evidence of the impact of the crime on the victim's family. *See Payne*, 501

U.S. at 822 (*Booth* has "unfairly weighted the scales in a capital trial; while

virtually no limits are placed on the relevant mitigating evidence a capital

defendant may introduce concerning his own circumstances, the State is barred

from offering a glimpse of the life which a defendant chose to extinguish, or

demonstrating the loss to the victim's family and to society which have resulted

from the defendant's homicide") (internal citations omitted); *id.* at 826 (quoting

with approval the lower court's denouncement of the rule of *Booth* as permitting "a

parade of witnesses [who] may praise the background, character and good deeds of

Defendant . . . without limitation as to relevancy, but nothing may be said that bears upon the character of, or the harm imposed, upon the victims").

This argument is based upon a false equivalency. Mitigating evidence concerning the defendant's background is quintessentially that which permits a jury to make the constitutionally required "individualized determination" of whether a particular defendant should be executed. *Stephens*, 462 U.S. at 879. It self-evidently has "some bearing on the defendant's 'personal responsibility and moral guilt,'" *Booth*, 482 U.S. at 502 (quoting *Enmund*, 458 U.S. at 801), and thus it is unquestionably a proper—indeed a required—consideration at the penalty phase. Victim impact evidence does not. The purpose of a constitutionally adequate capital sentencing proceeding is not to weigh the relative worth of the defendant and the victim, or to compare and contrast the emotional losses and hardships suffered on each side. Rather, it is to promote, in every way humanly possible, a decision by the jury that is based upon reason and evidence that is truly relevant to whether a human being should live or die. The decision in *Payne* is antithetical to that goal and it should be overruled. The introduction of victim impact evidence at the penalty phase of a capital trial violates the Eighth Amendment.

### III.   The Court should strike the non-statutory aggravating factor of criminal street gang participation.

For several reasons, this Court should strike the non-statutory aggravating factor alleging "criminal street gang participation." In the Notice of Intent, the government alleges the following:

> [Defendant], in the commission of the offenses, participated in "6 Mile Chedda Grove," a criminal street gang, as defined in Title 18, United States Code, Section 521(a), with knowledge that its members engage in or have engaged in a continuing series of offenses, as described in Title 18, United States Code, Section 521(c); and intended to promote or further the felonious activities of the criminal street gang or maintain or increase his position in the gang.

Dkt. 293 at (I)(C)(1) and (II)(C)(1).

This aggravator is duplicative of the charged offenses and ultimately fails to permit the jury to make its penalty decision on "an *individualized* determination on the basis of the character of the individual and the circumstances of the crime." *Zant,* 462 U.S. at 879 (emphasis added); *see United States v. Rivera*, 405 F. Supp.2d 662, 670–71 (E.D. Va. 2005) (striking non-statutory aggravator of criminal street gang participation because the aggravator "conflates" the "individual characteristics" of the defendant with "those with whom he associated"); *United States v. Cisneros*, 363 F. Supp. 2d 827 (E.D. Va. 2005) (holding the same).

An aggravating factor must be stricken if it duplicates an element of the charged crime. *See United States v. McVeigh*, 944 F. Supp. 1478, 1489–90 (D. Col.

1996) (striking a 3592(c)(1) aggravating factor because "the government may not introduce those offenses as aggravating factors that duplicate the crimes charged in the indictment. To allow the jury to weigh as an aggravating factor a crime already proved in a guilty verdict would unfairly skew the weighing process in favor of death."); *United States v. Kaczynski*, No. CR–S–96–259, 1997 WL 716487, at *23 (E.D. Cal. Nov. 7, 1997) (same).

Here, the allegation of criminal street gang participation in the aggravator is an element that the government must prove in the guilt phase with respect to Counts One and Eight through Fourteen. The enterprise element of racketeering is an essential element of murder in aid of racketeering charged in Counts 8 and 9 and the murder must have been committed "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise." 18 U.S.C. § 1959(a). In addition, the crime of murder in aid of racketeering is an element of the death eligible firearms charges in counts 9 and 11, *see* 18 U.S.C. § 924(j), which makes the enterprise an element of those counts as well. And the indictment is quite clear as to the enterprise: it's the gang.

However, not only is it an essential element of the capital eligible counts, it is also what gives the federal government jurisdiction and the opportunity to seek the death penalty. So, it is membership in the gang that brings Messrs. Mills and

Wilson into federal court and forms an essential element of the charges they face. It is difficult to imagine a more stark example of double counting.

The Notice of Intent alleges nothing new or different from what is alleged in the second superseding indictment. Permitting the government to argue this non-statutory aggravating factor would, as the district court in *McVeigh* ruled, "unfairly skew the weighing process in favor of death." *McVeigh*, 944 F. Supp. at 1489–90.

Additionally, by the time of any penalty phase, the jury will already have heard evidence of alleged gang membership and will have had to have concluded beyond a reasonable doubt that both defendants were gang members. Permitting the government at the penalty phase to present duplicative evidence of street gang membership disrupts the jury in its duty to conduct "an individualized determination on the basis of the character of the individual." *Zant,* 462 U.S. at 879. The Court should strike this non-statutory aggravating factor.

### IV.   The Court Should Strike the Statutory Aggravating Factor of "Substantial Planning and Premeditation" As Unconstitutionally Vague and Overbroad.

The aggravating circumstance of "substantial planning and premeditation," 18 U.S.C. § 3592(c)(9), is so broad as to apply to virtually all premeditated killings. It must be stricken for three reasons. First, evidence of "planning and premeditation" by itself is patently inadequate to narrow the class of murders eligible for the death penalty, since almost every murder involves some planning

and premeditation. Second, the modifying phrase "substantial" does not cure this situation, for, even as it has been construed by the federal courts, it "fails adequately to inform juries what they must find to impose the death penalty." *Maynard v. Cartwright*, 486 U.S. 356, 361–62 (1988). Third, the federal courts have been unable to fashion a construction of "substantial" for this factor that would be both narrowing and specific. In spite of previous federal cases upholding the constitutionality of this factor, neither the Supreme Court nor the Sixth Circuit have ever ruled on the issue. Based on the following argument, this Court should strike this aggravating factor from the government's Notice of Intent.

**A.     Substantial Planning and Premeditation Does Not Genuinely Narrow the Class of Murders Subject to the Death Penalty.**

A statutory aggravating factor must genuinely narrow the class of murders which may be subject to the death penalty. *Zant v. Stephens*, 462 U.S. 862, 877 (1983); *Godfrey v. Georgia*, 446 U.S. 420, 428–29 (1980). That is, it must be a factor that is not present in "almost every murder." *Id*. The concepts of "planning and premeditation," however, are part of every intentional murder; they do not genuinely narrow the class of murders subject to the death penalty. All that planning means is "carrying out plans," and a plan can be just a "method for

achieving an end."[4] Accordingly, any murder that has a "method," which is to say virtually every murder, is "planned."

The term "premeditation" provides no greater limitation. Premeditation, of course, was a part of first-degree murder at common law and remains so under federal law. *See* 18 U.S.C. § 1111. In its capacity as a common-law element, it required little if anything more than the decision to kill. *See* 2 W. Lafave & A. Scott, *Substantive Criminal Law* § 7.7, at 237 (1986) (noting that it is "often said that premeditation and deliberation require only a 'brief moment of thought' or a 'matter of seconds'"). Even in common usage, "premeditate" means simply "to think about and revolve in the mind beforehand,"[5] and virtually every murderer thinks about his crime before committing it; otherwise, it would not be murder. Thus, these terms do not perform the constitutionally required function of narrowing the class of murderers subject to the death penalty.

Perhaps the best evidence that the substantial-planning aggravator can apply to virtually all murders and, hence, does not sufficiently limit the class of murderers eligible for death, comes from the United States Department of Justice. As of February 13, 2019, the Attorney General had authorized the government to

---

[4] https://www.merriam-webster.com/dictionary/planning; https://www.merriam-webster.com/dictionary/plan (last visited Feb. 12, 2019).

[5] https://www.merriam-webster.com/dictionary/premeditate (last visited Feb. 12, 2019).

seek the death penalty against 524 defendants. The Federal Death Penalty Resource Counsel Project has compiled most of the Notices of Intent filed in federal capital cases since 1988; of the NOIs compiled, 413 alleged the statutory aggravating factor of substantial planning and premeditation.

The government has alleged the aggravating circumstance of "substantial planning and premeditation" in 83% (413 out of 496) of those cases. This percentage compellingly suggests that this aggravator performs no channeling or limiting function whatsoever.

## B. The Word "Substantial" Does Not Adequately Narrow the Class of Murders Subject to the Death Penalty.

Because the terms "planning and premeditation" by themselves do nothing to narrow the class of all murders, this aggravating factor must be stricken unless the word "substantial" adequately narrows the meaning in a way that actually "channel[s] the sentencer's discretion by clear and objective standards that provide specific and detailed guidance, and that make rationally reviewable the process for imposing a sentence of death." *Arave v. Creech*, 507 U.S. 463, 469 (1993) (quoting *Lewis v. Jeffers,* 497 U.S. 764, 774 (1990); *Godfrey*, 446 U.S. at 428). The word "substantial" is not up to the task. On the contrary, it provides no guidance to a court or a jury as to "how much" or "what kind of" "planning and premeditation" are necessary to rise to the level "substantial." The word gives a questioning juror no clue as to how complicated a plan the defendant must have formulated before

committing the offense or how long he must have thought about the crime before committing it. Accordingly, some jurors may require a defendant to have employed some detailed blueprint or complicated scheme prior to the killing; others, however, may find "substantial" planning and premeditation in the mere removal of a letter opener from a desk drawer prior to a stabbing. The lack of any "clear," "objective," and "specific" guidance to jurors permits the imposition of the death penalty in an arbitrary way.

For this reason, the Supreme Court of Georgia has held the word "substantial" is unconstitutionally vague in circumstances similar to these. *See Arnold v. State*, 224 S.E.2d 386, 392 (Ga. 1976). Georgia had an aggravating factor making anyone with a "substantial criminal history" eligible for the death penalty. *Id.* The Court held that the word "substantial," which it read to mean "of real . . . importance," was unconstitutionally vague because its application was "highly subjective." *Id.; see also Creech*, 507 U.S. at 469 (standards must be "objective"). The Court noted that the word "substantial" might be sufficiently clear in other contexts, but that "the fact that we are here concerned with the imposition of a death sentence compels a different result." *Arnold*, 224 S.E.2d at 392. This, too, is a death penalty case, and the word "substantial" here is no less "subjective" in application than it was in *Arnold*.

In a non-death penalty context, the Sixth Circuit held that the phrase "substantial risk" in 18 U.S.C. § 16(b)'s definition of crime of violence "compel[led] an imprecise analysis of possible risk." *Shuti v. Lynch*, 828 F.3d 440, 446 (6th Cir. 2016). The Court said that the categorical approach to analyzing prior convictions combined with this "imprecise analysis of possible risk" "'denies fair notice to defendants and invites arbitrary enforcement *by judges*.'" *Id*. (emphasis added). If the Court is concerned that a judge could not appropriately apply the phrase "substantial risk," then certainly in the death penalty context, a judge cannot expect a lay juror to appropriately and without arbitrariness apply the phrase "substantial planning." Accordingly, this aggravating factor must be stricken.

### C.   Decisions Upholding this Aggravating Factor Demonstrate its Unconstitutionality.

The courts which have upheld the constitutionality of this statutory aggravator have construed "substantial" in a way that in fact fails to narrow the application of the term as required by the Eighth Amendment. *See, e.g.*, *United States v. Flores,* 63 F.3d 1342, 1374 (5th Cir. 1995). Moreover, these courts have also shown that, even as they attempt to construe the term, the word "substantial" is unconstitutionally vague. Accordingly, even as construed, the term "substantial planning and premeditation" violates the Fifth and Eighth Amendments. In *United States v. McCullah*, 76 F.3d 1087, 1110 (10th Cir. 1996), for example, the court upheld this aggravating factor on the ground that "substantial" means simply

"ample for commission of the crime;" ample, of course, means anything "more than adequate." And the Fourth Circuit, in *Tipton*, 90 F.3d at 896, agreed, holding that "substantial" meant only "more than the minimum amount sufficient to commit the offense."[6] Under these constructions of "substantial," any murder, other than one undertaken with the "minimum" possible planning and premeditation, would be subject to the death penalty.

This interpretation simply cannot be constitutional. Indeed, this interpretation of "substantial" would permit jurors to impose the death penalty for an amount of planning and premeditation that barely exceeds what is essential to commit a homicide at all, indeed for an amount present in "almost every murder." *Godfrey* at 428–29. Since the word substantial can be applied in this impermissible way, and has been so applied, by the court in *Tipton*, 90 F.3d at 895, it violates the Eighth Amendment, and this Court must strike this aggravating factor.

In addition, the limits of the word "substantial" are so vague that it is likely to be applied with great inconsistency and arbitrariness. The Fifth Circuit, in *Flores*, 63 F.3d at 1374, held that "substantial" denotes "a thing of high magnitude" and "the term alone, without further explanation, [is] sufficient to

---

[6] *Tipton* and *McCullah* also used the word "considerable," which *Tipton* explained means "more than merely adequate," as a synonym for "substantial." *Tipton*, 90 F.3d at 896; *McCullah*, 76 F.3d at 1111. Since this term is the equivalent of "ample" and "more than the minimum amount sufficient," we deal with those phrases.

convey that meaning and to enable the jury to make an objective assessment." The construction of the word "substantial" in *Flores* and other federal cases leaves it entirely to the discretion of jurors to decide what the "minimum" amount of planning and premeditation for a murder is. (A matter of which the average juror will have absolutely no knowledge.)

It also leaves entirely to the jurors the determination of how much more than this minimum is necessary to rise to a "substantial" level. Some juries will doubtless feel, like the Fourth Circuit, that anything more than the absolute minimum will permit a verdict of death; others may require truly careful and complex planning and lengthy forethought before death will be imposed. Nothing in the word, however, says which of these interpretations would be correct. The Eighth Amendment requires that an aggravating factor properly "channel" the jurors' discretion. This factor simply does not. This vagueness is further demonstrated by the fact that the standard the courts have established deviates widely from the common usages of the word "substantial." The Supreme Court itself has noted that the meaning of a "substantial" amount of something is "a large degree" of that thing. *Victor v. Nebraska*, 511 U.S. 1, 19 (1994).[7] But it is not ordinary or natural usage to call any amount of something, even an amount barely

---

[7] The word "substantial" also has an inherent ambiguity, since it can mean simply "something that exists." *Victor*, 511 U.S. at 19. The courts to have considered the matter have concluded that that definition does not apply to the aggravating factor here, *see, e.g.*, *Tipton*, 90 F.3d at 895, although a juror might assume that it did.

above the minimum, a "large degree" of that thing. Indeed, amounts close to the minimum would most plausibly be called a "small degree." Moreover, the standard adopted by cases such as *Tipton* is quite similar to "more than minimal planning" under the Sentencing Guidelines. *See* U.S.S.G. § 1B1.1(f) ("More than minimal planning" is "more planning than is typical for commission of the offense in a simple form"). But this is a dilution of the word "substantial," for "substantial" plainly means a greater amount than does "more than minimal." *See McCarthy v. Manson*, 554 F. Supp. 1275, 1306 (D. Conn. 1982) (prejudice "while not substantial" was, nevertheless, "more than minimal").

It seems clear that the word "substantial" must mean something more substantial than such words as "more than the minimum amount sufficient," "ample," "minimal," or "more than minimal," but how far above has not, and cannot, be described in clear terms. The very inability of the courts to fashion a specific constitutional definition of this factor shows that its meaning remains a "highly subjective" matter for each juror, *Arnold,* 224 S.E.2d at 392, and that it is unconstitutionally vague.[8]

Some states with similar aggravating factors have construed them in a way that does much to eliminate this vagueness. In Florida, for example, the state

---

[8] One case has, without much discussion, held this factor constitutional because there is a "common sense core" of meaning to "substantial." *McVeigh*, 944 F. Supp. at 1490. But this is not so. It is belied in the first place by the inability of courts to say what that core is.

supreme court, when faced with an aggravating factor requiring "cold, calculated, and premeditated" actions by a defendant, held the factor unconstitutionally vague on its face. *Jackson v. State*, 648 So. 2d 85, 87 (Fla. 1994). The court required that, in the future, juries be told that they must determine that "the killing was the product of cool and calm reflection" and "that the defendant had a careful plan or prearranged design to commit murder before the fatal incident." *Id.* at 89. But Congress has not limited the word "substantial" in the aggravator in the FDPA in any way, or indicated how it would do so. Accordingly, this Court may not provide a limiting construction for it.

It is no answer for the government to say that the word "substantial" has been held not to be vague in other contexts. The Georgia Supreme Court in *Arnold*, *supra*, explained one reason why: "[T]he fact that we are here concerned with the imposition of a death sentence compels a different result." 224 S.E.2d at 392; *see also Harmelin v. Michigan*, 501 U.S. 957, 994 (1991) (Scalia, J.) (noting "several respects in which we have held that 'death is different,' and have imposed protections that the Constitution nowhere else provides"). A second reason is that the Eighth Amendment requires the word "substantial" to perform a constitutionally required "narrowing" function not present in noncapital cases. Thus, because the word "substantial" must perform different, and constitutionally more significant, functions in a capital case than it does in noncapital cases, which

do not take into account Eighth Amendment interests, the minimal standards set in some noncapital cases cannot govern.

The Eighth Amendment interests in this case require both that the concept of "plann[ed] and premeditated" be limited to narrow the class of death-eligible murders, and that it be limited in a clear, specific, objective way. Simply tacking the word "substantial" onto the phrase does neither and this aggravating factor, accordingly, violates the Fifth and Eighth Amendments.

For the foregoing reasons, this Court should strike "substantial planning and premeditation" as a statutory aggravating factor from the government's Notice of Intent to Seek a Sentence of Death.

## V.      The Court should strike the statutory aggravating factor of vulnerability of victim.

In the Notice of Intent, the government alleges the statutory aggravating factor of vulnerability of victim under 18 U.S.C. § 3592(c)(11). Dkt. 293 at (I)(B)(3) and (II)(B)(3). The Notice alleges the aggravating factor based on the victim's age: that "A.T. was particularly vulnerable due to youth." *Id*. This statutory aggravating factor violates the Eighth Amendment for the reasons discussed below.

An aggravating factor must be "particularly relevant to the sentencing decision." *Gregg*, 428 U.S. at 192. The requirement of particular relevance means that an aggravating factor must help the jury to distinguish "those who deserve

capital punishment from those who do not." *Creech*, 507 U.S. at 474 ; *see also United States v. Fell*, 372 F. Supp.2d 753, 763 (D. Vt. 2005) ("[T]he information must be 'relevant, meaning that it must be 'sufficiently relevant to the consideration of who should live and who should die.' . . . Aggravating factors in death penalty cases must be 'particularly relevant to the sentencing decision,' not merely relevant, in some generalized sense, to whether the defendant might be considered a bad person.") (quoting *Gregg*, 428 U.S. at 192 and *United States v. Davis,* 912 F. Supp. 938, 943–45 (E.D. La. 1996)). Absent evidence that Mr. Mills and Mr. Wilson knew of A.T.'s vulnerability due to youth, this aggravating factor is not relevant to whether either "might be considered a bad person" worthy of a death sentence. The vulnerability due to youth aggravator is also not relevant here because there is nothing about the crime itself that made A.T. more vulnerable to being killed due to her youth. She was no more vulnerable than the adult who was driving the vehicle and was also killed. Simply put, she was not made vulnerable by her youth. Furthermore, the government has never alleged that A.T. was the intended target of the offense.

When an aggravating factor is not relevant to a determination of life or death, it should be stricken from the death notice. *See, e.g.*, *United States v. Pleau*, No. 10-184-1 S, 2013 WL 1673109, at *5 (D.R.I. Apr. 17, 2013) (striking a burglary incident in support of other serious acts of violence non-statutory

aggravator because "[t]he government does not allege that the burglary involved any violence or threat of violence against the person. Absent such an allegation, this incident is not sufficiently relevant to the determination of whether Pleau should live or die to be considered by the sentencing jury.").

The government makes no allegation that either Mr. Mills or Mr. Wilson knew of the victim's vulnerability at the time of the offense or that her youth made her vulnerable to the offense. Under the Eighth Amendment, the mere fact of the victim's youth is not sufficient. The government must also prove that a defendant knew of the victim's youth and still committed the offense. Absent any allegation that Messrs. Mills and Wilson knew of the victim's youth, this statutory aggravating factor fails to "genuinely narrow the class of persons eligible for the death penalty and [] reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Zant v. Stephens,* 462 U.S. 862, 877 (1983); *see United States v. Jones*, 62 F.3d 851, 854 (6th Cir. 1995) (ruling that in the context of the U.S. Sentencing Guidelines Manual, the vulnerable victim enhancement "applies only if the defendant not only knew of the child, but also chose the child as a victim because of his vulnerability."). In this case, at a minimum, to satisfy the Eighth Amendment, the government must allege and prove that Messrs. Mills and Wilson knew of the victim's youth and chose her as a victim because she was young. Because the Notice of Intent fails to allege that

either Mr. Mills or Mr. Wilson knew of A.T.'s youth or that her youth is what made her vulnerable to the offense, this Court must strike this statutory aggravating factor.

**VI.    The Court should strike the statutory aggravating factors of multiple killings or attempted killings and grave risk of death to additional persons.**

For several reasons, the Court should strike the statutory aggravating factors of "multiple killings or attempted killings" and "grave risk of death to additional persons."

First, both aggravators are duplicative of the charged offenses. An aggravating factor must be stricken if it duplicates an element of the charged crime. *See United States v. McVeigh*, 944 F. Supp. 1478, 1489–90 (D. Col. 1996) (striking § 3592(c)(1) aggravating factor because "the government may not introduce those offenses as aggravating factors that duplicate the crimes charged in the indictment. To allow the jury to weigh as an aggravating factor a crime already proved in a guilty verdict would unfairly skew the weighing process in favor of death.").

Here, the allegations in both aggravators essentially constitute elements that the government must prove in the guilt phase with respect to Counts One and Eight through Fourteen. The Notice of Intent alleges nothing new or different from what is alleged and required to be proved in the second superseding indictment.

Permitting the government to argue these aggravating factors would, as the district court in *McVeigh* ruled, "unfairly skew the weighing process in favor of death." *McVeigh*, 944 F. Supp. at 1489–90.

Second, the aggravators are duplicative of each other. Any argument that Messrs. Mills and Wilson violated the statutory aggravator in 18 U.S.C. § 3593(c)(16) in attempting to kill M.A. or T.M. would be duplicative of an argument that the statutory aggravator in § 3592(c)(5)—grave risk of death to additional person—applies. An aggravating factor may not be put before the jury if it is impermissibly duplicative of another aggravating factor. *United States v. McCullah*, 76 F.3d 1087, 1111–12 (10th Cir.1996) (noting that "double counting of aggravating factors, especially under a weighing scheme, has a tendency to skew the weighing process and creates the risk that the death sentence will be imposed arbitrarily and thus, unconstitutionally"); *Fell*, 372 F. Supp.2d at 763–64 (noting that although the Supreme Court has declined to pass on this theory in *Jones v. United States*, 527 U.S. 373, 398 (1999), "*McCullah's* holding has found wide acceptance in the lower courts", and concluding that "the reasoning of *McCullah* is sound and that an aggravating factor is invalid if it merely duplicates another factor.").

The third reason why the Court should strike both aggravators is that these aggravators fail to provide "carefully defined standards that [] narrow a sentencer's

discretion," in violation of the Eighth Amendment. *McClesky v. Kemp*, 481 U.S.

279, 304 (1987). As one district court found, "there are no identifiable, objective

criteria which distinguish one multiple homicide which resulted in the death

penalty from the great majority which did not." *United States v. Fell*, 224 F.

Supp.3d 327, 341 (D. Vt. 2016). The district court said:

> The most striking evidence of arbitrary application of the
> death sentence provided by Mr. McNally was his review
> of all cases like the present case in which there were
> multiple victims. The death of multiple victims is a
> statutory aggravating factor for homicide, 18 U.S.C.
> §3592(c)(16), and a frequent feature of cases authorized
> for the federal death penalty. Mr. McNally reviewed
> 3,554 federal cases which the FDPRCP had identified as
> potentially subject to the FDPA. Three hundred and
> forty-nine (349) cases involved multiple victims. Twenty
> of these cases resulted in federal death sentences. Mr.
> McNally prepared a table which set out a summary of the
> offense conduct and the statutory and non-statutory
> aggravating factors. McNally, Ex 4. His work was not
> statistical. It is a narrative account of the actual
> application of the FDPA in 349 cases which share the
> aggravating factor of multiple victims. It owes more to
> the study of history than to mathematics. . . . . Mr.
> McNally is absolutely correct when he surveys the entire
> field of multiple victim cases and can find no objective
> basis to explain the different outcomes for similar crimes.

*Id*. The same can be said about the "grave risk of death to additional persons"

aggravator. It too fails to meaningfully "narrow a sentencer's discretion,"

*McClesky*, 481 U.S. at 304, particularly in this case where it is merely duplicative

of the "multiple killings or attempted killings" aggravating factor. For these reasons, this Court should strike both of these statutory aggravating factors.

## CONCLUSION

For the reasons set forth above, this Motion should be granted in all respects together with any and all such other relief as the Court deems just and proper. A hearing is requested on all disputed facts.

Respectfully submitted,

s/Gerald J. Gleeson
Gerald J. Gleeson, II (P53568)
Jeffrey Alan Crapko (P78487)
Miller, Canfield, Paddock
and Stone, P.L.C.
840 West Long Lake Road, Suite 150
Troy, Michigan 48098-6358
(248) 879-2000
gleeson@millercanfield.com
Counsel for Edwin Mills

s/ Jacqueline K. Walsh
Jacqueline K. Walsh
Washington State Bar No. 21651
705 2nd Ave., Suite 501
Seattle, WA  98104
(206) 325-7900x5
Jackie@jamlegal.com
Counsel for Carlo Wilson

s/ Jean D. Barrett
Jean D. Barrett
Ruhnke & Barrett
47 Park Street
Montclair, NJ 07042
(973)744-1000
jeanbarrett@ruhnkeandbarrett.com
Counsel for Edwin Mills

s/ Ashwin Cattamanchi
Ashwin Cattamanchi
Illinois State Bar No. 6289199
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92101
(619) 234-8467
ashwin_cattamanchi@fd.org
Counsel for Carlo Wilson

DATED:  February 15, 2019

## CERTIFICATE OF SERVICE

I, Gerald J. Gleeson, II, hereby certify that on March 4, 2019, I electronically

served the forgoing document with the Clerk of the Court using the ECF system

which will send notification to all parties.

s/ Gerald J. Gleeson, II
Gerald J. Gleeson (P53568)