# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CRIMINAL NO. 2:16-CR-20460 |
| vs. | ) | |
| | ) | HON. MARK A. GOLDSMITH |
| | ) | |
| D-1 EDWIN MILLS | ) | |
| D-2 CARLO WILSON | ) | |
| | ) | |
| Defendants. | ) | |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO PROHIBIT DEATH QUALIFICATION FOR INABILITY TO SELECT FAIR AND IMPARTIAL JURY IN MICHIGAN [ECF No. 772]

COMES NOW the United States of America, by and through its attorneys, Matthew Schneider, United States Attorney and Louis A. Crisostomo and Robert Moran, Assistant United States Attorneys, and James Peterson, Department of Justice Trial Attorney, and hereby files its opposition to the Defendants' MILLS and WILSON's Motion to Prohibit Death Qualification Because of the Unconstitutionality of Selecting a Fair, Impartial, and Representative "Death Qualified" Jury, particularly in a State Without the Death Penalty.  ECF No. 772.

Defendants' motion should be denied for several reasons.  First, defendants' claim is not ripe.  Second, defendants' claim is precluded by binding Sixth Circuit precedent in *United States v. Gabrion*, 719 F. 3d 511, 526-527 (6th Cir. 2013) as

well as established Supreme Court precedent.  Third, the defendants' claim relies upon a false premise.  Defendants' claim that a majority of Michiganders oppose capital punishment is false, or at least not fully supported.  Recent polls show that a significant majority of Michigan citizens support, or strongly support, capital punishment.

The government notes that the defendant has not requested oral argument or an evidentiary hearing.  The government concurs and agrees that oral argument is not necessary to resolve this issue and that an evidentiary hearing is unnecessary. The issue presented concerns an issue that has previously been decided by binding Sixth Circuit and Supreme Court precedent.

## BRIEF IN SUPPORT

### I.    BACKGROUND

The selection of a federal jury to hear a case arising under federal law

involves the exercise of exclusive federal power.  *United States v. Fell*, 571 F. 3d

264, 269 (2nd Cir. 2009).  It does not intrude on any state function; much less does

it trench on the exercise of any state power.  *Id*.

Four principles guide capital case jury selection: (1) defendants have the

right to an impartial jury drawn from a venire that is not biased toward the death

penalty; (2) the government has a recognized interest in empaneling jurors who can

apply capital punishment within the law; (3) a juror who is substantially impaired

can be removed for cause; and (4) rulings on motions to excuse are entitled to

deferential review when premised on in-court interactions with the affected venire

member.  *Uttecht v. Brown*, 551 U.S. 1, 9 (2007).  The Court may excuse a

prospective juror for cause because his or her death penalty views would "prevent

or substantially impair the performance of his duties as a juror in accordance with

his instructions and his oath."  *Wainwright v. Witt*, 469 U.S. 412, 424 (1985);

*Morgan v. Illinois*, 504 U.S. 719, 728 (1992). This standard applies equally to

venire members who strongly favor and strongly oppose capital punishment.

*Morgan*, 504 U.S. at 734 n.7.  The rule reflects the defendant's right to an impartial

jury and the government's legitimate interest in administering constitutional capital sentencing procedures. *Witt*, 469 U.S. at 418 & 423.

In a recent ISideWith poll of Michgan voters, 69% of respondents answered that they support the death penalty. *See* Exhibit A. In a 2004 poll conducted by the anti-death penalty organization Michigan Catholic Conference, 53% of respondents answered that they "strongly support the death penalty." *See* Exhibit B. In fact, as recently as 2015, a bi-partisan proposal was offered in the Michigan Legislature to amend the Michigan Constitution to allow for capital punishment in certain cases. *See* Exhibit C.

Notwithstanding the fact that the State of Michigan does not have a death penalty statute and does not have any provision for the imposition of capital punishment, the Sixth Circuit Court of Appeals affirmed the FDPA death sentence of a Michigan defendant. *United States v. Gabrion*, 719 F. 3d 511 (6th Cir. 2013), *cert. denied* 134 S. Ct. 1934. The Sixth Circuit in *Gabrion* specifically rejected the defendant's Sixth Amendment challenge to the death qualification procedure. *Gabrion*, 719 F. 3d at 531 ("The district court did a commendable job, not an unconstitutional one, of selecting a jury in this case. *Gabrion's* arguments to the contrary are meritless").

Notwithstanding the fact that the State of Vermont does not have a death penalty statute and does not have any provision for the imposition of capital

punishment, the Second Circuit Court of Appeals affirmed the FDPA death sentence of a Vermont defendant on direct appeal. *United States v. Fell*, 531 F. 3d 197 (2nd Cir. 2008), *cert. denied* 130 S. Ct. 1880. The Second Circuit later rejected the same challenge concerning the ability to empanel a fair jury in a non-death penalty state. *See United States v. Fell*, 571 F.3d 264 (2d Cir. 2009)

Notwithstanding the fact that the State of New York does not have a death penalty statute and does not have any provision for the imposition of capital punishment, a federal jury sitting in the Eastern District of New York returned a death sentence against a capital defendant. *See United States v. Whitten*, 610 F. 3d 168 (2nd Cir. 2010). The Second Circuit rejected the defendant's claims that his death qualified jury selection was constitutionally deficient. *Whitten*, 610 F. 3d at 187.

Death qualified jurors have also been selected in cases in states without a death penalty statute and have returned non-death verdicts. In fact, death qualified jurors have been selected in the Eastern District of Michigan and have returned non-capital verdicts. *See United States v. Timothy Duncan*, Case No. 2:05-cr-80025-VAR-RSW-1 (E.D. MI), ECF No. 635 (Aug. 25, 2010), *see also United States v. Robert Ostrander*, Case No:01-cr-00218-RHB-1 (W.D. MI), Minutes (Dec. 4, 2003). Despite being charged with many counts of murder under federal law in the State of New York for offenses arising out of his participation in the

August 7, 1998 bombing of the American Embassy in Tanzania, the jury returned a

non-capital sentence against Khalfan Khamis Mohamed.  *See United States v. Bin*

*Laden*, 156 F. Supp. 2d 359 (S.D. N.Y. 2001).  *See also United States v. McGriff*,

287 Fed. Appx. 916 (2ⁿᵈ Cir. 2008).  Despite being charged with the murder of a

child under federal law in the State of Hawaii, the jury returned a non-capital

sentence against Naeem Williams.  *See United States v. Williams*, Case No. 1:06-

cr-00079-JMS-KSC-1 (D. Ha.), ECF No. 2858 (June 27, 2013).

## II.    ARGUMENT

In their Motion, MILLS and WILSON urge the Court to not empanel a

"death qualified" jury under the Fifth, Sixth, and Eighth Amendments because a

majority of the citizens of Michigan allegedly oppose the death penalty and,

therefore, a "'death qualified' jury could not truly serve as the conscience of the

community in Michigan, and would not be fair, impartial, or representative of the

community.

### A.    Defendants' claims are not ripe

Article III of the Constitution limits the jurisdiction of federal courts to

actual "cases" or "controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). The

courts understand that limitation as the basis for the standing doctrine, which

developed to ensure the federal judiciary did not exceed its authority. *See id*. at

820.  Standing, at its "irreducible constitutional minimum" consists of three

elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). For standing to sue, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Id.* at 560–561; *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S., 167, 180–181 (2000).

Like standing, ripeness is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction. *Warshak v. United States*, 532 F. 3d 521, 525 (6th Cir. 2008) citing *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). The ripeness doctrine serves to "avoid[] . . . premature adjudication" of legal questions and to prevent courts from "entangling themselves in abstract" debates that may turn out differently in different settings. *Id.* Even if a ripe issue exists as to part of a statute "portions of the enactment not immediately involved are not thereby thrown open for a judicial determination of constitutionality." *Communist Party of U.S. v. Subversive Activities Control Bd.*, 367 U.S. 1, 71 (1961).

The Sixth Circuit touched on the ripeness issue as it relates to death qualification in *United States v. Gabrion*, 719 F. 3d at 530. In *Gabrion*, the defendant argued that the jury selection process in his federal capital trial violated his Sixth Amendment right to a fair and impartial jury. *Id.*, at 525-26. Specifically, he claimed that "the district court was biased in favor of pro-death

penalty jurors during the process of selecting his jury (i.e., voir dire)." *Id.*, at 525.

Prior to addressing his jury selection claim, the Sixth Circuit stated:

> *Gabrion* is unclear about the constitutional basis for his claim that the district court's jury-selection process was generally "lopsided" in favor of pro-death penalty jurors. He says in passing that this claim is based upon the Equal Protection and Due Process clauses, but does not develop that argument enough for us to consider it here. ***Nor is it clear from the case law that the Sixth Amendment supports a jury-selection claim that is not based on either the exclusion of a particular anti-death penalty juror or the inclusion (on the actual petit jury) of an "automatic death penalty" juror***. *See Morgan v. Illinois*, 504 U.S. 719, 728, 112 S. Ct. 2222, 119 L. Ed. 2d 492 (1992).

*Id.*, at 530 (emphasis added). The Sixth Circuit went on to "assume without deciding that *Gabrion* can show a violation of the Sixth Amendment if he simply demonstrates that his jury selection process favored pro-death penalty jurors generally" and then rejected his Sixth Amendment Claim. *Id.*, at 530-531. Nevertheless, the government suggests that a defendant's Sixth Amendment "death qualification" specific claim only becomes ripe when actual jurors are questioned and empaneled, and then only as it relates to specific jurors and specific challenges for cause.

## B.   Defendants' claims are meritless

Defendants' claims are meritless and run counter to the binding precedent of the Sixth Circuit as well as established Supreme Court precedent. Defendants make four arguments in support of their claim. First, MILLS and WILSON claim that the Sixth Amendment and the Jury Selection and Service Act of 1968 (JSSA)

8

entitle them to a jury that forms a "fair cross section" of their community. ECF
No. 772, pg. 5. Second, defendants claim that a death qualified jury cannot be a
fair and impartial jury selected from a fair cross section of their community or
serve as the conscience of their community. ECF No. 772, pg. 7. Third,
defendants claim that death qualification results in under representation of
cognizable groups. Finally, MILLS and WILSON complain that the impact of
death qualification is exacerbated in Michigan, a non-death penalty state.
Defendants, the government suggests, misstate and misapply relevant legal
authority as it relates to death qualification of prospective jurors.

MILLS and WILSON's claims are foreclosed by binding Supreme Court
precedent. In *Uttecht v. Brown*, 551 U.S. 1, 9 (2007), the Supreme Court again
affirmed the death qualification procedure enunciated in *Wainwright v. Witt*. In
that case, small groups of jurors were brought in to be questioned. *Id*., at 13. The
jurors were questioned to determine whether they were "death qualified." *Id*., at
10. During that phase, the defense challenged 18 members of the venire for cause.
Despite objections from the State, 11 of those prospective jurors were excused. *Id*.,
at 11. The State made 12 challenges for cause, and defense counsel objected seven
times. Only twice was the juror excused following an objection from the defense.
The Supreme Court reversed the Ninth Circuit Court of Appeals and held that "we
conclude the trial court acted well within its discretion in granting the State's

motion to excuse Juror Z." *Id.*, at 17.  The Supreme Court also took pains to

enunciate and affirm the principles of "death qualification" applicable to all capital

trials:

> These precedents establish at least four principles of relevance here. First, a
> criminal defendant has the right to an impartial jury drawn from a venire that
> has not been tilted in favor of capital punishment by selective prosecutorial
> challenges for cause. *Witherspoon*, 391 U.S., at 521, 88 S. Ct. 1770, 20 L.
> Ed. 2d 776.  Second, the State has a strong interest in having jurors who are
> able to apply capital punishment within the framework state law prescribes.
> *Witt*, 469 U.S., at 416, 105 S. Ct. 844, 83 L. Ed. 2d 841.  Third, to balance
> these interests, a juror who is substantially impaired in his or her ability
> to impose the death penalty under the state-law framework can be excused
> for cause; but if the juror is not substantially impaired, removal for cause is
> impermissible. *Id.*, at 424, 105 S. Ct. 844, 83 L. Ed. 2d 841. Fourth, in
> determining whether the removal of a potential juror would vindicate the
> State's interest without violating the defendant's right, the trial court makes a
> judgment based in part on the demeanor of the juror, a judgment owed
> deference by reviewing courts. *Id.*, at 424-434, 105 S. Ct. 844, 83 L. Ed. 2d
> 841.

*Brown*, 551 U.S. at 9.  *See also Bryan v. Bobby*, 843 F. 3d 1099, 1109 (6th Cir.

2016) (applying *Uttecht v. Brown* to sustain Ohio death sentence against challenge

that jurors were improperly struck).

Defendants' claim is also foreclosed by the binding precedent of the Sixth

Circuit in *Gabrion*.  In that case, the defendant appealed his FDPA capital sentence

and claimed that the jury selection process denied him a fair and impartial jury.

*Gabrion*, 719 F. 3d at 526.  Specifically, the defendant claimed that "his right to an

impartial jury 'drawn from a venire that has not been tilted in favor of capital

punishment by selective prosecutorial challenges for cause'" was violated.  *Id.*

The murder and prosecution took place in Michigan, a state that does not provide for capital punishment at the State level. The Sixth Circuit rejected his claim, holding that:

> A capital defendant's right to an impartial jury is "balance[d]" against the government's "strong interest in having jurors who are able to apply capital punishment within the framework [the] law prescribes." *Id*. The Supreme Court strikes that balance with the following standard: The court may exclude a juror for cause based upon his views on capital punishment if "the juror's views[,]" either in favor of the death penalty or against, "would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S. Ct. 844, 83 L. Ed. 2d 841 (1985) (internal quotation marks omitted).
>
> We review the district court's application of that standard with considerable deference. "Deference to the trial court is appropriate because it is in a position to assess the demeanor of the venire, and of the individuals who compose it, a factor of critical importance in assessing the attitude and qualifications of potential jurors." *Uttecht*, 551 U.S. at 9.

*Id*., at 526-527. The Court concluded its analysis by stating "The district court did a commendable job, not an unconstitutional one, of selecting a jury in this case. *Gabrion's* arguments to the contrary are meritless." *Id*., at 531.

The Second Circuit also considered, and rejected, this precise claim in a FDPA case that arose in Vermont, another state that does not support capital punishment. *See United States v. Fell*, 571 F.3d 264 (2d Cir. 2009). In that case, the Court held:

> The selection of a federal jury to hear a case arising under federal law involves the exercise of exclusive federal power. It does not intrude on any state function; much less does it trench on the exercise of any state power. It

11

poses no interference with legitimate state activities. Thus, even though the states provide one geographic boundary for the vicinage requirement of the Sixth Amendment – with congressionally defined judicial districts providing the other boundary – no federalism concern warrants a construction of that requirement that reaches beyond geography. Certainly, nothing in the plain language of the Sixth Amendment indicates that its vicinage requirement reaches beyond simple geography to local ideology.

571 F.3d at 269 (Raggi, J., with whom Jacobs, C.J. and Cabranes, Parker, Wesley, and Livingston, JJ., join, concurring).  And although the vicinage requirement of the Sixth Amendment "permits the jury to operate as the conscience of that community in judging criminal cases," that function of the vicinage requirement "is satisfied by drawing a jury pool from a fair cross-section of the residents of the particular state and district. Once such a pool has been drawn, the Amendment's singular concern is with ensuring the petit jury's impartiality." *Fell*, 571 F.3d at 269.

Just as the selection of a jury in a state that does not have the death penalty raises no Sixth Amendment concerns, it also raises no Eighth Amendment concerns. As the Court in *Fell* ruled on this point:

> Although the Supreme Court has construed the Eighth Amendment to prohibit cruel and unusual punishment in accordance with "evolving standards of decency," and considered "state practices" in identifying these standards, it has done so only because in the aggregate such practices serve as a proxy for the "national consensus." The Eighth Amendment, no less than other provisions of the Constitution, must apply equally throughout the states. Nothing in the Court's jurisprudence has ever suggested that federalism warrants re-tailoring the Eighth Amendment in each state-or each vicinage-to test federal death sentences by reference to local practices. In the absence of any supporting authority, it is no mere "formalism[ ]" for this

12

court to decline to convene en banc to explore the dissent's novel theory of federalism.

*Fell*, 571 F.3d at 274 (internal citations omitted).  Accordingly, the court should reject defendants' argument and deny the motion.

### 1.     Defendants misapply the "fair cross section" law

MILLS and WILSON's first argument opposing death qualification invokes the Sixth Amendment's and JSSA's "right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community."  ECF No. 772, pg. 5.  The government notes that defendants have made separate claims for discovery of jury selection information to make a JSSA claim as well as a motion to procure a jury selected exclusively from Wayne County, Michigan.  See ECF Nos. 768 and 771.   In making its "fair cross section claim" here, the government suggests, defendants are conflating legal concepts and confusing the legal concepts that govern the summoning of jurors with the mechanics of picking a fair and impartial jury from that pool for a federal capital case.  Under the Sixth Amendment and the JSSA, a criminal defendant has the right "to a petit jury selected from a fair cross section of the community." *Duren v. Missouri*, 439 U.S. 357, 359, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979); *see also Taylor v. Louisiana*, 419 U.S. 522, 530, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975).  To make a "fair cross section claim" a defendant must show (1) that a "distinctive group" is being excluded from the jury pool; (2) that the representation of this group in venires from which juries are selected is

"not fair and reasonable" in comparison to the group's representation in the community at large; and (3) that this disparity is attributable to systematic exclusion of the group in the jury selection process.  *United States v. Brown*, 128 F. Supp. 2d 1034, 1039 (E.D. MI 2001) *citing Duren*, 439 U.S. at 364.  In short, a "fair cross section" claim involves the demographics of jury pools, not individual death penalty beliefs of summoned jurors.  The motion should be denied.

**2.      The vicinage requirement does not require death impaired jurors**

The government agrees with defendants' statement that in their motion that "a person 'must be both 'death qualified' and 'life qualified' to serve on the jury." ECF No. 772, pg. 7-8 quoting *United States v. Wilson*, 493 F. Supp. 2d 406, 408 (E.D.N.Y. 2006).  The government does not agree that "the process of death qualification skews juries toward guilty verdicts and death sentences."

The government notes that defendants cite extensively to *United States v. Fell*, 224 F. Supp. 3d 327 (D. Vt. 2016), but suggests that they do so selectively. Despite its criticism of the process, the court in *Fell* held that "Institutional authority to change this body of law is reserved to the Supreme Court. For this reason, the trial court is required to deny the defense motions related to the constitutionality of the death penalty" which included challenges to the death qualification of prospective jurors.  *See United States v. Fell*, 224 F. Supp. 3d 327, 359 (D. Vt. 2016).

Indeed, the Sixth Circuit specifically upheld the death qualification of prospective capital jurors in *Gabrion*. The Court specifically held that "A capital defendant's right to an impartial jury is 'balance[d]' against the government's 'strong interest in having jurors who are able to apply capital punishment within the framework [the] law prescribes.'" *Gabrion*, 719 F. 3d at 526 *quoting Uttecht v. Brown*, 551 U.S. 1, 9 (2007). Accordingly, defendants' claims are foreclosed by binding Sixth Circuit and Supreme Court precedent.[1]

### 3. Death qualification does not result in under representation of cognizable groups

Defendants next argue that death qualification results in the under representation of cognizable groups. The government does not agree with the defendants' characterizations or stereotypes, but point out that defendants' conceded that their argument is foreclosed by Supreme Court precedent. In their motion, defendants' acknowledge that "In *Lockhart v. McCree*, 476 U.S. 162, 165

---

[1] Defendants also place great emphasis on the Capital Jury Projects findings. The government notes that other courts have rejected those social science studies. See *United States v. Cheever*, 423 F. Supp. 2d 1181, 1217 (D. Kan. 2006). The court noted "Defendant's arguments that a death-qualified jury is biased toward conviction have already been rejected by the Supreme Court. *See generally Lockhart v. McCree*, 476 U.S. 162, 106 S. Ct. 1758, 90 L. Ed. 2d 137 (1986). To the extent defendant claims that his new social science studies are a response to *McCree*, and that the court ought to consider these studies in ruling on his claim that death-qualified juries are unconstitutionally biased, as well as his other claims about jurors' inability or willful refusal to follow the law, the court finds that the information presented in his brief is inadequate to merit the relief requested." *Id.*

(1986), the Court concluded that death qualification did not violate the fair cross-

section requirement for a jury because the process of excluding a group defined

exclusively by their death penalty attitudes did not involve the systematic

exclusion of a distinctive group in the community." ECF No. 772, pg. 13.  They

further acknowledge that *McCree* forecloses their argument by agreeing "In the

Court's opinion, 'groups defined solely [by] shared attitudes that would prevent'

them from performing their duties as jurors are not 'distinctive groups. *Id*. at 174.

Accordingly, as defendants acknowledge, their motion is foreclosed by *Lockhart v.*

*McCree*, 476 U.S. 162 (1986).  Their motion should be denied.

### 4.    The fact that Michigan is not a death penalty state does not nullify constitutionally required death qualification.

The claim that Michigan's status as a non-death penalty state nullifies

constitutionally required death qualification is foreclosed by the Sixth Circuit's

decision in *United States v. Gabrion* and the Supreme Court's decision in *Uttecht*

*v. Brown*, 551 U.S. 1 (2007).  Moreover, the Second Circuit considered this precise

issue in *United States v. Fell*, 571 F.3d 264 (2d Cir. 2009).  There, the Court held:

> Where I cannot agree with the dissent is in its suggestion that *en banc*
> review is needed to consider the possibility that something more than these
> traditional rules is necessary to address "federalism" concerns not raised by
> *Fell* either in the district court or on direct appeal: specifically, (1) whether a
> district court selecting a federal capital jury in a state - such as Vermont -
> that does not itself provide for the death penalty, must somehow take that
> fact into account in deciding whether to excuse jurors who express
> opposition to the death penalty . . .  I respectfully submit that these

"federalism" concerns are more imaginary than real and do not warrant our *en banc* consideration.

*Id*., at 265-66. Accordingly, defendants' Michigan specific objection to constitutionally required voir dire should be rejected.

## CONCLUSION

The government requests that the Court deny the defendants' Motion to Prohibit Death Qualification Because of the Unconstitutionality of Selecting a Fair, Impartial, and Representative "Death Qualified" Jury, particularly in a State Without the Death Penalty.

Respectfully submitted,
MATTHEW SCHNEIDER
United States Attorney

By      *s/James Peterson*
James Peterson
Bar ID: VA 35373
Trial Attorney
Capital Case Section
Criminal Division
United States Department of Justice
1331 F Street, N.W.
6th Floor
Washington, DC 20530
James.D.Peterson@usdoj.gov
Phone: (202) 353-0796
Fax (202) 353-9779

LOUIS CRISOSTOMO
ROBERT MORAN
Assistant United States Attorneys

17

211 W. Fort Street, Suite 2001
Detroit, MI 48226

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of March, 2019, a true and correct copy of the foregoing document was filed with the Court using the Court's CM/ECF systems and was served upon each attorney of record via ECF notification.

*/s/ James D. Peterson*
James D. Peterson
Trial Attorney