UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                            Case No. 16-cr-20460

v.

                            HON. MARK A. GOLDSMITH

EDWIN MILLS, et al.,

        Defendants.

_____/

## OPINION & ORDER
## DENYING DEFENDANT CARLO WILSON'S MOTIONS TO DISMISS
### (Dkts. 626, 627, 629, 630, 632, 633, 634, 635, 636)

This criminal case involves multiple defendants, all of whom have been charged with violating the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. Defendant Carlo Wilson has filed nine motions to dismiss (Dkts. 626, 627, 629, 630, 632, 633, 634, 635, 636).[1] The Government has filed responses in opposition to the motions, some of which were consolidated (Dkts. 686, 689, 690, 694, 697, 698), to which Wilson replied (Dkts. 727, 728, 730, 731, 732, 733, 734).[2] For the reasons stated below, the Court denies the motions.

## I. BACKGROUND

A federal grand jury returned a second superseding indictment on February 28, 2018, charging the eleven defendants in this case with various crimes, including violations of RICO. See generally 2d Superseding Indictment (Dkt. 292). That indictment claims that Defendants were

---

[1] Defendant Edwin Mills filed a notice of joinder concurring in the relief sought in these motions. See 12/14/2018 Notice of Joinder (Dkt. 669).

[2] Because oral argument will not aid the Court's decisional process, Wilson's motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2).

members and associates of a criminal enterprise—the "6 Mile Chedda Grove" street gang in Detroit—one of whose purposes was to "preserv[e] and protect[] the power, territory, reputation, and profits of the enterprise through murder, robberies, intimidation, violence, and threats of violence." Id. at 2, 6. The enterprise purportedly operated on the east side of Detroit within an area bordered roughly by East McNichols Road to the north, Kelly Road to the east, Houston-Whittier Street to the south, and Chalmers Street to the west. Id. at 2. The "Chedda Grove" part of the enterprise's name is partially derived from one of the main streets in this territory—Cedargrove Street. Id.

The indictment further alleges that the enterprise's profits derived primarily from the sale and distribution of controlled substances, including crack cocaine, heroin, and morphine. Id. at 5. The sale and distribution alleged were not limited to Michigan; gang members and associates purportedly sold and distributed controlled substances in Ohio, Kentucky, Tennessee, Alabama, and West Virginia. Id.

Eight of the eleven defendants have since pleaded guilty.[3] The three remaining defendants have been separated into two groups with separate trial dates. See 8/7/2018 Order (Dkt. 425). Group One is currently composed of one defendant, Robert Baytops, who is not subject to the death penalty upon conviction. His trial will be scheduled at a future date. See 3/26/2019 Order (Dkt. 846) (granting Defendant Donell Thompson's motion for severance). Group Two, composed of two defendants who are death-penalty eligible, has a trial date of April 21, 2020. See 8/31/2018 Order (Dkt. 475).

---

[3] These eight defendants include Mario Jackson, Michael Richardson, Corey Mills, Devontae Russell, Phillip Peaks, Patrick Johnson, Lomnil Jackson, and Donell Thompson.

Defendant Carlo Wilson belongs to Group Two and has been charged with one count of racketeering conspiracy in violation of 18 U.S.C. § 1962(d) (Count One); two counts of murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1) (Count Eight involves victim A.T.; Count Ten involves victim S.H.); two counts of using and carrying a firearm during and in relation to a crime of violence causing death in violation of 18 U.S.C. §§ 924(c) and 924(j) (Count Nine involves victim A.T.; Count Eleven involves victim S.H.); two counts of assault with a dangerous weapon in aid of racketeering in violation of 18 U.S.C. § 1959(a)(3) (Count Twelve involves victim M.A.; Count Thirteen involves victim T.M.); and one count of using, carrying, and discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (Count Fourteen, based on Counts Twelve and Thirteen). See generally 2d Superseding Indictment. On March 1, 2018, the Government filed its notice of intent to seek a sentence of death against Wilson (Dkt. 293).

## II. DISCUSSION

Wilson has filed nine motions to dismiss, which the Court will address in what it believes to be the most logical order.

### A. Motion to Dismiss Counts Eight Through Fourteen Based on Facial and As-Applied Constitutional Challenges to VICAR (Dkt. 365)

As part of the Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, 98 Stat. 1976, Congress enacted the Violent Crimes in Aid of Racketeering Activity ("VICAR") statute, 18 U.S.C. § 1959,[4] which, among other things, prohibits the commission of certain violent crimes "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise

---

[4] VICAR was initially codified at 18 U.S.C. § 1952B, but it was renumbered in 1988 as 18 U.S.C. § 1959, without any substantive change. See Stantini v. United States, 268 F. Supp. 2d 168, 180 (E.D.N.Y. 2003).

engaged in racketeering activity." 18 U.S.C. § 1959(a). An "enterprise" is defined under VICAR as an association "engaged in, or activities of which affect, interstate or foreign commerce," 18 U.S.C. § 1959(b)(2), while "racketeering activity" is defined the same as it is in RICO, compare 18 U.S.C. § 1959(b)(1) with 18 U.S.C. § 1961(1); see also United States v. Mapp, 170 F.3d 328, 335 (2d Cir. 1999). "Congress enacted VICAR to complement RICO, and it intended VICAR, like RICO, 'to be liberally construed to effectuate its remedial purposes.'" United States v. Banks, 514 F.3d 959, 967 (9th Cir. 2008) (quoting United States v. Concepcion, 983 F.2d 369, 380-381 (2d Cir. 1992)).

Wilson first argues that Counts Eight through Fourteen of the second superseding indictment must be dismissed because VICAR is facially unconstitutional. See generally Def. Wilson Mot. at 4-9 (Dkt. 635). Relying principally on United States v. Morrison, 529 U.S. 598 (2000), and United States v. Lopez, 514 U.S. 549 (1995), Wilson contends that Congress exceeded its authority under the Commerce Clause because VICAR criminalizes intrastate activity, including murder, even when the activity itself is noneconomic and has no impact or bearing on interstate commerce. Id. at 8. Rather, "[i]t is only the group whom the murder is meant to impress that must have some effect on interstate commerce, and this effect may be wholly unrelated to the murder or any other racketeering activity." Id. Although VICAR's definition of enterprise requires a nexus between a defendant's crime and interstate commerce, Wilson claims that this connection is "too attenuated" and "fails to limit VICAR's reach to only those violent acts that affect interstate commerce." Id. The Court disagrees.

Congress has the constitutional authority to "regulate Commerce . . . among the several States," U.S. Const., art. I, § 8, cl. 3, which includes regulating or prohibiting "activities that substantially affect interstate commerce," even if the activity is purely local. Lopez, 514 U.S. at

558-559. When assessing the scope of Congress's authority under the Commerce Clause, courts must determine whether there is a "rational basis" to conclude that the prohibited activities, "taken in the aggregate, substantially affect interstate commerce." Gonzales v. Raich, 545 U.S. 1, 22 (2005); see also Taylor v. United States, 136 S. Ct. 2074 (2016) (reaffirming applicability of the Raich substantial-effects test). Insofar as it concerns VICAR in particular, a court must decide "whether Congress could rationally have concluded that intrastate acts of violence, such as murder, committed for the purpose of maintaining or increasing one's status in an interstate racketeering enterprise, would substantially affect the interstate activities of that enterprise." United States v. Umana, 750 F.3d 320, 336 (4th Cir. 2014). For Wilson to succeed on his facial challenge, he must show that "no set of circumstances exists under which [VICAR] would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully.").

Like the Fourth Circuit in Umana, this Court finds that "Congress could rationally have concluded that proscribing reputation-enhancing violence committed by members of a criminal enterprise would disrupt the interstate commerce that the enterprise itself engages in." Umana, 750 F.3d at 337; see also United States v. Crenshaw, 359 F.3d 977, 986 (8th Cir. 2004) ("The regulation of violent acts committed as an aspect of membership in RICO enterprises therefore represents one method for Congress to exercise its power under the Commerce Clause to regulate the enterprises themselves."). It is entirely reasonable to believe that members of a street gang, like 6 Mile Chedda Grove, would commit certain violent crimes, like murder and assault with a dangerous weapon, to maintain or enhance their status and reputation in the gang. Although VICAR does not require that these violent crimes themselves have any connection to interstate commerce, the violent acts must have been committed for the purpose of establishing, maintaining,

or increasing a position within the enterprise. These violent acts could, in turn, enhance the power and reach of the racketeering enterprise itself. Umana, 750 F.3d at 337. Indeed, this is precisely what the Government has alleged in the second superseding indictment. See 2d Superseding Indictment at 28-33 (Mills and Wilson committed murder in aid of racketeering and assault with a dangerous weapon in aid of racketeering for the purpose of maintaining and increasing position in 6 Mile Chedda Grove); id. at 3 (members gain position, status, and respect by engaging in criminal activities including murder); id. at 5 (6 Mile Chedda Grove earns money predominately through narcotics trafficking in Michigan, Ohio, Kentucky, Tennessee, Alabama, and West Virginia); id. at 6 (6 Mile Chedda Grove preserves and protects its power, territory, reputation, and profits through violence); id. at 7 (members promote, support, and enhance the enterprise through murder, robberies, and narcotics distribution); id. at 8 (members protect and expand 6 Mile Chedda Grove's criminal activities by committing, conspiring, attempting, and threatening to commit acts of violence). Wilson does not attempt to demonstrate that there are no set of circumstances under which VICAR would be valid.

Moreover, numerous courts have held that the jurisdictional element in VICAR that limits its reach to activities connected with enterprises "engaged in" or whose activities "affect" interstate commerce further justifies the constitutionality of VICAR under the Commerce Clause. See, e.g., Umana, 750 F.3d at 337; United States v. Marino, 277 F.3d 11, 35 (1st Cir. 2002) (unlike Lopez and Morrison, VICAR has a jurisdictional element and, therefore, only requires the Government to establish "a connection between the § 1959 act of violence and a RICO enterprise which has a de minimus interstate commerce connection"); United States v. Riddle, 249 F.3d 529, 537 (6th Cir. 2001) (distinguishing Lopez because VICAR contains a jurisdictional element in its definition of enterprise, and holding that the connection between the act of violence and a RICO enterprise

satisfies VICAR if the enterprise has a "de minimus interstate commerce connection"); United States v. Torres, 129 F.3d 710, 717 (2d Cir. 1997) (rejecting facial challenge and holding that VICAR "satisfies the substantial effect requirement" because it "incorporates a jurisdictional element requiring a nexus between the offense in question and interstate commerce"); see also Crenshaw, 359 F.3d at 985-986 (although the presence of a jurisdictional element does not per se demonstrate that "a statute meets the substantial effects test," the jurisdictional element in VICAR "further illustrates the connection between interstate commerce and the activity regulated by the statute"); accord United States v. Nascimento, 491 F.3d 25, 43 (1st Cir. 2007) ("The RICO statute by its terms is limited to racketeering enterprises that 'affect . . . commerce,' and the VICAR statute is similarly circumscribed.  This jurisdictional element ties the statutes directly to commerce in a more explicit way than the statutes at issue" in Lopez, Morrison, or Raich.).  Accordingly, the Court concludes that Congress did not exceed its authority under the Commerce Clause in enacting VICAR and rejects Wilson's facial challenge.[5]

Wilson also argues that Counts Eight through Fourteen must be dismissed because VICAR is unconstitutional when applied to the specific circumstances of this case.  See generally Def. Wilson Mot. at 9-11.  Relying solely on United States v. Garcia, 68 F. Supp. 2d 802 (E.D. Mich. 1999), Wilson contends that applying VICAR would be unconstitutional because, even if the 6 Mile Chedda Grove street gang's activities have a de minimis effect on interstate commerce, the murder and assault charges against him "are purely local street crimes."  Def. Wilson Mot. to

---

[5] Counts Nine, Eleven, and Fourteen are predicated on his § 1959 offenses.  To the extent Wilson intimates that Congress exceeded its authority under the Commerce Clause when it enacted 18 U.S.C. § 924(c), the Court concludes that any such argument similarly lacks merit.  United States v. Walker, 142 F.3d 103, 111 (2d Cir. 1998) (holding that "§ 924(c)(1) regulates an economic activity that substantially affects interstate commerce and, as such, is a valid exercise of Congressional power under the Commerce Clause.").

Dismiss at 10; see also id. at 11 ("The allegations, even if sustained, establish nothing more than local rival gangs killing each other over turf within a few square miles in Detroit. These are local crimes; the federal government has no authority to prosecute these local crimes."). Again, this Court disagrees.

To begin, Wilson's reliance on Garcia is misplaced. In that pre-Riddle case, the district court concluded that the VICAR count itself—murder in aid of racketeering—had no connection to interstate commerce, even though the court concluded that the Government had met its burden of establishing the RICO enterprise's interstate-commerce requirement. Garcia, 68 F. Supp. at 811-812. Although a de minimis impact on interstate commerce is sufficient to support a racketeering charge under RICO, the district court held that "a stronger and more substantial connection or impact on interstate commerce is required" for a murder-in-aid-of-racketeering charge under VICAR. Id. at 811.

The Sixth Circuit has since clarified that, if the Government establishes a connection between the crime of violence under VICAR and a RICO enterprise, and the enterprise "has a de minimis interstate commerce connection," then VICAR's interstate-commerce requirement is satisfied. Riddle, 249 F.3d at 538 (adopting test of the Second and Fourth Circuits). Thus, the focus is on whether the enterprise, not the act of violence, had a sufficient connection to interstate commerce. The Sixth Circuit concluded in Riddle that the Government had carried its burden under VICAR because the defendant did not contest the connection between the murder and the enterprise, and because the enterprise sufficiently affected interstate commerce. Id.; cf. Waucaush v. United States, 380 F.3d 251, 255-256 (6th Cir. 2004) (unlike in Riddle, where a minimal connection to interstate commerce was sufficient because the enterprise engaged in economic

activity, a minimal effect on commerce will not suffice if the enterprise itself did not engage in any sort of economic activity).

Other courts, including this one, have routinely found Garcia unpersuasive for similar reasons. See, e.g., United States v. Norwood, No. 12-CR-20287, 2015 WL 2343970, at *9 (E.D. Mich. May 14, 2015) (finding Garcia unpersuasive based on Riddle and rejecting the defendant's argument that his VICAR conviction was unconstitutional as exceeding Congress's power under the Commerce Clause); Castro v. United States, 993 F. Supp. 2d 332, 346 (E.D.N.Y. 2014) ("'To the Court's knowledge, the holding of Garcia—which is intensely fact-specific—has not been adopted or affirmed by any other court [] since it was decided. The Court does not find Garcia to be persuasive.'" (quoting United States v. Boyle, No. S1 08 CR 534 (CM), 2009 WL 2032105, at *9 (S.D.N.Y. July 9, 2009))); United States v. Valenzuela, No. SACR 05-107, 2006 WL 8435121, at *2 (C.D. Cal. Dec. 20. 2006) ("[T]he Ninth Circuit has considered and rejected the district court's position in Garcia."); Tse v. United States, 112 F. Supp. 2d 189, 195 (D. Mass. 2000) ("Since the Garcia decision, however, no other court has followed it and the First Circuit Court of Appeals has specifically declined to do so by invoking the reasoning of [Torres], and rejecting a claim that 18 U.S.C. § 1959 is facially invalid."), aff'd in part and vacated in part on other grounds, 290 F.3d 462 (1st Cir. 2002). It is fair to say that this portion of Garcia is a dead letter.

Furthermore, Wilson's as-applied challenge is not so much constitutional as it is more a sufficiency challenge. See Riddle 249 F.3d at 536 (holding that "a claim of an insufficient connection to interstate commerce is a challenge to one of the elements of the government's case"); see also Crenshaw, 359 F.3d at 984 (recognizing that the defendants' argument that the "particular application of [VICAR] is unconstitutional because there was not proof of a sufficient connection between the murder and interstate commerce" went to "one of the elements in the government's

case" (citing <u>Riddle</u>, 249 F.3d at 536)).  Here, the Government has alleged the interstate economic activities of 6 Mile Chedda Grove in the second superseding indictment.  <u>See</u> 2d Superseding Indictment at 2-8.  Whether this evidence is sufficient to establish the necessary connection between the enterprise and interstate commerce is beyond the scope of this motion.  <u>See</u> <u>United States v. Landham</u>, 251 F.3d 1072, 1080 (6th Cir. 2001) ("[C]ourts evaluating motions to dismiss do not evaluate the evidence upon which the indictment is based."); <u>see also</u> <u>United States v. Jackson</u>, No. 16-cr-20188, 2016 WL 4205998, at *2 (E.D. Mich. Aug. 10, 2016) (recognizing that numerous courts have held that a pretrial motion to dismiss may not be based on a sufficiency-of-the-evidence argument).  Accordingly, the Court rejects Wilson's as-applied challenge.

This motion is denied.

## B. Motions to Dismiss Counts One, Eight, and Ten for Failure to State an Offense (Dkts. 629, 633) and for Lack of Specificity (Dkt. 634)[6]

VICAR prohibits the commission of certain violent crimes "in violation of the laws of any State or the United States," including murder, "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity."  18 U.S.C. § 1959(a).  Notably, VICAR does not enumerate violations of specific statutes that constitute the underlying predicate crimes.  Nevertheless, under Michigan law, an individual commits first-degree murder in any of the following three ways: (i) "[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing"; (ii) "[m]urder committed in the perpetration of, or attempt to perpetrate," certain felonies, including arson, criminal sexual

---

[6] Wilson has since withdrawn his motion to dismiss Count One for failure to state essential elements of the offense (Dkt. 633), as well as the portion of the motion to dismiss for lack of specificity regarding Count One only (Dkt. 634).  <u>See</u> Def. Reply at 3 (Dkt. 730).  Therefore, the Court terminates Wilson's motion to dismiss Count One (Dkt. 633) from the case docket, and it will consider only those portions of his motion to dismiss for lack of specificity that pertain to Counts Eight and Ten.

conduct, kidnapping, or torture (i.e., felony murder); and (iii) "murder of a peace officer or a corrections officer . . . knowing that the peace officer or corrections officer is a peace officer or corrections officer engaged in the performance of his or her duty as a peace officer or corrections officer." Mich. Comp. Laws §§ 750.316(1)(a)-(c).

Wilson has been charged in the second superseding indictment with two counts of murder in aid of racketeering under VICAR by allegedly committing two murders in violation of Michigan Compiled Laws §§ 750.316(1) and 767.39[7] for the purpose of maintaining or increasing his position in 6 Mile Chedda Grove. See 2d Superseding Indictment at 28-29, 30 (Count Eight pertains to victim A.T., while Count Ten pertains to victim S.H.). These counts do not indicate which part of § 750.316(1) Wilson is alleged to have violated.

By not specifying which of the three distinct types of murder under § 750.316(1) applies to him, Wilson argues that the two counts of murder in aid of racketeering must be dismissed because they fail to provide him adequate notice of the specific predicate crime he is facing, thereby violating his due process rights. Def. Mot. at 4 (Dkt. 634). Although he recognizes that § 750.316(1)(c), which concerns the murder of a peace officer or a corrections officer, is likely not applicable here, Wilson claims that he lacks notice of whether he must defend against premeditated murder or felony murder. Id. at 4-5. Wilson further argues that these counts must be dismissed because they do not include a mental state element and, therefore, fail to track the state statutory language. Def. Mot. at 5 (Dkt. 629). For example, if Wilson allegedly murdered A.T. and S.H. in

_____

[7] Michigan Compiled Laws § 767.39 abolished the distinction between an accessary and a principal, providing that "[e]very person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense."

violation of § 750.316(1)(a), the indictment fails to allege an essential element, e.g., the mental state of willfulness, deliberation, and premeditation.  Id. at 5-6.

In response, the Government contends that all of the essential elements for a murder-in-aid-of-racketeering charge have been alleged in the second superseding indictment, but that it is not required to allege the elements of the underlying state-law offense.  See Gov't Resp. at 4-5 (Dkt. 698) (citing United States v. Orena, 32 F.3d 704, 714 (2d Cir. 1994)).  Consequently, the mental state element for VICAR is the "purpose element," not the mental state required to prove the underlying state-law offense, as Wilson claims.  Id. at 4.  Nevertheless, the Government recognizes it must still prove that the crime of violence violated all of the elements of the predicate state-law offense beyond a reasonable doubt at trial, and that the jury must be instructed on those elements as well.  Id. at 5 (citing United States v. Carrillo, 229 F.3d 177, 183 (2d Cir. 2000)).[8]  The Court agrees with the Government.

It is well known that an indictment is insufficient unless "it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  Hamling v. United States, 418 U.S. 87, 117 (1974); see also United States v. Schaffer, 586 F.3d 414, 422 (6th Cir. 2009) ("[T]he indictment must: (1) 'set out all of the elements of the charged offense and must give notice to the defendant of the charges he faces,' and (2) 'be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding,

---

[8] The Government's position is consistent with the recommendations of the Staff of the Organized Crime and Racketeering Section of the U.S. Department of Justice.  See Violent Crimes in Aid of Racketeering 18 U.S.C. § 1959:  A Manual for Federal Prosecutors at 25 (Dec. 2006) ("[W]hen a Section 1959 charge is based upon a violation of state or federal law that satisfies the generic definition of the predicate violent crimes listed in Section 1959, the government must prove, and the jury must be instructed on, all the requisite elements of that state or federal offense.").

if charged with the same crime based on the same facts.'" (quoting United States v. Douglas, 398 F.3d 407, 411 (6th Cir. 2005))).  Wilson is charged in Counts Eight and Ten of the second superseding indictment with murder in aid of racketeering in violation of VICAR.  Thus, the second superseding indictment must allege the essential elements of the VICAR offense.

To establish a VICAR offense, the Government must prove beyond a reasonable doubt that (i) the organization was a RICO enterprise; (ii) the enterprise was engaged in racketeering activity; (iii) the defendant committed the alleged crime of violence in violation of either federal or state law; and (iv) an animating purpose of the defendant's action was to gain entrance to, or maintain or increase his position in, the enterprise.  See United States v. Odum, 878 F.3d 508, 516 (6th Cir. 2017), vacated on other grounds, Frazier v. United States, 139 S. Ct. 319 (2018); see also United States v. Hackett, 762 F.3d 493, 500 (6th Cir. 2014) (VICAR's purpose element is satisfied if "an 'animating purpose' of the defendant's action was to maintain or increase his position in the racketeering enterprise"; it need not be the defendant's sole or primary purpose for acting).  When it comes to the offense of murder in aid of racketeering in particular, the Government must prove: "(i) the murder of a person; (ii) for the purpose of gaining entrance to or maintaining or increasing position; (iii) in an enterprise engaged in racketeering activity."  United States v. Wilson, 579 F. App'x 338, 342-343 (6th Cir. 2014).  Courts have held that the "purpose" or "motive" element of VICAR can be satisfied if "the jury could properly infer that the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership," as well as "to protect the enterprise's racketeering activities."  United States v. Norwood, No. 12-CR-20287, 2015 WL 2250493, at *8 (E.D. Mich. May 13, 2015) (citations omitted).

The Court finds that the allegations of murder in aid of racketeering in Counts Eight and Ten are adequate, as the second superseding indictment tracks the statutory language of VICAR and sufficiently sets forth the essential elements that offense.  See 2d Superseding Indictment at 28-29, 30.  Consequently, the second superseding indictment provides Wilson with fair notice of the VICAR offense he will be facing at trial.  The indictment is also sufficiently specific in regard to the particular dates and surrounding circumstances of the murders as to provide Wilson protection against double jeopardy in the event a murder-in-aid-of-racketeering charge in brought in the future based on the same facts.  This is all that is required of the Government for purposes of the indictment.  See, e.g., United States v. Toliver, 380 F. App'x 570, 572 (9th Cir. 2010) ("[T]he district court correctly denied [the defendant's] motion to dismiss the indictment" when the "indictment set forth all the essential elements of a VICAR 'status crime.'"); Carrillo, 229 F.3d at 183 ("[O]nly a generic definition of an underlying state crime is required in a RICO indictment, as distinguished from the elements of the penal codes of the various states where acts of racketeering occurred."); Orena, 32 F.3d at 714 (the Government is not required to allege in the indictment an overt act as required under the predicate state-law murder violations); accord United States v. Kuehne, 547 F.3d 667, 696 (6th Cir. 2008) (holding that the failure of the indictment to specify particular predicate drug trafficking offenses for the imposition of 18 U.S.C. § 924(c)(1) did not undermine the indictment's sufficiency because the indictment tracked the statutory language of § 924(c)(1) and was sufficiently specific to protect against double jeopardy).

Although Wilson demands that an indictment alleging a violation of VICAR must also allege the elements required to prove the underlying state-law predicate offense, this is not necessary.  See United States v. Fernandez, 388 F.3d 1199, 1219-1220 (9th Cir. 2009) (holding that an indictment charging a VICAR violation was sufficient when it alleged the four elements of

a VICAR violation, and rejecting the defendants' argument that the indictment was insufficient because it did not adequately allege motive or intent relative to underlying state-law offense); United States v. Weaver, No. 2:09-cr-00222, 2010 WL 1633319, at *3 (S.D.W. Va. April 20, 2010) ("Under VICAR, the Government must prove as an element that the defendant committed the underlying crime of violence. Proving this element would entail proving the elements of the predicate offense at trial, but the elements of the predicate crime are not themselves elements of VICAR. Thus, they need not be included in the indictment." (citation omitted)); see also United States v. Barbeito, No. 2:09-cr-00222, 2010 WL 2243878, at *7 (S.D.W. Va. June 3, 2010) ("[T]he elements of the state-law predicate are not elements of a RICO offense per se, so they need not be included in the indictment." (citing Orena, 32 F.3d at 714)); United States v. Garcia, No. 11-cr-68, 2012 WL 6623984, at *8 (D. Idaho Dec. 19, 2012) (denying motion to dismiss and rejecting the defendant's argument that the indictment must allege each element of the state-law violent crime, including "the requisite mens rea" for murder, where the indictment alleged all essential elements of a VICAR status crime); accord United States v. Palfrey, 499 F. Supp. 2d 34, 43 (D.D.C. 2007) ("The Indictment must allege the essential elements of the offense with which Defendant is charged, namely, violations of the Travel Act. The elements of the predicate state offense are not essential elements of the Travel Act violations." (citation omitted; emphasis in original)).[9] Wilson has not directed this Court to any case law reaching a contrary conclusion, and the Court could find none on its own initiative.

These motions are denied.

---

[9] Because the Travel Act, 18 U.S.C. § 1952, "is a statute analogous to RICO in that it is an anti-racketeering statute that predicates federal criminal liability upon commission of state law crimes such as extortion and bribery," Carrillo, 229 F.3d at 184 n.2, and because "Congress enacted VICAR to complement RICO," Banks, 514 F.3d at 967, this Court finds cases discussing what must be alleged in an indictment for a Travel Act claim instructive for purposes of VICAR.

### C. Motion to Dismiss Counts Twelve and Thirteen for Failure to State an Offense (Dkt. 630)

In addition to the two counts of murder in aid of racketeering, Wilson has also been charged with two counts of assault with a dangerous weapon in aid of racketeering under VICAR by allegedly committing two assaults with a dangerous weapon in violation of Michigan Compiled Laws § 750.82, which prohibits felonious assault. See 2d Superseding Indictment at 32-33 (Count Twelve pertains to victim M.A., while Count Thirteen pertains to victim T.M.).

Wilson argues that these two counts should be dismissed because the definition of felonious assault under Michigan Compiled Laws § 750.82 does not categorically match the generic definition of assault with a dangerous weapon under VICAR. See generally Def. Mot. (Dkt. 630). According to Wilson, the generic federal definition of assault with a dangerous weapon requires "an intent to cause some level of bodily injury." Id. at 8 (emphasis omitted). But because an individual can commit an assault under Michigan law by simply intending to place a victim in reasonable apprehension of an immediate battery, Wilson claims that an individual can commit felonious assault without actually having the intent to cause any bodily injury. Id. at 9. Thus, Wilson posits that an intent to inflict bodily injury is not an element of § 750.82, and, therefore, felonious assault "can never satisfy the general federal definition of 'assault with a dangerous weapon' under [VICAR]." Id. at 10.

In response, the Government argues that Wilson's motion should be denied because the generic federal definition of assault with a dangerous weapon under VICAR "encompasses MCL 750.82 and 'corresponds in substantial part' to MCL 750.82." Gov't Resp. at PageID.5095 (Dkt. 694). Wilson has flipped the analysis, says the Government, "because the federal definition of assault with a dangerous weapon, not the state definition, governs this case." Id. at PageID.5099; see also id. at PageID.5100 ("[T]he generic conduct, not the state crime, was the focus of the

analysis, so long as the state criminalized that conduct in some way." (citing <u>United States v. Le</u>, 316 F. Supp. 2d 355, 360-362 (E.D. Va. 2004))).  In other words, "if the federal definition of assault with a dangerous weapon also constituted prohibited conduct under [the state statute], then it is a valid count under [VICAR]." <u>Id.</u> at PageID.5101 (citing <u>United States v. Joseph</u>, 465 F. App'x 690, 696 (9th Cir. 2012)).  Because the generic definition of assault with a dangerous weapon under VICAR is narrower than the definition of felonious assault under Michigan Compiled Laws § 750.82, a violation under the generic definition would necessarily constitute a violation under § 750.82.  <u>Id.</u>  In further support of its position, the Government relies on the Sixth Circuit's decision in <u>United States v. Harris</u>, 853 F.3d 318 (6th Cir. 2017), which addressed whether felonious assault under Michigan law qualifies as a crime of violence for purposes of the Armed Career Criminal Act.  According to the Government, the Sixth Circuit not only held that felonious assault constitutes a crime of violence, it also determined that Michigan Compiled Laws § 750.82 incorporates the common-law definition of assault with a dangerous weapon.  Gov't Resp. at PageID.5096 (citing <u>Harris</u>, 853 F.3d at 322).

The issue presented in this motion is whether a state's statute that criminalizes conduct that satisfies the generic federal definition of that offense can be used as a predicate crime for purposes of a VICAR offense, even if the state's law also criminalizes conduct beyond that prohibited under the generic definition.  Based on the circumstances of this case, the answer is yes.

The Court begins, as it must, with the text of VICAR, ascribing the statute's words with their plain and ordinary meaning, while, at the same time, ensuring that any construction of VICAR would not render any part of it inoperative, superfluous, void, or insignificant.  <u>Corley v. United States</u>, 556 U.S. 303, 314 (2009); <u>Robinson v. Shell Oil Co.</u>, 519 U.S. 337, 340-341 (1997); <u>United States v. Albertini</u>, 472 U.S. 675, 680 (1985); <u>accord Riley v. Kurtz</u>, 361 F.3d 906, 913 (6th Cir.

2004) ("Every word in the statute is presumed to have meaning, and we must give effect to all the words to avoid an interpretation which would render words superfluous or redundant."). If the statutory language is plain given the words "in their context and with a view to their place in the overall statutory scheme," the Court "must enforce [VICAR] according to its terms." King v. Burwell, 135 S. Ct. 2480, 2489 (2015); accord United States v. Bedford, 914 F.3d 422, 427 (6th Cir. 2019) ("It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" (quoting Lamie v. United States Tr., 540 U.S. 526, 534 (2004))).

VICAR provides that "[w]hoever . . . murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States . . . shall be punished." 18 U.S.C. § 1959(a). Based on the series-qualifier canon of statutory construction, the clause "in violation of the laws of any State or the United States" would apply to each of the crimes of violence expressly listed in the statute. See Paroline v. United States, 572 U.S. 434, 447 (2014) ("When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." (quoting Porto Rico Ry., Light & Power Co. v. Mor, 253 U.S. 345, 348 (1920))); see also Lockhart v. United States, 136 S. Ct. 958, 970 (2016) (Kagan, J., dissenting) ("When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a modifier at the end of the list normally applies to the entire series." (citation and quotation marks omitted)); Barbeito, 2010 WL 2243878, at *21 ("Courts have uniformly understood the phrase 'in violation of the laws of any State' in VICAR as applying to each listed category of predicate crimes of violence.").

Under a plain and straightforward reading of VICAR, the defendant's commission of a particular crime of violence must violate the laws of a state <u>if</u> the crime of violence is identified as a state-law predicate offense. <u>Barbeito</u>, 2010 WL 2243878, at *20. Put differently, when a state-law offense serves as the predicate for a VICAR offense, the Government must prove that (i) the defendant committed the crime of violence, and (ii) the crime of violence violates that state's law. Conversely, if the alleged crime of violence does not violate state law, it cannot form the basis for a VICAR offense. <u>Marino</u>, 277 F.3d at 30 ("[F]or a crime to be chargeable under state law, it must at least exist under state law."); <u>Barbeito</u>, 2010 WL 2243878, at *20. Were the Government to succeed by only showing the defendant's commission of a crime of violence, the phrase "in violation of the laws of any State or the United States" would be rendered meaningless. Of course, this does not mean that the elements of the state-law predicate offense also constitute the elements of a VICAR offense. <u>See</u> <u>supra</u> Part II.B. Rather, the elements of the state-law predicate offense are relevant only to ensure that the Government has proven the defendant charged with a VICAR offense actually committed a crime of violence "in violation of the laws of any State." <u>See</u> <u>United States v. Mahdi</u>, 598 F.3d 883, 890 (D.C. Cir. 2010) ("The reference to violating state law in the VICAR count is only meant to indicate unlawful conduct that constitutes a predicate offense for a VICAR charge."); <u>Barbeito</u>, 2010 WL 2243878, at *23 (same).

This conclusion is not only logical, it is consistent with the statutory text. It is also consistent with the Supreme Court's analysis in <u>United States v. Nardello</u>, 393 U.S. 286, 295 (1969), in which it held that a defendant could be held liable under the Travel Act for extortion "in violation of the laws of the State" if the state's statute prohibited conduct that fell within the generic definition of extortion, even if that statute did not label the crime as extortion. <u>See also</u> <u>Scheidler v. Nat'l Org. for Women, Inc.</u>, 537 U.S. 393, 409 (2003) (holding that liability for extortion under

RICO, which prohibits an "act or threat involving . . . extortion . . . which is chargeable under State law," did not depend on conduct that violated a state statute expressly prohibiting "extortion," but, instead, need only violate a statute "capable of being generically classified as extortionate.").

Turning to the specifics of this case, Wilson has been charged with two counts of assault with a dangerous weapon in aid of racketeering under VICAR by allegedly committing two felonious assaults in violation of Michigan Compiled Laws § 750.82.[10] Thus, this Court must determine whether an assault with a dangerous weapon, as that term is generically employed in VICAR, would violate § 750.82, such that § 750.82 can serve as a proper predicate crime for Wilson's VICAR offenses.

The elements of this particular crime of violence in VICAR are (i) an assault; (ii) with a dangerous weapon; (iii) with the intent to cause bodily injury. See United States v. Ibarra, No. 17cr0411, 2018 WL 620185, at *1 (S.D. Cal. Jan. 29, 2018); Cousins v. United States, 198 F. Supp. 3d 621, 626 (E.D. Va. 2016); Barbeito, 2010 WL 2243878, at *24-25; Le, 316 F. Supp. 2d at 363; accord United States v. LeCompte, 108 F.3d 948, 952 (8th Cir. 1997) (interpreting 18 U.S.C. § 113).

Under Michigan Compiled Laws § 750.82, a defendant commits felonious assault if he or she "assaults another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder." Mich. Comp. Laws § 750.82(1). Because the Michigan legislature did not define the legal term of art "assault" in § 750.82, this Court must construe that word in accordance with

---

[10] There are no allegations in the second superseding indictment that Wilson's VICAR offenses in Counts Twelve and Thirteen are predicated on violations of federal law, like 18 U.S.C. § 113(a)(3), which prohibits assaults with a dangerous weapon within the special maritime and territorial jurisdiction of the United States.

its "settled, definite, and well known meaning at common law." Iliades v. Dieffenbacher N.A. Inc., 915 N.W.2d 338, 336-337 (Mich. 2018) (quoting People v. March, 886 N.W.2d 396 (Mich. 2016)).

Michigan common law, in turn, defines an "assault" as either an "attempted battery" or "an act that would cause a reasonable person to fear or apprehend an immediate battery," for which the defendant either "intended to injure or cause fear of immediate battery." Harris, 853 F.3d at 320-321; People v. Stark, 701 N.W.2d 136, 140 (Mich. 2005) ("An assault may be established by showing either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery. The first type of assault is characterized as 'attempted-battery assault'; the second is characterized as 'apprehension-type assault.'" (citation omitted)); see also People v. Jackson, 790 N.W.2d 340, 343 n.2 (Mich. 2010) ("The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." (citation and emphasis omitted)). And a "battery" is defined as "a forceful or violent touching," which includes "any use of physical force against another person so as to harm or embarrass" that person. Harris, 853 F.3d at 321.

The Court agrees with Wilson that an assault, as it is generically understood for VICAR, includes battery-type and attempted-battery-type assaults, but not apprehension-type assaults. See Def. Mot. at 5-8. However, because Michigan Compiled Laws § 750.82 expressly applies to attempted-battery assaults carried out by a defendant with a dangerous weapon and an intent to cause bodily injury it is a proper predicate for a VICAR offense. Although Michigan common law also prohibits apprehension-type assaults carried out with a dangerous weapon and the intent to place the victim in reasonable apprehension of an immediate battery, this does not alter the fact

that § 750.82 prohibits the exact conduct that would constitute an assault with a dangerous weapon under VICAR. Cf. Ibarra, 2018 WL 620185, at *2 (holding that the generic definition of assault with a dangerous weapon under VICAR could never violate California Penal Code § 245(a)(2) because an intent to injure is never required under state statute). Indeed, where state law can be violated in multiple ways, preventing the Government from bringing VICAR charges premised on a way that tracks the generic definition of the crime of violence would unduly frustrate Congress's intent when VICAR was first enacted. See Le, 316 F. Supp. 2d at 360 ("[I]t seems clear that Congress, not wishing to unnecessarily create new crimes, sought to craft § 1959 so that it reached the generic conduct described therein, whatever label a particular state might use to criminal that conduct."). The Court's conclusion is in keeping with its duty to liberally construe VICAR "to effectuate its remedial purposes." Banks, 514 F.3d at 967.

This motion is denied.

### D. Motion to Dismiss Count Fourteen for Failure to State an Offense (Dkt. 627)

In Count Fourteen of the second superseding indictment, Wilson is charged with using, carrying, or possessing a firearm that was discharged "during and in relation to [a] crime of violence"—here, assault with a dangerous weapon in aid of racketeering—in violation of 18 U.S.C. § 924(c)(1)(A)(iii). See 2d Superseding Indictment at 34.[11] Section 924(c)(3) defines a "crime of violence" as a felony that either "has as an element the use, attempted use, or threatened

---

[11] Section 924(c)(1)(A)(iii) more fully provides: "Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime," "be sentenced to a term of imprisonment of not less than 10 years" "if the firearm is discharged." 18 U.S.C. § 924(c)(1)(A)(iii).

use of physical force against the person or property of another" or "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. §§ 924(c)(3)(A)-(B).

Wilson argues that Count Fourteen must be dismissed under Federal Rule of Criminal Procedure 12(b)(3)(v) because the predicate offense for his assault with a dangerous weapon in aid of racketeering charges under VICAR—felonious assault under Michigan law—is not a crime of violence for purposes of § 924(c)(3)(A). See generally Def. Mot. (Dkt. 627). Notwithstanding Sixth Circuit jurisprudence, which has repeatedly held that felonious assault is a crime of violence for purposes of other similarly worded federal statutes and the federal sentencing guidelines, Wilson reiterates that one can commit a felonious assault in Michigan without the intent to cause any bodily injury, so long as the person intended to place a victim in reasonable apprehension of an immediate battery. See id. at 5, 7. In other words, Wilson posits that it is possible "to commit felonious assault without the use or threatened use of 'force capable of causing physical pain or injury to another person.'" Id. at 7 (quoting Johnson, 559 U.S. at 140). Because felonious assault does not necessarily entail the use, attempted use, or threatened use of physical force, says Wilson, it cannot qualify as a crime of violence. Id.[12] Wilson's argument misses the mark for two reasons.

First, this Court must decide whether assault with a dangerous weapon in aid of racketeering under VICAR, as opposed to felonious assault under Michigan law, is a crime of violence for purposes of § 924(c)(3). United States v. Jones, No. 7:16-cr-30026, 2017 WL 3725632, at *5 (W.D. Va. Aug. 29, 2017) (when the § 924(c) predicates are VICAR offenses, and

---

[12] Wilson also argues that felonious assault is not a crime of violence under the so-called residual clause of § 924(c)(3)(B) because that portion of the statute is unconstitutionally vague. See Def. Mot. at 7-10. Because the Court finds that assault with a dangerous weapon in aid of racketeering and felonious assault are both crimes of violence under elements clause of § 924(c)(3)(A), it is not necessary for the Court to address Wilson's vagueness argument.

the VICAR predicates are crimes that would violate state law, the court determines whether the VICAR counts qualify as crimes of violence under § 924(c)).  This approach is consistent with the language of § 924(c), which requires the predicate offense to be a <u>federal</u> crime.  <u>See</u> 18 U.S.C. § 924(c)(1)(A) ("any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a <u>court of the United States</u>" (emphasis added)); <u>see also</u> <u>Jones</u>, 2017 WL 3725632, at *5 ("[U]nder § 924(c)'s own terms, the § 924(c) predicate is defined by federal law, not by the state statute underlying the § 924(c) predicate.").

To qualify as a crime of violence under the so-called elements clause of § 924(c)(3)(A), the offense must be a felony and have "as an element the use, attempted use, or threatened use of physical force against the person or property of another."  Physical force, in turn, is understood as "force capable of causing physical pain or injury to another person."  <u>Johnson v. United States</u>, 559 U.S. 133, 140 (2010).  Courts have consistently held that assault with a dangerous weapon in aid of racketeering qualifies as a crime of violence under § 924(c)(3)(A) because the offense necessarily requires the use, attempted use, or threatened use of physical force against another person.  <u>See, e.g.</u>, <u>Jones</u>, 2017 WL 3725632, at *6; <u>Cousins</u>, 198 F. Supp. 3d at 626.  This Court has found no authority to the contrary, and Wilson never squarely addressed whether this VICAR offense is a crime of violence.  For this reason alone, the motion is denied.

Second, even if this Court were required to examine the VICAR predicate offense of felonious assault under Michigan law, the conclusion would not change.  Although Wilson is correct that a defendant can commit felonious assault in Michigan with only the intent to cause fear of immediate battery, this apprehension-type assault still involves "attempted or threatened offensive touching <u>and</u> the use of a dangerous weapon."  <u>United States v. Woods</u>, 336 F. Supp. 3d

817, 824 (E.D. Mich. 2018) (holding that Michigan Compiled Laws § 750.82 is a crime of violence under § 924(c)(3)(A)) (emphasis in original); United States v. Walker, No. 14-cr-20388, 2017 WL 131554, at *4 (E.D. Mich. Jan. 13, 2017) (an "apprehension-type assault occurs when a person acts with the intent to place the victim in in reasonable apprehension of an immediate battery," and because a "battery apprehended by the victim necessarily would constitute 'violent force,' . . . it follows that an act specifically intended to cause an apprehension of that same violent force equates to a threat of violent force"). In other words, an act performed with a deadly weapon that would cause a reasonable person to fear or apprehend an immediate battery necessarily requires the attempted or threatened use of physical force. Walker, 2017 WL 131554, at *3-4 (citing United States v. Rafidi, 829 F.3d 437, 446 (6th Cir. 2016); United States v. Rede-Mendez, 680 F.3d 552, 558 (6th Cir. 2012)); accord United States v. Mitchell, 653 F. App'x 639, 645 (10th Cir. 2016) ("[W]e conclude that the additional element of a deadly or dangerous weapon makes an apprehension-causing assault a crime of violence, even if the simple assault would not be.").

Sixth Circuit jurisprudence is consistent with this Court's conclusion. See, e.g., Harris, 853 F.3d at 321 (holding that felonious assault is a crime of violence under the nearly identical elements clause of the federal sentencing guidelines because Michigan Compiled Laws § 750.82 requires attempted or threatened use of physical force and the use of a dangerous weapon); United States v. Mosley, 339 F. App'x 568, 575 (6th Cir. 2009) (holding that felonious assault is a crime of violence under the ACCA). Indeed, the Sixth Circuit has squarely rejected Wilson's argument that a Michigan law that criminalizes intentionally placing "the victim in fear of immediate personal injury" cannot constitute a crime of violence. See Chaney v. United States, 917 F.3d 895, 901 (6th Cir. 2019) (holding that attempted unarmed robbery under Michigan law qualifies as a

"violent felony" for purposes of the elements clause of the ACCA because the phrase "putting in fear" means "fear of bodily injury from physical force offered or impending").

Accordingly, Michigan Compiled Laws § 750.82 satisfies the elements clause of § 924(c)(3)(A) and also qualifies as a crime of violence.

This motion is denied.

### E. Motion to Dismiss Count Fourteen Based on the "Except" Clause of 18 U.S.C. § 924(c)(1) (Dkt. 632)

As noted above, Wilson is charged in Count Fourteen with violating 18 U.S.C. § 924(c)(1)(A)(iii) by using, carrying, or possessing a firearm that was discharged during and in relation to a crime of violence—here, assault with a dangerous weapon in aid of racketeering. See 2d Superseding Indictment at 34. Wilson is also charged in Counts Nine and Eleven with violating § 924(c) by using, carrying, or possessing a firearm that was discharged during and in relation to different crimes of violence—here, murders in aid of racketeering. See 2d Superseding Indictment at 29, 31.

In terms of punishment, § 924(c)(1)(A) mandates the imposition of a five-year mandatory minimum sentence on "any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm," "[e]xcept to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law." 18 U.S.C. § 924(c)(1)(A)(ii). For instance, if the defendant discharged the firearm, the mandatory minimum sentence increases to ten years. 18 U.S.C. § 924(c)(1)(A)(iii). If the defendant "causes the death of a person through the use of a firearm" while violating § 924(c), and that "killing is murder," he or she shall "be punished by death or by imprisonment for any term of years or for life." 18 U.S.C. § 924(j).

Focusing on the "except to the extent" clause of § 924(c)(1)(A), Wilson argues that Count Fourteen must be dismissed because "a greater minimum sentence for the same conduct is provided for in Counts Nine and Eleven." Def. Mot. at 4 (Dkt. 632). Relying principally on Abbott v. United States, 562 U.S. 8 (2010), Wilson claims that the Government cannot "stack sentence upon sentence for a single act of criminal conduct." Def. Mot. at 5. According to Wilson, Counts Nine, Eleven, and Fourteen all involve the December 1, 2015, shooting at the Hayes Troester Super Market in Detroit, Michigan, which was "a single instance of conduct offending § 924(c)." Id. (citing Abbott, 562 U.S. at 26; United States v. Johnson, 25 F.3d 1335, 1338 (6th Cir. 1994) (en banc)); see also Def. Reply at 3 (Dkt. 732) ("[T]he offense conduct for Counts Nine, Eleven, and Fourteen are based on a single incident, the act of firing a single firearm at a vehicle."). Because the mandatory minimum sentence for Counts Nine and Eleven is life imprisonment under § 924(j), Wilson contends that imposing a consecutive mandatory minimum sentence of ten years for Count Fourteen would result in impermissible stacking, and, therefore, the latter count must be dismissed. Def. Mot. at 5-6.

In response, the Government argues that Wilson's motion must be dismissed because the predicate crimes of violence underlying Counts Nine, Eleven, and Fourteen are "separate offenses, not a single criminal offense." Gov't Resp. at PageID.5015 (Dkt. 689). According to the Government, the Sixth Circuit has "upheld multiple convictions under 18 U.S.C. § 924(c)(1) so long as such convictions are based on separate predicate facts." Id. (quoting United States v. Graham, 275 F.3d 490, 519 (6th Cir. 2001)). The predicate facts in these counts are separate, says the Government, because "they consist of separate criminal acts involving different elements and different victims." Id. at PageID.5017. For example, Count Nine depends on the Government proving that Wilson murdered, or aided and abetted the murder of, victim A.T. in aid of

racketeering, while Count Eleven depends on the Government proving that Wilson murdered, or aided and abetted the murder of, victim S.H. in aid of racketeering. Id. As for Count Fourteen, the Government must prove that Wilson, either directly or by aiding and abetting others, assaulted victims M.A. and T.M. with a dangerous weapon in aid of racketeering. Id. at PageID.5017-5018.

The Court agrees with the Government that this motion should be denied, but for different reasons. As the Sixth Circuit recognized in United States v. Burnette, it is "firmly established that the imposition of separate consecutive sentences for multiple § 924(c) violations occurring during the same criminal episode [is] lawful." 170 F.3d 567, 572 (6th Cir. 1999) (collecting cases); see also United States v. Nabors, 901 F.2d 1351, 1358 (6th Cir. 1990) (affirming multiple § 924(c) convictions where the underlying predicate offenses were "distinct and require[d] proof of facts not required by the other predicate"). This is true "even when the underlying crimes 'occur in rapid succession or in the course of one crime spree.'" United States v. Chapman, 551 F. App'x 850, 853 (6th Cir. 2014) (quoting United States v. Simpson, 116 F. App'x 736, 740 (6th Cir. 2004)); see also Burnette, 170 F.3d at 572 (affirming multiple § 924(c) convictions and imposition of consecutive sentences where "the kidnapping [first predicate offense] occurred significantly before, and independent of, the actual bank robbery [second predicate offense], rather than being in any way simultaneous"). This language from Burnette and Chapman would suggest that Wilson could be convicted and sentenced consecutively for multiple § 924(c) violations because the underlying predicate offenses, although occurring in rapid succession during a single criminal episode, are independent crimes, thereby foreclosing Wilson's argument altogether. The Sixth Circuit's recent decision in United States v. Jackson, 918 F.3d 467 (6th Cir. 2019), however, sheds much needed light on what must be established at trial to support multiple § 924(c) convictions.

In <u>Jackson</u>, the Sixth Circuit reiterated both that multiple crimes committed with one firearm during the same criminal episode may support more than one § 924(c) charge, 918 F.3d at 490 (citing <u>United States v. Vichitvongsa</u>, 819 F.3d 260, 269 (2016)), and that it is lawful to impose consecutive sentences for multiple § 924(c) convictions, <u>id.</u> at 492 (citing <u>Burnette</u>, 170 F.3d at 572). To convict a defendant of more than one § 924(c) charge, however, the Government must prove that the defendant used, carried, or possessed a firearm more than once. <u>Id.</u> at 490. And "[w]hether a criminal episode contains <u>more than one unique and independent</u> use, carry, or possession depends at least in part on whether the defendant made <u>more than one choice</u> to use, carry, or possess a firearm." <u>Id.</u> (quoting <u>Vichitvongsa</u>, 819 F.3d at 270) (emphasis added). Because the evidence at trial established that the defendant in <u>Jackson</u> "made a <u>single choice</u> to use, carry, or possess a firearm in connection with [] <u>simultaneous carjackings</u>," the Sixth Circuit held that he could not be "convicted of two separate violations of § 924(c) <u>as a principal</u>." <u>Id.</u> at 494 (the Government forfeited it aiding-and-abetting theory by not advancing it until after oral argument) (emphasis added).

Whether Wilson is convicted of multiple § 924(c) charges as a principal and/or an aider and abettor, and, if so, whether the evidence is sufficient to support only a single § 924(c) conviction, are both matters that will be determined based on the evidence presented at trial.

This motion is denied.

### F. Motion to Dismiss Any Two of Counts Nine, Eleven, and Fourteen Due to Multiplicity (Dkt. 626)

Similar to his argument that Count Fourteen should be dismissed because imposing consecutive sentences for multiple § 924(c) convictions occurring during the same criminal episode is prohibited under the "except" clause of § 924(c)(1)(A), Wilson also argues that any two

of Counts Nine, Eleven, and Fourteen should be dismissed because those § 924(c) charges all arise out of a single instance of criminal conduct. <u>See generally</u> Def. Mot. (Dkt. 626).

For the reasons stated above, <u>see</u> <u>supra</u> Part II.E, the Court denies this motion because whether Wilson made more than one choice to use, carry, or possess a firearm during the shooting at the Hayes Troester Super Market to support multiples § 924(c) convictions depends on the sufficiency of the evidence presented at trial.

### G. Motion to Dismiss Any Three of Counts Eight, Ten, Twelve, and Thirteen Due to Multiplicity (Dkt. 636)

In Counts Eight and Ten of the second superseding indictment, Wilson is charged with two murders in aid of racketeering in violation of VICAR. <u>See</u> 2d Superseding Indictment at 28-30. Each of these counts relates to a separate victim. In Counts Twelve and Thirteen, Wilson is charged with two assaults with a dangerous weapon in aid of racketeering in violation of VICAR. <u>Id.</u> at 32-33. Each of these counts relates to a separate victim, both of whom are also separate from the victims in the murder counts. Thus, each of the four counts pertains to a different victim based on a separate and distinct VICAR offense.

Wilson argues that any three of his four VICAR charges in Counts Eight, Ten, Twelve, and Thirteen should be dismissed based on multiplicity because all of those offenses arose out of a single instance of criminal conduct. <u>See generally</u> Def. Mot. (Dkt. 636). According to Wilson, the statutory language of VICAR defines a single offense based on a distinct act and, therefore, it prohibits multiple charges based on a defendant's single action. <u>Id.</u> at 5. Because the shooting at the Hayes Troester Super Market constituted a single firearm act, says Wilson, multiple VICAR charges are impermissible, even if the shooter simultaneously intended to kill and assault the victims. <u>Id.</u> To the extent VICAR is ambiguous, Wilson offhandedly states that the rule of lenity for statutory construction supports his position. <u>Id.</u> at 6.

Wilson also argues that multiple VICAR charges would violate the Double Jeopardy Clause of the Fifth Amendment because a VICAR charge is a single offense, regardless of the means by which a defendant committed the offense.  Id. at 7.  In other words, Wilson contends that a jury does not have to agree that a defendant committed a particular crime of violence (murder, assault with a dangerous weapon, etc.) to convict under VICAR; the jury need only agree that a "violent act" in aid of racketeering was committed.  Id.  Thus, Wilson claims that each of his VICAR counts contain the "same elements" and, therefore, they are the "same offense" for purposes of double jeopardy.  Id. at 7-8.  Regardless of whether they have the same elements, Wilson further argues that double jeopardy prevents the prosecution of these multiple VICAR charges here because they are based on "the same act or transaction" and "the same evidence will serve" for each charge.  Id. at 8.  This Court disagrees.

Regarding his first argument, Wilson fundamentally misconstrues the language of VICAR to reach the conclusion that it defines a single offense with alternate means of committing that offense.  VICAR provides:

> (a) Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished--
>
> > (1) for murder, by death or life imprisonment, or a fine under this title, or both; and for kidnapping, by imprisonment for any term of years or for life, or a fine under this title, or both;
> >
> > (2) for maiming, by imprisonment for not more than thirty years or a fine under this title, or both;

(3) for assault with a dangerous weapon or assault resulting in serious bodily injury, by imprisonment for not more than twenty years or a fine under this title, or both;

(4) for threatening to commit a crime of violence, by imprisonment for not more than five years or a fine under this title, or both;

(5) for attempting or conspiring to commit murder or kidnapping, by imprisonment for not more than ten years or a fine under this title, or both; and

(6) for attempting or conspiring to commit a crime involving maiming, assault with a dangerous weapon, or assault resulting in serious bodily injury, by imprisonment for not more than three years or a fine of under this title, or both.

18 U.S.C. §§ 1959(a)(1)-(6).

Congress plainly expressed its intent that the VICAR statute, particularly with its numbered paragraphs, "define[s] separate crimes, each requiring proof of distinct elements, and each triggering their own sentencing provisions."  Jones, 2017 WL 3725632, at *4; see also United States v. McAuley, No. 11-CR-6083, 2014 WL 279207, at *15 (W.D.N.Y. Jan. 17, 2014) (concluding that a VICAR murder conspiracy charge is "legally distinct" from a VICAR assault charge because "they involve separate subsections of the statute—each of which requires proof of different elements and carries its own punishment"); Cousins, 198 F. Supp. 3d at 625-626 (VICAR defines violent crimes in aid of racketeering, lists elements in the alternative, and defines different offenses based on the predicate violent crime); cf. United States v. Capanelli, No. 01 CR 1121, 2004 WL 1542247, at *6 (S.D.N.Y. July 9, 2004) ("If the offenses charged are set forth in different statutes or in distinct sections of a statute, and each section unambiguously authorizes punishment for a violation of its terms, it is ordinarily to be inferred that Congress intended to authorize punishment under each provision.").  As aptly noted by the district court in Jones, "the subsections of § 1959(a)—separately criminalizing murder, maiming, assault, and other conduct in aid of

racketeering—define alternative elements, <u>not merely alternative means</u>, of committing a VICAR offense." <u>Jones</u>, 2017 WL 3725632, at *4 (citing <u>Omargharib v. Holder</u>, 775 F.3d 192, 198 (4th Cir. 2014)) (emphasis added).  Wilson's argument to the contrary lacks merit.

Regarding Wilson's second argument, the Double Jeopardy Clause of the Fifth Amendment guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  This clause protects against both multiple punishments and successive prosecutions for the same offense.  <u>See</u> <u>Missouri v. Hunter</u>, 459 U.S. 359, 365 (1983).  Multiplicity occurs when the Government charges "a single offense in more than one count in an indictment," such that the defendant may be "punished twice for the same crime." <u>United States v. Myers</u>, 854 F.3d 341, 355 (6th Cir. 2017); A1 Charles Alan Wright, et al., <u>Federal Practice and Procedure</u> § 142 (4th ed.) ("[M]ultiplicity may occur where the indictment charges multiple violations of the same statute but these counts are predicated on the same criminal conduct.").  However, charges are not multiplicitous when, under the same-elements test articulated in <u>Blockburger v. United States</u>, 284 U.S. 299 (1932), the same act or transaction constitutes a violation of two distinct statutory provisions but "each charge requires proof of a fact that the other charge does not."  <u>Myers</u>, 854 F.3d at 355; <u>United States v. Dixon</u>, 509 U.S. 688, 696 (1993) ("The same-elements test, sometimes referred to as the '<u>Blockburger</u>' test, inquires whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution."); <u>see also</u> <u>Whalen v. United States</u>, 445 U.S. 684, 691 (1980) (there is a presumption that "Congress ordinarily does not intend to punish the same offense under two different statutes").  This is true even if there is "a substantial overlap in the proof offered to establish the crimes."  <u>United States v. DeCarlo</u>, 434 F.3d 447, 455 (6th Cir. 2006) (focus of the <u>Blockburger</u> test is "on the statutory

elements of the two crimes with which a defendant has been charged, not on the proof that is offered or relied upon to secure a conviction").

As noted above, to establish a VICAR offense generally, the Government must prove beyond a reasonable doubt that (i) the organization was a RICO enterprise; (ii) the enterprise was engaged in racketeering activity; (iii) the defendant committed the alleged crime of violence in violation of either federal or state law; and (iv) an animating purpose of the defendant's action was to gain entrance to, or maintain or increase his position in, the enterprise. Odum, 878 F.3d at 516. As the third element illustrates, specific VICAR offenses ultimately turn on the distinct crime of violence the defendant is alleged to have committed.

The offense of murder in aid of racketeering under 18 U.S.C. § 1959(a)(1) requires the Government to prove the following elements: "(i) the murder of a person; (ii) for the purpose of gaining entrance to or maintaining or increasing position; (iii) in an enterprise engaged in racketeering activity." Wilson, 579 F. App'x at 342-343 (citing 18 U.S.C. § 1959(a)(1)); see also United States v. Owens, 724 F. App'x 289, 296 (5th Cir. 2018); United States v. Machado-Erazo, 986 F. Supp. 2d 39, 52 (D.D.C. 2013). The offense of assault with a dangerous weapon in aid of racketeering under 18 U.S.C. § 1959(a)(3), on the other hand, requires proof of the following elements: (i) an assault with a dangerous weapon; (ii) for the purpose of gaining entrance to or maintaining or increasing position; (iii) in an enterprise engaged in racketeering activity. See Cousins, 198 F. Supp. 3d at 626; Barbeito, 2010 WL 2243878, at *24-25. It is abundantly clear that Wilson's murder-in-aid-of-racketeering counts and his assault-with-a-dangerous-weapon-in-aid-of-racketeering counts are distinct offenses and require proof of different elements. Cf. United States v. McAuley, 629 F. App'x 74, 77 (2d Cir. 2015) (holding that a VICAR murder conspiracy charge and a VICAR assault charge are "different in law under Blockburger because they involve

separate subsections of the statute—each of which requires proof of different elements and carries its own punishment"); accord United States v. Ouimette, 798 F.2d 47, 50 (2d Cir. 1986) ("The different elements of proof required by each subsection demonstrate that, under Blockburger, two distinct offenses exist, carrying separate penalties that may be culminated.").  Furthermore, each VICAR count Wilson is facing involves a different victim.  Although each count arose out of the same criminal episode—the shooting at the Hayes Troester Super Market on December 1, 2015— the Government must prove facts that are unique to each separate offense.  Therefore, Wilson's double jeopardy argument also lacks merit.

This motion is denied.

### III.  CONCLUSION

For the reasons stated above, Wilson's motions to dismiss (Dkts. 626, 627, 629, 630, 632, 633, 634, 635, 636) are denied.

SO ORDERED.

Dated:  April 30, 2019                                          s/Mark A. Goldsmith
    Detroit, Michigan                                    MARK A. GOLDSMITH
                                      United States District Judge