UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

                 Case No. 16-cr-20460

v.

                 HON. MARK A. GOLDSMITH

EDWIN MILLS, et al.,

    Defendants.

_____/

## OPINION & ORDER
## DENYING DEFENDANT CARLO WILSON'S MOTION FOR BILL OF PARTICULARS OR, ALTERNATIVELY, TO STRIKE PORTIONS OF THE INDICTMENT AS SURPLUSAGE (Dkt. 628), AND DEFENDANT EDWIN MILLS'S MOTION FOR BILL OF PARTICULARS (Dkt. 661)

   This criminal case involves multiple defendants, all of whom have been charged with violating the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. Defendant Carlo Wilson has filed motion for a bill of particulars or, in the alternative, to strike portions of the second superseding indictment as surplusage (Dkt. 628). The Government has filed a response in opposition to the motion (Dkt. 692), to which Wilson replied (Dkt. 729). Defendant Edwin Mills has also filed a motion for a bill of particulars (Dkt. 661). The Government has filed a response in opposition to the motion (Dkt. 708), to which Mills replied (Dkt. 743).[1] For the reasons stated below, the Court denies the motions.

### I. BACKGROUND

   A federal grand jury returned a second superseding indictment on February 28, 2018, charging the eleven defendants in this case with various crimes, including violations of RICO. See

_____

[1] Because oral argument will not aid the Court's decisional process, Wilson's and Mills's motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2).

1

generally 2d Superseding Indictment (Dkt. 292).  That indictment claims that Defendants were members and associates of a criminal enterprise—the "6 Mile Chedda Grove" street gang in Detroit—one of whose purposes was to "preserv[e] and protect[] the power, territory, reputation, and profits of the enterprise through murder, robberies, intimidation, violence, and threats of violence."  Id. at 2, 6.  The enterprise purportedly operated on the east side of Detroit within an area bordered roughly by East McNichols Road to the north, Kelly Road to the east, Houston-Whittier Street to the south, and Chalmers Street to the west.  Id. at 2.  The "Chedda Grove" part of the enterprise's name is partially derived from one of the main streets in this territory—Cedargrove Street.  Id.

The indictment further alleges that the enterprise's profits derived primarily from the sale and distribution of controlled substances, including crack cocaine, heroin, and morphine.  Id. at 5.  The sale and distribution alleged were not limited to Michigan; gang members and associates purportedly sold and distributed controlled substances in Ohio, Kentucky, Tennessee, Alabama, and West Virginia.  Id.

Eight of the eleven defendants have since pleaded guilty.[2]  The three remaining defendants have been separated into two groups with separate trial dates.  See 8/7/2018 Order (Dkt. 425).  Group One is currently composed of one defendant, Robert Baytops, who is not subject to the death penalty upon conviction.  His trial will be scheduled at a future date.  See 3/26/2019 Order (Dkt. 846) (granting Defendant Donell Thompson's motion for severance).  Group Two, composed of two defendants who are death-penalty eligible, has a trial date of April 21, 2020.  See 8/31/2018 Order (Dkt. 475).

---

[2] These eight defendants include Mario Jackson, Michael Richardson, Corey Mills, Devontae Russell, Phillip Peaks, Patrick Johnson, Lomnil Jackson, and Donell Thompson.

Defendants Carlo Wilson and Edwin Mills belong to Group Two and have each been charged with one count of racketeering conspiracy in violation of 18 U.S.C. § 1962(d) (Count One); two counts of murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1) (Count Eight involves victim A.T.; Count Ten involves victim S.H.); two counts of using and carrying a firearm during and in relation to a crime of violence causing death in violation of 18 U.S.C. §§ 924(c) and 924(j) (Count Nine involves victim A.T.; Count Eleven involves victim S.H.); two counts of assault with a dangerous weapon in aid of racketeering in violation of 18 U.S.C. § 1959(a)(3) (Count Twelve involves victim M.A.; Count Thirteen involves victim T.M.); and one count of using, carrying, and discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (Count Fourteen, based on Counts Twelve and Thirteen).  See generally 2d Superseding Indictment.  On March 1, 2018, the Government filed its notice of intent to seek a sentence of death against Wilson and Mills (Dkt. 293).

## II.  STANDARDS OF DECISION

Under Federal Rule of Criminal Procedure 7(c), an indictment must include a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  It is well known that an indictment is legally insufficient unless "it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974); see also United States v. Schaffer, 586 F.3d 414, 422 (6th Cir. 2009) ("[T]he indictment must: (1) 'set out all of the elements of the charged offense and must give notice to the defendant of the charges he faces,' and (2) 'be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts.'" (quoting United

3

States v. Douglas, 398 F.3d 407, 411 (6th Cir. 2005))); United States v. Chichy, 1 F.3d 1501, 1504

n.3 (6th Cir. 1993) ("An indictment as drafted is presumed sufficient if it tracks the statutory

language, cites the elements of the crimes charged, and provides approximate dates and times."

(collecting cases)).

Although an indictment may be legally sufficient for purposes of Rule 7(c) and Hamling,

it may nonetheless fail to provide enough detail to enable a defendant to meaningfully prepare for

trial.  Accordingly, Rule 7(f) states that the Court "may direct the government to file a bill of

particulars."  Fed. R. Crim. P. 7(f); see also 1 Charles Alan Wright, et al., Federal Practice and

Procedure § 130 (4th ed.) ("A bill of particulars is a formal written statement by the prosecutor

providing details of the charges against the defendant.").   A bill of particulars is meant to serve

the following purposes:

> (1) to inform the defendant of the nature of the charge against him
> with sufficient precision to enable him to prepare for trial; (2) to
> avoid or minimize the danger of surprise at the time of trial; and (3)
> to enable him to plead his acquittal or conviction in bar of another
> prosecution for the same offense where the indictment itself is too
> vague, and indefinite for such purposes.

United States v. Birmley, 529 F.2d 103, 108 (6th Cir. 1976); see also United States v. Salisbury,

983 F.2d 1369, 1375 (6th Cir. 1993) ("A bill of particulars is meant to be used as a tool to minimize

surprise and assist defendant in obtaining the information needed to prepare a defense and to

preclude a second prosecution for the same crimes.").  According to the Sixth Circuit, "the test in

ruling on a motion for a bill of particulars is whether providing such details is necessary to the

preparation of the defense and avoidance of prejudicial surprise."  United States v. Musick, 291 F.

App'x 706, 724 (6th Cir. 2008); see also United States v. Kogan, 283 F. Supp. 3d 127, 132

(S.D.N.Y. 2017) ("[T]he proper inquiry on a motion to compel a bill of particulars is whether the

information sought is necessary, not whether it is helpful.").

4

Importantly, a bill of particulars "is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial." Salisbury, 983 F.2d at 1375; see also United States v. Smith, 776 F.2d 1104, 1111 (3d Cir. 1985) (holding that a bill of particulars "is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his own investigation."); United States v. Martin, 822 F.2d 1089, at *3 (6th Cir. 1987) (Table) (per curiam) ("[A] bill of particulars is not to be used as a general discovery device. . . . This is particularly so in a conspiracy case where the Government is not required to disclose all overt acts alleged to have occurred in furtherance of the conspiracy."). For example, a "defendant is not entitled to a bill of particulars if the purpose of the bill is to obtain a list of the Government's witnesses or to discover all of the overt acts that might be proven at trial." Musick, 291 F. App'x at 724. Nor is a bill of particulars meant to allow the defendant a preview of the Government's legal theory of the case. Kogan, 283 F. Supp. 3d at 132.

Finally, Rule 7(d) provides that, "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." Fed. R. Crim. P. 7(d). Rule 7(d) is "properly invoked when an indictment contains nonessential allegations that could prejudicially impress the jurors." United States v. Kemper, 503 F.2d 327, 329 (6th Cir. 1974); United States v. Berroa, 856 F.3d 141, 157 (1st Cir. 2017) ("Rule 7(d) serves to protect the defendant against immaterial or irrelevant allegations in an indictment, which may be prejudicial." (citation, quotation marks, and ellipses omitted)). Because this rule is "strictly construed against striking surplusage," Kemper, 503 F.2d at 329, a motion to strike surplusage is disfavored and should only be granted if it is clear the language in the indictment is both irrelevant and prejudicial, United States v. Neller, 229 F.3d 1154, at *2 (6th Cir. 2000) (Table) (per curiam). A district court may strike irrelevant and

prejudicial portions of an indictment, including overt acts from a conspiracy count. Id.; United States v. Montour, 944 F.2d 1019, 1026 (2d Cir. 1991) (same).

## III. DISCUSSION

### A. Wilson's Motion for a Bill of Particulars or, Alternatively, to Strike Portions of Indictment as Surplusage (Dkt. 628)

Wilson makes the following five arguments in his motion: (i) regarding the charge of racketeering conspiracy in count one, paragraphs 2, 3, and 4 should be stricken as surplusage; (ii) if these three paragraphs are not stricken, the Government should provide greater specificity concerning the racketeering conspiracy charge; (iii) regarding the charges of murder in aid of racketeering and assault with a dangerous weapon in aid of racketeering, the Government should specify Wilson's purported "position" within 6 Mile Chedda Grove that he was allegedly maintaining or increasing; (iv) the Government should provide greater specificity regarding the statutory aggravating factors alleged in the notice of intent to seek the death penalty; and (v) the Government should provide greater specificity regarding the non-statutory aggravating factors alleged in the notice of intent. The Court will address each of these arguments in turn.

### 1. Striking Paragraphs 2, 3, and 4 of Count One as Surplusage

Regarding his argument that paragraphs 2, 3, and 4 in count one should be stricken as surplusage, Wilson only offers a conclusory assertion that these paragraphs are irrelevant, inflammatory, and prejudicial; he never explains why these paragraphs are irrelevant and prejudicial. See Def. Br. at 9. On the other hand, the Government contends that these paragraphs are relevant to establishing the existence and nature of a criminal enterprise—a necessary element for proving a racketeering conspiracy—because they illustrate "the area of Detroit over which 6 Mile claims dominion to illegally sell narcotics," "how 6 Mile members and associates operate within the enterprise," "how members and associates of 6 Mile gain entrance or associateship with

6

the enterprise," and "how 6 Mile members show their allegiance through tattoos, social media postings, and hand signs." Gov't Br. at 14-15. The Court agrees with the Government.

A criminal defendant violates the RICO Act if he or she conspires to "conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. §§ 1962(c)-(d). Stated differently, to establish the offense of racketeering conspiracy, the Government must prove the following four elements: (1) an agreement, (2) to conduct or participate, (3) in an enterprise, (4) through a pattern of racketeering activity. See Salinas v. United States, 522 U.S. 52, 62-63 (1997); see also United States v. Gills, 702 F. App'x 367, 373 (6th Cir. 2017).

Regarding the third element, the RICO Act defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Sixth Circuit, looking to Supreme Court precedent, has held that the term "enterprise" should be interpreted liberally, much like the RICO Act itself. In re ClassicStar Mare Lease Litig., 727 F.3d 473, 492 (6th Cir. 2013); see also Boyle v. United States, 556 U.S. 938, 944 (2009) ("The term 'any' ensures that the definition has a wide reach . . . and the very concept of an association in fact is expansive." (internal citations omitted)). Consequently, the term "enterprise" has been described broadly as "a group of persons associated together for a common purpose of engaging in a course of conduct." United States v. Turkette, 452 U.S. 576, 583 (1981) (allowing proof of enterprise by showing "an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit . . . separate and apart from the pattern of activity in which it engages"). It has also been interpreted as requiring "simply a continuing unit that functions with a common

purpose." Ouwinga v. Benistar 419 Plan Servs., Inc., 694 F.3d 783, 794 (6th Cir. 2012) (quoting Boyle, 556 U.S. at 948).

Here, count one of the second superseding indictment charges Mills with racketeering conspiracy. See 2d Superseding Indictment at 2. Paragraph 2 of count one claims that 6 Mile Chedda Grove, "including its leadership, members, and associates," constituted a "group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce." Id. at 6. This paragraph further states that members of 6 Mile Chedda Grove "gain position, status, and respect within the gang, and become leaders within the gang," by, among other things, committing acts of violence and distributing narcotics, which some members referred to as "putting in work." Id. Paragraph 3 then describes how the gang includes both female and male members, some of whom are referred to as an "OCB" or "Original Chedda Boy." Id. at 3. Some of these members are family members, while others either grew up in the same neighborhood or attended the same school. Id. The gang also has an initiation process, whereby members are "jumped in," meaning that "current members of the gang physically fight and strike the new member." Id. Finally, paragraph 4 describes how members of 6 Mile Chedda Grove often use graffiti, tattoos, distinctive hand signs, clothing, and social media to identify themselves as members. Id. at 4-5.

These three paragraphs address the general nature, membership, criminal activities, initiation process, and members' display of affiliation with 6 Mile Chedda Grove, all of which are relevant for establishing whether a group of individuals constitutes a criminal enterprise to prove the charge of racketeering conspiracy. Because Wilson has failed to clearly show how these paragraphs are both irrelevant and prejudicial under Rule 7(d), the Court denies his request to strike these paragraphs as surplusage.

**2. Request for Greater Specificity Concerning Racketeering Conspiracy Allegations**

If the Court does not strike paragraphs 2, 3, and 4 in count one as surplusage, Wilson argues that the Government should provide greater specificity concerning the racketeering conspiracy charge.  In particular, Wilson requests the following details:

1. How did Mr. Wilson "put in work" for 6 Mile, as generally alleged in paragraph 2 of Count One?

2. Was Mr. Wilson an "Original Chedda Boy," as that phrase is used in paragraph 3 of Count One?  Which alleged 6 Mile members are considered as an "Original Chedda Boy"?  Who founded 6 Mile?  Who are the high-ranking members of 6 Mile?

3. When and where was Mr. Wilson "jumped in" to the 6 Mile gang, as alleged in paragraph 3 of Count One?

4. When, where, and how did Mr. Wilson "claim" or "rep" the 6 Mile gang, as alleged in paragraph 4 of Count One?

5. When, where, and how did Mr. Wilson participate in the distribution of controlled substances, as alleged in paragraph 6 of Count One and as alleged vaguely by a cooperator according to a search warrant affidavit?

6. How did any acts of violence that Mr. Wilson is alleged to have committed, conspired, attempted, or threatened to commit protect and expand the enterprise's criminal activities?

7. When and where did Mr. Wilson meet with 6 Mile members and associates to discuss the gang's criminal activities, as alleged in paragraph 10(b) of Count One?

8. When, where, and how did Mr. Wilson communicate with 6 Mile members to discuss and plan criminal activities, as alleged in paragraph 10(c) of Count One?

9. When, where, and how did Mr. Wilson distribute and share firearms and other items to be used for committing crimes for the gang, as alleged in paragraph 10(d) of Count One?

10. Regarding the racketeering conspiracy, which threats and acts involving murder, robbery, dealing in controlled substances, and

9

acts indictable under 18 U.S.C. § 1951 did Mr. Wilson participate in?

11. Which acts of racketeering activity did Mr. Wilson agree that a conspirator would commit?

12. Under what circumstances is Mr. Wilson alleged to have registered a Facebook account using the first name of "Six Mile," last name of "Los," and the vanity name of "sixmile.los"?

13. Overt act 31 alleges that Mr. Wilson and others confronted an unknown person. How does the alleged confrontation relate to the racketeering conspiracy?

14. Overt act 32 alleges that Mr. Wilson and others were together in a car in which two loaded firearms and marijuana were found.  How does this alleged act relate to the racketeering conspiracy?

15. Overt act 39 alleges that Mr. Wilson uploaded to Facebook a photograph of Philip Peaks.  How does this alleged act relate to the racketeering conspiracy?

16. The names of all the individuals the government claims were members, associates, or non-members who were "'cool' with 6 Mile," as described in paragraph 2 of Count One.

Def. Br. at 10-12.

"As a general rule, a defendant is not entitled to receive details of the government's conspiracy allegations in a bill of particulars." United States v. Wilson, 493 F. Supp. 2d 364, 372 (E.D.N.Y. 2006) (citing United States v. Feola, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987)).  This means the Government does not have to reveal the details surrounding the formation of the conspiracy or when each participant entered into that conspiracy before trial. Id. ("The government is not required to prove exactly when or how a conspiracy was formed or when a particular participant joined the scheme.").  It also means that defendants are not entitled to know "the means by which it is claimed they performed acts in furtherance of the conspiracy nor the evidence which the government intends to adduce to prove their criminal acts." United States v. Persico, 621 F.

Supp. 842, 868 (S.D.N.Y. 1985); United States v. Litman, 547 F. Supp. 645, 654 (W.D. Pa. 1982)

(a defendant is not entitled to details about role allegedly played in forming and executing the

conspiracy). Nor are defendants "entitled to a bill of particulars if the purpose of the bill is to

obtain a list of the Government's witnesses" or "the names of all other co-conspirators." Musick,

291 F. App'x at 724; see also United States v. Higdon, 68 F. Supp. 3d 807, 813 (E.D. Tenn. 2014)

("[T]he Government is not required to reveal the names of unindicted coconspirators."); United

States v. Coffey, 361 F.Supp.2d 102, 122 (E.D.N.Y. 2005) ("Courts have been highly reluctant to

require a bill of particulars when defendants have asked for specific identities of co-conspirators

or others allegedly involved."). Thus, when an indictment provides (i) the names and aliases of

the defendant members of the RICO enterprise and conspiracy; (ii) the name of the enterprise; (iii)

a brief description of the purposes, means, and methods of the RICO enterprise; (iv) the area in

which the enterprise operated; and (v) the approximate duration of the enterprise, a defendant's

request for a bill of particulars with respect to a charge of racketeering conspiracy should be

denied. See United States v. Pirk, 267 F. Supp. 3d 406, 436-437 (W.D.N.Y. 2017).

Here, the second superseding indictment includes the names and aliases for each of the

defendants, all of whom are alleged to be members of both the 6 Mile Chedda Grove street gang

and the racketeering conspiracy. See 2d Superseding Indictment at 1 (for example, Wilson's alias

is "Los"). The indictment contains an express list of numerous purposes of 6 Mile Chedda Grove,

including: (i) preserving and protecting the power, territory, reputation, and profits of the

enterprise through murder, robberies, intimidation, violence, and threats of violence; (ii)

promoting, supporting, and enhancing the enterprise and its members' and associates' activities,

including murder, robberies, and narcotics distribution; (iii) enriching the enterprises' members

and associates through criminal activities, including murder, robberies, and narcotics distribution;

(iv) sharing and disseminating information about the enterprise's plans and activities; (v) keeping victims, potential witnesses, and community members in fear of the enterprise's members and associates through violence and threats of violence; and (vi) providing assistance to the enterprise's members and associates who committed crimes for, with, and on behalf of the gang, in order to hinder, obstruct, and prevent law enforcement authorities from identifying, apprehending, and successfully prosecuting and punishing the offenders. Id. at 6-7. The indictment then alleges that 6 Mile Chedda Grove members used intimidation and violence to preserve and protect the gang's territorial area and reputation, which consequently enhanced and expanded the gang's distribution of controlled substances. Id. at 6-8. The indictment includes several instances of supporting conduct by 6 Mile Chedda Grove members, including sales of controlled substances and acts of violence, in furtherance of the enterprise. Id. at 10-20. The indictment also states that 6 Mile Chedda Grove purportedly operated on the east side of Detroit within an area bordered roughly by East McNichols Road to the north, Kelly Road to the east, Houston-Whittier Street to the south, and Chalmers Street to the west, and that it had been operating for approximately eight years, starting sometime in 2008 and continuing until at least November 30, 2016. Id. at 2, 8.

Additionally, the 49-page second superseding indictment lists 59 overt acts in furtherance of the conspiracy, which further lessens the need to order a bill of particulars. See United States v. Contreras, 216 F. Supp. 3d 299, 302 n.1 (W.D.N.Y. 2016). Although Wilson requests greater specificity regarding overt acts 31, 32, and 39, the Court reiterates that the offense of racketeering conspiracy does not even require proof of any overt acts, United States v. Mills, No. 16-cr-20460, 2018 WL 5306947, at *2 (E.D. Mich. Oct. 26, 2018), and, consequently, Wilson "is not entitled to a bill of particulars . . . to discover overt acts that might be proven at trial," Musick, 291 F. App'x at 724-725; Salisbury, 983 F.2d at 1375.

Furthermore, the Government represents in its response that it has provided Wilson with substantial Rule 16 discovery, consisting of "more than 150,000 pages of discovery, multiple video recordings, and other items," including "search warrant returns for social media accounts for the Defendant and numerous other individuals associated with 6 Mile; information from cell phone analyses of the Defendant's cell phones and those of other 6 Mile associates; and police reports for crimes and encounters with the police by the Defendant and other 6 Mile associates, among other information."   Gov't Resp. at 17-18; see also id. at 22 (noting disclosure of over "200 gigabytes of digital information").   The Government has also hinted at its theory of the case—namely, Wilson and Mills committed the charged crimes of violence at the Hayes Troester Super Market in Detroit, Michigan, "in retaliation for the killing of Slick V, an enterprise member."  Id. at 25.

The Court is convinced that the material available to Wilson adequately informs him about the details of the racketeering conspiracy charge so that he may meaningfully prepare a defense, avoids the potential for prejudicial surprise at trial, and precludes a second prosecution for the same crime.  In other words, while the requested information may be helpful to Wilson, it is not necessary to the preparation of his defense and avoidance of prejudicial surprise.  Musick, 291 F. App'x at 724; Kogan, 283 F. Supp. 3d at 132.

Put simply, Wilson's requests for further details about the racketeering conspiracy are precisely the sort that courts typically deny under these circumstances.  See, e.g., United States v. Jones, No. 10 Cr. 905, 2013 WL 12180869 (S.D.N.Y Dec. 16, 2013) (denying the defendant's request for a bill of particulars identifying, among other things, the specific role the defendant allegedly held in the enterprise, the specific role the defendant allegedly held in the conspiracy, and the specific time period in which the defendant allegedly participated in the enterprise);

13

<u>Wilson</u>, 493 F. Supp. 2d at 372 ("easily" denying the defendant's requests for the dates he allegedly joined the racketeering enterprise, the dates and location of any related meetings he attended, the dates he last participated in the conspiracy, and the nature of overt acts he committed in further of the conspiracy and with whom he did so).  Granting Wilson's requests would ultimately restrict the Government's evidence prior to trial and require the disclosure of its legal theory, both of which a bill of particulars is not designed to do.  <u>United States v. Mandell</u>, 710 F. Supp. 2d 368, 384 (S.D.N.Y. 2010).

Therefore, this request for additional information is denied.

### 3.  Request for Greater Specificity Concerning Crimes of Violence in Aid of Racketeering

Regarding the remaining counts in the indictment, all of which require proof of crimes of violence in aid of racketeering, Wilson requests further details about the "position" he allegedly maintained or increased in 6 Mile Chedda Grove by "allegedly murdering A.T. and S.H. and in allegedly assaulting M.A. and T.M."  Def. Br. at 13.  For the same reasons discussed above in Part III.A.2, the Court denies this request because it is not the proper subject of a bill of particulars.

### 4.  Request for Greater Specificity Concerning Statutory Aggravating Factors

The Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3591 <u>et seq.</u>, requires the Government to sign and file with the Court, and serve upon the defendant, within a reasonable time before trial, a notice

> (1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and that the government will seek the sentence of death; and

> (2) setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.

18 U.S.C. § 3593(a).  The FDPA also requires that the jury make three determinations before the death penalty can be imposed.  First, the jury must unanimously find beyond a reasonable doubt that the defendant had the requisite intent to commit the death-eligible offense.  18 U.S.C. § 3591(a).  Second, the jury must unanimously find beyond a reasonable doubt that the Government has proven at least one of the statutory aggravating factors alleged in its notice to seek the death penalty.  18 U.S.C. § 3593(c).  These statutory aggravating factors are listed at 18 U.S.C. §§ 3592(c)(1)-(16).  Third, if at least one statutory aggravating factor is found, the jury must then consider that factor or factors, along with any non-statutory aggravating factors for which notice has been provided, see 18 U.S.C. § 3593(d), and weigh them against mitigating factors to determine if the death penalty is warranted, 18 U.S.C. § 3593(e) ("the jury . . . shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death").

In its notice of intent to seek the death penalty against Wilson, the Government alleges four statutory aggravating factors under 18 U.S.C. § 3592(c), including a grave risk of death to additional persons, substantial planning and premeditation, vulnerability of a victim, and multiple killings or attempted killings.  See Notice of Intent at 7-8; 2d Superseding Indictment at 39-41; see also 18 U.S.C. §§ 3592(c)(5), (9), (11), and (16).  In his motion, Wilson requests that the Government disclose the following information in a bill of particulars: (i) the identity of any person to whom Wilson knowingly created a grave risk of death; (ii) identify the acts that establish substantial planning and premeditation; and (iii) the identity of any person to whom Wilson intentionally killed or attempted to kill in a single criminal episode.  Def. Br. at 13.  For the reasons stated below, the Court denies these requests.

15

To begin, some courts have held that a bill of particulars under Rule 7(f) only applies to an indictment or information, not a notice of intent to seek the death penalty.  See United States v. Llera Plaza, 179 F. Supp. 2d 464, 472 (E.D. Pa. 2001) ("Rule 7 is not applicable to NOIs submitted to satisfy FDPA requirements."); United States v. Kaczynski, No. CR S-96-259, 1997 WL 34626785, at *17 (E.D. Cal. Nov. 7, 1997) ("By its express language, Fed. R. Crim. P. 7 applies only to informations and indictments.  Since aggravating factors are neither offenses nor elements of substantive offense that must be alleged by indictment, Fed. R. Crim. P. 7 does not govern the nature or specificity of notice required under § 3593(a).").  Thus, Wilson's request for a bill of particulars could be denied for this reason alone.

Nonetheless, several courts have relied on their inherent authority to order bills supplementing noticed aggravating factors on constitutional grounds.  Wilson, 493 F. Supp. 2d at 375 ("These courts have found that the Constitution—either in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment—guarantees criminal defendants a meaningful opportunity to present a complete defense and that this guarantee grants authority to order bills of particulars in connection with aggravating factors in the sentencing phase of a death penalty case."); United States v. Karake, 370 F. Supp. 2d 275, 279-280 (D.D.C. 2005) ("[I]t has been uniformly recognized that if the death penalty provides insufficient notice to the defendant, the Court retains inherent authority to require the government to provide more specifics in order to give the defendant the opportunity to prepare for the penalty phase.").  Thus, in the absence of authority under Rule 7(f), this Court could rely on its inherent authority to order the bills Wilson seeks here.

That being said, although the Government has both a statutory and a constitutional obligation to provide adequate notice to the defendant of aggravating factors it intends to prove at

trial, several Circuits have held that the Government is not obligated to provide the defendant with advance notice of the evidence it intends to use at trial to prove those factors.  See, e.g., United States v. LeCroy, 441 F.3d 914, 930 (11th Cir. 2006) ("The government in this case satisfied its constitutional and statutory obligations by informing the defendant of what aggravating factors—both statutory and nonstatutory—it intended to prove at trial.  The government was not obligated to outline what specific pieces of evidence it planned to use to support the aggravating factors."); United States v. Higgs, 353 F.3d 281, 325 (4th Cir. 2003) ("The FDPA and the Constitution require that the defendant receive adequate notice of the aggravating factor, . . . not notice of the specific evidence that will be used to support it."); United States v. Lee, 274 F.3d 485, 495 (8th Cir. 2001) ("Although [the defendant] had a right to advance notice of the aggravating factors the government sought to prove at sentencing, [the defendant] had no right to advance notice of the specific evidence the government would use to prove those factors."); see also United States v. Montgomery, 10 F. Supp. 3d 801, 822-823 (W.D. Tenn. 2014) (relying, in part, on Higgs, and denying defendant's request for the Government to provide an informative outline of its evidence in support of statutory aggravating factors).  For this reason as well, the Court could deny Wilson's requests.

Nonetheless, some district courts have recognized that, "at a minimum, due process requires a defendant to receive sufficient notice of aggravating factors to enable him to respond and to prepare his case in rebuttal."  Wilson, 493 F. Supp. 2d at 377 (citing Llera Plaza, 179 F. Supp. 2d at 471).  "In evaluating whether due process is satisfied, the Death Penalty Notice must be considered in conjunction with the offenses charged in the indictment, which can provide the requisite specificity to an otherwise insufficient notice."  Id.

17

The Court finds that Wilson has been provided with more than adequate notice of the three statutory aggravating factors to meaningfully prepare a defense. First, although the notice itself does not identify the individuals who were placed in a grave risk of death, it is clear from the allegations in the indictment and the discovery produced thus far that M.A. and T.A. (the victims of the alleged assaults with a dangerous weapon in aid of racketeering charges) were riding on the hood of the car when S.H. and A.T. (the driver and passenger of the car, respectively) were allegedly shot by Wilson and Mills. Moreover, the Government claims that it has provided Wilson with the medical records for M.A. and T.A., as well as the identities of two other victims who were supposedly in the line of fire when the shooting occurred. Gov't Resp. at 24-25. Therefore, the Court agrees with the Government that, "many individuals were within the zone of danger" given "the method of killing was with multiple firearms and that the shooting took place at a crowded market with many people present and many cars driving past," see id. at 25, such that Wilson has adequate notice that his alleged actions knowingly created a grave risk of death to additional persons. Wilson does not address in his reply brief how the identities of at least four individuals and the circumstances surrounding the shooting at the Hayes Troester Super Market fail to provide him with adequate notice of this statutory aggravating factor.

Second, as the Government notes in its response, Wilson has been provided discovery relating to the planning-and-premeditation statutory aggravating factor. For example, Wilson has a recorded jail phone call between Mills and Defendant Donell Thompson discussing the murder of Slick V, during which Mills agrees that someone should be "f****d up" in response. Gov't Resp. at 26. Wilson's cellphone also contained videos, including one taken following the memorial for Slick V and days before the Hayes Troester Super Market shooting, in which Wilson, Mills, Defendant Lomnil Jackson, and Defendant Mario Jackson were visible. Id. In addition to

displaying hand signs associated with 6 Mile Chedda Grove, several of these individuals can be overheard saying they were "gonna be slappin' for Slick V," while Mills and Jackson displayed firearms.  Id.  Moreover, according to the Government, cell phone tracking information places Wilson with Mills in the vicinity of the Hayes Troester Super Market before and after the shooting. Id.  Wilson does not explain why these facts fail to provide him with adequate notice regarding this statutory aggravating factor.

Third, as with the grave-risk-of-death aggravating factor, it is abundantly clear based on the allegations in the indictment and the discovery produced by the Government that S.H. and A.T. were killed during the shooting at the Hayes Troester Super Market, and M.A. and T.A. were assaulted during the same incident, all of whom the multiple-killings-or-attempted-killings aggravating factor is meant to address.  Again, Wilson provides no explanation for why the allegations in the indictment and the discovery the Government has produced to date is inadequate.

Therefore, based on the indictment, the notice of intent, and the voluminous discovery provided to Wilson, the Court denies Wilson's request for a bill regarding the statutory aggravating factors.

**5.  Request for Greater Specificity Concerning Non-Statutory Aggravating Factors**

In addition to alleging four statutory aggravating factors, the Government's notice of intent also alleges two non-statutory aggravating factors, including criminal street gang participation and victim impact evidence.  See Notice of Intent at 8.  In his motion, Wilson requests that the Government disclose the following information in a bill of particulars: (i) identify the position in 6 Mile Chedda Grove that he sought to maintain or increase by allegedly committing the crimes of violence; (ii) identify the members of the victims' families who suffered harm, as well as specify the nature, extent, and scope of the injury, harm, and loss of the victims' family members; and (iii)

"[i]dentify and specify any personal characteristics as an individual human being of the victim that the government intends to introduce."  Def. Br. at 13.

The Court has already determined that Wilson is not entitled to any further information from the Government pertaining to his purported "position" in 6 Mile Chedda Grove, and that the indictment and discovery allow Wilson to meaningful prepare for trial and avoid prejudicial surprise on this point.  Therefore, his first request is denied.

Regarding Wilson's two requests relating to the victim-impact factor, the Court recognizes the substantial case law granting similar requests, including the production of informative outlines.  See, e.g., Montgomery, 10 F. Supp. 3d at 830 (recognizing the "trend among the federal courts in the Sixth Circuit and elsewhere of requiring the Government to provide additional information related to the victim-impact factor"); United States v. O'Reilly, No. 05-80025, 2007 WL 4591856, at *5 (E.D. Mich. Dec. 28, 2007) (collecting cases); Wilson, 493 F. Supp. 2d at 378 (collecting cases); Llera Plaza, 179 F. Supp. 2d at 474-475 (collecting cases).  In its response, the Government states that it anticipates disclosing to Wilson certain victim-impact evidence before the August 1, 2019 deadline for penalty-phase disclosures.  See Gov't Resp. at 28-30.

In light of the Government's position, the Court will deny these victim-impact factor requests without prejudice.  Following the Government's victim-impact disclosure, if needed, Wilson will be permitted to file a motion for an informative outline as to this non-statutory aggravating factor only.

### B.  Mills's Motion for a Bill of Particulars (Dkt. 661)

Mills is seeking a bill of particulars comprising "all facts supporting the Government's charge of a RICO enterprise, and all facts supporting the Government's allegation that Mr. Mills took certain actions with the purpose of 'maintaining and increasing position' within the alleged

enterprise." Def. Br. at 7-8. More specifically, Mills claims that the indictment does not adequately describe the "hierarchy" of 6 Mile Chedda Grove. Id. at 2. Nor does the indictment adequately describe the "position" within the enterprise that Mills was purportedly maintaining or increasing by participating in the alleged murders and assaults. Id.; see also Def. Reply at 2 ("[N]othing in the indictment (or any of the produced discovery) reveals what this alleged 'position' that needed to be 'maintained or increased' was in the first place."). Although Mills concedes that the date and location of the alleged crimes are adequately set forth in the indictment, Def. Br. at 6, he nevertheless contends that the bill must also disclose the identifies and statements of any witnesses who might have information supporting the existence of the enterprise or the purpose underlying Mills's alleged participation in the crimes of violence, see id. at 3. Without further particularization and specification, Mills claims that he needs this information to meaningfully prepare for trial. Id. at 4. The Court disagrees.

To begin, Mills's request for more information about the "hierarchy" of 6 Mile Chedda Grove and the "position" he had within the enterprise is premised on the assumption that the enterprise necessarily operated in a hierarchical system of authority, wherein members have formal titles and roles. The Court has previously addressed and rejected this faulty assumption. See 4/30/2019 Sealed Op. & Order at 10-11 (Dkt. 897).[3] Furthermore, "[i]t is not necessary for the Government to disclose in a bill of particulars the precise details of the roles the defendant and his co-conspirators allegedly played in forming and executing the conspiracy." Litman, 547 F. Supp. at 654. Therefore, this request is denied.

---

[3] Although Mills appears to no longer be concerned about any of the legal arguments raised in his sealed motion to dismiss the indictment being made public now, see Def. Reply at 4-5 (making references to arguments the parties made regarding Mills's sealed motion to dismiss), the Court will refrain from discussing the details of its opinion ruling on that motion until the opinion has been unsealed.

Next, as the Government aptly notes in its response, see Gov't Resp. at 12, insofar as Mills is requesting information concerning a government witness's statement about the alleged crimes, mandatory disclosure of the statement at this juncture before the witness has testified at trial is prohibited under the Jencks Act, 18 U.S.C. § 3500, see United States v. Mills, No. 16-cr-20460, 2019 WL 76868, at *2 (E.D. Mich. Jan. 2, 2019).  Using a bill of particulars as a tool to obtain detailed disclosure of certain evidence held by the Government before trial, as Mills is attempting here, is not permitted.  Salisbury, 983 F.2d at 1375.  Mills did not respond to this issue in his reply brief.  Therefore, this request is denied.

Finally, regarding Mills's request for the identity of a government witness he believes was present at the crime scene and may testify at trial, see Def. Br. at 3, it is well established that a "defendant is not entitled to a bill of particulars if the purpose of the bill is to obtain a list of the Government's witnesses" or "the names of all other co-conspirators."  Musick, 291 F. App'x at 724; see also United States v. Elhorr, No. 13-20158, 2014 WL 5511502, at *3 (E.D. Mich. Oct. 31, 2014) (a motion for bill of particulars may not be used to force the Government to disclose the names of its witnesses) (citing United States v. Largent, 545 F.2d 1039, 1043-1044 (6th Cir. 1976)); United States v. Tyler, No. 3:08-CR-181, 2009 WL 1010932, at *2 (E.D. Tenn. Apr. 15, 2009) (a motion for bill of particulars is not the proper basis to seek the identity of one of the government's witnesses).  Moreover, the August 31, 2018 scheduling order in this case requires the parties to submit witness lists on December 6, 2019, over four months before the start of trial.  See 8/31/2018 Order at 3 (Dkt. 475).  The scheduling order affords Mills ample time to continue preparing his defense after learning of the Government's witnesses, thereby reducing any conceivable surprise at trial.  Therefore, this request is denied.

Furthermore, as noted above and detailed in the Government's response, Mills has received over 150,000 pages of discovery, multiple video recordings, and other items, including search warrant returns for social media accounts, cell phone analysis, and police reports.  See Gov't Resp. at 8.  Regarding the specific crimes of violence with which he is charged, Mills also has a video of the crimes being committed; a recorded phone call between Mills and Defendant Donell Thompson, during which the two purportedly discuss the killing of Slick V, a fellow gang member, and how someone should be "f****d up" in response; and a cell phone video taken days before the murder, in which Mills and other gang members are seen possessing firearms and discussing how they are "gonna be slappin' for Slick V," the deceased 6 Mile Chedda Grove member.  Id. at 9.

In viewing the totality of the extensive discovery produced to date, in addition to the allegations contained in the indictment itself, the Court is convinced that the material available to Mills adequately informs him about the details of the charges so that he may meaningfully prepare a defense, avoids the potential for prejudicial surprise at trial, and precludes a second prosecution for the same crimes.

## IV.  CONCLUSION

For the reasons stated above, the Court denies Wilson's motion for a bill of particulars or, in the alternative, to strike portions of the second superseding indictment as surplusage (Dkt. 628), and Mills's motion for a bill of particulars (Dkt. 661).

SO ORDERED.

Dated:  April 30, 2019                                      s/Mark A. Goldsmith
     Detroit, Michigan                              MARK A. GOLDSMITH
                                                United States District Judge