# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CRIMINAL NO. 2:16-CR-20460 |
| vs. ) | |
| ) | HON. MARK A. GOLDSMITH |
| ) | |
| D-2   CARLO WILSON, ) | |
| ) | |
| Defendants. ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO WILSON'S SECOND MOTION TO LIMIT ATKINS TESTING [ECF No. 918]**

COMES NOW the United States of America, by and through its attorneys, Matthew Schneider, United States Attorney and Louis A. Crisostomo, Robert Moran Assistant United States Attorneys, and James Peterson, Department of Justice trial attorney and files this response in opposition to Defendant Wilson's Second Motion to Limit Government Atkins Testing.  ECF No. 918.  The Motion to Limit should be denied for several reasons.  First, the Motion to Limit is untimely.   Second, the authorities WILSON relies upon are inapplicable to his specific objections.  Third, Wilson's motion is simply an attempt to re-litigate issues already decided by the Court and threatens, with his refusal to be examined, to delay the Court scheduled *Atkins* hearing.

1

## **BRIEF IN SUPPORT**

### I.      BACKGROUND

On June 22, 2016, a federal grand jury returned the Indictment in this matter, charging two defendants, EDWIN MILLS and CARLO WILSON, with multiple counts of Murder in Aid of Racketeering, Assault with a Dangerous Weapon in Aid of Racketeering, and related firearms charges. ECF No. 1.  The homicide related charges are death penalty eligible offenses.  On February 28, 2018, a federal grand jury returned the Second Superseding Indictment. ECF No. 292.  On March 1, 2018, the government filed its Notice of Intent to Seek the Death Penalty against E. MILLS and WILSON.  ECF No. 293.

On March 15, 2019, defendant WILSON gave notice that he claims to be intellectually disabled or mentally retarded pursuant to the Supreme Court's decisions in *Atkins v. Virginia*, 536 U.S. 304 (2002); *Hall v. Florida*, 134 S.Ct. 1986 (2014); *Brumfield v. Cain*, 135 S.Ct. 2269 (2015); and *Moore v. Texas*, 137 S. Ct. 1039 (2017).  ECF No. 814.  On March 15, 2019, defendant WILSON also sent the government a letter notifying it that he had retained Dr. Scott Hunter and Ms. Lindsay Katz, MA to conduct neuropsychological testing.  WILSON disclosed the tests administered, but not the results.

2

On March 27, 2019, the government provided notice of the neuropsychological testing the government intends to administer. The tests include:

1. Continuous Perception Test-3
2. Wechsler Adult Intelligence Scale-IV
3. Reynolds Intellectual Assessment Scales-2
4. Neuropsychological Assessment Battery:
    a. Attention Module
    b. Language Module
    c. Memory Module
    d. Spatial Module
    e. Executive Function Module
5. Trail Making Test, Parts A & B
6. Finger Tapping Test
7. Grooved Pegboard Test
8. Controlled Oral Word Association Test-FAS & Animals
9. Wisconsin Card Sorting Test
10. Woodcock-Johnson Tests of Achievement-IV:
    a. 1-Letter-Word Identification
    b. 2-Applied Problems
    c. 4-Passage Comprehension
    d. 5. Calculation
    e. 7-Word Attack
    f. 8-Oral Reading
    g. 9-Sentence Reading Fluency
    h. 10-Math Facts Fluency
11. Minnesota Multiphasic Personality Inventory-2
12. Adaptive Behavior Assessment System-3 Self-Report
13. Connors' Adult ADHD Rating Scale
14. Performance Validity Testing

ECF No. 849, pg. 2.

On April 3, 2019, WILSON filed his objection to the government's proposed testing. See ECF No. 860. In that pleading, WILSON admits and acknowledges

3

that by filing his *Atkins* notice, he has expressly waived many important privileges, stating:

> As noted, his *Atkins* claim has effected a limited waiver of his Fifth Amendment rights, solely with respect to matters relevant to ID, so that the Government has an opportunity to rebut that specific claim.

ECF No. 860, pg. 22.

On May 6, 2019, the Court issued an Order overruling Wilson's objections to the government's proposed testing. ECF No. 913. The Order provided, in part:

> For the same reasons stated above regarding the MMPI-2-RF, the Court overrules Wilson's objection, permits the Government to administer the ABAS-3 Self-Report, and allows the parties to address the admissibility and weight of any results gleaned from this testing in their Atkins briefing. *See United States v. Northington*, No. 07-550-05, 2012 WL 4024944, at *5 (E.D. Pa. Sept. 12, 2012).

ECF No. 913, pg. 6. The Court further held:

> Based on the reasoning of *Sampson*, *Johnson*, and *Wilson*, Wilson has waived his right to raise a Fifth Amendment challenge to the Government's use of evidence to rebut his *Atkins* claim, and defense counsel has been provided advance notice of the Government's proposed neuropsychological testing to protect Wilson's Sixth Amendment right to counsel. Therefore, Wilson's request to have counsel present during the any portion of the Government's testing is denied.

*Id*.

On May 10, 2019, WILSON filed a second motion requesting the Court to limit the government's Atkins testing of WILSON. ECF No. 918. On May 10, 2019, WILSON also disclosed further testing performed on the defendant that was not previously disclosed by the March 15, 2019 Court deadline. See letter dated

May 10, 2019 attached as Exhibit A.  Although characterized by the defendant as "not part of a neuropsychological test battery," at least one of the tests administered (the Gray Oral Reading Tests - 5th Edition (GORT- 5)) is listed in the Compendium of Neuropsychological Tests.  *See* Exhibit B.  On May 15, 2019, WILSON sent notice that he will not participate in any government evaluation, stating:

> Until the Court resolves the issues outlined in our pending motion, we are advising our client to exercise his Fifth Amendment privilege and not to participate in any government examination.

*See* letter dated May 15, 2019, attached as Exhibit C.

Dr. Denney has scheduled June 11, 2019 through June 13, 2019 to examine WILSON and administer the aforementioned psychological tests approved by the Court.  Dr. Denney does not intend to discuss the circumstances of the murders that form the basis of the capital indictment, but may ask questions concerning WILSON's criminal history that may be germane to an *Atkins* assessment.

## II.   LAW AND ARGUMENT

WILSON's motion is untimely.  The Court's revised Scheduling Order provided:

> **April 3, 2019**: Deadline for Defendants to file objections to the Government's proposed neuropsychological testing;

ECF No. 652.  WILSON's second request to limit government testing was filed on May 10, 2019.  The motion should be denied as untimely.

5

### A. WILSON's Atkins Notice waives privileges related to that claim

WILSON's notice of an *Atkins* claim has waived the privileges that are germane to that claim. By giving notice of his *Atkins* claim, WILSON has put his mental health "in issue" and waived any privilege he may have had as it relates to the *Atkins* claim. *See Simon v. Cook*, 261 Fed. Appx. 873, 886 (6th Cir. 2008), *Fuller v. Kerr*, Case No. 2:13-CV-13171, 2015 WL 1565367 (E.D. MI Apr. 8, 2015) ("Having made these claims and put these aspects of his mental and physical health at issue, Fuller has effectively waived whatever privilege he had to his medical and psychological records"). *See also Kansas v. Cheever*, 571 U.S. 87, 93 (2013), *Buchanan v. Kentucky*, 483 U.S. 402, 423-424 (1987).

In *United States v. Wilson*, 920 F. Supp. 2d 287, 302 (E.D. N.Y. 2012), the District Court rejected the precise claim WILSON makes here. In the *Ronell Wilson* case, the defendant provided the government with notice of its intent to make an *Atkins* claim. *See Wilson*, 920 F. Supp. 2d at 291. The government then provided notice of the nature of the tests the government anticipated administering to the defendant. *Id*. The defendant then filed a motion trying to restrict the scope and conditions of the government's testing. *Id*., at 295. Specifically, the defendant sought to preclude the government's experts from questioning the defendant about (1) his current living situation and activities and (2) his criminal history. The court

6

rejected the limitation about the defendant's "current living situation and activities, and current mental status related issues" holding:

> The court rejects this argument for similar reasons discussed concerning the defense's argument that Dr. Denney should be prevented from using the ABAS-II and Vineland Scales on Wilson because Wilson is currently living in prison. (See Def. Mem. at 6-9.) Although the defense is correct that "[t]he point of an *Atkins* hearing is to determine whether a person was mentally retarded at the time of the crime and therefore ineligible for the death penalty," there is also the possibility that "a person's level of adaptive functioning in the present might provide some information about his abilities during the developmental period."

*Id.*, at 302. In rejecting the limitation concerning the defendant's "criminal history and prison records," the court held:

> However, the Government represents that its "experts . . . disagree with the defendant's assessment of the value of this information," (Gov't Mem. at 27-28), and cites its own literature stating that "[r]ecords regarding a defendant's . . . criminal history . . . can be quite illuminating regarding historical adaptive functioning," Gilbert S. MacVaugh III and Mark D. Cunningham, *Atkins v. Virginia*: Implications and Recommendations for Forensic Practice, J. of Psych. & Law, Vol. 37, at 162 (2009). Moreover, although "[t]he defendant's alleged criminal acts and enterprises do not preclude a holding that [he] is mentally retarded," *Davis*, 611 F. Supp. 2d at 507 (emphasis added), the defense itself asserts that "'willful and/or anti-social behavior' is [ ] evidence that defendant 'has not adapted.'" (Def. Mem. at 14 (*quoting Holladay v. Campbell*, 463 F. Supp. 2d 1324, 1345 (N.D. Ala. 2006), aff'd, 555 F.3d 1346 (11th Cir. 2009)).) Thus, the defense admits that past criminal behavior—which may prove to be willful or ant-social behavior—has at least some relevance to an assessment of adaptive functioning, and there is no reason why the Government's experts should be prevented from collecting that information simply because it is more likely to be helpful than harmful to Wilson's *Atkins* motion. *Cf. Hardy I*, 644 F. Supp. 2d at 751 (refusing to prevent Government from examining defendant regarding his crime). . . .
>
> The court also disagrees with the defense's argument that questioning

7

> Wilson regarding his past crimes would violate his Fifth Amendment privilege against self-incrimination.
>
> Compelling a criminal defendant to submit to a psychiatric examination may violate the Fifth Amendment where the defendant has not placed his mental state at issue. *See, e.g., Estelle v. Smith*, 451 U.S. 454, 468, 101 S. Ct. 1866, 68 L. Ed. 2d 359 (1981). But when the defendant initiates a "defense of mental incapacity or disturbance," he makes a limited waiver of his Fifth Amendment rights that permits the Government to conduct an examination of the defendant as a "rebuttal to the psychiatric defense." *Gibbs v. Frank*, 387 F.3d 268, 274 (2d Cir. 2004) (*citing Buchanan v. Kentucky*, 483 U.S. 402, 107 S. Ct. 2906, 97 L. Ed. 2d 336 (1987))

*Id. See also United States v. Hardy*, 644 F. Supp. 2d 749, 750 (E.D. LA 2008) ("While the Court agrees that the only relevant issue for the *Atkins* hearing is whether Hardy is mentally retarded, the Court will not restrict the scope of the examination"); *United States v. Williams*, 731 F. Supp. 2d 1012, 1017 (D. Haw. 2010) ("When a defendant raises a defense [*Atkins*] that relies on an expert examination of his mental condition, the Fifth Amendment does not protect him from being compelled to submit to a similar examination conducted on behalf of the prosecution or from the introduction of evidence from that examination for the purpose of rebutting the defense"). Accordingly, WILSON's objection should be overruled.

Questioning and evidence of prior criminal conduct may be relevant to an *Atkins* determination. The *Atkins* decision itself demonstrates the relevance of prior criminal conduct in resolving a claim of mental retardation or intellectual disability. *Atkins v. Virginia*, 536 U.S. 304, 318 (2002). Because of their adaptive

8

functioning impairments, defendants with intellectual disability "have diminished capacities to understand and process information, to communicate, to abstract from mistakes and learn from experience, to engage in logical reasoning, to control impulses, and to understand the reactions of others." *Id*. Moreover, the Supreme Court noted, although there is "no evidence that they are more likely to engage in criminal conduct than others, but there is abundant evidence that they often act on impulse rather than pursuant to a premeditated plan, and that in group settings they are followers rather than leaders." *Id.* Courts have also considered the nature, quality, and character of a defendant's prior criminal conduct in making an *Atkins* determination. *See United States v. Jones*, No. 6:10-CR-03090-DGK, 2017 WL 4231511 (W.D. MO Sept. 22, 2017). In *Jones*, in denying the defendant's *Atkins* claim, the court held:

> The Government also introduced investigative reports from investigations into Defendant's prior crimes. These reports document that in order to avoid being convicted Defendant would lie, attempt to shift responsibility for an incident by blaming the victim, or invoke his right to remain silent.
>
> As a whole, these documents show Defendant tends to be a leader, not a follower; that he understands what abstract legal rights are—like the right to remain silent; and that he has the ability to make plans and strategize.

*Id.*, at *9.  *See also See Walker v. Kelly*, 593 F.3d 319, 324-25 (4th Cir. 2010)(criminal history, planning, interaction with law-enforcement, and communicating needs in prison relevant to analysis).

A defendant's ability to navigate his recent or current situation and circumstances may also be relevant to an *Atkins* determination.  A defendant's prison correspondence and writings that show that a defendant is able to communicate cogently, including expressing feelings, giving directions, "requesting legal interventions, and an understanding of concepts, such as constitutional rights" is evidence that a defendant does not have significant limitations of communication or social skills consistent with intellectual disability. *United States v. Umana*, Case 3:08-cr-00134-RJC-DSC (W.D. N.C.), doc. 934 (March 19, 2010), pg. 7-8 and 10-11.  The ability to advocate on your own behalf in a prison setting is evidence of adaptive functioning inconsistent with intellectual disability.  *See Walker v. Kelly*, 593 F.3d 319, 324-25 (4th Cir. 2010) (criminal history, planning, interaction with law-enforcement, and communicating needs in prison relevant to analysis); *Prieto v. Zook*, 791 F. 3d 465, 470 (4th Cir. 2015)("The jury learned that Prieto had written his own prison grievances challenging his lack of access to recreation and had filed a pro se legal challenge to the conditions of his confinement on Virginia's death row.  In these documents, Prieto employed accurate legal terminology and to prepare them, he conducted

10

self-directed legal research"). It is also appropriate to look to an inmate's spelling, punctuation, grammar, thought and syntax in assessing adaptive functioning abilities. *See Webster v. Davis*, 784 F. 3d. 1123, 1134 (7th Cir. 2015) (forms defendant filled out provide direct evidence of his abilities). The filing of lawsuits from prison, as well as grievances, demonstrates adaptive behavior skills inconsistent with intellectual disability, even if drafted by others at an inmate's request. *See Jackson v. Norris*, 2016 U.S. Dist. LEXIS 61122 * 60. (E.D. Ark. 2016).

WILSON's legal citations also pre-date the Supreme Court's sweeping decision in *Kansas v. Cheever*, 571 U.S. 87 (2013). In *Cheever*, the defendant complained the court violated his Fifth Amendment privilege by allowing the government to introduce the results of a prior mental health examination to rebut his intoxication defense. The defendant was charged with a federal capital offense for the murder of a law-enforcement officer. He gave notice that he intended to "introduce expert evidence relating to his intoxication by methamphetamine at the time of the" crime. *Cheever*, 571 U.S. at 90. The District Court ordered Cheever to submit to a psychiatric evaluation by a government expert. The federal authorities later dismissed the federal charges and the defendant was charged with a state capital offense. At the separate state capital trial, the defense presented a voluntary intoxication defense. The government was then permitted, over the

defendant's objection, to present the federal expert who had examined Cheever to show that the defendant murdered the officer "because of his antisocial personality, not because his brain was impaired by methamphetamine." *Id*., at 92.  The Kansas Supreme Court ruled that "the State had violated his Fifth Amendment rights when it introduced, through [the government's expert] testimony, statements that he had made during the federal court-ordered mental examination." The Supreme Court reversed, holding:

> Although the Kansas Supreme Court acknowledged that the State may present evidence obtained from a compelled psychiatric examination when "the defendant presents evidence at trial that he or she lacked the requisite criminal intent due to mental disease or defect," 295 Kan., at 249, 284 P. 3d, at 1023, it reasoned that voluntary intoxication is not a "mental disease or defect" as a matter of state law, id., at 250, 284 P. 3d, at 1023-1024 (citing State v. Kleypas, 272 Kan. 894, 40 P. 3d 139 (2001)). The court therefore concluded that "Cheever did not waive his Fifth Amendment privilege and thus permit his court ordered examination by Dr. Welner to be used against him at trial." 295 Kan., at 251, 284 P. 3d, at 1024.
>
> This reasoning misconstrues our precedents. Although Kansas law defines "mental disease or defect" narrowly, to exclude voluntary intoxication, that phrase is actually not the salient one under our precedents.  In *Buchanan*, we permitted rebuttal testimony where the defendant presented evidence of "the 'mental status' defense of extreme emotional disturbance." 483 U.S., at 423, 107 S. Ct. 2906, 97 L. Ed. 2d 336. And "mental status" is a broader term than "mental disease or defect," at least to the extent that Kansas law excludes voluntary intoxication from that definition. Mental status defenses include those based on psychological expert evidence as to a defendant's mens rea, mental capacity to commit the crime, or ability to premeditate. Defendants need not assert a "mental disease or defect" in order to assert a defense based on "mental status."

*Id*., at 95-96.

### B. WILSON's reliance upon Fed. R. Crim. Proc. 12.2 is misplaced

WILSON wrongly relies upon Federal Rule of Criminal Procedure 12.2. Rule 12.2 simply does not apply, by its express terms, to an *Atkins* claim or to the examination of a defendant in rebuttal to an *Atkins* claim.

Federal Rule of Criminal Procedure 12.2 is clear. It provides:

> (b) Notice of Expert Evidence of a Mental Condition. If a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on either (1) the issue of guilt or (2) the issue of punishment in a capital case, the defendant must— within the time provided for filing a pretrial motion or at any later time the court sets--notify an attorney for the government in writing of this intention and file a copy of the notice with the clerk. The court may, for good cause, allow the defendant to file the notice late, grant the parties additional trial-preparation time, or make other appropriate orders.
>
> (c) Mental Examination.
> (1) Authority to Order an Examination; Procedures.
> (A) The court may order the defendant to submit to a competency examination under 18 U.S.C. § 4241.
> (B) If the defendant provides notice under Rule 12.2(a), the court must, upon the government's motion, order the defendant to be examined under 18 U.S.C. § 4242. If the defendant provides notice under Rule 12.2(b) the court may, upon the government's motion, order the defendant to be examined under procedures ordered by the court.

As the court in the *Ronell Wilson* case noted, the 2002 Advisory Committee Notes accompanying Rule 12.2 makes clear that 12.2 applies to the penalty phase of a capital trial and not an *Atkins* hearing:

> The proposed change in Rule 12.2(c)(2) adopts the procedure used by some courts to seal or otherwise insulate the results of the examination until it is clear that the defendant will introduce expert evidence about his or her mental condition at a capital sentencing hearing; i.e., after a verdict of guilty

on one or more capital crimes, and a reaffirmation by the defendant of an intent to introduce expert mental-condition evidence in the sentencing phase.

Comm. Notes on Rules—2002 Amendments (*citing United States v. Beckford*, 962 F. Supp. 748 (E.D. Va. 1997)). *See also*, *United States v. Ronell Wilson*, No. 1:04-cr-01016-NGG (E.D. N.Y. Feb. 13, 2012), ECF No. 625, pg. 6.

In *United States v. Ronell Wilson*, No. 1:04-cr-01016-NGG (E.D. N.Y.), the FDPA capital defendant argued:

> We have already argued in this memorandum why Rule 12.2 does not apply to a claim of mental retardation litigated in an *Atkins* hearing, and why the jointly proposed *Atkins* schedule provides at least as much notice and discovery with respect to that claim as Rule 12.2 would.

Opposition to Government's Motion for 12.2 Discovery, *United States v. Ronell Wilson*, No. 1:04-cr-01016-NGG (E.D. N.Y.), ECF No. 612, pg. 9 (Jan. 27, 2012). The Court agreed, holding:

> The court agrees that the proceedings surrounding Defendant's claim of mental retardation under *Atkins* are prior to and distinct from the "capital sentencing proceeding[s]" that Rule 12.2 contemplates. . . . The court finds that this phrase—"capital sentencing proceeding"—as used in Rule 12.2 was intended to refer to the penalty phase of a capital trial, not to an *Atkins* proceeding.

Memorandum and Order, *United States v. Ronell Wilson*, No. 1:04-cr-01016-NGG (E.D. N.Y.), ECF No. 625, pg. 6 (Feb. 13, 2012), attached as Exhibit D.

    **C.**    **WILSON is Not Entitled to an Order Sealing any Atkins Information From any Future Use**

WILSON further argues that by "providing *Atkins* notice, Mr. Wilson did not waive his rights under FRCP 12.2(c) and the Fifth and Sixth Amendments." Defendant is wrong as a matter of law, ignores the clear rulings of this Court, and seeks to re-litigate matters decided by the Court. In support of that statement, WILSON cites to five cases. None of those cases, however, deal with an *Atkins* claim and all of them are inapposite.[1] Moreover, Federal Rule of Criminal Procedure 12.2 by its express language does not apply to an *Atkins* hearing. Likewise, the Fifth Amendment does not shield him from submitting to a government examination. *Williams*, 731 F. Supp. 2d at 1017 ("When a defendant raises a defense [*Atkins*] that relies on an expert examination of his mental condition, the Fifth Amendment does not protect him from being compelled to submit to a similar examination conducted on behalf of the prosecution or from the

---

[1] *See Powell v. Texas*, 492 U.S. 680, 684 (1989) (future dangerousness psychiatric evidence obtained without notice to defense counsel); *United States v. Hall*, 152 F.3d 381, 398 (5th Cir. 1998) (rejecting defense claim that "district court erred in conditioning his right to present psychiatric evidence in mitigation of punishment upon his submission to a government psychiatric examination prior to trial"); *Brown v. Butler*, 876 F.2d 427, 430 (5th Cir. 1989) (defense doctor's testimony concerning defendant's seizures "cannot be fairly characterized as expert mental-status evidence" permitting psychiatric rebuttal); *Gibson v. Zahradnick*, 581 F.2d 75, 80 (4th Cir. 1978) (government improperly presented psychiatrist's testimony "only on the issue of guilt and not at all on the issue of sanity"); *People v. Diaz*, 3 Misc.3d 686, 694, 777 N.Y.S.2d 856, 863 (Sup. Ct. 2004) (presentation of lay witness testimony to prove extreme emotional disturbance defense does not give rise to government examination).

introduction of evidence from that examination for the purpose of rebutting the defense"); *Wilson*, 920 F. Supp. 2d at 302.

In fact, the *United States v. Hall* case cited by WILSON does not support his position but, rather, supports the government's position. 152 F.3d at 398. In *Hall*, the Fifth Circuit Court of Appeals found no abuse of discretion in any of the district court's evidentiary rulings regarding the presentation of psychiatric evidence. The defendant complained that "district court erred in conditioning his right to present psychiatric evidence in mitigation of punishment upon his submission to a government psychiatric examination prior to trial." *Hall*, 152 F.3d at 398. The defendant argued that "district court could not properly compel him to undergo a government psychiatric examination as a condition upon his being allowed to introduce psychiatric evidence at sentencing because doing so unconstitutionally forced him to choose between exercising his Fifth Amendment privilege against self-incrimination and his Eighth Amendment right to present evidence in mitigation of punishment." *Id*. The Fifth Circuit disagreed. The Court held:

> This court has long recognized that "a defendant who puts his mental state at issue with psychological evidence may not then use the Fifth Amendment to bar the state from rebutting in kind." This rule rests upon the premise that "it is unfair and improper to allow a defendant to introduce favorable psychological testimony and then prevent the prosecution from resorting to the most effective and in most instances the only means of rebuttal: other psychological testimony."

16

*Id.* (citations omitted). The defendant then asked the court to seal the results of the examination until the penalty phase of trial "in order to adequately safeguard his Fifth Amendment privilege against self-incrimination. *Id*. The Fifth Circuit found that argument lacking in merit. *Id*., at 399. In so holding, the Court held:

> The only specific safeguard that Hall requested in his motion opposing the government's request for a psychiatric examination and oral argument on this motion was the sealing of the results of the examination until the penalty phase of his trial. Hall has cited several cases in which district courts have imposed such a safeguard. *See United States v. Beckford*, 962 F. Supp. 748, 761 (E.D. Va. 1997); *United States v. Haworth*, 942 F. Supp. 1406, 1408-09 (D.N.M. 1996); *United States v. Vest*, 905 F. Supp. 651, 654 (W.D. Mo. 1995). While we acknowledge that such a rule is doubtless beneficial to defendants and that it likely advances interests of judicial economy by avoiding litigation over whether particular pieces of evidence that the government seeks to admit prior to the defendant's offering psychiatric evidence were derived from the government psychiatric examination, we nonetheless conclude that such a rule is not constitutionally mandated.

*Id.* Accordingly, the Court should deny WILSON's second request to limit the government's examination.

## **Conclusion**

The government requests the Court deny WILSON's second request to limit government testing for the purpose of assessing his intellectual disability claim for the *Atkins v. Virginia* hearing scheduled for July 18, 2019. The motion raises no new issues not previously litigated by the court in WILSON's first objection to the government's testing. ECF No. 860.

       Respectfully submitted,

       MATTHEW SCHNEIDER
       United States Attorney


    By *s/James Peterson*
       James Peterson
       Bar ID: VA 35373
       Trial Attorney
       Capital Case Section
       Criminal Division
       United States Department of Justice
       1331 F Street, N.W.
       6th Floor
       Washington, DC 20530
       James.D.Peterson@usdoj.gov
       Phone: (202) 353-0796
       Fax (202) 353-9779

       LOUIS CRISOSTOMO
       ROBERT MORAN
       Assistant United States Attorneys
       211 W. Fort Street, Suite 2001
       Detroit, MI 48226
       (313) 226-9100

## CERTIFICATE OF SERVICE

 I hereby certify that on the 17th day of May 2019, a true and correct copy of the foregoing document was filed with the Court using the Court's CM/ECF systems and was served upon each attorney of record via ECF notification.


       */s/ James D. Peterson*
       James D. Peterson
       Trial Attorney