UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

EDWIN MILLS, et al.,

    Defendants.
_____/

Case No. 16-cr-20460

HON. MARK A. GOLDSMITH

## ORDER DENYING DEFENDANT CARLO WILSON'S MOTION REGARDING THE GOVERNMENT'S NEUROPSYCHOLOGICAL EXAMINATION (Dkt. 918)

This matter is before the Court on Defendant Carlo Wilson's motion for an order limiting the scope of the Government's neurological examination of Wilson, limiting the use of any evidence derived from the examination, and permitting audio and video recording of any interview portion of the examination (Dkt. 918). The Government filed a response in opposition to the motion (Dkt. 923), to which Wilson replied (Dkt. 929). For the reasons stated below, the Court denies the motion.

On December 12, 2018, the Court amended the Group Two Defendants' scheduling order and set a briefing schedule for any motion seeking relief under Atkins v. Virginia, 536 U.S. 304 (2002), and its progeny. See 12/12/2018 Order (Dkt. 652). As part of the new schedule, if one or both of the Group Two Defendants filed a notice of an Atkins claim by March 15, 2019, the Government was directed to file a memorandum by March 27, 2019, which would identify the neuropsychological experts upon whom it intends to rely in opposition to any Atkins motions, include those experts' curricula vitae, and give notice of the type and scope of the proposed neuropsychological testing. See 12/12/2018 Order at 1-2. Defendants were then afforded an

1

opportunity to file objections to the Government's proposed neuropsychological testing by April 3, 2019, and the Government could respond to those objections by April 10, 2019. Id. at 2.

In accordance with this schedule, after Defendant Carlo Wilson filed a notice of an Atkins claim (Dkt. 814), the Government filed its memorandum (Dkt. 849), setting forth numerous tests that its expert—Dr. Robert L. Denney, Psy.D., ABPP—proposes to conduct. Included among those tests are the Minnesota Multiphasic Personality Inventory-2-RF, the Adaptive Behavior Assessment System-3 Self-Report, and Performance Validity Testing. The Government also requested that Wilson disclose the results and raw data of the testing his experts performed.

Wilson filed objections to those three tests, as well as opposing the Government's disclosure request (Dkt. 860). Wilson also requested that defense counsel be present during all or some of the Government's neuropsychological testing, and that the Government's testing be video recorded. The Government then responded (Dkt. 870), and Wilson replied (Dkt. 876). At the Court's direction, the Government filed a supplemental brief with the scholarly literature alluded to by Dr. Denney regarding third-party observers and their effects on testing validity (Dkt. 892), to which Wilson replied (Dkt. 908).

On May 6, 2019, the Court denied the Government's disclosure request, overruled Wilson's testing objections, and denied Wilson's requests. See generally United States v. Mills, No. 16-cr-20460, 2019 WL 1987315 (E.D. Mich. May 6, 2019).

Wilson is now requesting an order that (i) limits the scope of the Government's neuropsychological examination to determining whether Wilson has an intellectual disability only, (ii) limits the use of any evidence derived from the Government's examination to the Atkins hearing only; and (iii) permits audio and video recording of any interview portion of the Government's examination. The Court will address and reject each issue in turn.

**A. Limiting the Scope of the Government's Neuropsychological Examination**

First, Wilson requests an order limiting the scope of the Government's neurological examination "to the question of whether Mr. Wilson is a person with [an intellectual disability]." Def. Mot. at PageID.8752. Wilson intimates that the Government has virtually unfettered access to Wilson, and that an order restricting that access is necessary for Wilson to "protect[] his rights before they are violated." Id. The Court disagrees.

In its May 6, 2019 order, the Court held that, by filing his Atkins notice, Wilson made a limited waiver of his Fifth Amendment rights that permits the Government to conduct a neuropsychological examination of Wilson to specifically rebut his intellectual disability claim. Wilson, 2019 WL 1987315, at *4-5 (citing United States v. Moore, No. 07-161, 2008 WL 1944810, at *3 (E.D. Ark. May 2, 2008); United States v. Johnson, 362 F. Supp. 2d 1043, 1088 (N.D. Iowa 2005); United States v. Sampson, 335 F. Supp. 2d 166, 247 (D. Mass. 2004)). The Court further held that if "any interview or examination poses a risk to Wilson's Fifth Amendment rights beyond the purposes of rebutting his intellectual disability claim, this can be easily addressed through post-examination motions." Id. (citing United States v. Wilson, 920 F. Supp. 2d 287, 303-304 (E.D.N.Y. 2012)) (emphasis added). Thus, the Court already addressed the proper scope of the Government's neuropsychological examination—for the purpose of rebutting Wilson's intellectual disability claim—and that any questioning or testing allegedly exceeding this scope would be addressed in post-examination motions.[1] Because an order restating what the Court has already held is unnecessary, this request is denied.

---

[1] Wilson appears to suggest that any questions or testing exceeding the scope of examination into whether he has an intellectual disability would violate his Fifth Amendment rights. See Def. Mot. at PageID.8752. Of course, the mere collection of information during a neurological examination exceeding its proper scope would not violate Wilson's privilege against self-incrimination under

3

### B. Limiting the Use of Evidence Derived from the Government's Neuropsychological Examination

Second, Wilson argues that neither the information derived from the Government's neuropsychological examination nor the fruits of such information may be used beyond the Atkins hearing itself. Def. Mot. at PageID.8753; see also id. at PageID.8756 ("[S]tatements made by a defendant in the course of a government Atkins evaluation cannot be used against him at trial[.]"). Accordingly, Wilson requests an order similar to the one issued in United States v. Sablan, No. 1:08-cr-259 (E.D. Cal.):

> In accordance with Federal Rules of Criminal Procedure, Rule 12.2(c)(4), no statement made by the defendant in the course of the examination, no testimony by the expert of the plaintiff based on such statement, and no other fruits of such statement may be admitted into evidence against the defendant in a criminal proceeding, except on the issue of the mental condition of the defendant if counsel for the defendant has introduced evidence of intellectual disability/mental retardation in a pre-trial Atkins hearing or capital sentencing proceeding.

12/9/2013 Order, Ex. 1 to Def. Mot. (Dkt. 918-1).[2]

The Court agrees with Wilson that, in accordance with his privilege against self-incrimination under the Fifth Amendment, the Government's use of any evidence derived from its

---

the Fifth Amendment. See Wilson, 920 F. Supp. 2d at 304 ("Wilson's Fifth Amendment rights will not be endangered simply by the experts' collection of information of his past crimes.").

[2] In its response, the Government contends that Wilson's reliance on Rule 12.2 is misplaced because that rule does not apply to proceedings under Atkins. Gov't Resp. at 13-14. While there is case law that appears to support the Government's position, see, e.g., United States v. Northington, No. 05-550-05, 2012 WL 2873360, at *5 (E.D. Pa. July 12, 2012) ("The procedure used by district courts that have considered Atkins claims does not logically fit within the framework established by Rule 12.2(c)."); United States v. Wilson, No. 04-CR-1016, at *6 (E.D.N.Y. Feb. 13, 2012), Ex. 4 to Gov't Resp. (Dkt. 923-4) ("The court finds that this phrase—"capital sentencing proceeding"—as used in Rule 12.2 was intended to refer to the penalty phase of a capital trial, not to an Atkins proceeding."), the Court need not resolve this issue today. Because "the purpose of Rule 12.2(c) is to secure the defendant's Fifth Amendment right against self-incrimination," United States v. Leonard, 609 F.2d 1163, 1165 (5th Cir. 1980), the Court's analytical focus is on Wilson's rights under the Fifth Amendment.

neuropsychological examination of Wilson is limited to rebutting evidence of his purported intellectual disability. See Hernandez v. Davis, 750 F. App'x 378, 383 (5th Cir. 2018) ("[B]y relying on the testimony of a mental-health expert who has examined him, the defendant waives his Fifth Amendment privilege. Nonetheless, the scope of that waiver is limited to the issue raised by the defense, and any testimony about the court-ordered psychiatric evaluation cannot go beyond this limited rebuttal purpose." (citation and quotation marks omitted)); Gibbs v. Frank, 387 F.3d 268, 274 (3d Cir. 2004) (when a defendant initiates a trial defense of mental incapacity or disturbance, his or her limited Fifth Amendment waiver "only allows the prosecution to use [a compelled psychiatric interview] to provide rebuttal to the psychiatric defense"); Savino v. Murray, 82 F.3d 593, 604 (4th Cir. 1996) ("[A] defendant has no Fifth Amendment protection against the introduction of mental health evidence in rebuttal to the defense's psychiatric evidence."). And if Wilson intends to present evidence of his intellectual disability during the Atkins hearing only, the Government's use of its rebuttal evidence would be similarly limited. See Kansas v. Cheever, 571 U.S. 87, 97 (2013) (noting that "[n]othing in our precedents suggests that a defendant opens the door to the admission of psychiatric evidence on future dangerousness by raising an insanity defense at the guilt stage of the trial").

Wilson, however, has not indicated whether or not he would use any intellectual disability evidence during either the guilt or penalty phase of the trial, in addition to the Atkins hearing. Indeed, the language in Sablan order above—which Wilson requests here—recognizes that the Government's rebuttal evidence could be used beyond an Atkins hearing if defense counsel introduces evidence of intellectual disability during a capital sentencing proceeding. See also Def. Objs. at 21 ("[N]either the information derived from an evaluation of Mr. Wilson nor fruits from such information may be used unless and until the Defense first opens the door by introducing

5

expert mental health evidence <u>at guilt or sentencing</u> and the Court finds that the Government's evidence is proper rebuttal within the meaning of FRCP 12.2 and the Fifth Amendment." (emphasis added)). Therefore, Wilson's request for an order limiting the use of the Government's examination evidence to the <u>Atkins</u> hearing only is premature and denied without prejudice.

### C. Audio and Video Recording of Any Interview Portion of the Government's Neuropsychological Examination

Last, Wilson requests an order permitting the audio and video recording of any Government questioning of Wilson during the interview portion of the examination, as distinct from the administration of the neurological testing battery itself. <u>See</u> Def. Mot. at PageID.8757. According to Wilson, "[t]here is no legitimate argument that audio recording of any questioning by the Government Expert of Mr. Wilson when the neuropsychologist is not administering any test associated with the neuropsychological battery will affect the integrity of the testing or the results." <u>Id.</u> at PageID.8758. In his motion, Wilson claims that he previously raised the issue of audio recording, but the Court only addressed video recording in its previous order. <u>See</u> Def. Mot. at PageID.8757-8758. The Government did not expressly address this request in its response.[3]

To begin, Wilson is correct that, in addition to his initial request to video record the Government's neurological testing, he also requested audio recording of that testing—raised for the first time in his supplemental reply. <u>See</u> Def. Supp. Reply at 10, 15 (Dkt. 908). Wilson is also correct that the Court only addressed and denied his request to videotape the Government's testing. <u>See</u> <u>Wilson</u>, 2019 WL 1987315, at *6-7. However, for the same reasons the Court denied video

---

[3] The Government did state that Wilson's second motion to limit the Government's testing was filed on May 10, 2019—over a month after the deadline to file objections on April 3, 2019—and, therefore, should be denied as untimely. Gov't Resp. at 5; <u>see also</u> <u>id.</u> at 17 ("The motion raises no new issues not previously litigated by the Court in WILSON's first objection to the government's testing.").

recording—the potential impact a nonhuman observer may have on an examinee's performance during neuropsychological testing, and the fact that Wilson's Fifth and Sixth Amendment rights would not be violated in the absence of a third-party observer, see id. at *7—the Court would have, and now expressly does, deny any request to audio record the Government's testing.

Next, it is unclear from his initial objections to the Government's proposed testing whether Wilson's video-recording request related to the Government's neuropsychological examination in its entirety, which would include any interview portion, or just the testing component itself. See Def. Objs. at 23 ("The Defense also requests that any Government examination be videotaped. . . . In fact, videotaping of government mental condition examinations has been ordered in numerous other cases, as well as in this district." (emphasis added)). Although Wilson's reply did not provide any clarification, his supplemental reply clearly indicated that he sought video and audio recording of the neurological testing only. See Def. Supp. Reply at 10 (Dkt. 908) ("There is no basis on which the Court should refuse to order the audio-videotaping of the Government's testing of Mr. Wilson as it relates to Atkins." (emphasis added)); see also id. at 15 ("[T]his Court should permit a third party observer to be present during the Government's administration of a neuropsychological test battery to Mr. Wilson and allow for it to be audio and video-recorded so as to protect Mr. Wilson's Fifth and Sixth Amendment rights." (emphasis added)).

Based on the actual language Wilson used in his briefing, the Court finds that Wilson only sought video and audio recording of the Government's neuropsychological testing. Because Wilson fails to explain why his new request for audio and video recording of any interview portion of the Government's examination was not raised when his objections were originally due on April 3, 2019, the Court finds that Wilson's request in untimely and, therefore, is denied. And, in any

7

event, the Court finds that Wilson has not demonstrated why the recording of the interview portion of the examination is necessary to protect his Fifth and Sixth Amendment rights.

SO ORDERED.

Dated: June 3, 2019  
     Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge