UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    Case No. 16-cr-20460

    HON. MARK A. GOLDSMITH

EDWIN MILLS, et al.,

    Defendants.
_____/

**ORDER DENYING THE GOVERNMENT'S MOTION TO COMPEL PRODUCTION OF RAW DATA AND INFORMATION PROVIDED TO DEFENSE EXPERTS (Dkt. 942), AND ORDERING MUTUAL EXCHANGE OF INFORMATION ON JUNE 28, 2019**

On December 12, 2018, the Court amended the Group Two Defendants' scheduling order and set a briefing schedule for any motion seeking relief under Atkins v. Virginia, 536 U.S. 304 (2002), and its progeny. See 12/12/2018 Order (Dkt. 652). If one or both of the Group Two Defendants anticipated seeking relief under Atkins, they were required to first file a notice by March 15, 2019. Id. at 1. The deadline for then filing a motion seeking relief under Atkins, including the disclosure of expert reports, was May 28, 2019. Id. at 2. The deadline for the Government to file a response to an Atkins motion is June 27, 2019. Id.

In accordance with this new schedule, Defendant Carlo Wilson timely filed a notice of an Atkins claim (Dkt. 814), as well as his motion seeking relief under Atkins, including expert reports (Dkt. 930), which referenced results of neuropsychological tests and adaptive behavior analyses. According to the Government, these reports also referenced information Wilson provided defense experts.

The Government has filed a motion to compel Wilson to disclose the raw data generated by his defense experts, as well as records and information Wilson provided to the defense experts

1

(Dkt. 942). Wilson filed a response in opposition to the motion (Dkt. 959), suggesting that the parties mutually exchange raw data and documents on June 28, 2019, to which the Government replied (Dkt. 964). For the reasons stated below, the Court denies the Government's motion and orders the parties to exchange Atkins-related testing information, including all raw data underlying the experts' evaluations and analyses, as well as documents parties provided to the experts, on June 28, 2019.[1]

### A. Disclosure of Raw Data Generated by Defense Experts' Neuropsychological Testing of Wilson

Regarding its request for the raw data underlying the defense experts' testing, the Government offers several reasons of why this information is important. For example, Dr. Hunter concludes that Wilson has a Full-Scale IQ score of 46, and, with a "Flynn" correction, the IQ value is 43. See Gov't Mot. at 8-9 (Dkt. 942). The Government claims it needs the underlying data because a National Academy of Science publication suggests that a person with an IQ score of 46 would require assistance in situations and support (such as living in a group home), which is inconsistent with Wilson's observed functioning. Id. at 9.

However, the Government previously requested the disclosure of neuropsychological testing results and raw data. See Gov't Mem. at 9-11 (Dkt. 849). The Court denied that request on May 6, 2019. United States v. Mills, No. 16-cr-20460, 2019 WL 1987315, at *1-2 (E.D. Mich. May 6, 2019). Because it did not timely or properly seek reconsideration of that order under the Local Rules, see E.D. Mich. LR 7.1(h) (discussing timing and grounds for reconsideration), the Government has failed to demonstrate that it is entitled to this raw data. Therefore, this request is denied.

---

[1] Because oral argument will not aid the Court's decisional process, the Government's motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2).

**B. Disclosure of Documents and Information Wilson Provided Defense Experts**

Regarding its request for the documents and information Wilson provided the defense experts, the Government offers more examples to explain why this information is relevant and should be disclosed. For instance, Wilson disclosed Social Security Administration records to his experts. Govt' Mot. at 11. The Government claims that, depending on the content of these records, they may provide either support or rebuttal to a claim of intellectual disability. Id. at 11-12.

In support of its request, the Government contends that these documents must be disclosed in accordance with this Court's January 2, 2019, opinion, see id. at 4, 12-13, in which the Court ordered "Defendants to produce copies to the Government of any documents obtained through a [Federal Rule of Criminal Procedure 17(c)] subpoena or court order that they intend to introduce at trial at the same time they make their Rule 16 discovery available to the Government," United States v. Mills, No. 16-cr-20460, 2019 WL 76869, at *7 (E.D. Mich. Jan. 2, 2019). However, as Wilson notes in his response, the documents and information he provided defense experts were not obtained pursuant to a court order or Rule 17(c) subpoena. See Def. Resp. at 2 (Dkt. 959). Moreover, the Court's opinion clearly directed the disclosure of documents that Defendants intend to introduce at trial; the Court did hold that production was mandated for a pre-trial Atkins hearing. Therefore, the Government's reliance on the Court's January 2, 2019, opinion is misplaced.

The Government also argues that these documents are discoverable under Federal Rule of Criminal Procedure 16(b) because this information "will inevitably by [sic] used at a penalty phase hearing." Gov't Mot. at 15 ("'Trial' includes both the guilty and penalty phases of a capital trial."). The Court finds this argument unavailing.

When it comes to information that a defendant is required to disclose, Rule 16(b)(1) provides:

(A) Documents and Objects.  If a defendant requests disclosure under Rule 16(a)(1)(E) and the government complies, then the defendant must permit the government, upon request, to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items if:

(i) the item is within the defendant's possession, custody, or control; and

(ii) the defendant intends to use the item in the <u>defendant's case-in-chief at trial</u>.

(B) Reports of Examinations and Tests.  If a defendant requests disclosure under Rule 16(a)(1)(F) and the government complies, the defendant must permit the government, upon request, to inspect and to copy or photograph the results or reports of any physical or mental examination and of any scientific test or experiment if:

(i) the item is within the defendant's possession, custody, or control; and

(ii) the defendant intends to use the item in the <u>defendant's case-in-chief at trial</u>, or intends to call the witness who prepared the report and the report relates to the witness's testimony.

(C) Expert witnesses.--The defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence <u>at trial</u>, if--

(i) the defendant requests disclosure under subdivision (a)(1)(G) and the government complies; or

(ii) the defendant has given notice under Rule 12.2(b) of an intent to present expert testimony on the defendant's mental condition.

This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Fed. R. Crim. P. 16(b)(1) (emphasis added).

Based on their plain language, subsections (A) and (B) of Rule 16(b)(1) do not apply until after the Government has complied with the defendant's request for disclosure under Rule 16(a)(1)

4

and the defendant intends to use the item during his or her case-in-chief at trial. The defendant's obligation to disclose a written summary of an expert witness—i.e., an expert report—under Rule 16(b)(1)(C), on the other hand, may be implicated when a defendant provides notice of an intent to present expert testimony regarding an intellectual disability. Compare United States v. Northington, No. 07-550-05, 2012 WL 2873360, at *4 (E.D. Pa. July 12, 2012) (holding that a notice under Rule 12.2(b) of an intellectual disability claim "triggers the Government's right under Rule 16(b)(1)(C) to request a summary of the expert testimony Defendant intends to use at trial"), with United States v. Beckford, 962 F. Supp. 748, 754 (E.D. Va. 1997) (noting that Rules 12.2 and 16(b)(1) do not explicitly apply to the penalty phase of a capital case).

Here, the Government is not requesting disclosure of expert reports under Rule 16(b)(1)(C). See Gov't Mot. at 16-17. Rather, it seeks documents and information under Rule 16(b)(1)(A) and (B). Id. Thus, this discovery could only be disclosed if Wilson intends to use it during his case-in-chief at trial. But in his response, Wilson states that he "has not endorsed any of his Atkins experts as witnesses for his case-in-chief at trial or during any potential sentencing phase." Def. Resp. at 8-9. Nor has he "given notice of anything that he intends to offer at trial or potential sentencing hearing and is not required to do so until he knows that he will make such an offering." Id. at 9. Therefore, the Court denies the Government's request for documents and information.

Accordingly, the Government's motion to compel is denied.

**C. Wilson's Proposed Mutual Exchange of Information on June 28, 2019**

Wilson proposed a stipulation for the parties to exchange information, including raw data and documents produced to experts, on June 28, 2019. Def. Resp. at 3 & n.4, 5-6. Although the Government claims that it and its expert "cannot adequately prepare for the July 18, 2019 hearing

5

without the requested records," Gov't Mot. at 17-18, the Court finds that the June 28 exchange date—almost three weeks before the Atkins hearing—provides more than sufficient time for the parties and their experts to assess and challenge each other's conclusions based on the raw data and information, which can be presented during the experts' testimony at the hearing.

Moreover, in its reply, the Government states that it has now agreed to stipulate to the exchange of documents provided to the experts, as well as the raw data upon which the experts' opinions were based. See Gov't Reply at 4. According to the Government, however, Wilson is not agreeing "to produce all raw data, but only that generated by their experts." Id. at 2.

In exercising its inherent authority to regulate procedure and discovery, the Court orders the parties to exchange Atkins-related testing information, including all raw data underlying the experts' evaluations and analyses, as well as documents parties provided to the experts, on June 28, 2019. See United States v. Catalan Roman, 376 F. Supp. 2d 108, 114-115 (D.P.R. 2005) ("Regardless of whether Rule 16 is inapplicable on its own terms or because defendants never triggered it, it is well-settled that district courts have inherent power to make and enforce reasonable rules of procedure, including disclosure rules." (citing Carlisle v. United States, 517 U.S. 416, 425-426 (1996))); see also Fed. R. Crim. P. 57(b) (providing that when there is no controlling law, "[a] Judge may regulate practice in any manner consistent with federal law, these rules, and local rules of the district"); Fed. R. Crim. P. 16 advisory committee's note ("The rule is intended to prescribe the minimum amount of discovery to which the parties are entitled. It is not intended to limit the judge's discretion to order broader discovery in appropriate cases.").

SO ORDERED.

Dated: June 26, 2019　　　　　　　　　　　　　　　　s/Mark A. Goldsmith
　　　Detroit, Michigan　　　　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge