UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

                                    Case No. 16-cr-20460

v.

                                    HON. MARK A. GOLDSMITH

EDWIN MILLS, et al.,

       Defendants.

_____/

## OPINION & ORDER
## DENYING DEFENDANTS EDWIN MILLS AND CARLO WILSON'S JOINT MOTIONS REGARDING THE CONSTITUTIONALITY OF THE FEDERAL DEATH PENALTY (Dkt. 789) AND THE FEDERAL DEATH PENALTY ACT (Dkts. 773, 787, 788, 790)

       This criminal case involves multiple defendants, all of whom have been charged with violating the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. Defendants Edwin Mills and Carlo Wilson have filed several joint motions, arguing that the federal death penalty in general is unconstitutional (Dkt. 789), and that the Federal Death Penalty Act of 1994 ("FDPA"), 18 U.S.C. § 3591 et seq., in particular is unconstitutional (Dkts. 773, 787, 788, 790). The Government filed responses in opposition to these five motions (Dkts. 798, 793, 799, 815, 800, respectively), to which Defendants replied (Dkts. 836, 833, 837, 839, 838, respectively).[1] For the reasons stated below, the Court denies Defendants' motions.

### I. BACKGROUND

       A federal grand jury returned a second superseding indictment on February 28, 2018, charging the eleven defendants in this case with various crimes, including violations of RICO. See

---

[1] Because oral argument will not aid the Court's decisional process, Defendants' motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2).

generally 2d Superseding Indictment (Dkt. 292).[2]  That indictment claims that Defendants were members and associates of a criminal enterprise—the "6 Mile Chedda Grove" street gang in Detroit—one of whose purposes was to "preserv[e] and protect[] the power, territory, reputation, and profits of the enterprise through murder, robberies, intimidation, violence, and threats of violence." Id. at 2, 6.  The enterprise purportedly operated on the east side of Detroit within an area bordered roughly by East McNichols Road to the north, Kelly Road to the east, Houston-Whittier Street to the south, and Chalmers Street to the west.  Id. at 2.  The "Chedda Grove" part of the enterprise's name is partially derived from one of the main streets in this territory—Cedargrove Street.  Id.

The indictment further alleges that the enterprise's profits derived primarily from the sale and distribution of controlled substances, including crack cocaine, heroin, and morphine.  Id. at 5.  The sale and distribution alleged were not limited to Michigan; gang members and associates purportedly sold and distributed controlled substances in Ohio, Kentucky, Tennessee, Alabama, and West Virginia.  Id.

Defendants Edwin Mills and Carlo Wilson have each been charged with one count of racketeering conspiracy in violation of 18 U.S.C. § 1962(d) (Count One); two counts of murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1) (Count Eight involves victim A.T.; Count Ten involves victim S.H.); two counts of using and carrying a firearm during and in relation to a crime of violence causing death in violation of 18 U.S.C. §§ 924(c) and 924(j) (Count Nine involves victim A.T.; Count Eleven involves victim S.H.); two counts of assault with a dangerous weapon in aid of racketeering in violation of 18 U.S.C. § 1959(a)(3) (Count Twelve involves

_____

[2] Nine of the eleven defendants have since pleaded guilty.  These nine defendants include Mario Jackson, Michael Richardson, Corey Mills, Devontae Russell, Phillip Peaks, Patrick Johnson, Lomnil Jackson, Donell Thompson, and Robert Baytops.

victim M.A.; Count Thirteen involves victim T.M.); and one count of using, carrying, and discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (Count Fourteen, based on Counts Twelve and Thirteen).  See generally 2d Superseding Indictment.  On March 1, 2018, the Government filed its notice of intent to seek a sentence of death against both Mills and Wilson (Dkt. 293).  Defendants' trial is set to begin on April 21, 2020. See 8/31/2018 Order at 3 (Dkt. 475).

## II. DISCUSSION

Defendants contend that the federal death penalty in general is unconstitutional in violation of the Fifth and Eighth Amendments (Dkt. 789).  Defendants further argue that the FDPA is unconstitutional in violation of the Fifth, Eighth, and the Tenth Amendments (Dkt. 773, 787, 788). Defendants also filed a joint motion to strike the statutory and non-statutory aggravating factors from the notice of intent to seek the death penalty based on the unconstitutionality of the FDPA (Dkt. 790).

Several legal standards guide the Court in addressing the merits of these motions.  For example, because "it is settled that capital punishment is constitutional," Glossip v. Gross, 135 S. Ct. 2726, 2732 (2015), the Court presumes that the FDPA is constitutional, see United States v. Sampson, 486 F.3d 13, 20 (1st Cir. 2007) (citing I.N.S. v. Chadha, 462 U.S. 919, 944 (1983)), cert. denied, 553 U.S. 1035 (2008); see also Gregg v. Georgia, 428 U.S. 153, 175 (1976) (plurality opinion) ("[I]n assessing a punishment selected by a democratically elected legislature against the constitutional measure, we presume its validity.").  Defendants bear the heavy burden of proving that the FDPA is unconstitutional.  Sampson, 486 F.3d at 20 (citing Lujan v. G & G Fire Sprinklers, Inc., 532 U.S. 189, 198 (2001)).  On the one hand, for Defendants to succeed on their facial challenges, they must show that "no set of circumstances exists under which the [FDPA] would

be valid." United States v. Salerno, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully.").  On the other hand, in reviewing Defendants' as-applied challenges, the Court must examine only the particular parties and facts of the case before it, not merely whether the FDPA could be construed as unconstitutional is some hypothetical situation.  See United States v. Kernell, 667 F.3d 746, 750 (6th Cir. 2012) (citing United States v. Krumrei, 258 F.3d 535, 537 (6th Cir. 2001)); accord Women's Med. Prof'l Corp. v. Voinovich, 130 F.3d 187, 193 (6th Cir. 1997).  Last, when the Supreme Court has directly decided an issue, this Court must "follow the case [that] directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions."  Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484 (1989).

The Court will begin by addressing Defendants' motions regarding the constitutionality of the FDPA, and then turn its attention to the constitutionality of the federal death penalty in general.

### A. Constitutionality of the Federal Death Penalty Act

The FDPA defines the circumstances under which a defendant who commits certain federal crimes may be eligible for the death penalty.  See Jones v. United States ("Louis Jones"), 527 U.S. 373, 376-379 (1999); United States v. Lawrence, 555 F.3d 254, 263-264 (6th Cir. 2009).  Here, there is no dispute that Defendants' charges under 18 U.S.C. § 1959(a) and 18 U.S.C. § 924(j) are qualifying capital offenses.  See 18 U.S.C. § 3591(a)(2).  After a defendant is found guilty of a death-penalty eligible crime, a separate sentencing hearing follows "to determine the punishment to be imposed," 18 U.S.C. § 3593(b), during which the jury must make three determinations before a defendant can be sentenced to death.

First, the jury must find, unanimously and beyond a reasonable doubt, that the defendant had one of the four requisite levels of intent to commit the death-eligible offense.  18 U.S.C.

§ 3591(a). Second, if statutory intent is found, the jury must unanimously find that the Government has proved beyond a reasonable doubt at least one of sixteen statutory aggravating factors, 18 U.S.C. § 3593(c), which are listed at § 3592(c)(1)-(16). Only after the jury makes these two findings is the defendant eligible for the death penalty. Louis Jones, 527 U.S. at 377. Finally, if the jury makes the first two determinations, it must then consider the statutory aggravating factors, along with any non-statutory aggravating factors for which notice has been provided, 18 U.S.C. § 3593(d); Louis Jones, 527 U.S. at 378 n.2 ("The term 'nonstatutory aggravating factor' is used to refer to any aggravating factor that is not specifically described in 18 U.S.C. § 3592."), and weigh them against any mitigating factors to determine if the death penalty is appropriate, 18 U.S.C. § 3593(e) ("the jury . . . shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death"). Like statutory aggravating factors, the Government must establish the existence of non-statutory aggravating factors beyond a reasonable doubt, while the defendant need only establish the existence of mitigating factors by a preponderance of the evidence. See 18 U.S.C. § 3593(c). And although only aggravating factors found to exist by a unanimous jury may be considered during the sentencing hearing, "the jury may consider a mitigating factor in its weighing process so long as one juror finds that the defendant established its existence by preponderance of the evidence." Louis Jones, 527 U.S. at 377.

After weighing all aggravating and mitigating factors, the jury must unanimously recommend that the defendant should be sentenced to either death, life imprisonment without possibility of release, or some other lesser sentence. See 18 U.S.C. § 3593(e); see also 18 U.S.C. § 3594 ("Upon a recommendation under section 3593(e) that the defendant should be sentenced

to death or life imprisonment without possibility of release, the court shall sentence the defendant accordingly. Otherwise, the court shall impose any lesser sentence that is authorized by law.").

Part of the FDPA authorizes the Government to determine whether to seek the death penalty in a particular case. If the Government elects to seek the death penalty, the FDPA requires it to give the defendant notice of both its election and the statutory aggravating factors that it plans to prove at the sentencing phase. 18 U.S.C. § 3593(a). In its notice of intent to seek the death penalty against Defendants in this case, the Government alleges four statutory aggravating factors under § 3592(c)—a grave risk of death to additional persons, substantial planning and premeditation, vulnerability of a victim, and multiple killings or attempted killings. See Notice of Intent at 7-8; 2d Superseding Indictment at 39-41; see also 18 U.S.C. §§ 3592(c)(5), (9), (11), and (16). In addition to alleging four statutory aggravating factors, the Government's notice of intent also alleges two non-statutory aggravating factors—criminal street gang participation and victim-impact evidence. See Notice of Intent at 8.

### 1. Fifth Amendment Challenges

The Indictment Clause of the Fifth Amendment requires that a defendant be charged with only those charges brought before the grand jury. U.S. Const. amend V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury[.]"). And under the Due Process Clause of the Fifth Amendment, each element of an offense must be charged in the indictment, submitted to a jury, and proved by the Government beyond a reasonable doubt. See Hamling v. United States, 418 U.S. 87, 117 (1974); see also In re Winship, 397 U.S. 358, 364 (1970) (holding that the Fifth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

In <u>Jones v. United States</u>, 526 U.S. 227, 243 n.6 (1999), the Supreme Court went further, holding that, under the Fifth and Sixth Amendments, "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt."   <u>Accord</u> <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490 (2000) (applying reasoning in <u>Jones</u> to state statute under the Fourteenth Amendment).   In <u>Ring v. Arizona</u>, 536 U.S. 584, 609 (2002), the Supreme Court specifically held that an aggravating factor necessary for the imposition of the death penalty must be found by the jury; it cannot be determined by the sentencing judge.   And in <u>Hurst v. Florida</u>, 136 S. Ct. 616, 622 (2016), the Supreme Court reaffirmed that a jury, not a judge, must find each fact that would expose a defendant to a greater punishment than that authorized by the jury's guilty verdict alone.

Defendants move to strike the notice of intent to seek the death penalty, raising three principal arguments for why the FDPA violates the Fifth Amendment: (i) the FDPA is facially unconstitutional because it does not include express language requiring the prosecutor to present statutory aggravating factors to the grand jury and charge them in the indictment; (ii) the FDPA is facially unconstitutional because it does not require that non-statutory aggravating factors and the weighing of all aggravating factors with mitigating factors be presented to the grand jury and charged in the indictment; and (iii) the grand jury was not informed of the potential punishment arising out of its "Special Findings."   <u>See generally</u> Defs. Mot. (Dkt. 788).   The Court addresses and rejects each argument in turn.

### i.   Lack of Express Language Requiring the Government to Present Statutory Aggravating Factors to a Grand Jury and Charge Them in the Indictment Does Not Render the FDPA Facially Unconstitutional

Relying on <u>Hurst</u>, <u>Ring</u>, and <u>Jones</u>, Defendants contend that statutory aggravating factors constitute essential elements of a federal capital offense, and, therefore, they must be presented to

7

a grand jury, charged in the indictment, and proved beyond a reasonable doubt at trial.  Defs. Mot. at 6, 8-9, 14.  However, Defendants claim that the plain language of the FDPA does not expressly require a prosecutor to present statutory aggravating factors to a grand jury, instead reserving the selection and notice of such factors to the exclusive discretion of the prosecutor.  Id. at 7, 14-16. Absent this language, Defendants contend that the FDPA violates the Indictment Clause of the Fifth Amendment.  Id.  Defendants further argue that any attempt by either the judicial branch or the executive branch to rewrite the FDPA through the adoption of a practice of the prosecutor seeking "special findings" from the grand jury as part of the indictment process would violate both the separation-of-powers doctrine and the non-delegation doctrine; only Congress, say Defendants, can fix the unconstitutionality of the FDPA.  Id. at 7, 20-21, 23-25 (citing United States v. Jackson, 390 U.S. 570 (1968); Mistretta v. United States, 488 U.S. 361 (1989)).

To begin, the Court agrees with Defendants—and every circuit court to have considered this issue—that at least one statutory aggravating factor must be presented to the grand jury, charged in the indictment, and proved beyond a reasonable doubt.  See United States v. Lawrence, 735 F.3d 385, 420 (6th Cir. 2013), cert. denied, 135 S. Ct. 753 (2014); Sampson, 486 F.3d at 21; United States v. Brown, 441 F.3d 1330, 1367 (11th Cir. 2006) (citing United States v. LeCroy, 441 F.3d 914, 920 (11th Cir. 2006), cert. denied, 550 U.S. 905 (2007); United States v. Allen, 406 F.3d 940, 942-943 (8th Cir. 2005) (en banc), cert. denied, 549 U.S. 1095 (2006); United States v. Robinson, 367 F.3d 278, 284 (5th Cir.), cert. denied, 543 U.S. 1005 (2004); United States v. Higgs, 353 F.3d 281, 297-298 (4th Cir. 2003), cert. denied, 543 U.S. 999 (2004)), cert. denied, 549 U.S. 1182 (2007); United States v. Barnette, 390 F.3d 775, 788-790 (4th Cir. 2004), vacated on other grounds, 546 U.S. 803 (2005); United States v. Quinones, 313 F.3d 49, 53 n.1 (2d Cir. 2002), cert. denied, 540 U.S. 1051 (2003).  Defendants are also correct that the plain language of the FDPA

does not expressly permit or require the prosecutor to present statutory aggravating factors to the grand jury and charge them in an indictment.  <u>Brown</u>, 441 F.3d at 1367 (agreeing with the defendant that nothing in the FDPA expressly requires a prosecutor to charge aggravating factors in an indictment); <u>United States v. Watson</u>, No. 05-80025, 2007 WL 2421224, at *2 (E.D. Mich. Aug. 23, 2007) (same).   So why doesn't Defendants' conclusion that the FDPA is facially unconstitutional logically follow from these two premises?

First, not every federal criminal statute includes <u>express</u> language requiring the prosecutor to submit elements of an offense—like statutory aggravating factors—to the grand jury and charge them in the indictment.  <u>LeCroy</u>, 441 F.3d at 921 ("[A] statute will seldom expressly provide for submitting elements of an offense to the grand jury.  It is simply well-established law—the background against which statutes are enacted—which indicates that elements of a crime should be submitted to the grand jury.").  Second, Defendants are incorrect to characterize the FDPA as granting prosecutors "exclusive" authority for determining the existence of statutory aggravating factors.  Because the FDPA does not prohibit a grand jury from considering those factors, "the statute simply is silent with respect to the function of the grand jury."  <u>Sampson</u>, 486 F.3d at 21. And finally, there is no language in the FDPA that prohibits a prosecutor from taking the additional step of presenting statutory aggravating factors to the grand jury.  Indeed, the Department of Justice "routinely submits the preliminary threshold 'intent' factors and the statutory aggravating factors to the grand jury as 'Special Findings.'"  <u>Watson</u>, 2007 WL 2421224, at *1.[3]

---

[3] Insofar as Defendants argue that a grand jury lacks the authority to issue "special findings" concerning death-eligibility factors, <u>see</u> Defs. Mot. at 25-26, the Court finds that such an argument lacks merit, <u>see</u> <u>Sampson</u>, 486 F.3d at 23 n.2 ("Sampson's argument that the grand jury lacked authority to issue so-called special findings is entirely without merit.  There is nothing in the Federal Rules of Criminal Procedure that prohibits the grand jury from alleging all the elements of an offense that it proposes to charge."); <u>see also</u> <u>United States v. Regan</u>, 221 F.Supp.2d 672, 680 (E.D. Va. 2002) ("[T]he form chosen by the Government in presenting these facts in the

The Government followed the same practice in this case, see 2d Superseding Indictment at 37-44, and it appears that every circuit court considering this very issue has uniformly rejected Defendants' argument.  See, e.g., Sampson, 486 F.3d at 21; Brown, 441 F.3d at 1367; LeCroy, 441 F.3d at 921; Allen, 406 F.3d at 949; Barnette, 390 F.3d at 788-790; Robinson, 367 F.3d at 289-290.  Therefore, by presenting the statutory aggravating factors to the grand jury and charging them in an indictment, despite the lack of express language to do so, the Government has ensured that Defendants' rights under the Fifth Amendment are protected, while, at the same time, avoiding any violation of the plain language of the FDPA.

Furthermore, Defendants' reliance on Jackson is misplaced and does not alter this Court's conclusion.  In Jackson, the Supreme Court considered whether the capital-punishment provision in the Federal Kidnapping Act, which permitted the imposition of a death sentence only "if the verdict of the jury shall so recommend," infringed upon a defendant's right to a jury trial.  390 U.S. 571-572.  Because there was no procedure for imposing the death penalty for a defendant who either waives his or her right to a jury trial or pleads guilty, the argument was that the statute impermissibly encouraged a defendant to plead guilty or waive that right.  To avoid any chilling effect on the exercise of a defendant's rights under Fifth and Sixth Amendments, the Government suggested that the Supreme Court read into the statute the authority of the trial judge—in the event of a guilty plea or bench trial—"to convene a special jury for the limited purpose of deciding whether to recommend the death penalty."  Id. at 572-573, 577.  In rejecting this suggestion, the Supreme Court stated that it could not "create from whole cloth a complex and completely novel

---

superseding indictment—the 'Notice of Special Findings'—is permissible.   Neither the Fifth Amendment nor Fed. R. Crim. P. 7 prohibits the presentation of such information in this manner.").

procedure and . . . thrust it upon unwilling defendants for the sole purpose of rescuing a statute from a charge of unconstitutionality."  Id. at 580.

Unlike the Supreme Court in Jackson, this case does not require the Court to "create from whole cloth a complex and completely novel procedure."  In fact, there is no new "procedure" that the Court must graft onto the FDPA.  Although the FDPA itself may be silent regarding the role of the grand jury, the First Circuit aptly noted in Sampson that "the role of the grand jury in charging the elements of an offense has long been established."  486 F.3d at 22 (citing Hamling, 418 U.S. at 117-118; Russell v. United States, 369 U.S. 749, 763-764 (1962)); Watson, 2007 WL 2421224, at *3 ("[T]he [FDPA], the Federal Rules of Criminal Procedure, and the common law governing grand jury practice give [the defendant] the guidance that defendants ordinarily find in a body of procedural and evidentiary rules spelled out in advance of trial, that the Supreme Court found lacking in Jackson.").

Here, the Government honored the role of the grand jury by presenting it with evidence of possible statutory aggravating factors.  And there is no need to rewrite the FDPA.  See Sampson, 486 F.3d at 22 ("Adhering to a court-crafted rule of criminal procedure when applying the FDPA does not constitute impermissible statutory redrafting."); Watson, 2007 WL 2421224, at *2 ("[N]othing in the FDPA must be 'rewritten' to comply with Ring and Jones.  There is simply no language in the FDPA that even mentions grand jury findings, let alone prohibits them with respect to facts constituting aggravating factors." (citation and brackets omitted)).  Thus, neither the non-delegation doctrine nor the separation-of-powers doctrine is implicated here.

> **ii.  Non-Statutory Aggravating Factors and the Weighing of All Statutory Aggravating Factors with Mitigating Factors Are Not Elements of a Capital Offense and Need Not Be Presented to the Grand Jury or Charged in the Indictment**

Defendants contend that the FDPA violates the Fifth Amendment because it does not require non-statutory aggravating factors to be presented to a grand jury and charged in the indictment.  See Defs. Mot. at 34-35, 41-43.  Defendants similarly argue that the FDPA is unconstitutional because the determination of whether the statutory and non-statutory aggravating factors sufficiently outweigh mitigating factors to justify a sentence of death—i.e., the "weighing" finding—must also be treated as an element of the capital offense and charged in the indictment. Id.  The Court disagrees.

The Sixth Circuit squarely rejected Defendants' argument that non-statutory aggravating factors must be presented to the grand jury and charged in the indictment in United States v. Lawrence, 735 F.3d 385, 420 (6th Cir. 2013).  In that case, the court reasoned that "only those factors necessary to make a defendant eligible for the death penalty—intent and a statutory factor—must be included in the indictment."  Id. (emphasis added).  But because non-statutory aggravating factors are "relevant considerations in the sentence selection decision, but do not, in themselves, determine whether a defendant is 'eligible' to be considered for the death sentence," they need not be submitted to a grand jury and charged in the indictment. Id. (quoting Tuilaepa v. California, 512 U.S. 967, 971-973 (1994)) (emphasis in original).  And because the weighing determination of both statutory and non-statutory aggravating factors with mitigating factors is also part of the sentence selection decision—not the eligibility decision—it logically follows that it, too, does not have to be presented to the grand jury and charged in the indictment.  See United States v. Runyon, 707 F.3d 475, 516 (4th Cir. 2013) (noting that the jury's weighing of the aggravating and mitigating circumstances amounts to "a complex moral judgment" about what penalty to impose upon a defendant who is already death-penalty eligible); United States v. Purkey, 428 F.3d 738, 749 (8th Cir. 2005) ("[I]t makes no sense to speak of the weighing process mandated

12

by 18 U.S.C. § 3593(e) as an elemental fact for which a grand jury must find probable cause.");

United States v. Talik, No. 5:06CR51, 2007 WL 4570704, at *3 (N.D. W. Va. Dec. 26, 2007)

("The jury's consideration of whether the aggravating factors outweigh the mitigating factors is

not a determination that could increase the maximum sentence for which the defendant is eligible.

That is, if the jury has determined beyond a reasonable doubt that the defendant is death-eligible,

no greater sentence than death can result from a weighing of the aggravating and mitigating

factors.").   Therefore, Defendants' argument that non-statutory aggravating factors must be

stricken from the notice of intent to seek the death penalty because those factors have not been

previously found by the grand jury lacks merit.

      The Supreme Court's recent decision in Hurst v. Florida, 136 S. Ct. 616 (2016), does not

alter this Court's conclusion.  In Hurst, the Supreme Court considered whether Florida's capital

sentencing scheme violated the Sixth Amendment because it permitted a jury to render an advisory

opinion as to whether a defendant should be subject to the death penalty but left the ultimate

sentencing determination to the trial court after it held a separate hearing and independently

weighed the aggravating and mitigating factors.  Id. at 619-620.  In concluding that this procedure

was unconstitutional under Ring, the Supreme Court emphasized that "[t]he Sixth Amendment

requires a jury, not a judge, to find each fact necessary to impose a sentence of death.  A jury's

mere recommendation is not enough."  Id. at 619.  Thus, Hurst simply reaffirmed that a jury, not

a judge, must find each fact that would expose a defendant to a greater punishment than that

authorized by the jury's guilty verdict.  See id. at 622 (recognizing that, absent the judge's own

factfinding, the maximum punishment the defendant could have received was life in prison without

parole); see also id. ("[T]he Florida sentencing statute does not make a defendant eligible for death

until findings <u>by the court</u> that such person shall be punished by death." (citation and quotation marks omitted; emphasis in original)).

Unlike the capital sentencing scheme at issue in <u>Hurst</u>, a defendant is exposed to a greater punishment under the FDPA when the jury has unanimously found beyond a reasonable doubt during the eligibility phase that the defendant had one of the four requisite levels of intent under § 3591(a), and at least one statutory aggravating factor under § 3593(c).  Only after a defendant is found to be eligible for the death penalty must the jury then consider non-statutory aggravating factors and weigh all aggravating factors against any mitigating factors to determine whether a capital sentence is appropriate.  <u>See</u> 18 U.S.C. 3593(e); <u>see also</u> <u>United States v. Con-Ui</u>, No. 3:13-CR-123, 2017 WL 1393485, at *3 (M.D. Pa. Apr. 18, 2017) ("Because the determination of guilt of an [statutory] aggravating circumstance automatically renders the defendant eligible for a capital sentence, it is not possible to make a factual finding later, during the sentence selection phase, that will somehow expose a defendant to greater punishment.").

Accordingly, nothing in <u>Hurst</u> undermines the Sixth Circuit's reasoning in <u>Lawrence</u> that non-statutory aggravating factors are relevant for considerations in the sentence-selection decision—not the death-eligibility decision—and need not be submitted to a grand jury and

charged in the indictment.[4]   Other courts considering this issue have uniformly reached the same

conclusion.[5]

### iii.   The Government Does Not Have to Inform the Grand Jury About Potential Punishment

Defendants argue that "[n]o known evidence supports that the government informed the

grand jury of the consequences of [the] special findings, i.e., that by returning the indictment,

[Defendants] would be held to answer to an offense punishable by death."  Defs. Mot. at 37.  They

---

[4] The Supreme Court's decision in Kansas v. Carr, 136 S. Ct. 633 (2016), calls into question whether the jury is even making factual findings when determining what sentence to impose after a defendant is found death eligible, distinguishing between the "purely factual determinations" at the eligibility phase, and the "value call[s]" and "question[s] of mercy" at the selection phase.  Id. at 642 ("[W]e doubt whether it is even possible to apply a standard of proof to the mitigating-factor determination (the so-called 'selection phase' of a capital-sentencing proceeding).  It is possible to do so for the aggravating-factor determination (the so-called 'eligibility phase'), because that is a purely factual determination. . . .  Whether mitigation exists, however, is largely a judgment call (or perhaps a value call); what one juror might consider mitigating another might not.  And of course the ultimate question whether mitigating circumstances outweigh aggravating circumstances is mostly a question of mercy—the quality of which, as we know, is not strained.").

[5] See, e.g., United States v. Smith, ___ F. Supp. 3d ___, 2019 WL 1412926, at *5 (D. Alaska Mar. 28, 2019) ("Non-statutory aggravating factors, although defined after the commission of the crime, do not alter the definition of the crime or increase the possible punishment . . . .  Hurst did not change these aspects of the FDPA; Hurst . . . did not alter the holdings of Apprendi or Ring, and it did not change non-statutory aggravators into functional elements of a capital crime."); United States v. Ofomata, No. 17-201, 2019 WL 527696, at *9 (E.D. La. Feb. 11, 2019) ("The Court has already noted that nothing in Hurst indicates that the Supreme Court intended to alter the law as it is set forth in Apprendi and Ring.  The Supreme Court held Florida's capital statute unconstitutional because the jury's verdict was advisory.  The court's role was simply too powerful.  By contrast, the FDPA adheres to the Constitution by requiring that a jury (1) find beyond a reasonable doubt the factors that render a defendant eligible for the death penalty and (2) make the ultimate sentencing recommendation." (citations omitted)); Con-Ui, 2017 WL 1393485, at *6 (finding that "Hurst does not compel the conclusion that the Constitution mandates that nonstatutory aggravating factors be charged in the indictment and presented to a grand jury," and holding that Hurst is "limited only to capital sentencing schemes which are unconstitutional because they require a judge, not a jury, to find each fact necessary to impose a sentence of death"); United States v. Roof, 225 F. Supp. 3d 413, 419 & n.4 (D.S.C. 2016) ("Hurst held that any aggravating factor that exposes a defendant to greater punishment than the punishment authorized by the jury's guilty verdict must be submitted to a jury.  Here, any aggravating factors that expose Defendant to the death penalty will be established by a jury, thereby avoiding any Hurst issue.").

maintain that the grand jury "cannot perform its constitutionally assigned function and make 'the important decision to charge a capital crime'" unless it "is aware of its capital charging power and the consequences of returning an indictment with 'special findings' like those in this case." Id. at 40-41 (quoting Campbell v. Louisiana, 523 U.S. 392, 398 (1998)) (emphasis omitted).  Again, the Court disagrees.

The Fifth Amendment does not require the Government to inform the grand jury of the potential punishment arising out of the grand jury's special findings.  "The grand jury's role is not to decide whether probable cause supports the imposition of a particular sentence against a charged individual," but instead, to make an "independent factual determination of the existence of probable cause for the essential elements of the charged offense."  United States v. Haynes, 269 F. Supp. 2d 970, 981 (W.D. Tenn. 2003) (citing Branzburg v. Hayes, 408 U.S. 665, 686-687 (1972); Stirone v. United States, 361 U.S. 212, 217-219 (1960)) (emphasis added).  Put differently, "[t]he role of the grand jury is not to find or recommend a sentence or punishment or even to consider such, but rather to investigate possible crimes against the sovereign so that it can make a judgment whether a trial on specific charges is necessary."  United States v. Con-Ui, No. 3:CR-13-123, 2016 WL 9331115, at *13 (M.D. Pa. Jan. 28, 2016); United States v. Matthews, 246 F. Supp. 2d 137, 147 (N.D.N.Y. 2002) (same).  Thus, "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished."  Hamling, 418 U.S. at 117 (citation and quotation marks omitted).

This Court is not alone in reaching this conclusion.  See, e.g., United States v. Troya, No. 06-80171-Cr, 2008 WL 4327004, at *8 (S.D. Fla. Sept. 22, 2008) ("[T]he case law is clear that

16

there is no constitutional requirement that the grand jury be informed of the potential punishment arising out of the special findings."); <u>United States v. Green</u>, No. 5:06CR-19-R, 2008 WL 4000902, at *6 (W.D. Ky. Aug. 26, 2008) ("Prosecutors are not required to inform a grand jury that the decision to return 'special findings' as to aggravating factors will make a defendant eligible for capital punishment."); <u>United States v. Lecco</u>, Nos. 2:05-00107-01, 2:05-00107-02, 2007 WL 1074775, at *3 (S.D. W. Va. Apr. 5, 2007) ("[T]he Supreme Court has made clear that the Indictment Clause of the Fifth Amendment does not require the government to inform the grand jury of the potential penalties that might attach as a result of any special findings.").

Here, the indictment set forth the elements that constituted the offenses charged against Defendants.  It also provided Defendants with notice of the mental state and statutory aggravating factors that the Government intends to prove during the sentencing phase.  The Fifth Amendment does not require more, and Defendant's argument to the contrary is meritless.

This motion is denied.

## 2.  Eighth Amendment Challenge

Defendants move to strike the notice of intent to seek the death penalty, arguing that the FDPA is facially unconstitutional under the Eighth Amendment because it does not require an appellate court to conduct a comparative proportionality review "to determine whether the punishment of death is excessive or disproportionate to the penalty imposed in similar cases, taking into consideration both the crime and the defendant."  Defs. Mot. at 5 (Dkt. 773).  Such a provision is necessary, say Defendants, to avoid the arbitrary and capricious imposition of the death penalty. <u>See</u> <u>id.</u>  The Court disagrees.

Comparative proportionality review refers to an appellate court's determination of "whether, considering both the crime and the defendant, the sentence is disproportionate to that

imposed in similar cases." Pulley v. Harris, 465 U.S. 37, 44 (1984). Such review is not constitutionally required, however, provided that a capital-sentencing scheme contains other safeguards against the arbitrary and capricious imposition of the death penalty. Id. at 49-51. Indeed, in Pulley, the Supreme Court explained that the "components of an adequate capital sentencing scheme" do not require "comparative review" but, rather, "'a carefully drafted statute that ensures that the sentencing authority be given adequate information and guidance.'" Id. at 46 (quoting Gregg, 428 U.S. at 195); see also Thompson v. Parker, 867 F.3d 641, 653 (6th Cir. 2017) ("[T]here is no constitutional entitlement to any comparative-proportionality review." (citing Pulley, 465 U.S. at 43-46)).

It appears that every circuit court considering this issue has held that comparative proportionality review is not required because the FDPA's safeguards—including its restriction of the death penalty to eligible crimes, a bifurcated trial, the sentencing-phase requirements that a jury find beyond a reasonable doubt the existence of at least one statutory aggravating factor and at least one of four requisite levels of specific intent on the part of a defendant, the jury's weighing of statutory and non-statutory aggravating factors with mitigating factors established by a preponderance of the evidence, and a comprehensive record review on appeal—are constitutionally sufficient. See United States v. Aquart, 912 F.3d 1, 51-53 (2d Cir. 2018); United States v. Mitchell, 502 F.3d 931, 980-981 (9th Cir. 2007), cert. denied, 553 U.S. 1094 (2008); Higgs, 353 F.3d at 320-321; United States v. Allen, 247 F.3d 741, 760 (8th Cir. 2001), vacated on other grounds, 536 U.S. 953 (2002); United States v. Jones, 132 F.3d 232, 240-241 (5th Cir. 1998); see also United States v. Taylor, 814 F.3d 340, 374 (6th Cir. 2016) (rejecting the defendant's argument that his sentence was constitutionally disproportionate compared to other comparable cases because "there is no statutory provision for a nationwide-proportionality review of federal

18

capital sentences"), cert. denied, 138 S. Ct. 1975 (2018).  Several district courts within the Sixth Circuit have reached the same conclusion for the same reasons.  See United States v. O'Reilly, No. 05-80025, 2007 WL 2421502, at *6-7 (E.D. Mich. Aug. 23, 2007); United States v. Henderson, 485 F. Supp. 2d 831, 855 (S.D. Ohio 2007).  This Court now joins them and concludes that the FDPA's statutory procedures sufficiently safeguard against arbitrary and capricious death sentences to satisfy the Eighth Amendment.

This motion is denied.

### 3.  Tenth Amendment Challenges

The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."  U.S. Const. amend. X.  Thus, while the U.S. Constitution confers certain legislative powers on Congress, including "those specifically enumerated powers listed in Article I along with the implementation authority granted by the Necessary and Proper Clause," United States v. Comstock, 560 U.S. 126, 144 (2010), the Tenth Amendment confirms that "all other legislative power is reserved for the States," Murphy v. Nat'l Collegiate Athletic Ass'n, 138 S. Ct. 1461, 1476 (2018) ("The legislative powers granted to Congress are sizable, but they are not unlimited.").  "[C]onspicuously absent from the list of powers given to Congress is the power to issue direct orders to the governments of the States."  Id.  This so-called "anticommandeering principle" recognizes the limit on congressional authority.  Id.

Defendants move to strike the notice of intent to seek the death penalty, raising two principal arguments for why the FDPA violates the Tenth Amendment: (i) the Government is unconstitutionally commandeering the resources of the State of Michigan, which has abolished capital punishment, with regard to the investigation and prosecution of this capital case and would

19

unconstitutionally commandeer the resources of another state to carry out the death penalty if it is imposed; and (ii) the interests of the State of Michigan outweigh the interests of the federal government.  See generally Defs. Mot. (Dkt. 787).  The Court finds that Defendants' first argument is not ripe, and that Defendants' second argument, while ripe, mistakenly uses an interest-balancing test.

### i. The Anti-Commandeering Argument is Not Ripe

Regarding Defendants' anticommandeering argument, § 3596(a) of the FDPA provides for the implementation of the death penalty:

> A person who has been sentenced to death pursuant to this chapter shall be committed to the custody of the Attorney General until exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence. When the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed. If the law of the State does not provide for implementation of a sentence of death, the court shall designate another State, the law of which does provide for the implementation of a sentence of death, and the sentence shall be implemented in the latter State in the manner prescribed by such law.

The FDPA also provides for the use of state facilities to implement federal executions:

> A United States marshal charged with supervising the implementation of a sentence of death may use appropriate State or local facilities for the purpose, may use the services of an appropriate State or local official or of a person such an official employs for the purpose, and shall pay the costs thereof in an amount approved by the Attorney General.

18 U.S.C. § 3597(a).

Defendants argue that these provisions in the FDPA unconstitutionally conscript State officials and State facilities to conduct federal executions in violation of the Tenth Amendment's anticommandeering principle.  See generally Defs. Mot. at 19-23.  And although the Government's

20

use of State resources—including those used in selecting a jury—in a federal criminal trial does not necessarily constitute a per se violation of the Tenth Amendment, anticommandeering principles are implicated when the goal of the Government—here, electing to seek the death penalty—is at odds with the interests of the State. <u>See</u> <u>id.</u> at 15-19 & n.5. These anticommandeering arguments, however, are premature and not ripe for adjudication.

The ripeness doctrine is one of several justiciability doctrines "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." <u>Nat'l Park Hospitality Ass'n v. Dep't of Interior</u>, 538 U.S. 803, 808 (2003). The underlying rationale of this doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . and also to protect . . . from judicial interference until a[] . . . decision has been formalized and its effects felt in a concrete way by the challenging parties." <u>Abbott Labs. v. Gardner</u>, 387 U.S. 136, 148-149 (1967). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" <u>Texas v. United States</u>, 523 U.S. 296, 300 (1998) (quoting <u>Thomas v. Union Carbide Agric. Prods. Co.</u>, 473 U.S. 568, 580-581 (1985)). As the Sixth Circuit has explained, "[a]nswering difficult legal questions before they arise and before the courts know how they will arise is not the way we typically handle constitutional litigation." <u>Warshak v. United States</u>, 532 F.3d 521, 526 (6th Cir. 2008) (citing <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 894 (1990)).

Here, Defendants are accused of allegedly committing crimes in Michigan; they will be tried in a federal court sitting in Michigan; and the State of Michigan has abolished the death penalty. <u>See</u> <u>People v. Washington</u>, 916 N.W.2d 477, 481 n.28 (Mich. 2018); <u>see also</u> <u>Furman v. Georgia</u>, 408 U.S. 238, 338 & n.65 (1972) (Marshall, J., concurring) (noting that, in 1846,

Michigan was the first state to abolish capital punishment).   But because the Court is still in the pre-trial stage of this case and no death sentence has been imposed, Defendants' abstract and speculative anticommandeering arguments rest entirely upon contingent future events that may never occur, and, therefore, they are not ripe.  See, e.g., United States v. Smith, No. 3:16-cr-00086-SLG-1, 2019 WL 1450315, at *1-2 (D. Alaska Apr. 1, 2019) (finding the defendant's Tenth Amendment challenge to the FDPA based on the theory that it unconstitutionally commandeers state officials and state facilities by requisitioning them to implement federal executions was not ripe); United States v. Christensen, No. 17-cr-20037, 2019 WL 191001, at *1 (C.D. Ill. Jan. 14, 2019) (finding that the defendant's Tenth Amendment challenge to the FDPA based on the theory that it unconstitutionally commandeers the resources of the State of Illinois, which has abolished capital punishment, with regard to investigation and trial, and that it would unconstitutionally commandeer the resources of other states to carry out the death penalty if it is imposed, was not ripe); United States v. Madison, 337 F. Supp. 3d 1186, 1198 (M.D. Fla. 2018) (same); but see United States v. O'Reilly, No. 05-80025, 2007 WL 2421378, at *4 (E.D. Mich. Aug. 23, 2007) (rejecting Tenth Amendment claim, and noting that, "[w]hile Michigan is free to prohibit the death penalty for state-charged crimes, this federal Court cannot prohibit imposition of the death penalty when authorized by federal law for federally-charged crimes, and when the tide of precedent dictates against a prohibition").  The Court can neither address nor strike down these FDPA provisions as unconstitutional at this time.

Therefore, the Court denies this portion of Defendants' motion without prejudice.  If either or both Defendants are convicted of at least one capital count, and if the jury decides to impose the death penalty, this portion of the motion may be renewed at that time.

**ii. Congress Did Not Exceed Its Authority Under the Commerce Clause in Criminalizing the Conduct that Gave Rise to the Death Penalty**

Regarding their Tenth Amendment argument that the interests of the State of Michigan outweigh the interests of the federal government, see generally Defs. Mot. at 23-40, the Court finds that the argument is ripe, as many of the harms alleged would seemingly occur before sentencing, such as the psychological well-being of Michigan citizens when they are questioned during voir dire about their ability to serve in a death-eligible case, e.g., id. at 26-29; Christensen, 2019 WL 191001, at *1. However, Defendants' insistence on utilizing an interest-balancing test to assess their Tenth Amendment challenge to the FDPA is misplaced.

Although it had performed such a test in the past, the Supreme Court has since departed from this approach. See New York v. United States, 505 U.S. 144, 177-178 (1992); see also Christensen, 2019 WL 191001, at *2 (noting that "[c]ourts reviewing Tenth Amendment challenges no longer utilize the sort of balancing test [of state and federal interests] Defendant seeks to apply"). As the Supreme Court explained in New York, the questions of whether a power is reserved to the States and whether an act is within Congress's enumerated powers "are mirror images of each other." 505 U.S. at 156 ("If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States; if a power is an attribute of state sovereignty reserved by the Tenth Amendment, it is necessarily a power the Constitution has not conferred on Congress."). Thus, the question of whether the Tenth Amendment has been violated turns on the extent of Congress's enumerated powers, not the balancing of state and federal interests. United States v. Baker, 807 F.2d 1315, 1325 (6th Cir. 1986) ("[W]hen a federal statute has been challenged under the Tenth Amendment, the proper

inquiry is whether Congress has the power, pursuant to its enumerated powers, to enact the specific piece of legislation.").

As the Supreme Court explained in <u>Comstock</u>, the powers "delegated to the United States by the Constitution include those specifically enumerated powers listed in Article I"—such as those conferred by the Commerce Clause—"along with the implementation authority granted by the Necessary and Proper Clause"—such as the authority to codify and punish federal crimes affecting interstate commerce.  560 U.S. at 144 (citations and quotation marks omitted).  "Virtually by definition," then, the authority to prescribe punishments for federal crimes is not a "power[ ] that the Constitution reserved to the States."  <u>Id.</u>; <u>see also</u> <u>Mistretta</u>, 488 U.S. at 364 ("Congress, of course, has the power to fix the sentence for a federal crime."); <u>accord</u> <u>Aquart</u>, 912 F.3d at 60-61.  Thus, the only question remaining under the Tenth Amendment is not whether the criminal penalty under the FDPA is allowable but, rather, whether Congress was empowered to criminalize the conduct that gave rise to the penalty.  This Court has already ruled that Congress did not exceed its authority under the Commerce Clause in enacting 18 U.S.C. § 1959 and 18 U.S.C. § 924.  <u>See United States v. Mills</u>, ___ F. Supp. 3d ___, 2019 WL 1915328, at *3 & n.5 (E.D. Mich. Apr. 30, 2019).

Therefore, this motion is denied.

### 4.  FDPA-Related Motion to Strike Aggravating Factors

Defendants raise eight arguments for why the statutory and non-statutory aggravating factors, either in their entirety or individually, should be stricken from the notice of intent to seek the death penalty based on the unconstitutionality of the FDPA.  <u>See generally</u> Defs. Mot. (Dkt. 790).  The Court will address and reject each argument in turn.

### i.  FDPA Permits Use of Non-Statutory Aggravating Factors During Sentencing Hearing

24

Defendants argue that, except for the possibility of victim-impact evidence, the FDPA does not authorize the Government to pursue any non-statutory aggravating factors during a sentencing hearing conducted under § 3593.  Defs. Mot. at 7-8 (Dkt. 790).  Defendants assert that the language of § 3952(c), which provides that the jury "may consider whether any other aggravating factor for which notice has been given exists," contradicts § 3591(a), which provides that a defendant may be sentenced to death only "after consideration of the factors set forth in section 3592 in the course of a hearing held pursuant to section 3593."  Id.  But § 3592(c) contains only sixteen statutory aggravating factors, and, therefore, non-statutory factors "are not—and could not be—set out in § 3592."  Id. at 8.  Therefore, Defendants argue, the non-statutory aggravating factors should be stricken from the notice of intent.  Id.  The Court disagrees.

There is no statutory inconsistency between § 3591(a) and § 3592(c).  Section 3591(a) simply provides that a defendant convicted of a death-eligible offense cannot be sentenced to death unless aggravating factors set forth in § 3592 are considered during a sentencing hearing conducted under § 3593; it does not prohibit a jury from considering non-statutory aggravating factors during that hearing.  See United States v. Montgomery, 10 F. Supp. 3d 801, 821 (W.D. Tenn. 2014) ("[Section] 3591(a) does not limit consideration only to the aggravating factors set forth in § 3592, although Congress could have done so." (emphasis in original)).  Moreover, while the jury "shall" consider each statutory aggravating factor for which notice has been given during the sentencing hearing to determine whether a sentence of death is justified, § 3592(c) expressly provides that the jury "may" consider whether "any other aggravating factor for which notice has been given exists." This latter phrase of § 3592(c) sets forth non-statutory aggravating factors by providing them to the jury during the sentencing hearing.  See Louis Jones, 527 U.S. at 378 n.2 ("The term 'nonstatutory aggravating factor' is used to refer to any aggravating factor that is not specifically

described in 18 U.S.C. § 3592.  Section 3592(c) provides that the jury may consider 'whether any other aggravating factor for which notice has been given exists.'").  This interpretation is reinforced by § 3593, which provides that the jury "shall consider all the information received during the hearing" and "shall return special findings identifying any aggravating factor or factors set forth in section 3592 found to exist <u>and any other aggravating factor</u> for which notice has been provided under subsection (a) found to exist," 18 U.S.C. § 3593(d) (emphasis added), which "may include factors concerning the effect of the offense on the victim and the victim's family," 18 U.S.C. § 3593(a).

Accordingly, these two sections of the FDPA, when read together to avoid superfluity, permit the Government to present information during a sentencing hearing relevant to both statutory and non-statutory aggravating factors.[6]

### ii. Non-Statutory Aggravating Factors Do Not Violate Eighth Amendment

Defendants argue that the use of non-statutory aggravating factors during a sentencing hearing results in arbitrary and capricious death sentences in violation of the Eighth Amendment because these factors do not constitutionally limit and guide the discretion of the jury.  <u>See</u> Defs.

---

[6] <u>See</u> <u>Robinson</u>, 367 F.3d at 293 ("Robinson's tortured reading of the statute would have us declare that § 3591(a) contradicts, and implicitly invalidates, the provision authorizing the use of non-statutory aggravating factors merely because § 3591(a) refers to consideration of the factors 'set forth' in § 3592(c). . . .  When the statute is read as a coherent whole, the two provisions are not in tension, because § 3592 adequately 'sets forth' the non-statutory aggravating factors by providing that the jury may consider them."); <u>see also</u> <u>United States v. Williams</u>, No. 4:08-cr-00070, 2013 WL 1335599, at *19-20 (M.D. Pa. Mar. 29, 2013) (citing <u>United States v. Llera Plaza</u>, 179 F. Supp. 2d 444, 459 (E.D. Pa. 2001); <u>United States v. Nguyen</u>, 928 F. Supp. 1525, 1535 (D. Kan. 1996)) (same); <u>United States v. Sablan</u>, No. 00-CR-00531, 2006 WL 1028780, at *21 (D. Colo. Apr. 18, 2006) (same); <u>United States v. Le</u>, 327 F. Supp. 2d 601, 614 (E.D. Va. 2004) (same); <u>United States v. Davis</u>, No. CR.A. 01-282, 2003 WL 1837701, at *14 (E.D. La. Apr. 9, 2013) (same); <u>cf.</u> <u>Zant v. Stephens</u>, 462 U.S. 862, 878-879 (1983) (holding that the use of non-statutory aggravating factors is appropriate after the jury finds the existence of at least one statutory aggravating factor that narrows the class of defendants eligible for the death penalty).

Mot. at 8-10.  In particular, Defendants contend that because the FDPA "provides no guidance to prosecutors in determining how to define or select non-statutory aggravating circumstances factors in a particular case," the Government has an "unconstrained ability" to "unilaterally expand the list of aggravating factors" to allege during a sentencing hearing.  Id. at 9-10.  They say this unconstrained ability "injects the very arbitrariness and capriciousness into the sentencing process that Furman found constitutionally fatal."  Id. at 10.  The Court disagrees.

The Eighth Amendment requires that a sentencing scheme provide a "meaningful basis for distinguishing the few cases in which [the death penalty] is imposed from the many cases in which it is not."  Furman, 408 U.S. at 313 (White, J., concurring).  When discretion is given to a sentencing body "on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action."  Gregg, 428 U.S. at 189.  Thus, to properly guide the discretion of the jury, the capital sentencing scheme must: (i) "rationally narrow the class of death-eligible defendants"; and (ii) "permit a jury to render a reasoned, individualized sentencing determination based on a death-eligible defendant's record, personal characteristics, and the circumstances of his crime."  Kansas v. Marsh, 548 U.S. 163, 174 (2006) (citing Gregg, 428 U.S. at 189).

The Supreme Court has previously held that statutory aggravating factors in the FDPA serve the "constitutionally necessary function" of circumscribing the class of persons eligible for the death penalty.  Zant, 462 U.S. at 878.  Put differently, the guilt and eligibility phases serve the purpose of narrowing the class of defendants eligible to receive the death penalty by requiring the jury to find the requisite mental state and at least one statutory aggravating factor when the defendant committed the crime.  Once a defendant is found to be eligible for the death penalty, the

27

consideration of non-statutory aggravating factors becomes relevant for the purpose of an "individualized determination" based on "the character of the individual and the circumstances of the crime."  Id. at 879 (emphasis omitted); see also Louis Jones, 527 U.S. at 395 (The Eighth Amendment "permits capital sentencing juries to consider evidence relating to the victim's personal characteristics and the emotional impact of the murder on the victim's family in deciding whether an eligible defendant should receive a death sentence.").  By permitting the jury to consider statutory, as well as non-statutory aggravating factors, the FDPA allows the jury to render a reasoned, individualized sentencing determination based on a death-eligible defendant's record, personal characteristics, and the circumstances of his or her crime.

Furthermore, the Sixth Circuit rejected a similar argument in Lawrence that the FDPA lacks any intelligible principle and gives prosecutors extensive and unconstrained power to determine what factors will be used in a particular case.  735 F.3d at 419-420.  In Lawrence, the court recognized the numerous limitations the FDPA places on the use of non-statutory aggravating factors, including: (i) "requiring that prior notice be given to the defendant"; (ii) "giving the district court 'gatekeeper' responsibility for limiting admission of unfairly prejudicial information"; and (iii) "requiring that the jury find at least one intent element and one statutory aggravating factor before considering any non-statutory factor."  Id. at 419 (citations omitted). According to the Sixth Circuit, "[t]hese safeguards have been deemed sufficient to limit the prosecutor's power and render the delegation of discretion to charge non-statutory aggravating factors constitutional."  Id. at 419-420 (citing Mitchell, 502 F.3d at 979; Higgs, 353 F.3d at 321-322; United States v. Paul, 217 F.3d 989, 1003 (8th Cir. 2000); Louis Jones, 132 F.3d at 239-240)); accord Allen, 247 F.3d at 757 (rejecting the defendant's argument that the use of non-statutory aggravating factors failed to adequately limit and guide the sentencing discretion of the jury in

violation of the Eighth Amendment); United States v. Cooper, 91 F. Supp. 2d 90, 97 (D.D.C. 2000) (same).  Therefore, the Court finds that the use of relevant non-statutory factors does not result in the imposition of arbitrary and capricious death sentences.

### iii.   Non-Statutory Aggravating Factors Do Not Violate Ban on Ex Post Facto Laws

Defendants argue that all non-statutory aggravating factors should be stricken from the notice of intent because these factors constitute elements of a capital offense.  They insist that, by allowing the Government to "manufacture out of whole cloth aggravating factors to be applied retroactively to crimes committed before the aggravating factors are identified," the FDPA violates the Constitution's ban on ex post facto laws.  See Defs. Mot. at 10-14.  The Court again disagrees.

The U.S. Constitution prohibits both federal and state governments from enacting any "ex post facto Law."  U.S. Const., art. I, § 9, cl. 3; art. I, § 10, cl. 1.  This clause bans the application of a law that either retroactively increases the punishment after the crime was committed, Johnson v. United States, 529 U.S. 694, 699 (2000) (citing Calder v. Bull, 3 U.S. (Dall.) 386, 391-392 (1798)), or retroactively alters the definition of the crime, Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 504-505 (1995) (citing Collins v. Youngblood, 497 U.S. 37, 43 (1990)).

As this Court held above, non-statutory aggravating factors, unlike statutory aggravating factors, are not elements of a capital offense because they are only relevant for considerations in the sentence selection phase.  See supra Section II.A.1.ii.  Consequently, they can neither expose Defendants to an increased punishment nor alter the definitions of the crimes charged in this case. Therefore, Defendants' ex post facto argument lacks merit.  Other courts have routinely rejected similar arguments.[7]

---

[7] See, e.g., Higgs, 353 F.3d at 322 ("Although aggravating factors do make more burdensome the punishment for the crime, nonstatutory aggravating factors and mitigating factors are weighed by

### iv.  Non-Statutory Aggravating Factor of Victim-Impact Evidence Does Not Violate the Eighth Amendment

Defendants argue that the non-statutory aggravating factor of victim-impact evidence should be stricken from the notice of intent because the Eighth Amendment prohibits the consideration of victim-impact evidence during the sentencing hearing.  See Defs. Mot. at 14-19  According to Defendants, the Supreme Court's decision in Payne v. Tennessee, 501 U.S. 808 (1991), which permitted the introduction of victim-impact evidence, was wrongly decided and should be overruled.  Id.  This Court cannot grant the relief Defendants request.

The FDPA describes victim-impact evidence as a factor "concerning the effect of the offense on the victim and the victim's family," and permits evidence in the form of testimony, a victim-impact statement, and "any other relevant information."  18 U.S.C. § 3593(a).  The Supreme Court has held that the Eighth Amendment "permits capital sentencing juries to consider evidence relating to the victim's personal characteristics and the emotional impact of the murder on the victim's family in deciding whether an eligible defendant should receive a death sentence." Louis Jones, 527 U.S. at 395 (citing Payne, 501 U.S. at 827).  The Sixth Circuit has held the same. Lawrence, 735 F.3d at 405 ("The Supreme Court has sanctioned the use of victim-impact evidence in the sentencing phase of a capital trial." (citing Louis Jones, 527 U.S. at 395; Payne, 501 U.S. at 825)).

---

the jury to make the individualized determination to impose the death sentence upon a defendant who has already been found eligible.  They do not increase the possible punishment or alter the elements of the offense." (citation, quotation marks, and brackets omitted); United States v. George, No. 17-201, 2019 WL 343186, at *4 (E.D. La. Jan. 28, 2019) (rejecting the defendant's argument that the FDPA "permits the prosecution to manufacture out of whole cloth aggravating factors to be applied retroactively to crimes committed before the aggravating factors are identified," thereby violating the ex post facto clause of the Constitution); Montgomery, 10 F. Supp. 3d at 820-821 (same).

Because only the Supreme Court may overrule its own precedents, this Court must follow Payne and Louis Jones, unless and until the Supreme Court itself decides to overrule them.  See Bosse v. Oklahoma, 137 S. Ct. 1, 2 (2016) (per curiam) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality."); see also Hutto v. Davis, 454 U.S. 370, 375 (1982) (observing that, "unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be").  This Court is similarly bound to follow the Sixth Circuit's decision in Lawrence.  See Hall v. Eichenlaub, 559 F. Supp. 2d 777, 782 (E.D. Mich. 2008) ("[A] district court is bound by the decisions of the Circuit Court of Appeals in which it sits.").  Therefore, the Court denies Defendants' request to strike the non-statutory aggravating factor of victim-impact evidence from the notice of intent.

### v. Non-Statutory Aggravating Factor of Criminal Street Gang Participation Is Not Unconstitutionally Duplicative

Defendants argue that the non-statutory aggravating factor of criminal street gang participation should be stricken from the notice of intent because it duplicates an element of the charged crimes—namely, the enterprise element of both the racketeering and the 18 U.S.C. § 924(j) offenses.  See Defs. Mot. at 19-22.  Defendants claim that, during the guilt phase of the trial, the jury must conclude beyond a reasonable doubt that Defendants were members of the 6 Mile Chedda Grove gang.  Id. at 22.  According to Defendants, allowing the Government to present duplicative evidence of street gang membership during the penalty phase would disrupt the jury's duty to conduct "an individualized determination on the basis of the character of the individual," id. (quoting Zant, 462 U.S. at 879), and "unfairly skew the weighing process in favor of death,"

id. (quoting <u>United States v. McVeigh</u>, 944 F. Supp. 1478, 1489-1490 (D. Col. 1996)).  The Court disagrees.

To begin, in <u>Lowenfield v. Phelps</u>, 484 U.S. 231, 246 (1988), the Supreme Court approved of aggravating factors that duplicated elements of a state capital offense, stating that "the fact that [an] aggravating circumstance duplicated one of the elements of the crime does not make [the defendant's] sentence constitutionally infirm" when the existence of that aggravating circumstance played "no part of the constitutionally required narrowing process."  And in <u>Louis Jones</u>, a plurality of the Supreme Court permitted, at least implicitly, the introduction of aggravating factors that duplicated elements of a federal capital offense.  527 U.S. at 398 ("We have never before held that aggravating factors could be duplicative so as to render them constitutionally invalid, nor have we passed on the 'double counting' theory that the Tenth Circuit advanced in [<u>United States v. McCullah</u>, 76 F.3d 1087 (10th Cir. 1996)] and the Fifth Circuit appears to have followed here. What we have said is that the weighing process may be impermissibly skewed if the sentencing jury considers an invalid factor.").

Based on <u>Lowenfield</u>, and the instructive nature of <u>Louis Jones</u>, the Court finds that "it is constitutional to allow the jury to 'weigh' non-statutory aggravating factors during the sentencing phase that may duplicate offense elements."  <u>United States v. O'Reilly</u>, 545 F. Supp. 2d 630, 634 (E.D. Mich. 2008); <u>see also</u> <u>Higgs</u>, 353 F.3d at 315 ("[T]he Eighth Amendment does not prohibit the use of an aggravating factor during the sentencing phase that duplicates one or more elements of the offense of the crime found at the guilt phase."); <u>United States v. Chandler</u>, 996 F.2d 1073, 1092-1093 (11th Cir. 1993) ("As long as a death penalty statute narrows the class of persons subject to the death penalty at the guilt phase of trial, the fact that the jury may find an aggravating factor that duplicates a finding made at the guilt phase does not render the capital statute

unconstitutional."); <u>accord</u> <u>United States v. Fell</u>, 531 F.3d 197, 236 (2d Cir. 2008) ("Two factors are not duplicative merely because they are supported by the same evidence."); <u>Purkey</u>, 428 F.3d at 762 ("The Supreme Court has never before held that aggravating factors could be duplicative so as to render them constitutionally invalid, and we decline to do so when the FDPA avoids arbitrary death sentences by requiring juries to weigh aggravating and mitigating factors rather than to tally the factors on each side and declare a winner based on sheer numbers." (citation and quotation marks omitted)); <u>Robinson</u>, 367 F.3d at 293 ("Congress determined, in § 3592(c)(5), that a murderer is deserving of greater condemnation if he knowingly created a grave risk of death to one or more persons in addition to the victim; and, in § 3592(c)(16), that greater condemnation is warranted if the perpetrator intentionally killed or attempted to kill more than one person in a single episode.  We see no reason to second-guess Congress's judgment that murders bearing those attributes are deserving of enhanced punishment, and under [Louis Jones] their use is none the worse in tandem."); <u>United States v. Chanthadara</u>, 230 F.3d 1237, 1261 (10th Cir. 2000) ("[T]he duplication of a factor between the gateway factors and aggravating factors does not undermine the constitutional validity of the sentence.").

Moreover, to the extent there is "any risk that the weighing process would be skewed" in this case, the Court will instruct the jury that it "should not simply count the number of aggravating and mitigating factors and reach a decision based on which number is greater but rather should consider the weight and value of each factor."  <u>Louis Jones</u>, 527 U.S. at 399-400 (brackets omitted); <u>accord</u> <u>United States v. Bolden</u>, 545 F.3d 609, 625 (8th Cir. 2008); <u>United States v. Barrett</u>, 496 F.3d 1079, 1111 (10th Cir. 2007).

Defendants' reliance on <u>McVeigh</u> is also misplaced.  The Sixth Circuit has previously recognized that the ruling in <u>McVeigh</u> was not only "summary in nature and unpersuasive," but

the proposition it purportedly supports—that allowing the jury "to weigh as an aggravating factor a crime already proved in a guilty verdict would unfairly skew the weighing process in favor of death"—has been "soundly rejected by other courts." Lawrence, 735 F.3d at 418-419 (collecting cases). Therefore, the Court denies Defendants' request to strike the non-statutory aggravating factor of criminal street gang participation from the notice of intent because it is duplicative.

### vi. Statutory Aggravating Factor of "Substantial Planning and Premeditation" Narrows the Class of Persons Eligible for the Death Penalty is Not Unconstitutionally Overbroad or Vague

Defendants argue that the statutory aggravating factor of "substantial planning and premeditation," 18 U.S.C. § 3592(c)(9), should be stricken from the notice of intent because it is unconstitutionally vague and overbroad. See generally Defs. Mot. at 22-32. According to Defendants, this overbroad factor does not genuinely narrow the class of death-eligible defendants because "virtually every murder" involves some form of planning where a "murderer thinks about his crime before committing it." Id. at 23-24. Defendants submit that the general applicability of this factor to almost every murder is further demonstrated by the Government's use of it in approximately 83 percent of the cases compiled by the Federal Death Penalty Resource Counsel Project since 1988. Id. at 25 (no citation provided). Nor does the vague qualifier "substantial" provide a remedy to narrow the class of offenders because it provides no clear, objective, and specific "guidance to a court or a jury as to 'how much' or 'what kind of' 'planning and premeditation' are necessary to rise to the level of 'substantial.'" Id. at 25-26. The Court disagrees.

A constitutional capital-sentencing scheme must "genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." Zant, 462 U.S. at 877; see also

34

Marsh, 548 U.S. at 174 (explaining that to properly guide the discretion of the jury, a capital-sentencing scheme must "rationally narrow the class of death-eligible defendants").  The FDPA accomplishes this narrowing objective by requiring the jury to find that the defendant possessed the requisite intent and at least one statutory aggravating factor.  See 18 U.S.C. § 3591(a)(2) (intent factors); id. § 3592(c) (statutory aggravating factors).

The statutory aggravating factors in § 3592(c) narrow the range of conduct for which the death penalty may be considered.  Section 3592(c)(9), in particular, provides:

> Substantial planning and premeditation.-- The defendant committed the offense after substantial planning and premeditation to cause the death of a person or commit an act of terrorism.

18 U.S.C. § 3592(c)(9).  This factor relates "to the offense of murder, not to the offense of conviction."  Taylor, 814 F.3d at 389 (White, J., concurring in part, dissenting in part).

A statutory aggravating factor must apply only to a subclass of defendants convicted of murder.  Tuilaepa, 512 U.S. at 972.  Thus, an aggravating factor that is applicable to "every defendant" convicted of murder would be unconstitutionally overbroad.  Id. (citing Arave v. Creech, 507 U.S. 463, 474 (1993)).  Of course, it goes without saying that not every murderer plans and premeditates his or her killing, let alone substantially does so.  See, e.g., Mitchell, 502 F.3d at 978 ("Not all kill a sixty-three year old grandmother and a nine-year old girl, pursuant to a plan to obtain a car for use as a get-away vehicle in a robbery."); United States v. Christensen, No. 17-cr-20037, 2019 WL 1793135, at *13 (C.D. Ill. Apr. 24, 2019) ("[A] defendant who burgles a victim's apartment without knowledge that the victim is home, and then, upon discovering her presence, murders the victim, sets fire to the apartment, and then calls 911 to report a fire could not be said to have substantially planned or premeditated the murder."); accord Henderson, 485 F.

Supp. 2d at 867.  Therefore, the Court finds that § 3592(c)(9) clearly narrows the class of persons eligible for the death penalty compared to others found guilty of murder.

This factor is also not unconstitutionally vague.  Because an aggravating factor is "by necessity somewhat general" and "not susceptible of mathematical precision," it is not unconstitutional if it has some "'common-sense core of meaning . . . that criminal juries should be capable of understanding.'" Tuilaepa, 512 U.S. at 973 (quoting Jurek v. Texas, 428 U.S. 262, 279 (1976)).

The word "substantial," when used to qualify the phrase "planning and premeditation," "denote[s] a thing of high magnitude," which the Fifth Circuit has held is "sufficient to convey that meaning and to enable the jury to make an objective assessment." United States v. Davis, 609 F.3d 663, 689-690 (5th Cir. 2010), cert. denied, 562 U.S. 1290 (2011); see also United States v. Snarr, 704 F.3d 368, 392 (5th Cir. 2013) (recognizing that substantial planning and premeditation requires "a considerable amount of planning preceding the killing"), cert. denied, 571 U.S. 1196 (2014); United States v. Jackson, 327 F.3d 273, 301 (4th Cir. 2003) (defining "substantial planning and premeditation" as "a higher degree of planning than would have the words planning and premeditation alone—i.e., more than the minimum amount sufficient to commit the offense" (citation and quotation marks omitted)); cf. Taylor, 814 F.3d at 368-369 (holding that there was sufficient evidence of substantial planning and premeditation).  As one district court has recently made clear, "[e]very other federal court to consider the issue is in agreement" that the substantial planning and premeditation aggravator is not unconstitutionally vague.  Christensen, 2019 WL 1793135, at *14 (collecting cases).  This Court agrees with the considerable weight of authority on this issue and, therefore, denies Defendants' request to strike this statutory aggravating factor from the notice of intent.

### vii. Statutory Aggravating Factor of "Vulnerability of Victim" Requires Nexus Between Vulnerability and Criminal Offense

Defendants argue that the statutory aggravating factor of "vulnerability of victim," 18 U.S.C. § 3592(c)(11), violates the Eighth Amendment and should be stricken from the notice of intent because it is not relevant to the sentencing decision. See generally Defs. Mot. at 32-35. The Government claims that A.T., who was one of the two murder victims in this case, was "vulnerable" due to her "youth." 2d Superseding Indictment at 39-40; Notice of Intent at 4, 8. But, according to Defendants, the Government has failed to allege any facts to suggest that A.T.'s youth made her more vulnerable to being killed than an adult. Defs. Mot. at 33.[8]

In its response, the Government posits that the jury should receive "as much information as possible when it makes the sentencing decision," and that the FDPA specifically favors the inclusion of evidence. Gov't Resp. at 19 (Dkt. 800). The Government further claims that "[a]ll courts considering the issue have upheld the validity of the 'vulnerable victim' statutory aggravating factors." Id. (citing United States v. Bourgeois, 423 F.3d 501, 510-11 (5th Cir. 2005), United States v. Sampson, 275 F. Supp. 2d 49, 104 (D. Mass. 2003), United States v. Minerd, 176 F. Supp. 2d 424, 445-47 (W.D. Pa. 2001)).

The FDPA permits the vulnerability of a victim to be used as an aggravating factor and defines that quality as a showing that the "victim was particularly vulnerable due to old age, youth, or infirmity." 18 U.S.C. § 3592(c)(11). Based on the plain language of the FDPA, the Government must prove beyond a reasonable doubt during a sentencing hearing that A.T. was "particularly

---

[8] Defendants also argue that there must be some evidence that they knew about A.T.'s youth before committing the murder to make her age relevant, which they claim is absent here. Defs. Mot. at 34. This scienter argument was addressed and rejected by the First Circuit. See Sampson, 486 F.3d at 34 ("[W]e conclude, without serious question, that Congress did not intend that application of the vulnerable victim aggravating factor would depend upon proof of scienter."). The Court adopts the First Circuit's reasoning in Sampson and denies this portion of Defendants' motion.

vulnerable" because of her "youth."  Although this language does not contain an express nexus requirement, the Court agrees with Defendants that this factor requires some nexus between the vulnerability of the victim and the criminal offense.  See United States v. Savage, Nos. 07-550-03, 07-550-04, 07-550-05, 2013 WL 1934531, at *9 (E.D. Pa. May 10, 2013); United States v. Johnson, 136 F. Supp. 2d 553, 560 (W.D. Va. 2001).  "In certain cases, the victim's age and the circumstances surrounding the crime, without more, may establish the required nexus between the victim's vulnerability and the crime."  Savage, 2013 WL 1934531, at *9.  As the court in Johnson recognized, however, a victim's supposed vulnerability may not necessarily make him or her more susceptible to injury or death.  136 F. Supp. 2d at 560 (striking vulnerable victim aggravating factor where the facts alleged failed to show that the victim's pregnancy or condition made her particularly susceptible to instantaneous death when an explosive device detonated).

Here, the Government does not allege A.T.'s age.  Cf. Savage, 2013 WL 1934531, at *9 ("Certainly, the younger the age of the child, the more vulnerable he or she would have been to protect themselves from the criminal conduct.").  Nor does it suggest in the indictment or the notice or intent that A.T.'s age somehow made her particularly susceptible to injury or death.  This is especially true where the discovery produced thus far shows that A.T. was seated as a passenger in the car when Defendants allegedly emerged and began shooting in front of the Hayes Troester Super Market.  It would seem as though an adult would be just as vulnerable as A.T. in that situation.

While there may be merit to this portion of Defendants motion, the Court recognizes that the deadline for the parties "to submit a joint statement, setting forth points of agreement and disagreement, regarding the nature and timing of disclosures pertaining to the penalty phase, including disclosures pursuant to Federal Rules of Criminal Procedure 12.2 and 16" is August 1,

2019, See 8/31/2018 Order at 2 (Dkt. 475), which may conceivably impact the merits of Defendants' argument.

Therefore, the Court denies this request without prejudice.  Defendants may renew their objection to this aggravating factor after receiving the Government's disclosure.  Cf. Savage, 2013 WL 1934531, at *9 (ordering the Government to submit an offer of proof outlining the evidence they intended to show in support of vulnerable victim aggravating factor).

> ### viii. Statutory Aggravating Factors of "Grave Risk of Death to Additional Persons" and "Multiple Killings or Attempted Killings" Are Not Unconstitutionally Duplicative and Narrow the Class of Persons Eligible for the Death Penalty

Defendants argue that the statutory aggravating factors of "grave risk of death to additional persons," 18 U.S.C. § 3592(c)(5), and "multiple killings or attempted killings," 18 U.S.C. § 3592(c)(16), should be stricken from the notice of intent because they are duplicative of the charged offenses, Defs. Mot. at 35, and because they are duplicative of each other, id. at 36.  For the same reasons it denied Defendants' similar duplicative argument above, see supra Section II.A.4.v, the Court finds these arguments meritless.

Defendants also argue that these statutory aggravating factors should be stricken from the notice of intent because they fail to provide "carefully defined standards that narrow a sentencer's discretion," in violation of the Eighth Amendment.  Defs. Mot. at 36-38.  Insofar as Defendants are arguing that these aggravating factors are unconstitutionally overbroad, the Court disagrees. Clearly not every murder involves multiple or attempted killings.  Nor does every murder pose a grave risk of death to others.  Like the statutory aggravating factor of "substantial planning and premeditation" discussed above, the Court finds that the statutory aggravating factors of "grave risk of death to additional persons" and "multiple killings or attempted killings" satisfy the constitutional requirement of narrowing the class of persons eligible for the death penalty

compared to others found guilty of murder.  See Lawrence, 735 F.3d at 418 (rejecting the defendant's argument that the grave-risk-of-death aggravating factor did not narrow the class of persons eligible for the death penalty); Allen, 247 F.3d at 786-787 (rejecting the defendant's overbreadth and vagueness challenges to the grave-risk-of-death aggravating factor); Cooper, 91 F. Supp. 2d at 97 (D.D.C. 2000) (holding that 18 U.S.C. § 3592(c)(16) narrows the class of persons eligible for the death penalty); cf. Christensen, 2019 WL 1793135, at *13.

This motion is denied.

## B. Constitutionality of the Federal Death Penalty in General

A death sentence is "unique [among criminal sentences] in its . . . irrevocability," Gregg, 428 U.S. at 187, which makes it, of course, the "most severe punishment," Roper v. Simmons, 543 U.S. 551, 568 (2005).  Although "it is settled that capital punishment is constitutional," Glossip, 135 S. Ct. at 2732, the Eighth Amendment's prohibition on "cruel and unusual punishments" and "protection of human dignity," Moore v. Texas, 137 S. Ct. 1039, 1048 (2017), necessitates a "heightened need for reliability in the determination that death is the appropriate punishment in a specific case," Caldwell v. Mississippi, 472 U.S. 320, 323 (1985) (quotation marks omitted). Defendants request that the Court declare that the federal death penalty in general is unconstitutional and strike the notice of intent to seek a sentence of death.  For the reasons stated below, the Court denies the request.

### 1. Arbitrary and Capricious

Relying principally on the Supreme Court's decision in Furman v. Georgia, 408 U.S. 238 (1972) (per curiam), Defendants first argue that, because it is so "infrequently sought, imposed, or carried out," the federal death penalty "operates in an unconstitutionally arbitrary and capricious manner" in violation of the Fifth and Eighth Amendments.  See generally Defs. Mot. at 19 (Dkt.

789).   To support their contention, Defendants have amassed comprehensive figures to demonstrate how the death penalty is rarely authorized in death-eligible cases, id. at 16-19, its supposed inconsistent and unpredictable imposition by juries during the penalty-phase of trial when compared to other cases, id. at 19-31, and its disproportionate application based on race, gender, and geography, id. at 31-62.

Although the Court agrees with Defendants that "[a]rbitrary imposition of the death penalty violates the Eighth Amendment," Lawrence, 735 F.3d at 409, Defendants' argument is ultimately unconvincing because it "mistakes the nature of the arbitrariness concern in the Supreme Court's jurisprudence," Sampson, 486 F.3d at 23.   In Furman, the Supreme Court held that that death sentences imposed under Georgia's and Texas's capital punishment statutes constituted cruel and unusual punishment in violation the Eighth and Fourteenth Amendments because those statutes provided "no standards [to] govern the selection of the penalty.   People live or die, dependent on the whim of one man or of 12."   408 U.S. at 253.

Four years after Furman, the Supreme Court decided Gregg v. Georgia, 428 U.S. 153 (1976), in which it considered Georgia's post-Furman amended capital statute.   In Gregg, the Supreme Court determined that the death penalty for the crime of murder does not, under all circumstances, violate the Eighth and Fourteenth Amendments, 428 U.S. at 169, but that "Furman mandates that where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action," id. at 189.   The Supreme Court emphasized that the "concerns expressed in Furman that the penalty of death not be imposed in an arbitrary or capricious manner can be met by a carefully drafted statute that ensures that the sentencing authority is given adequate information and guidance," e.g., a

bifurcated proceeding. Id. at 195; see also Jurek, 428 U.S. at 276-277 (concluding that Texas's capital-sentencing procedures do not violate the Eighth and Fourteenth Amendments); Proffitt v. Florida, 428 U.S. 242, 252-253 (1976) (concluding that Florida's capital-sentencing procedure do not violate the Eighth and Fourteenth Amendments).

Gregg stands for the proposition that the death penalty is constitutional and that the discretion afforded the jury in deciding whether to impose the death penalty can be guided or directed so as to minimize any arbitrariness in its imposition. Indeed, as the Supreme Court explained in Kansas v. Marsh, 548 U.S. 163 (2006), Furman and Gregg instruct that, to be constitutional, a "capital sentencing system must: (1) rationally narrow the class of death-eligible defendants; and (2) permit a jury to render a reasoned, individualized sentencing determination based on a death-eligible defendant's record, personal characteristics, and the circumstances of his crime." Marsh, 548 U.S. at 173-174; see also Louis Jones, 527 U.S. at 381 ("[F]or a capital sentencing scheme to pass constitutional muster, it must perform a narrowing function with respect to the class of persons eligible for the death penalty and must also ensure that capital sentencing decisions rest upon an individualized inquiry."). Thus, an examination of the constitutionality of a capital statute must be focused on the guidance provided to the sentencing body as opposed to the statute's application. The FDPA—with its bifurcated scheme that narrows the class of death-eligible defendants using statutory and non-statutory aggravating factors and permits the jury to make an individualized sentencing determination—satisfies the Marsh standard. See, e.g., Sampson, 486 F.3d at 24; United States v. Williams, No. 4:08-cr-00070, 2013 WL 1335599, at *4 (M.D. Pa. Mar. 29, 2013).

Defendants' additional argument—that because the federal death penalty is so infrequently sought, its imposition is arbitrary and capricious—is similarly unconvincing. The First Circuit

observed in <u>Sampson</u> that the Supreme Court "has made clear" that its concern regarding the arbitrariness of the death penalty is whether the discretion exercised by juries is "<u>guided</u> so as to limit the potential for arbitrariness." <u>Sampson</u>, 486 F.3d at 23 (emphasis added). Thus, "the <u>frequency</u> with which the death penalty [is] sought or imposed" does not render the federal death penalty or the FDPA unconstitutional. <u>Id.</u> at 23-24 (emphasis added); <u>accord</u> <u>Aquart</u>, 912 F.3d at 54 ("[A]s the Supreme Court's post-<u>Furman</u> capital jurisprudence makes clear, the reason the infrequency of death sentences for intentional murder raised constitutional concern in <u>Furman</u> was not because death was a disproportionate sentence for that crime but because Georgia's then-available sentencing procedures were inadequate to ensure that death sentences were not being arbitrarily and capriciously imposed in individual cases." (emphasis omitted)).

Insofar as Defendants argue that the federal death penalty is unconstitutional in violation of the Fifth and Eighth Amendments—because minority defendants, defendants suspected of killing white females, and defendants from southern states are disproportionately more likely to receive death sentences—the Court finds the argument meritless. Defendants do not argue that their race, the geographic location of this prosecution, or the race or gender of their alleged victims were considerations in deciding to seek the death penalty against them. Moreover, the use of such a generalized statistical disparity, without evidence of its applicability to Defendants, was foreclosed by the Supreme Court in <u>McCleskey v. Kemp</u>, 481 U.S. 279 (1987).

In <u>McCleskey</u>, the Supreme Court stated that "a defendant who alleges an equal protection violation has the burden of proving 'the existence of purposeful discrimination'" and "must prove that the decisionmakers in <u>his</u> case acted with discriminatory purpose." <u>Id.</u> at 292 (emphasis in original). Assuming without deciding that Defendants have standing to raise claims premised on gender-based and geographical disparities, the Court concludes that Defendants' challenge under

the implicit Equal Protection Clause in the Fifth Amendment fails because they have not presented

any specific evidence of purposeful discrimination against themselves or those southern and

minority defendants upon whom they purport to base their claim.

The Supreme Court also rejected Eighth Amendment claims based on statistical studies

indicating race-based discrepancies in capital sentencing.  Id. at 312-313.  According to the

Supreme Court,

> Apparent disparities in sentencing are an inevitable part of our
> criminal justice system. . . .  [O]ur consistent rule has been that
> constitutional guarantees are met when the mode [for determining
> guilt or punishment] itself has been surrounded with safeguards to
> make it as fair as possible.  Where the discretion that is fundamental
> to our criminal process is involved, we decline to assume that what
> is unexplained is invidious.

Id. (citations and quotation marks omitted).  As in McCleskey, the statistics Defendants rely on

provide "no basis for attributing the statistical discrepancies with respect to geography and race in

FDPA prosecutions to discrimination rather than to other factors, such as differences in the nature

of the crimes involved."  Sampson, 486 F.3d at 26-27.  Therefore, Defendants' Eighth Amendment

claim similarly fails because they have not articulated that the discrepancies that appear to correlate

with race, region, and gender are caused by something invidious rather than the discretion given

44

to juries and judges under the FDPA.[9]  Other courts have routinely rejected identical arguments to

those Defendants raise here.[10]

### 2.   Evolving Standards of Decency

Defendants also argue that "the 'evolving standards of decency that mark the progress of a

maturing society' have reached that point where the federal death penalty is out of place with

current societal values."  Defs. Mot. at 63.  To support their contention, Defendants claim that

"there has been a sharp decline in the numbers of death sentences returned by juries and death

sentences carried out by the states."  Id. at 66.  For example, there were 98 executions in 1999 but

only 25 in 2018.  Id.  Regarding federal executions in particular, there have only been three

executions since 1988, and none since 2003.  Id.  The number of defendants facing capital

prosecutions has similarly gone down in number, from 32 capital trials in 2005 to 2 trials in 2018.

Id. at 69.  Based on these declining numbers, Defendants argue that the federal death penalty no

---

[9] Although the Supreme Court did not explicitly hold in McCleskey that statistical evidence is insufficient to sustain a claim brought under the Due Process Clause of the Fifth Amendment, any Fifth Amendment claim is practically identical to Defendants' Eighth Amendment claim, as both rely solely on statistical evidence.  Thus, "the Supreme Court's rejection of an Eighth Amendment claim based only on statistical evidence of discrimination bars Defendant from succeeding on a Fifth Amendment claim that is nearly identical to his Eighth Amendment claim." Williams, 2013 WL 1335599, at *7.

[10] See, e.g., Sampson, 486 F.3d at 23-27; United States v. Candelario-Santana, 368 F. Supp. 3d 316, 320-322 (D.P.R. 2019); Con-Ui, 2016 WL 9331115, at *4-6; United States v. Sanders, No. 10-00351, 2014 WL 3122418, at *2-4 (W.D. La. July 3, 2014); United States v. Coonce, No. 10-3029-01-CR-S-GAF, 2014 WL 1018081, at *17-20 (W.D. Mo. Mar. 14, 2014); Williams, 2013 WL 1335599, at *2-8; United States v. Jacques, No. 2:08-cr-117, 2011 WL 1675417, at *2-4 (D. Vt. May 4, 2011), vacated in part on other grounds, 684 F.3d 324 (2d Cir. 2012); United States v. Basciano, 763 F. Supp. 2d 303, 339-340 (E.D.N.Y. 2011); United States v. Bin Laden, 126 F. Supp. 2d 256, 260-263 (S.D.N.Y. 2000); cf. United States v. Fell, 224 F. Supp. 3d 327, 359 (D. Vt. 2016) ("The time has surely arrived to recognize that the reforms introduced by Gregg and subsequent decisions have largely failed to remedy the problems identified in Furman.  Institutional authority to change this body of law is reserved to the Supreme Court.").

longer serves any valid penological purpose, and, therefore, it is per se cruel and unusual in violation of the Eighth Amendment.  Id.  The Court disagrees.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  This clause "is not fastened to the obsolete," rather, its meaning is drawn from "the evolving standards of decency that mark the progress of a maturing society."  Moore, 137 S. Ct. at 1048 (quoting Hall v. Florida, 542 U.S. 701, 708 (2014)); accord Roper, 543 U.S. at 560-561; Atkins v. Virginia, 536 U.S. 304, 311-312 (2002).  The question is whether the societal standards of decency have evolved to that point that this Court can conclude that the death penalty is per se cruel and unusual punishment.  Based on Supreme Court precedent, they have not.

In Gregg, the Supreme Court rejected the argument that the death penalty per se violates "standards of decency," ruling that "a large proportion of American society continues to regard it as an appropriate and necessary criminal sanction."  428 U.S. at 179.  Although the Supreme Court has since determined that evolving societal standards have rendered the execution of juveniles and persons with intellectual disabilities unconstitutional, see Roper, 543 U.S. at 572; Atkins, 536 U.S. at 321, it does not necessarily follow that societal standards of decency have evolved to the point where, in all cases of murder, execution is prohibited by the Eighth Amendment, see Fell, 224 F. Supp. 3d at 356 ("The record in this case does not support a view that the country has achieved consensus on the desirability of abolishing the death penalty.  Public opinion is turning against the death penalty and state legislatures have done so as well, but the change is insufficiently broad to meet the Atkins requirement of consensus at this time.").  Indeed, the Supreme Court reaffirmed the constitutionality of the death penalty in 2015.  See Glossip, 135 S. Ct. at 2732 ("[I]t is settled that capital punishment is constitutional.").  And the Supreme Court continues to acknowledge the

continued vitality of the death penalty.  See, e.g., Kansas v. Carr, 136 S. Ct. 633 (2016); Hurst v. Florida, 136 S. Ct. 616 (2016).

This Court is bound by Supreme Court precedent, and, therefore, Defendants' argument is rejected.  Accord Candelario-Santana, 368 F. Supp. 3d at 322 (denying the defendant's argument that the evolving standards of decency that mark the progress of a maturing society have rendered the federal death penalty both cruel and unusual in violation of the Eighth Amendment); Con-Ui, 2016 WL 9331115, at *7 (same); United States v. Johnson, 900 F. Supp. 2d 949, 963-964 (N.D. Iowa 2012) (same); United States v. Hammer, No. 4:96-CR-239, 2011 WL 6020577, at *6 (M.D. Pa. Dec. 1, 2011) (same); United States v. Green, No. 5:06CR-19-R, 2008 WL 4000943, at *5 (W.D. Ky. Aug. 26, 2008) (same); Sablan, 2006 WL 1028780, at *13 (same).

This motion is denied.

## III.  CONCLUSION

For the reasons stated above, Defendants' joint motions challenging the constitutionality of the federal death penalty in general (Dkt. 789), and the FDPA in particular (Dkts. 773, 787, 788, 790), are denied.

SO ORDERED.

Dated:  July 11, 2019                                    s/Mark A. Goldsmith
         Detroit, Michigan                               MARK A. GOLDSMITH
                                                         United States District Judge