UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    Case No. 16-cr-20460

    HON. MARK A. GOLDSMITH

EDWIN MILLS, et al.,

    Defendants.
_____/

**OPINION & ORDER
DENYING DEFENDANTS EDWIN MILLS AND CARLO WILSON'S JOINT MOTION
TO PROHIBIT DEATH QUALIFICATION OF PETIT JURY (Dkt. 772)**

This matter is before the Court on Defendants Edwin Mills and Carlo Wilson's joint motion to prohibit the death qualification of the petit jury (Dkt. 772). The Government filed a response in opposition to the motion (Dkt. 796), to which Wilson replied (Dkt. 835).[1] For the reasons stated below, the Court denies the motion.

### I. BACKGROUND

Because the Court has previously described the factual and procedural background of this case in greater detail in other opinions, it need not do so again for purposes of the present motion. See, e.g., United States v. Mills, 378 F. Supp. 3d 563 (E.D. Mich. 2019) (denying motions to dismiss); United States v. Mills, No. 16-cr-20460, 2019 WL 1915762 (E.D. Mich. Apr. 30, 2019) (denying motions for bills of particulars); United States v. Mills, 367 F. Supp. 3d 664 (E.D. Mich. 2019) (granting in part and denying in part motion to preclude rap lyrics and videos).

### II. DISCUSSION

---

[1] Because oral argument will not aid the Court's decisional process, Defendants' motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2).

1

Defendants argue that their right to an impartial jury drawn from a fair cross section of the community under the Sixth Amendment and the Jury Selection and Service Act of 1968 ("JSSA"), 18 U.S.C. § 1861 et seq., will be violated if a "death qualified" jury is empaneled in this case, especially in the state of Michigan, which has abolished capital punishment. See generally Defs. Mot.[2] For the reasons stated below, the Court disagrees.

The Sixth Amendment guarantees criminal defendants the right to be tried by "an impartial jury . . . ." U.S. Const. amend. VI. Although "a criminal defendant has the right to an impartial jury drawn from a venire that has not been tilted in favor of capital punishment by selective prosecutorial challenges for cause," Uttecht v. Brown, 551 U.S. 1, 9 (2007), the Supreme Court has repeatedly held that the Constitution does not prohibit a prosecutor from seeking to remove, for cause, prospective jurors "whose opposition to the death penalty is so strong that it would prevent or substantially impair the performance of their duties as jurors," Lockhart v. McCree, 476 U.S. 162, 165 (1986) (holding that death qualification does not violate the fair cross-section requirement of the Sixth Amendment); see also Wainwright v. Witt, 469 U.S. 412, 420 (1985) (reaffirming "the general proposition that a juror may not be challenged for cause based on his views about capital punishment unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath" (quoting Adams v. Texas, 448 U.S. 38, 45 (1980)). This is because a juror who would automatically vote to impose either a life sentence or the death penalty in a capital case, "regardless of his or her

---

[2] Defendants also appear to argue that death qualification would somehow violate the Fifth and Eighth Amendments. See Defs. Mot. at 1, 4, 5, 18. But by focusing exclusively on the Sixth Amendment and the JSSA, Defendants fail to advance any intelligible argument—or cite any case law—that the Fifth and Eighth Amendments would be violated if the Government attempted to remove, for cause, prospective jurors whose opposition to the death penalty is so strong that it would prevent or substantially impair the performance of their duties as jurors.

instructions, is not an impartial juror and must be removed for cause." Morgan v. Illinois, 504 U.S. 719, 728, 733 (1992). Thus, the prosecutor "must be given the opportunity to identify such prospective jurors by questioning them at voir dire about their views of the death penalty." Id. at 733 (quoting Lockhart, 476 U.S. at 170 n.7). This process of questioning prospective jurors about their views of the death penalty to ensure their impartiality is colloquially referred to as the "death qualification" process. United States v. Brown, 441 F.3d 1330, 1353 n.10 (11th Cir. 2006).

Importantly, prospective jurors cannot be excluded simply because they have "voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." Witherspoon v. Illinois, 391 U.S. 510, 522 (1968). Rather, further inquiry must be made "into whether the views of prospective jurors on the death penalty would disqualify them from sitting." Morgan, 504 U.S. at 731. Although a prospective juror must be "death qualified" to serve on the defendant's petit jury in a capital case, that same juror need only be "life qualified" upon the defendant's request. See Stojetz v. Ishee, 892 F.3d 175, 195 (6th Cir. 2018) ("Morgan does not mandate that life-qualifying questions be asked of potential jurors in every case. Instead, Morgan holds that a defendant has the right to life-qualify his jury upon request."), cert. denied, 139 S. Ct. 1262 (2019); cf. United States v. Wilson, 493 F. Supp. 2d 406, 408 (E.D.N.Y. 2006) ("A juror is not life qualified if he would automatically impose a death sentence after a guilty verdict, without considering mitigating factors.").

In their motion, Defendants claim that various social science studies and empirical evidence over the past several decades demonstrate "that the process of death qualification skews juries toward guilty verdicts and death sentences." Id. at 8 (citing United States v. Fell, 224 F. Supp. 2d 327, 335, 339 (D. Vt. 2016)). For example, the Capital Jury Project, which was created in 1990 with the objective of gathering and presenting empirical data about how jurors in capital

3

trials make decision, has recently found that death qualification of prospective jurors ultimately leads to an "unacceptable level of unreliability in capital jury verdicts" because it (i) results in "over representation of prosecution- and guilt-prone jurors on capital juries, (ii) "creates in the jurors a bias against the defendant and in favor of the death penalty," and (iii) "results in the under representation of racial minorities and woman on capital juries." Id. at 9 (citing Fell, 224 F. Supp. 3d at 335-338). Regarding this last point, Defendants state that "[r]acial minorities and women tend to oppose the death penalty," such that death qualification will lead to even fewer minorities and women on the jury. Id. at 12 (citing Fell, 224 F. Supp. 3d at 332).³

Defendants further argue that death qualification in the state of Michigan, which has abolished capital punishment, will only exacerbate these problems. Without citation to any authority, Defendants believe that, "in jurisdictions where most citizens oppose the death penalty, 'death qualification' is likely to result in a greater divergence between the attitudes of the jury selected in a capital case and the attitudes of the community at large." Id. at 17. Defendants then assert that in Michigan, "where most of the citizens oppose the death penalty, what results would be a voir dire process that excluded all but the most pro-punishment and pro-conviction jurors." Id. But again, Defendants failed to provide any support for that factual proposition.

---

³ Because Defendants' motion is denied for other reasons, the Court does not have to assess the veracity or adequacy of the social science studies referenced in their motion. See United States v. Cheever, 423 F. Supp. 2d 1181, 1218 (D. Kan. 2006) ("[E]ven if the court were to consider the social science studies advanced by defendant, it would follow the lead of other courts that have categorically rejected the application of these studies to [Federal Death Penalty Act] proceedings.") (collecting cases); see also Proctor v. Ayers, No. CIV S-96-1401, 2007 WL 1449720, at *17 (E.D. Cali. May 15, 2007) (recognizing that "the Supreme Court's decision in Lockhart did not depend on studies at all"); cf. Fell, 224 F. Supp. 3d at 332-340, 359 (assessing social science data, including work of the Capital Jury Project, concluding that the "studies brought to the court's attention supported the position of the defense that jury selection since [Gregg v. Georgia, 428 U.S. 153 (1976)] is not the solution to inherent jury bias but rather a substantial part of the problem," but denying the defendant's motions because "[i]nstitutional authority to change this body of law is reserved to the Supreme Court.").

In its response, the Government first argues that Defendants' claims regarding death qualification are not ripe until "actual jurors are questioned and empaneled, and then only as it relates to specific jurors and specific challenges for cause." Gov't Resp. at 8. The Government then argues that Defendants' claims are foreclosed by binding Supreme Court precedent, including Uttecht and Witt, as well as the Sixth Circuit's decision in United States v. Gabrion, 719 F.3d 511 (6th Cir. 2013), all of which have affirmed the death-qualification process for prospective jurors. Gov't Resp. at 9-11. Next, the Government contends that Defendants have misapplied the law regarding the fair cross-section requirement of the Sixth Amendment, because that law concerns the demographics of the jury pools, not individual death penalty beliefs of summoned jurors. Id. at 13-14.[4] Finally, the Government notes that two polls in Michigan demonstrate that a majority of respondents actually support the death penalty, see Gov't Resp. at 4 (citing iSideWith Poll, Ex. A. to Gov't Resp. (Dkt. 796-1); News Release, "Poll Reveals Lack of Strong Support for Death Penalty," Ex. B to Gov't Resp. (Dkt. 796-2)), and that any concerns involving "federalism" are "more imaginary than real," id. at 16-17 (quoting United States v. Fell, 571 F.3d 264, 266 (2d Cir. 2009) (Raggi, J., concurring)).

Assuming without deciding that Defendants' motion is ripe for adjudication, the Court agrees with the Government that the Supreme Court has repeatedly held that the removal of prospective jurors for cause if their views about capital punishment would prevent or substantially impair the performance of their duties as jurors does not violate the Constitution. See Uttecht, 551 U.S. at 9; Morgan, 504 U.S. at 733-734; Lockhart, 476 U.S. at 165; Witt, 469 U.S. at 420; Adams,

---

[4] Defendants did not address this argument in their reply brief.

5

448 U.S. at 45.[5] The Sixth Circuit has similarly recognized that "a capital defendant's right to an impartial jury is balanced against the government's strong interest in having jurors who are able to apply capital punishment within the framework the law prescribes," and that balance is achieved by applying the Witt standard. Gabrion, 719 F.3d at 526-527 (citation, quotation marks, and brackets omitted). For these reasons alone, the Court denies Defendants' motion to prohibit death qualification in this case.

Furthermore, the Court agrees with the Government that Defendants' request to prohibit death qualification based on the fair cross-section requirements of the Sixth Amendment and the JSSA is misplaced. The Supreme Court has held that impartiality requires the "presence of a fair cross section of the community" on "jury wheels, pools of names, panels, or venires from which [petit] juries are drawn." Taylor v. Louisiana, 419 U.S. 522, 526, 538 (1975); Berghuis v. Smith, 559 U.S. 314, 319 (2010) ("The Sixth Amendment secures to criminal defendants the right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community."). The JSSA similarly articulates "the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861.

Importantly, a defendant's right to an impartial jury drawn from a fair cross section of the community is not based on the actual composition of either the petit jury, Taylor, 419 U.S. at 538 (stating that there is "no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population"), or the petit jury venire, Ambrose v.

---

[5] Of course, this Court is bound by the decisions of the Supreme Court. See United States v. Roof, 225 F. Supp. 3d 413, 416 (D.S.C. 2016) (holding that Morgan, Witt, and Adams are "binding precedent," which the court was "commanded to follow").

6

Booker, 684 F.3d 638, 645 (6th Cir. 2012) (stating that a defendant raising a fair cross-section claim "is challenging the pool from which the jury is drawn, and not necessarily the venire panel directly before him"); United States v. Ferguson, 863 F. Supp. 2d 661, 668 (E.D. Mich. 2012) ("[T]he mere happenstance of an unrepresentative jury panel taken from a properly assembled Qualified Wheel does not violate the Constitution."); see also United States v. Nicholson, 716 F. App'x 400, 414 (6th Cir. 2017) ("It is not sufficient to make general observations about the assembled venire. Thus, the defendants should have made a motion outlining the aspects of the Eastern District of Michigan's jury pool selection process that lead to systematic exclusion of African Americans before the start of trial."); accord United States v. Jackson, 46 F.3d 1240, 1244 (2d Cir. 1995) ("[T]he Sixth Amendment guarantees the opportunity for a representative jury venire, not a representative venire itself" (emphasis in original)).

To prove a fair cross-section violation, therefore, a defendant must demonstrate that systematic exclusion of a distinctive group has resulted in an unreasonable underrepresentation of that group in jury venires. Duren v. Missouri, 439 U.S. 357, 364 (1979). But the very nature of the death-qualification process—namely, the questioning of a prospective juror about his or her views on the death penalty and removing that juror for cause if his or her views prevent or substantially impair the performance of his or her duties as a juror—presupposes the existence of the venire drawn from a cross section of the community. Lockhart, 476 U.S. at 184 (explaining that "the Constitution presupposes that a jury selected from a fair cross section of the community is impartial, regardless of the mix of individual viewpoints actually represented on the jury, so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case."). Indeed, the Supreme Court has expressly rejected a defendant's argument that death qualification violates fair cross-section requirement of the Sixth Amendment

because that requirement does not extend to petit juries. Lockhart, 476 U.S. at 173-174; accord Harris v. Pulley, 885 F.2d 1354, 1371 (9th Cir. 1988) ("The Supreme Court's reasoning in [Lockhart] requires rejection of Harris' contention that 'death qualification' violated his right to a jury selected from a representative cross-section of the community. The fair cross-section requirement does not apply to petit juries. The fair cross-section rule is limited to the method of summoning the venire panel from which the petit jury is selected." (citing Lockhart, 476 U.S. 173-174); Smart v. Folino, Civil No. 3:CV-10-1447, 2015 WL 1525528, at *16 (M.D. Pa. Apr. 2, 2015) ("The fair cross-section requirement applies to jury pools, not the petit jury itself." (citing Lockhart, 476 U.S. at 173-185)); Powell v. Bowersox, 895 F. Supp. 1298, 1320 (E.D. Mo. 1995) ("The fair-cross-section requirement simply does not extend to a petit jury." (citing Lockhart, 476 U.S. at 173-174)).

Moreover, unlike immutable characteristics like race or ethnicity, jurors with "shared attitudes that would prevent or substantially impair [them] from performing one of their duties as jurors"—like opposition to the death penalty in all cases—are not a "distinctive group" for purposes of Duren. See Lockhart, 476 U.S. at 174. Because Defendants have utterly failed to demonstrate that death qualification itself results in the unreasonable underrepresentation of a distinctive group in the jury venire, their motion is denied for this additional reason. See United States v. Simpson 645 F.3d 300, 312 & n.10 (1st Cir. 2011) (holding that "[d]eath penalty opponents are not a distinctive group," and that "death qualification does not violate the fair-cross-section requirement," regardless of the prospective juror's ethnicity or gender); see also Smart, 2015 WL 1525528, at *16 (holding that "the use of death-qualified juries in capital cases does not

8

violate a capital defendant's right to a jury pool that represents a fair cross-section of the community").[6]

### III. CONCLUSION

For the reasons stated above, Edwin Mills and Carlo Wilson's joint motion to prohibit the death qualification of the petit jury (Dkt. 772) is denied.

SO ORDERED.

Dated: July 12, 2019  
Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

---

[6] For this reason, Defendants' request for a hearing to "present evidence that the effect of death qualification deprives them of a fair cross-section of the community and will lead to a conviction-prone and death-prone jury," Defs. Mot. at 18, is denied.

9