UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

EDWIN MILLS, et al.,

        Defendants.
_____/

Case No. 16-cr-20460

HON. MARK A. GOLDSMITH

**OPINION & ORDER
DENYING DEFENDANTS EDWIN MILLS AND CARLO WILSON'S JOINT MOTION
FOR A PETIT JURY DRAWN EXCLUSIVELY FROM WAYNE COUNTY, MICHIGAN
(Dkt. 771)**

This matter is before the Court on Defendants Edwin Mills and Carlo Wilson's joint motion for a petit jury drawn exclusively from Wayne County, Michigan (Dkt. 771). The Government filed a response in opposition to the motion (Dkt. 792), to which Defendants replied (Dkt. 832).[1] For the reasons stated below, the Court denies the motion.

### I. BACKGROUND

Because the Court has previously described the factual and procedural background of this case in greater detail in other opinions, it need not do so again for purposes of the present motion. See, e.g., United States v. Mills, 378 F. Supp. 3d 563 (E.D. Mich. 2019) (denying motions to dismiss); United States v. Mills, No. 16-cr-20460, 2019 WL 1915762 (E.D. Mich. Apr. 30, 2019) (denying motions for bills of particulars); United States v. Mills, 367 F. Supp. 3d 664 (E.D. Mich. 2019) (granting in part and denying in part motion to preclude rap lyrics and videos).

---

[1] Because oral argument will not aid the Court's decisional process, Defendants' motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2). Further, because the issues raised are purely matters of law, Defendants' request for an evidentiary hearing is denied.

1

## II. DISCUSSION

Defendants argue that, under 18 U.S.C. § 3235, they are entitled to a petit jury drawn exclusively from Wayne County, Michigan, and not the nine counties that a jury would usually be drawn from for trials held in the Detroit division of the Eastern District of Michigan, Southern Division.[2] Defendants claim to find further support for their position in the Sixth Amendment and the Jury Selection and Service Act of 1968 ("JSSA"), 18 U.S.C. § 1861 et seq.

The constitutional right to a jury trial appears twice in the U.S. Constitution. First, Article III provides that "the Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said crimes shall have been committed." U.S. Const. art. III, § 2, cl. 3. Second, the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . trial[] by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." U.S. Const. amend VI.[3] It is readily apparent that Article III was concerned with establishing a jury trial right in criminal cases and venue for criminal trials, while the Sixth Amendment reconfirmed these rights and added the right to a jury from the locale of the crime, known as vicinage.[4]

---

[2] Although the Southern Division of the Eastern District of Michigan is made up of thirteen counties, see 28 U.S.C. § 102, grand and petit jurors serving in the Detroit division are selected from nine counties, see Jury Selection Plan, Eastern District of Michigan, available at https://www.mied.uscourts.gov/PDFFIles/13AO016.pdf.

[3] Federal Rule of Criminal Procedure 18 also provides that, "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed" (emphasis added).

[4] The term "vicinage" has various meanings. Although the Merriam-Webster Dictionary defines vicinage as "a neighboring or surrounding district," Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/vicinage (last visited July 12, 2019), the concept of vicinage has come "to mean different things depending on the time, place, and people affected," Davis v. Warden, Joliet Corr. Inst. at Stateville, 867 F.2d 1003, 1007 (7th Cir. 1989), cert. denied,

When it comes to federal capital cases in particular, the venue of the trial has been further limited by legislation. Section 29 of the Judiciary Act of 1789 once provided that, in "cases punishable with death, the trial shall be had in the county where the offence was committed, or where that cannot be done without great inconvenience, twelve petit jurors at least shall be summoned from thence." Act of Sept. 24, 1789, ch. 20, § 29, 1 Stat. 88. The latter vicinage requirement that twelve jurors in capital cases be summoned from the county of the crime was later repealed in 1862. See Zicarelli v. Gray, 543 F.2d 466, 478 n.60 (3d Cir. 1976) (citing Act of July 16, 1862, ch. 189, § 2, 12 Stat. 588). The current statute governing the venue of capital cases—18 U.S.C. § 3235—similarly provides that "[t]he trial of offenses punishable with death shall be had in the county where the offense was committed, where that can be done without great inconvenience."

Defendants contend that § 3235 must be interpreted to mean that they are entitled to a petit jury composed of citizens only from the county in which offense was committed—here, Wayne County. According to Defendants, the phrase "had in the county where the offence was committed" in Section 29 of the Judiciary Act expressed Congress's intent to guarantee a "county-level vicinage right to those facing capital punishment . . . ." Defs. Mot. at 9-10. Defendants argue that, although it was later amended in 1862, the unaltered clause in Section 29 is virtually identical

---

493 U.S. 920 (1989). For instance, in medieval England, the phrase "vicinage of the jury" was understood to mean a "jury of the county." Williams v. Florida, 399 U.S. 78, 94 n.35 (1970). Pre-Revolution American colonists, on the other hand, took a different approach, viewing vicinage as "the right to trial on the continent of North America," in avoidance of being transferred to England for trial. Davis, 867 F.2d at 1007. Indeed, the inclusion of "vicinage" in the Sixth Amendment was debated in Congress given the term's ambiguity, which ultimately led to compromise with the phrase "by an impartial jury of the State and district where in the crime shall have been committed, which district shall have been previously ascertained by law." Williams, 399 U.S. at 95; see also Sanjay K. Chhablani, "Re-Framing the 'Fair Cross-Section' Requirement," 13 U. Pa. J. Const. L. 931, 949-956 (2011).

to the language in § 3235, and, therefore, it should similarly be interpreted to mean that "a federal capital defendant is entitled to a jury drawn from that county's residents as well as to proceedings within its geographic boundaries." Defs. Mot. at 12. The Court finds Defendants' argument meritless.

The Court begins with the text of § 3235, ascribing the statute's words with their plain and ordinary meaning, while, at the same time, ensuring that any construction of § 3235 would not render any part of it inoperative, superfluous, void, or insignificant. Corley v. United States, 556 U.S. 303, 314 (2009); United States v. Albertini, 472 U.S. 675, 680 (1985). If the statutory language is plain given the words "in their context and with a view to their place in the overall statutory scheme," the Court "must enforce [§ 3235] according to its terms." King v. Burwell, 135 S. Ct. 2480, 2489 (2015); accord United States v. Bedford, 914 F.3d 422, 427 (6th Cir. 2019) ("It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" (quoting Lamie v. United States Tr., 540 U.S. 526, 534 (2004))).

Section 3235 is clear and unambiguous. Under a plain and straightforward reading, the statute merely provides that a federal capital trial must generally be held in the county where the offense was committed, but even that right is not absolute. Cf. United States v. Taylor, 316 F. Supp. 2d 722, 727 (N.D. Ind. 2004) ("Section 3235 does not vest a defendant with an absolute right to a trial within the county where the offense was committed."). Nothing in the statute's text suggests that the jurors must be drawn from the same county. Indeed, the very heading of this statute—"Venue in capital cases"—clearly indicates that it addresses venue for capital cases, nothing more. See Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc., 554 U.S. 33, 47 (2008)

4

("[S]tatutory titles and section headings are tools available for the resolution of a doubt about the meaning of a statute." (quotation marks omitted)).

Moreover, § 3235 finds itself within the statutory scheme of Chapter 211 of Title 18 of the United States Code, which establishes the rules governing "Jurisdiction and Venue" in criminal cases. While Defendants are correct that, at one point in time, a capital defendant had a statutory right to a jury selected from the county of the offense, Congress repealed that right in 1862 "after realizing the difficulty obtaining impartial jurors from the immediate vicinity of the crime." United States v. Watts, No. 14-cr-40063, 2016 WL 6873040, at *3 (S.D. Ill. Nov. 22, 2016); United States v. Parker, 19 F. Supp. 450, 459-460 (D.N.J. 1937) (noting that, in 1862, Congress realized the difficulty of obtaining an impartial jury where all jurors are selected from the county of the offense); see also G. Ben Cohen & Robert J. Smith, "The Racial Geography of the Federal Death Penalty," 85 Wash. L. Rev. 425, 441-442 (2010) ("[T]he ease of the repeal effort does not warrant the conclusion that no weighty purpose drove the motion to repeal . . . . Northerners, again concerned about the ability of county-level Southern juries to return treason verdicts against would-be secessionists, wanted the county-level juror requirement removed so that a more diverse jury could be drawn from the entire federal district.").

Defendants' failure to find support for their position in the case law is not surprising, as it appears that every court interpreting § 3235 has reached the same conclusion as this Court. See, e.g., Watts, 2016 WL 6873040, at *3 ("There is simply no support for the proposition that Congress intended in enacting § 3235 for jurors in capital cases to all come from the county of the offense."); United States v. Ciancia, No. CR 13-902, 2015 WL 13798679, at *2 (C.D. Cal. Sept. 3, 2015) ("There is no case law to support Defendant's claim that 18 U.S.C. § 3235 allows for a jury to be composed of only residents of the county in which the crime was committed."); United States v.

5

Northington, No. 07-550-05, 2014 WL 1789151, at *9-10 (E.D. Pa. May 6, 2014) (denying the defendant's motion for a new trial based on his claim that § 3235 entitled him to a jury composed of residents from Philadelphia County only because there is "no statutory right to a jury from the county of offense"); United States v. Savage, Nos. 07-550-03, 07-550-04, 07-550-05, 07-550-06, 2012 WL 4616099, at *2 (E.D. Pa. Oct. 2, 2012) (rejecting the defendant's "attempt to import a 'vicinage requirement' into" § 3235, and finding that the "statute requires only that the trial of a capital defendant be held in the county where the offense was committed"); United States v. Johnson, No. 04-17, 2010 WL 1294058, at *2 (E.D. La. Mar. 29, 2010) (rejecting the defendant's argument that "venue as contemplated by Section 3235 contemplates jury venire and selection as well as the presentation of evidence").

Because § 3235 is concerned with venue, not vicinage, Defendants appear to also argue that the Sixth Amendment and the JSSA support their argument that a petit jury must be drawn exclusively from Wayne County. See generally Defs. Mot. at 15-18. Again, the Court disagrees.

As noted above, the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . trial[] by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." U.S. Const. amend VI (emphasis added). The JSSA similarly articulates "the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861 (emphasis added).

It is clear that a criminal defendant is only entitled to a jury drawn from the federal district in which the crime was committed, although the jury may be drawn from a division of the district rather than the entire district. See, e.g., Salinger v. Loisel, 265 U.S. 224, 232, 235 (1924) (holding

6

that a statutory provision providing that "all prosecutions for crimes or offenses shall be had within the division . . . where the same were committed" meant that "where a district contains more than one division, that the trial be had in the division where the offense was committed," but that the indictment may still lawfully be returned by a grand jury in another division of the same district (emphasis added)); Ruthenberg v. United States, 245 U.S. 480, 482 (1918) (holding that the plain text of the Sixth Amendment "expressly authoriz[es] the drawing of a jury from a part of the district"); Barrett v. United States, 169 U.S. 218, 228-230 (1897) (holding that grand and petit juries may be drawn from different divisions of a district, regardless of where the crime was committed within the district, and venue for the trial depends on legislation); see also United States v. Davis, 27 F. App'x 592, 597 (6th Cir. 2001); accord United States v. Grisham, 63 F.3d 1074, 1080 (11th Cir. 1995) ("[N]either the language of the vicinage provision [of the Sixth Amendment] nor its legislative history suggests that the geographical area from which the jury is summoned must be smaller than the judicial district created by Congress."); Zicarelli, 543 F.2d at 477-478 ("[T]he concept that a criminal trial must be before a jury composed of residents of the county where the crime occurred was not deemed to be of sufficient consequence to be guaranteed by the Constitution."). Therefore, Defendants' suggestion that either the Sixth Amendment or the JSSA requires a jury drawn exclusively from the county where the crime was committed clearly fails.

Insofar as Defendants attempt to argue that a jury not drawn exclusively from Wayne County somehow violates the fair cross-section requirement of the Sixth Amendment and the JSSA, they have failed to satisfy the requisite test for such a claim at this time.[5]

---

[5] Defendants make only a passing reference to the concept of "a fair cross section of the community" in their motion papers. Defs. Mot. at 2 ("[Defendants] are entitled to a jury which reflects a fair cross section of the community, which requires under the facts of his [sic] case, a jury drawn exclusively from Wayne County."). This conclusory statement, without further elaboration in Defendants' brief, would justify rejecting this contention. See Rivet v. State Farm

7

The Sixth Amendment guarantees criminal defendants the right to be tried by "an impartial jury . . . ." U.S. Const. amend. VI. The Supreme Court has repeatedly held that impartiality requires the "presence of a fair cross section of the community" on "jury wheels, pools of names, panels, or venires from which [petit] juries are drawn." Taylor v. Louisiana, 419 U.S. 522, 526, 538 (1975); Berghuis v. Smith, 559 U.S. 314, 319 (2010) ("The Sixth Amendment secures to criminal defendants the right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community." (emphasis added)).

Importantly, a defendant's right to an impartial jury drawn from a fair cross section of the community is not based on the actual composition of either the petit jury, Taylor, 419 U.S. at 538 (stating that there is "no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population"), or the petit jury venire, Ambrose v. Booker, 684 F.3d 638, 645 (6th Cir. 2012) (stating that a defendant raising a fair cross-section claim "is challenging the pool from which the jury is drawn, and not necessarily the venire panel directly before him"); United States v. Ferguson, 863 F. Supp. 2d 661, 668 (E.D. Mich. 2012) ("[T]he mere happenstance of an unrepresentative jury panel taken from a properly assembled Qualified Wheel does not violate the Constitution."). Instead, a fair cross-section challenge focuses "on the procedure for selecting juries, and not the outcome of that process." Ambrose, 684 F.3d at 645 (emphasis added); see also United States v. Nicholson, 716 F. App'x 400, 414 (6th Cir. 2017) ("It is not sufficient to make general observations about the assembled venire. Thus, the defendants should have made a motion outlining the aspects of the Eastern District of Michigan's jury pool selection process that lead to systematic exclusion of African Americans

---

Mut. Auto. Ins. Co., 316 F. App'x 440, 449 (6th Cir. 2009) (refusing to address "arguments that . . . are unsupported or undeveloped"). Nonetheless, the Court addresses the lack of merit in the contention.

before the start of trial."); United States v. Jackson, 46 F.3d 1240, 1244 (2d Cir. 1995) ("[T]he Sixth Amendment guarantees the opportunity for a representative jury venire, not a representative venire itself" (emphasis in original)).

To prove a fair cross-section violation, therefore, a defendant must demonstrate that systematic exclusion of a distinctive group has resulted in an unreasonable underrepresentation of that group in jury venires. The Supreme Court has established a well-known three-part test to establish a prima facie violation of the fair cross-section requirement:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.

Duren v. Missouri, 439 U.S. 357, 364 (1979). A defendant does not have to belong to the distinctive group that is purportedly excluded. Id. at 359. Once a defendant establishes a prima facie case, the Government has the burden to justify the "infringement by showing attainment of a fair cross section to be incompatible with a significant state interest." Id. at 368.

Because Defendants make no effort satisfy the three-part Duren test, there is no basis to conclude that a jury not drawn exclusively from Wayne County would violate the fair cross-section requirement.

### III. CONCLUSION

For the reasons stated above, Mills and Wilson's joint motion for a petit jury drawn exclusively from Wayne County, Michigan (Dkt. 771) is denied.

SO ORDERED.

Dated: July 15, 2019  s/Mark A. Goldsmith
    Detroit, Michigan  MARK A. GOLDSMITH
        United States District Judge

9