UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

      Case No. 16-cr-20460

      HON. MARK A. GOLDSMITH

EDWIN MILLS, et al.,

      Defendants.
_____/

**OPINION & ORDER
GRANTING IN PART, DENYING IN PART, AND RESERVING RULING IN PART ON
DEFENDANT EDWIN MILLS'S MOTION TO COMPEL DISCOVERY (Dkt. 552) AND
DEFENDANT CARLO WILSON'S SEALED MOTION FOR DISCOVERY PURSUANT
TO FEDERAL RULE OF CRIMINAL PROCEDURE 16 (Dkt. 564)**

      This criminal case involves multiple defendants, all of whom have been charged with violating the Racketeering Influenced and Corrupt Organizations Act (the "RICO" Act), 18 U.S.C. § 1961 et seq. Defendant Edwin Mills has filed a motion to compel discovery (Dkt. 552),[1] and Defendant Carlo Wilson has filed a sealed motion for discovery pursuant to Federal Rule of Criminal Procedure 16 (Dkt. 564). The Government filed a single response in opposition to these motions (Dkt. 593), to which Mills and Wilson replied (Dkt. 648, 608, respectively).

      On February 12, 2019, the Court issued an order directing the parties to confer in good faith to resolve any discovery disputes raised in Defendants' motions. See 2/12/2019 Order at 4 (Dkt. 763). If the parties were unable to resolve certain issues, the Court further ordered Defendants to file a memorandum, detailing which precise discovery issue necessitated the Court's

---

[1] Defendant Carlo Wilson has filed a notice of joinder concurring in the relief sought in Mills's motion. See 10/24/2018 Notice of Joinder (Dkt. 568).

1

intervention. Id. at 5. After various stipulated extensions, Mills and Wilson each filed a memorandum (Dkts. 821, 865, respectively), to which the Government responded (Dkt. 921).[2]

A hearing on Defendants' discovery motions was held on July 24, 2019. At the conclusion of the hearing, the Court afforded Defendants the opportunity to file a joint statement on or before July 26, 2019, outlining each remaining discovery dispute that had not yet been resolved. The Government could then file a response to that statement on or before August 7, 2019. Defendants timely filed their joint statement (Dkt. 1005). Because several issues can be resolved at this time without the Government's response to the joint statement, the Court grants in part and denies in part Defendants' motions, and it reserves ruling on any discovery issues raised in the joint statement but not addressed in this opinion and order.

## I. BACKGROUND

Because the Court has previously described the factual and procedural background of this case in greater detail in other opinions, it need not do so again for purposes of the present motion. See, e.g., United States v. Mills, 378 F. Supp. 3d 563 (E.D. Mich. 2019) (denying motions to dismiss); United States v. Mills, No. 16-cr-20460, 2019 WL 1915762 (E.D. Mich. Apr. 30, 2019) (denying motions for bills of particulars); United States v. Mills, 367 F. Supp. 3d 664 (E.D. Mich. 2019) (granting in part and denying in part motion to preclude rap lyrics and videos).

## II. STANDARDS OF DECISION

In contrast to the broad scope of discovery in civil cases, the discovery available to a criminal defendant is relatively constricted. For most criminal prosecutions, there are three

---

[2] The Court further ordered the parties to file a joint statement addressing whether any discovery disputes identified in their supplemental memoranda had been resolved. See 7/11/2019 Order at 1 (Dkt. 984). The parties timely filed a joint statement, indicating that they were unable to agree "as to whether there has been any resolution." 7/17/2019 Joint Statement at 1 (Dkt. 995).

governing rules that "'exhaust the universe of discovery to which [a] defendant is entitled.'" United States v. Watson, 787 F. Supp. 2d 667, 672 (E.D. Mich. 2011) (quoting United States v. Presser, 844 F.2d 1275, 1285 n.12 (6th Cir. 1988)).

The first is the Brady doctrine, derived from Brady v. Maryland, 373 U.S. 83 (1962), which requires the Government to disclose evidence that is favorable to the accused and material to guilt or sentencing, as well as evidence that could be used to impeach the credibility of a government witness. Watson, 787 F. Supp. 2d at 672 & n.5.

The second is Federal Rule of Criminal Procedure 16(a), which "requires the government to disclose, upon a defendant's request, any oral or written statements of the defendant, the defendant's prior record, any documents or tangible evidence within the government's possession, custody or control [that are material to the defense or to be used in the Government's case-in-chief], reports of examinations or tests, and a summary of any expert witness testimony." Watson, 787 F. Supp. 2d at 672 (citation and quotation marks omitted); Presser, 844 F.2d at 1285 ("[D]iscovery afforded by Rule 16 is limited to the evidence referred to in its express provisions.").

The third is the Jencks Act, 18 U.S.C. § 3500, which "'generally requires the government, on motion of a defendant, to produce statements in its possession of witnesses who testify at trial.'" Watson, 787 F. Supp. 2d at 672 (quoting United States v. Short, 671 F.2d 178, 185 (6th Cir. 1982)); 18 U.S.C. § 3500(b);[3] see also United States v. Davis, 306 F.3d 398, 421 (6th Cir. 2002) ("When Brady material sought by a defendant is covered by the Jencks Act . . . the terms of that Act govern

---

[3] Section 3500(b) provides, in full: "After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use." (Emphasis added).

3

the timing of the government's disclosure."); Presser, 844 F.2d at 1282-1285 (holding that neither Brady, Giglio v. United States, 405 U.S. 150 (1972), nor Rule 16 gives a defendant the right to broad pretrial discovery of impeachment evidence, the disclosure of which is instead controlled by the Jencks Act).

### III.  DISCUSSION

Defendants' motions fall predominantly within the second category above, as they each make numerous requests for discovery under Rule 16.  The Court addresses each motion and its corresponding supplemental memorandum in turn.

**A. Defendant Edwin Mills's Discovery Motion (Dkt. 552) and Supplemental Memorandum (Dkt. 821)**

In his supplemental memorandum, Mills claims that the Government has several Rule 16 discovery obligations that have not yet been satisfied.  See Def. Mills Memo. at 3 (Dkt. 821).

First, Mills argues that the Government has not produced all documents within its "custody or control" under Rule 16(a)(1)(E).  Def. Mills Memo. at 3-4 (citing United States v. W. R. Grace, 401 F. Supp. 2d 1069, 1074 (D. Mont. 2005)).[4]  According to Mills, if "there are unproduced state or federal agency records, they should be considered within the Government's control, knowledge and access because of the federal/local relationship" of the multi-jurisdictional task force involved in this case.  Id. at 5.  Mills requests an order compelling the Government to produce records from all task force agencies, federal and local.  Id.

---

[4] Mills similarly requests an order compelling the Government and all law enforcement agencies, both federal and local, to produce any statements in their possession allegedly made by Mills under Rules 16(a)(1)(A) and (B).  See id. at 5.  The Court's analysis and conclusion regarding Rule 16(a)(1)(E) applies equally to this request.

4

In its supplemental response, the Government contends that its disclosure obligations under Rule 16(a)(1)(E) are only triggered by actual possession, not constructive possession, and that those obligations extend only to other federal agencies. Gov't Supp. Resp. at 8 (Dkt. 921). As it relates to "possession" regarding Brady material, the Government similarly argues that "the federal prosecutor will be deemed to have knowledge of and access to anything in the possession, custody, or control of any federal agency participating in the same investigation of the defendant, but federal prosecutors are never deemed to have access to material held by state agencies." Id. at 8 (quoting United States v. Lowe, No. 2:14-cr-0004, 2015 WL 6637342, at *6 (D. Nev. Oct. 29, 2015)). Moreover, the Government maintains that it does not have an affirmative duty to discover Brady information that "it does not possess." Id. at 9 (quoting United States v. Graham, 484 F.3d 413, 417 (6th Cir. 2007)).

The Court agrees with the Government insofar as Rule 16(a)(1)(E) does not contain a due-diligence requirement for the Government to affirmatively inquire of all federal, state, and local law enforcement agencies as to whether they have any materials in their possession that would be discoverable. See United States v. Gregory, No. 2:05-CR-64, 2006 WL 8439328, at *2 (E.D. Tenn. Oct. 6, 2006) (because Rule 16(a)(1)(E) contains no due-diligence language, unlike Rules 16(a)(1)(D) and (F), it "cannot be read as creating a disclosure obligation based on constructive possession; only actual possession triggers the Government's obligation for disclosure under [Rule] 16(a)(1)(E)").[5]

---

[5] Rule 16(a)(1)(E)—regarding documents and objects within the Government's possession, custody, or control—provides that, "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items," provided the item is material to preparing the defense, the Government intends to use the item in its case-in-chief at trial, or the item was obtained from or belongs to the defendant. Fed. R. Crim. P. 16(a)(1)(E).

5

Nevertheless, when the Government knows that some other agency had some involvement in the investigation of a defendant, including state and local investigative agencies, "the Government must determine if those other agencies have information embraced within Rule 16(a)(1)(E)." Id. at *3 (citing United States v. Marshall, 132 F.3d 63, 69 (D.C. Cir. 1998)); see also United States v. Jordan, 316 F.3d 1215, 1249 (11th Cir. 2003) ("While Rule 16(a) only applies to materials within the 'possession, custody, or control of the government,' courts have found that the 'possession, custody, or control of the government' requirement includes materials in the hands of a governmental investigatory agency closely connected to the prosecutor."); accord United States v. Cerna, 633 F. Supp. 2d 1053, 1060 n.1 (N.D. Cal. 2009) ("When federal and state agencies cooperate extensively on a joint investigative task force, the state agencies may be deemed to be 'agents' of the federal government such that their knowledge of exculpatory information should be imputed to federal prosecutors."); United States v. Ferguson, 478 F. Supp. 2d 220, 238-239 (D. Conn. 2007) (discussing factors and situations in which a joint investigation conducted by federal and non-federal agencies may trigger the federal prosecutor's obligation to learn of any Brady/Giglio information in the actual possession of the cooperating state or local agencies).

Here, the Government averred during the hearing that it had contacted all non-federal investigative agencies involved in the investigation of Defendants and requested all related and unrelated materials regarding Defendants. Upon receipt of those materials, the Government claims that it then reviewed those materials to determine what fell within the confines of Rule 16(a)(1)(E) and Brady. Thus, it appears that the Government has satisfied its discovery obligations. See Gregory, 2006 WL 8439328, at *3 ("The Government's attorney recites in his response that he has reviewed all documents and evidence in possession of the federal and state law enforcement agencies involved in the investigation and prosecution of this case. As such, the Government's

6

obligations under Rule 16(a)(1)(E), as well as the Government's potential obligations under Brady v. Maryland and its progeny, have been satisfied."). In light of the Government's assertions during the hearing, therefore, the Court denies Mills's request.[6]

Second, Mills argues that all of the materials stored on electronic devices the Government seized from Mills and others "are largely documentary or video files" and, therefore, subject to Rule 16(a)(1)(E). Def. Mills Memo. at 6. Mills requests an order compelling the Government to provide "mirror images" of these electronic devices, as opposed to extracted material produced in an allegedly edited manner. Id. at 6-7.

In its supplemental response, the Government states that it has produced "complete extractions of data from two cell phones seized from Mills and six cell phones seized from Wilson." Gov't Supp. Resp. at 17. During the hearing, the Government clarified that the extractions include the metadata contained on the devices. The Government has also afforded Defendants and their experts the opportunity to inspect and copy the devices. See id.

The Court finds that the Government—by producing complete data extractions of the devices and making the devices available for inspection—has satisfied its obligations under Rule 16(a)(1)(E). See Fed. R. Crim. P. 16(a)(1)(E) (providing that the "government must permit the defendant to inspect and to copy . . . documents [and] data") (emphasis added). Therefore, Mills's request for "mirror images" is denied.

---

[6] Mills, however, believes the Government has not done enough. He argued during the hearing that the Government's discovery obligations under Rule 16(a) extend to requesting that all federal and non-federal agencies provide any information regarding all unindicted co-conspirators involved in this case. Mills has not directed the Court to any authority supporting such a broad application of Rule 16(a)(1)(E), and the Court has been unable to locate any through its own research.

7

Last, Mills claims that the Government has failed to produce a full summary of the expert testimony it intends to offer in its case-in-chief under Rule 16(a)(1)(G).  See Def. Mills Memo. at 6.  In response, the Government states that it has produced at least 64 expert reports, including "drug analysis, fingerprint analysis, firearms analysis, biology and serology, cell tower location data, and electronic device data extraction." Gov't Supp. Resp. at 11.  During the hearing, the Government further states that it has provided Defendants with their experts' curricula vitae.

Rule 16(a)(1)(G) requires the Government to provide, upon a defendant's request, "a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial."  A written summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Id.  While the expert reports and curricula vitae produced thus far satisfy some of Rule 16(a)(1)(G)'s requirements for a written summary, it is clear that the Government has not fully satisfied its discovery obligations.  For instance, Mills provided the Court with an example of an expert report regarding examination of cellular devices.  Although it describes what actions were taken relative to the devices, the report fails to specify what opinions, if any, the expert will offer regarding the examination, and it fails to disclose the expert's bases and reasons for any opinion.  Thus, the Court grants Mills's request and orders the Government to provide written summaries of any expert testimony it intends to offer during its case-in-chief on or before September 3, 2019.

Insofar as there are discovery issues addressed in Defendants' joint statement and the Government's response that are not covered by the Court's foregoing analysis, the Court reserves ruling on those issues until a further date.

    **B. Defendant Carlo Wilson's Discovery Motion (Dkt. 564) and Supplemental Memorandum (Dkt. 865)**

Wilson makes two broad discovery requests in his memorandum. First, Wilson requests an order compelling the Government to produce "all discovery in unredacted versions, with the names [of potential witnesses] intact." Def. Wilson Memo. at 2 (Dkt. 865). According to Wilson, the witnesses in these redacted reports and transcripts "may be criminal actors who are either witnesses to the drug trade which is the basis for the charges, criminal actors who claim to have overheard inculpatory statements by one of the defendants, or witnesses to the crime." Id. at 4. Because the Government "intends to use these individuals as witnesses at trial," says Wilson, the defense needs to conduct an investigation into the witnesses' background, credibility, reliability, criminal record, the benefits they have received or expect to receive, and the foundation for their assertions to "meaningfully confront the testimony of these witnesses" at trial. Id. at 4-5. This requires knowing the witnesses' names. Id. at 5. Wilson further argues that it would be a violation of his fundamental constitutional rights to allow the Government "to continue to hide the identities of its witnesses from the Defense." Id. at 7.[7]

In its supplemental response, the Government states that it has redacted documents to prevent the disclosure of names, personal identifying information, and sensitive contact information of victims and prospective witnesses. See Gov't Supp. Resp. at 17. Nevertheless, the

---

[7] The deadline for the parties to submit witness lists is December 6, 2019—more than four months before trial. See 8/31/2018 Order at 3 (Dkt. 475). Moreover, insofar as any of these individuals are co-conspirators, Wilson is not automatically entitled to know the names of these individuals. See United States v. Rey, 923 F.2d 1217, 1222 (6th Cir. 1991) ("A defendant may be indicted and convicted despite the names of his co-conspirators remaining unknown, as long as the government presents evidence to establish an agreement between two or more persons, a prerequisite to obtaining a conspiracy conviction."); but see United States v. Amawi, 531 F. Supp. 2d 823, 825 (N.D. Ohio 2008) ("While the information covered by this request is sought, but is not discoverable under Brady, I believe that the identities of any unindicted co-conspirators, and their last know[n] addresses and other contact information, to the extent known to the government, should be disclosed when the government discloses its trial witnesses.").

Government has offered Defendants the opportunity to inspect these documents in an unredacted format. Id.

The Court finds that the Government's use of redactions for documents produced thus far does not run afoul of its discovery obligations. If there is a specific and concrete safety concern, redacting an individual's name and contact information to control and limit the release of such information is entirely appropriate. If there is no specific safety concern for a particular individual, the redaction of personal identifying information, including Social Security numbers and birthdates, is also proper. And insofar as an individual is a prospective witness for the Government, associated redactions would be consistent with the Government's obligations to disclose Jencks Act material thirty days before trial. See 1/2/2019 Op. & Order at 5 n.6 (Dkt. 675) (the Court will address the timing of Jencks Act disclosures for specific government witnesses for which there are specific and concrete safety concerns at the final pretrial conference on December 20, 2019). Moreover, the Government has afforded Defendants the opportunity to inspect and copy unredacted documents, which is in keeping with its obligations under Rule 16(a)(1)(E). Unless and until Wilson takes up the Government's offer for inspection of the unredacted version of the documents, his complaint about redactions is premature. Therefore, Wilson's request for unredacted reports and transcripts is denied.

Second, Wilson requests an order compelling the Government to produce all outstanding items listed in Exhibit A (Dkt. 865-1) and Exhibit B (Dkt. 865-1) to his memorandum. See Def. Wilson Memo. at 2. Several of these requests were previously addressed in prior opinions, in the scheduling order, or during the hearing.

For example, insofar as Wilson's requests involve the production of Jencks Act material, co-conspirator statements, agreements between the Government and its witnesses, co-defendant

statements, original notes of government agents and law enforcement officers, or Brady material, the Court has already addressed the disclosure of this material in its prior opinions. See 1/2/2019 Op. & Order at 5 n.6 (Dkt. 675) (the Government shall produce Jencks Act material 30 days before trial, unless there is a specific and concrete safety concern for a particular witness); 1/2/2019 Op. & Order at 9-10 (Dkt. 677) (the Government shall file and serve a written proffer of any Rule 801(d)(2)(E) evidence of co-conspirator statements 60 days before trial; defendants may file response within 10 days of receiving proffer; government may file reply within 10 days of receiving response); 1/2/2019 Op. & Order at 5-6 (Dkt. 678) (the Government shall produce agreements reached between the Government and its witnesses 30 days before trial); id. at 5-6 (the Government shall produce co-defendant statements 60 days before trial, unless it involves a prospective government witness under the Jencks Act); id. at 11-13 (denying request for pretrial disclosure of rough notes of government agents and law enforcement officers, but recognizing that the Government would produce these notes as Jencks Act material if they satisfy the Sixth Circuit's adoption test, or if the notes contain inconsistencies, materials omissions, or Brady information); 2/12/2019 Op. & Order at 7 (Dkt. 761) (the Government shall produce Brady material 60 days before trial). Therefore, to the extent Wilson's requests seek to alter the deadlines the Court has already set, they are denied.

Further, regarding Wilson's request for all material related to the murder of his father, Durand Kimbrough, Wilson acknowledges that this mitigating evidence may be favorable to him "in any potential penalty phase." See Def. Wilson Memo. at 4 (emphasis added). But as the Government correctly notes, the deadline for penalty-phase disclosures has not yet passed. Indeed, the parties' "joint statement, setting forth points of agreement and disagreement, regarding the nature and timing of disclosures pertaining to the penalty phase, including disclosures pursuant to

11

Federal Rules of Criminal Procedure 12.2 and 16" is not due until August 1, 2019. See 8/31/2018 Order at 2. Therefore, this request is denied.

Finally, regarding Wilson's request for all materials related to the murder of Vincent Johnston, or "Slick V," see Def. Wilson Memo. at 3, the Government has agreed to provide the entire file in its possession to the Court for an in camera inspection. Accordingly, the Government shall provide the Court with these records on or before August 1, 2019.

Insofar as there are discovery issues addressed in Defendants' joint statement and the Government's response that are not covered by the Court's foregoing analysis, the Court reserves ruling on those issues until a further date.

### IV. CONCLUSION

For the reasons stated above, Mills's motion to compel discovery (Dkt. 552) and Wilson's motion for discovery (Dkt. 564) are granted in part and denied in part. The Government shall provide the entire file in its possession regarding the murder of Vincent Johnston to the Court on or before August 1, 2019. The Government shall also produce written summaries of any expert testimony it intends to offer during its case-in-chief to Defendants on or before September 3, 2019. The Court reserves ruling on any issues addressed in Defendants' joint statement and the Government's response that are not covered by this opinion and order.

SO ORDERED.

Dated: July 30, 2019  
     Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge