UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    Case No. 16-cr-20460

    HON. MARK A. GOLDSMITH

D-2 CARLO WILSON,

    Defendant.
_____/

**ORDER REGARDING
THE GOVERNMENT'S MOTION FOR THE DISCLOSURE OF COMPETENCY
EVALUATION RAW DATA (Dkt. 1185) AND DEFENDANT CARLO WILSON'S
MOTION FOR SPECIFIC MATERIALS RELATED TO THE COMPETENCY
EVALUATON AND FOR PROTECTIVE ORDER PROHIBITING GOVERNMENT
ACCESS TO PRIVILEGED AND CONFIDENTIAL RECORDS (Dkt. 1188)**

## I. BACKGROUND

Because the Court has previously described the factual and procedural background of this case in greater detail in other opinions, it need not do so again for purposes of the present motion. See, e.g., United States v. Mills, 378 F. Supp. 3d 563 (E.D. Mich. 2019) (denying motions to dismiss); United States v. Mills, No. 16-cr-20460, 2019 WL 1915762 (E.D. Mich. Apr. 30, 2019) (denying motions for bills of particulars); United States v. Mills, 367 F. Supp. 3d 664 (E.D. Mich. 2019) (granting in part and denying in part motion to preclude rap lyrics and videos).

## II. DISCUSSION

Both the Government and Defendant Carlo Wilson have filed motions requesting documents related to a competency evaluation performed by Dr. Robin Watkins pursuant to 18 U.S.C. § 4241, et seq. (Dkt. 1185 and 1188, respectively). In its motion, the Government requests the raw psychological testing results and other unspecified data. Gov't Mot. at 1-2 (Dkt. 1185).

1

The Government "moves the Court for an Order for the disclosure to both parties of the raw data and other materials considered by Dr. Watkins in conducting her competency evaluation." Id.

Regarding attorney observations, the Government requests Wilson's attorneys' observations to the extent any were provided to Dr. Watkins, excluding substantive confidential attorney-client communications. Id. at 11.The Government does not object to a protective order limiting the use of "attorney observation" material to matters involving the competency hearing and determination. Id.

In Wilson's motion, he seeks the raw psychological testing data, MCC medical and MCC detention records, and "certain unprotected materials." [1] Def. Mot. at 1 (Dkt. 1188). Defense "seeks copies of the files," which seem to include any information "generated and maintained by MCC-Chicago or its employees" relating to Wilson's evaluation. Id. at 5.[2] The "unprotected materials" that Wilson requests are copies of all of the emails, phone calls, and "non-legal" letters or mail referenced in Dr. Watkins's evaluation.

On December 19, 2019, via email, counsel for Wilson and the Government agreed to the Court's suggestion (as initially proposed by Wilson (Def. Resp. at 3 (Dkt. 1206)) that:

> In order to expedite the production of certain or all materials to either or both parties, the Court proposes requesting MCC to produce all documents relied upon by Dr. Watkins in drafting her report and formulating her opinion in camera to Chambers. This will facilitate the timely determination of what materials shall be produced and to which parties.

---

[1] The MCC medical and detention records and Wilson's statements allegedly made during medical treatment are the information subject to the defense's request for a protective order (Def. Mot. at 10 (Dkt. 1288)).

[2] Wilson cites an August 19, 2019 order purportedly supporting his request for the "central, medical and psychological files from the date of his detention at the facility up to the date that he is transferred back to any facility in Michigan," but that order actually denied Wilson's request for failure to show relevancy to a competency determination. 8/19/19 Order at 4 (Dkt. 1047).

The Court clarified earlier in the email to the parties that:

> The Court interprets the parties' requests for materials to include all of the documents relied upon by Dr. Watkins in drafting her evaluation and formulating her opinions as to Mr. Wilson, including raw testing data and documents listed in the evaluation's "Sources of Data." See Watkins Evaluation at 2-3. For example, the Court presumes that the parties request Mr. Wilson's emails that are not listed in the "Sources of Data," which are discussed in the evaluation.

Id.

The Court has requested the following items from MCC-Chicago, derived from Dr. Watkins's November 8, 2019 evaluation "Sources of Data" list:

> Raw testing data generated by the psychological assessment tools:
> 1. Personality Assessment Inventory (PAI);
> 2. Kaufman Brief Intelligence Test - Second Edition (KBIT-2);
> 3. Validity Indicator Profile (VIP);
> 4. Revised Competency Assessment Instrument (RCAI);
> 5. Inventory of Legal Knowledge (ILK); and
> 6. Informal forced-choice competency measure.
>
> The following documents and materials reviewed as part of the evaluation process:
> Item 4. Jail medical records; dated October 28, 2017, to June 12, 2019;
>
> Item 29. Federal Bureau of Prisons (BOP) security records (SENTRY), Bureau Electronic Medical Record (BEMR), and Psychology Data System (PDS) records – various dates;
>
> Item 30. Select sample of telephone calls placed by Defendant Wilson at MCC Chicago – various dates; and
>
> Item 31. Three writing samples produced by Defendant Wilson, received during the evaluation period.
>
> Documentation of collateral contacts with:
> 1. Jacqueline Walsh, Mr. Wilson's defense attorney; in-person contact on August 28, 2019, and e-mail and telephone contact, various dates; and

2. AUSAs assigned to the case; e-mail contact, various dates.

Email Correspondence, Jan. 3, 2020.

The Court also requested all documents and recordings (including but not limited to all 2,330 pages of e-mails, all 75 call recordings, and any mail/letters) in connection with the evaluation that Dr. Watkins: (1) relied upon in forming a diagnoses and opinions; (2) reviewed, but did not rely upon in forming a diagnoses and opinions; and (3) referenced in the evaluation, but did not rely upon nor review. Email Correspondence, Jan. 8, 2020.

In response, MCC-Chicago informed the Court that it requires a Bureau of Prisons ("BOP") Authorization for Release of Medical Information before it can produce medical and mental health records.[3] Email Correspondence, Jan. 14, 2020. Therefore, the Court advised Wilson's counsel by email on January 24, 2020 that a signed release must be furnished immediately.

Because it is not yet apparent to the Court that this has occurred, the instant order is warranted. Counsel for Wilson must return a signed BOP Authorization for Release of Medical Information to MCC-Chicago, directed to Dr. Watkins's and counsel for MCC-Chicago's (Ms. Amy Standefer-Malott) attention, by Wednesday, January 29, 2020.[4] Counsel must authorize the release of the information to the Court (The United States District Court for the Eastern District of Michigan, Honorable Mark A. Goldsmith). Counsel for Wilson must also direct delivery of the records to Chambers (Theodore Levin U.S. Courthouse, 231 W. Lafayette Blvd., Room 853, Detroit, MI 48226, fax no. (313) 234-5368).

---

[3] It appears that Wilson was previously aware of this requirement, and he indicated his willingness to submit a release for records to MCC-Chicago in his ex parte application for a Rule 17(c) subpoena. Def. Mot. at 6, n.2 (Dkt. 1203).

[4] Dr. Watkins's and Ms. Standefer-Malott's email addresses have been provided to Wilson's counsel.

## III. CONCLUSION

Wilson must provide the BOP Authorization for Release of Medical Information to MCC-Chicago as described above by Wednesday, January 29, 2020, to prevent the delay of the production of records. Wilson will have an opportunity to object to the production of records to the Government prior to the Court providing the records produced by MCC-Chicago to the Government, in a manner to be determined by the Court. The Court currently reserves any opinion on Wilson's request for the issuance of a protective order. See Def. Mot. at 10 (Dkt. 1188).

SO ORDERED.

Dated: January 27, 2020  
    Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge