UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-2 CARLO WILSON,

    Defendant.
_____/

Case No. 16-cr-20460

HON. MARK A. GOLDSMITH

**OPINION AND ORDER GRANTING IN PART:
(1) THE GOVERNMENT'S MOTION FOR THE DISCLOSURE OF COMPETENCY EVALUATION RAW DATA (Dkt. 1185); (2) DEFENDANT CARLO WILSON'S MOTION FOR SPECIFIC MATERIALS RELATED TO THE COMPETENCY EVALUATON AND FOR PROTECTIVE ORDER PROHIBITING GOVERNMENT ACCESS TO PRIVILEGED AND CONFIDENTIAL RECORDS (Dkt. 1188); AND OVERRULING IN PART DEFENDANT CARLO WILSON'S EX PARTE AND SEALED SPECIFIC OBJECTIONS TO THE PRODUCTION OF CERTAIN MCC-CHICAGO DOCUMENTS TO THE GOVERNMENT (Dkt. 1231)**

### I. CASE BACKGROUND

Because the Court has previously described the factual and procedural background of this case in greater detail in other opinions, it need not do so again for purposes of the present motions. See, e.g., United States v. Mills, 378 F. Supp. 3d 563 (E.D. Mich. 2019) (denying motions to dismiss); United States v. Mills, No. 16-cr-20460, 2019 WL 1915762 (E.D. Mich. Apr. 30, 2019) (denying motions for bills of particulars); United States v. Mills, 367 F. Supp. 3d 664 (E.D. Mich. 2019) (granting in part and denying in part motion to preclude rap lyrics and videos).[1]

---

[1] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2).

## II. MOTIONS BACKGROUND

In preparation for the forthcoming hearing on Defendant Carlo Wilson's competency, both the Government and Wilson filed the present motions requesting documents related to a competency report prepared by Dr. Robin Watkins at MCC-Chicago pursuant to 18 U.S.C. § 4241, et seq. (Dkts. 1185 and 1188, respectively). The parties agreed to the production of documents responsive to some of the requests.[2] However, Wilson registered objections to certain broad categories of documents: (1) Wilson's medical records (generated by MCC-Chicago or other correctional facilities); (2) statements made "during the course of medical treatment;" and (3) pre-trial detention records. Def. Mot. at 10 (Dkt. 1188). To better evaluate the broad objections, the Court requested and received the items sought by the Government and Wilson from MCC-Chicago for in camera review, as agreed to by the parties. Email Correspondence, Jan. 3, 2020. After conducting its review, the Court provided those records to the defense only and directed Wilson's counsel to file specific objections regarding the Government's access to the records. 1/31/20 Order at 2 (Dkt. 1220).

Wilson filed objections (Dkt. 1231) to the production of the following records:[3]

- Bureau Electronic Medical Record ("BEMR") clinical encounter summaries, on the grounds that disclosure would violate the Fifth and Sixth Amendments, the Health Insurance Portability and Accountability Act Privacy Rule ("HIPAA"), 45 C.F.R.

---

[2] Both parties requested the psychological testing raw data in their respective motions. The parties do not object to both the defense and the Government receiving the raw data. See Def. Resp. to Gov't Mot. for the Disclosure of Competency Evaluation Raw Data (Dkt. 1185) at 2 (Dkt. 1206); Gov't Reply at 2 (Dkt. 1208). The Court obtained the data from MCC-Chicago and provided the data to psychologists designated by the Government and Wilson. 2/25/20 Order (Dkt. 1225).

[3] In his specific objections, Wilson did not object to providing the recorded phone calls, Dr. Watkins's log of analyzed calls, or the Psychology Data System ("PDS") records to the Government. Wilson does state that the draft of Dr. Watkins's report located among the PDS records should be sealed. Id. at 1 n.1. Wilson also objects to the production of a document enumerating housing rules that seems to have been attached in error to the PDF file containing Wilson's writing samples, so the Court will sustain that objection. Def. Obj. at 4.

§160 et seq., and Federal Rule of Criminal Procedure 12.2, and that statements made to MCC-Chicago Chief Psychologist Dr. Jason Dana are protected by the psychotherapist-patient privilege. Def. Mot. at 10-19 (Dkt. 1188); Def. Obj. at 1-2 (Dkt. 1231).

- BEMR history and physical ("H&P") records, on the grounds that disclosure would violate Federal Rule of Criminal Procedure 16(b). Def. Mot. at 19-20; Def. Obj. at 2.

- BEMR intake forms, on the grounds that disclosure would violate the Fifth and Sixth Amendments, and HIPAA. Def. Mot. at 10-19. He also states that the forms document his medications, which are not relevant to the competency proceeding. Def. Obj. at 2.

- BEMR medication administration records ("MAR") on the grounds that disclosure would violate the Fifth and Sixth Amendments, and HIPAA. Def. Mot. at 10-19. He also states that the prescription medication information is not relevant to the competency proceeding, unless put at issue by the defense. Def. Obj. at 2.

- BEMR 8/5/19 medical summary, on the grounds that disclosure would violate the Fifth and Sixth Amendments, and HIPAA. Def. Mot. at 10-19. He also states that the Government is not entitled to Wilson's "protected health care information" and the types of medications he takes. Def. Obj. at 2-3.

- BEMR 10/9/19 medical summary, on the grounds that disclosure would violate the Fifth and Sixth Amendments, and HIPAA. Def. Mot. at 10-19. He also states that the Government is not entitled to Wilson's "protected health care information" and the types of medications he takes. Def. Obj. at 3.

- Correspondence between the defense and Dr. Watkins referencing his prescription medications, on the grounds that disclosure would violate the Fifth and Sixth Amendments, and HIPAA. Def. Mot. at 10-19; Def. Obj. at 3.

- Email communication between Wilson and defense counsel regarding jail visit scheduling, on the grounds of attorney-client privilege. Def. Obj. at 3.

- Jail medical records, on the grounds that disclosure would violate the Fifth and Sixth Amendments, and HIPAA. Def. Mot. at 10-19; Def. Obj. at 4. He states these records were not created by MCC-Chicago, and some of the records may have been obtained by the Government through improper means. Def. Mot. at 11-12; Def. Obj. at 4.

- Federal Bureau of Prisons (BOP) security records ("SENTRY") records, on the grounds that premature disclosure would violate Federal Rule of Criminal Procedure 16(b), and the records are irrelevant. Def. Mot. at 19-20; Def. Obj. at 4.

3

- Wilson's three writing samples, on the grounds that he was not advised of his Fifth and Sixth Amendment rights prior to Dr. Watkins obtaining the samples, and disclosure would violate Federal Rule of Criminal Procedure 12.2. Def. Mot. at 12-19; Def. Obj. at 4.

For the reasons below, the Court sustains in part and overrules in part Wilson's objections.

### III. ANALYSIS

**A. Health Information Portability and Accountability Act**

Wilson argues that producing the following categories of documents to the Government would violate HIPAA: (1) BEMR clinical encounter summaries; (2) BEMR intake forms; (3) BEMR MARs; (4) BEMR medical summaries; (5) defense counsel correspondence with Dr. Watkins; and (6) jail medical records obtained by the Court from MCC-Chicago. The argument, however, misinterprets the operation of the statute. HIPAA prohibits the disclosure of individually identifiable health information, unless one of the statutory exceptions applies, such as disclosure in compliance with a court order. 45 C.F.R. § 164.512(e)(1).

Subsection (e)(1) specifically relates to disclosures for judicial proceedings:

> (1) A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:
>
> (i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order….

45 C.F.R. § 164.512(e)(1).

Here, the protections afforded by HIPAA do not come into play because an exception applies. Disclosure of information by way of a court order in a judicial proceeding triggers application of the exception in subsection (e)(1), without a release of information from Wilson. 45 C.F.R. § 164.512(e)(1)(i). Wilson provides no legal argument supporting his conclusory objection that HIPAA functions to bar the production of any of the documents.

HIPAA does not preclude the Government's access to the BEMR records, defense correspondence with Dr. Watkins regarding Wilson's prescriptions, or the jail medical records if the Court orders such disclosure of the documents obtained from MCC-Chicago to the Government. Wilson's objection under HIPPA is overruled.

**B. Relevancy**

**1. Prescription Medication Records**

Wilson argues that the BEMR and jail medical records of his prescription medications are not relevant to the competency proceedings because the defense has not placed medications at issue. He has, however, placed the mental illnesses that are treated by certain of his medications at issue. Wilson has alleged that he suffers from "impaired cognitive functioning, exacerbated by his depression and anxiety." Def. Mot. for a Hr'g to Determine the Mental Competency of the Def. at 11 (Dkt. 965). He has, therefore, placed his alleged depression and anxiety and any related treatment at issue. The BEMR records and jail medical records discuss the history of his prescriptions and provide insight into any bases for a depression diagnosis and how depression currently affects his cognitive functioning.

The history and treatment of any mental illness at issue are relevant to the competency evaluation and the competency proceedings. Dr. Watkins's report discusses Wilson's medications and certain requests by Wilson regarding those medications during the course of his evaluation at MCC-Chicago. Watkins Report at 7, 15, 17, 22. His various potential diagnoses and the history of those diagnoses are analyzed in the evaluation as well. Id. at 7, 15, 26-28.

The Court will order production of all BEMR records generated during Wilson's competency evaluation at MCC-Chicago as well as his jail medical records that reference mental

5

health treatment, including the prescription of pharmaceuticals for the treatment of psychiatric conditions and mental illness.

**2. SENTRY Records**

Wilson states that his SENTRY records referring to discipline are not relevant to the competency proceeding. Def. Obj. at 4. The Court disagrees with this position because the SENTRY records are relevant to Dr. Watkins's assessment of Wilson's alleged depression diagnosis. Dr. Watkins's report discussed, in detail, Wilson's disciplinary issues while at MCC-Chicago in relation to his psychological issues and medications. Wilson recounted his discussion regarding sanctions with Chief Psychologist Dr. Dana to Dr. Watkins, where he expressed his concern that the disciplinary issue would negatively affect his criminal case and that his counsel had advised him to "avoid any situations that would make him look violent." Report at 16-17. Wilson offered the explanation that his violent outburst was due to not receiving his medications. Id. at 17. This same explanation is reflected in the SENTRY records of Wilson's disciplinary hearing, where Wilson states that he was "off his meds." Because Wilson's discipline-related conduct, as reported by the MCC-Chicago documents, may play a role in understanding his mental health condition, records relating to his disciplinary issues, his reactions to those issues, and his perception of how his depression medication affects his wellbeing, the SENTRY records are relevant to the competency proceeding.

**C. Psychotherapist-Patient Privilege**

In his specific objections, Wilson argues that his BEMR clinical contacts are protected by the psychotherapist-patient privilege. Def. Obj. at 2. In his general objections, he discusses a reference in Dr. Watkins's report to Wilson's one-time communication with Dr. Dana regarding the altercation with his cellmate and the disciplinary implications. Def. Mot. at 14 (Dkt. 1188).

Notably, the defense does not object, in its specific objections, to the production of the full report of Dr. Dana's discussion with Wilson that is documented in the PDS records. The Court will construe Wilson's objection based on the psychotherapist-patient privilege as being asserted to both the Watkins report reference and the full Dana report. See id.

While at MCC-Chicago, Wilson had requested to speak with Dr. Dana, specifically regarding the physical altercation with his cellmate, for which Wilson received significant discipline. Report at 16. Dr. Dana's report states that Wilson had already been sanctioned with relocation to the security housing unit at the time of the conversation. Wilson expressed his concern that the disciplinary issue would negatively affect his criminal case and that his counsel had advised him to "avoid any situations that would make him look violent." Wilson also recounted his discussion regarding sanctions with Dr. Dana to Dr. Watkins. Report at 16-17.

In arguing against disclosure, Wilson relies on the Supreme Court's holding in Jaffee v. Redmond, 518 U.S. 1, 15 (1996), that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from disclosure under Rule 501 of the Federal Rules of Evidence." Whether an interaction with a psychotherapist was "for the purpose of diagnosis or treatment" calls for a fact-intensive analysis. United States v. Romo, 413 F.3d 1044, 1047 (9th Cir. 2005). Relevant factors "may include the historical nature of the relationship between the individual and his confidante; the patient's purpose in making the communication; the nature of the contact; the timing and location of the communication; objective data, such as medical records, which corroborate the counseling contact; and whether mental health services were provided or requested during the communication." Id. Courts determining whether the privilege applies must "pay special attention to the particulars of the meeting during which the allegedly privileged information was exchanged." Id.

It does not appear that Wilson was seeking treatment with Dr. Dana but, instead, was attempting to mitigate his sanctions by offering the explanation that there had been a lapse in his medications. As he told Dr. Dana and reiterated to Dr. Watkins, Wilson was concerned about the effect of a violent offense while at MCC-Chicago on his criminal case, particularly because he claimed he had been warned by his attorney to "avoid any situations that would make him look violent." He did not seek any medication adjustments when he spoke with Dr. Dana. This is supported by the fact that there are no statements from Wilson to Dr. Dana recorded in the BEMR clinical contact file regarding a medication change, or any record of an interaction between Wilson and Dr. Dana in the clinical contact file whatsoever. Wilson did request that Dr. Dana advocate to the disciplinary officer for a punishment that would not interfere with his family visits.

Applying and analyzing the relevant factors here, the Court concludes that the discussion about the cellmate altercation was not intended for diagnosis or treatment, and that the psychotherapist-patient privilege does not apply to bar production of the BEMR clinical file or the Government's use of Wilson's statements to Dr. Dana as discussed in Dr. Watkins's report or Dr. Dana's report itself.

**D. Federal Rule of Criminal Procedure 12.2**

Wilson avers that his "statements made during the course of medical treatment," his statements to Dr. Dana, and his three writing samples, are protected from disclosure by Federal Rule of Criminal Procedure 12.2. However, Federal Rule of Criminal Procedure 12.2 controls mental examinations where the defense intends to introduce evidence of insanity as a defense at the guilt phase or sentencing phase. See Fed. R. Crim. P. 12.2. Rule 12.2 "does not deal with the issue of mental competency to stand trial." See Fed. R. Crim. P. 12.2 Advisory Committee Note. Rule 12.2 has no applicability here. See United States v. Thompson, 462 F. App'x 561, 565 (6th

Cir. 2012). As previously explained by this Court, the competency evaluation and proceeding are controlled entirely by 18 U.S.C. § 4241. See 8/19/19 Order at 2-3 (Dkt. 1047).

**E. Fifth and Sixth Amendments**

Wilson references the Fifth and Sixth Amendments as grounds to withhold several categories of documents from the Government: (1) BEMR clinical contacts; (2) BEMR intake records; (3) BEMR MARs; (4) BEMR medical summaries; (5) Dr. Watkins's correspondence with defense counsel; (6) jail medical records; and (7) the writing samples. These arguments are unavailing.

Wilson states, without citing any legal authority, that providing his medical records to the Government would violate his rights to due process and counsel under the Fifth and Sixth Amendments, respectively. Def. Mot. at 10. He does not expand on this contention or mention the Fifth or Sixth Amendments in his specific objections. See Def. Obj. at 1-3. Likewise, he does not attempt to explain why the Fifth and Sixth Amendments would operate to bar production of Dr. Watkins's notes about her discussion with Wilson's counsel regarding his medication. The Court overrules this objection.

Wilson also seeks to withhold three writing samples that he provided to Dr. Watkins during the course of the evaluation, which he drafted outside of his formal interview sessions. Report at 19-20. He also states that Dr. Watkins's report does not indicate that Wilson was warned that his statements during the course of the observation and assessment at MCC-Chicago could be used in against him in Court. Def. Mot. at 22. He argues that these statements are protected from disclosure by Estelle v. Smith, 451 U.S. 454 (1981). Id. This argument is without merit.

The Supreme Court held in Estelle that "[a] criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled

9

to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding." 451 U.S. at 468. Here, Wilson initiated the competency examination, and the statements are to be used to determine Wilson's competency. And unlike the circumstances in Estelle, defense counsel was notified in advance of the scope of the competency evaluation and logically put on notice that the Government will use the evaluation if he raises a mental status defense. So, Estelle is inapplicable.

Our case is more akin to Buchanan v. Kentucky, 483 U.S. 402, 411-412 (1987), where a defendant who had requested a psychiatric evaluation argued that his Fifth and Sixth Amendment rights were violated because his counsel had not been present during the evaluation and the defendant had not been informed that the results could be used against him at trial. Distinguishing the matter from Estelle, the Supreme Court held that the Sixth Amendment was satisfied by the defendant's effective consultation with counsel, where counsel was previously "informed about the scope and nature of the proceeding," and the defendant was put "on notice" that he would have to anticipate the prosecution's use of the psychiatric evaluation if he raised a "mental status defense." Id. at 424. Those same preconditions are present here.

Nor do Wilson's statements during the course of his evaluation deserve any protection under the Fifth or Sixth Amendment, for the reasons explained in United States v. Loughner, 782 F. Supp. 2d 829 (D. Ariz. 2011). There, prior to a competency hearing, the defendant argued that statements in BOP records could not be released because they were protected by the Fifth Amendment when they were "made after the appointment of counsel, and without a re-admonishment of Miranda warnings." The records included "psychological records and reports that were generated pursuant to routine custodial protocols, as well as observations of the defendant's behavior and demeanor in custody that are not private" and "information regarding his

behavior while in custody." Id. at 831, 833. The court held that the statements were not protected by the Fifth Amendment:

> Miranda applies to custodial interrogations—those situations in which questioning of a criminal defendant is designed or reasonably likely to elicit an incriminating response. Rhode Island v. Innis, 446 U.S. 291, 301, 100 S. Ct. 1682, 64 L.Ed.2d 297 (1980). Questioning that is "normally attendant to . . . custody" is not covered by Miranda and does not implicate the defendant's Fifth and Sixth Amendment rights. Kemp v. Ryan, 638 F.3d 1245, 1255–56 (9th Cir. 2011). The BOP records contain routine, day-to-day statements of the defendant of the type normally attendant to being in custody. There is no indication that the defendant has been "interrogated" in the Miranda sense, nor any hint that jailers have attempted to illegally communicate with him on matters of substance behind his lawyers' backs. Edwards v. Arizona, which the defendant cites, is simply not on point. 451 U.S. 477, 101 S. Ct. 1880, 68 L.Ed.2d 378 (1981).

Id. at 833.

Here, no aspect of the competency evaluation included custodial interrogation. Routine psychological records and reports, and observations of Wilson's behavior and demeanor while in custody (including Wilson's statements to Dr. Watkins), were not the result of custodial interrogation subject to the protections of the Fifth Amendment. Accordingly, his statements during the competency assessment and in the writing samples are not protected by the Fifth Amendment.[4]

The disclosure of Wilson's BEMR medical records, Dr. Watkins's correspondence with defense counsel, jail medical records, writing samples, and statements during the competency evaluation to the Government is not barred by the Fifth or Sixth Amendment.

---

[4] The Court has previously stated: "in accordance with [Wilson's] privilege against self-incrimination under the Fifth Amendment, the Government's use of any evidence derived from the mental competency evaluation is limited to determining whether Wilson is competent to stand trial, unless Wilson uses that evidence during either the guilt or penalty phase of the trial." 8/19/19 Order at 3 (Dkt. 1047).

**F. Rule 16(b)**

Wilson states that providing the Government with his SENTRY pre-trial detention records of his sanctions for the altercation with his cellmate violates Federal Rule of Criminal Procedure 16(b) because disclosure of such evidence would be premature, citing Skipper v. South Carolina, 476 U.S. 1 (1986) (evidence of good behavior while incarcerated is relevant to mitigation during sentencing phase). Def. Mot. at 19-20 (Dkt. 1188). While the defense alleges that the purpose for the Government's request is to secure Skipper evidence, there is no support for this in the record. In any case, Rule 16(b) is inapplicable because it is a rule that sets out the defense obligation to turn over information that it intends to introduce in its case-in-chief; it does not purport to prohibit what the Government may rightfully receive to prepare for a competency hearing. This objection is overruled.

**G. Attorney-Client Privilege**

Wilson objects to the disclosure of his email correspondence with defense counsel during his competency evaluation at MCC-Chicago on the basis of attorney-client privilege. Def. Obj. at 1 (Dkt. 1231). The elements of the attorney-client privilege are as follows: (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." Reed v. Baxter, 134 F.3d 351, 355–356 (6th Cir. 1998.)

This privilege does not apply to Wilson's emails with counsel. The emails briefly discuss scheduling of defense team jail visitation and arranging for commissary deposits only, matters falling outside the protection of the privilege. Legal advice was not provided. The Court, therefore, overrules this objection.

**H. Huron County Jail Records**

Wilson claims that the Government improperly gained access to medical records from Huron County Jail and perhaps other documents without a Federal Rule of Criminal Procedure 17(c) subpoena authorized by this Court. Def. Mot. at 10 (Dkt. 1188). As an example, the defense states that on June 18, 2019, Federal Agent Kahanec served an unauthorized subpoena on Huron County Jail demanding the production of:

> All records for Carlo Wilson, including but not limited to: housing records; disciplinary records; visitor records; and records of phone calls, emails, or any other forms of communication sent or received by Carlo Wilson.

Id. at 11.

The Government has turned over to the defense all documents it received. But the Court is concerned that the Government acted without court authorization. Accordingly, the Government must file within 14 days a memorandum explaining what legal basis it had, if any, to serve an unauthorized subpoena. The defense may have seven days to respond. Thereafter, the Court will determine what judicial response is appropriate.

### III. CONCLUSION

The Court grants in part the Government's motion for the disclosure of competency evaluation raw data (Dkt. 1185), grants in part Defendant Carlo Wilson's motion for specific materials related to the competency evaluation and for protective order prohibiting government access to privileged and confidential records (Dkt. 1188), and overrules in part Defendant Carlo Wilson's ex parte and sealed specific objections to the production of certain MCC-Chicago documents to the Government (Dkt. 1231). The Court will produce the following documents received from MCC-Chicago to the Government:

(1) Jail medical records referencing mental health treatment;

(2) BOP SENTRY records;

(3) All categories of BEMR records;

(4) PDS records, including Dr. Jason Dana's report. The Government may also use Wilson's statements in Dr. Watkins's competency report regarding his communication with Dr. Dana;

(5) All email correspondence generated by Wilson during his competency evaluation at MCC-Chicago;

(6) Recordings of all telephone calls placed by Defendant Wilson during his competency evaluation at MCC-Chicago, including a list identifying the calls analyzed by Dr. Robin Watkins;

(7) Three writing samples produced by Defendant Wilson, received by Dr. Watkins during the evaluation, excluding the one-page housing rule document included in the writing sample PDF file; and

(8) Dr. Watkins's documentation of contacts with:

   a. Wilson's defense counsel; and

   b. Counsel for the Government.

Lastly, the Government shall file a memorandum explaining what legal basis it had, if any, to serve an unauthorized subpoena on Huron County Jail for Wilson's medical records by April 7, 2020. Wilson may have seven days to respond.

SO ORDERED.

Dated: March 24, 2020            s/Mark A. Goldsmith  
     Detroit, Michigan            MARK A. GOLDSMITH  
                                                               United States District Judge