UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

D-2 CARLO WILSON,

      Defendant.
_____/

Case No. 16-cr-20460

HON. MARK A. GOLDSMITH

**OPINION & ORDER
(1) GRANTING DEFENDANT CARLO WILSON'S MOTION TO EXPEDITE (Dkt. 1563) AND (2) DENYING WILSON'S MOTION TO FILE COMPETENCY EXPERT REPORTS EX PARTE AND UNDER SEAL (Dkt. 1529)**

Defendant Carlo Wilson has been charged with violating the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961; committing murder in aid of racketeering; committing assault with a dangerous weapon in aid of racketeering; using and carrying a firearm during and in relation to a crime of violence causing a death; and using, carrying, and discharging a firearm during and in relation to a crime of violence. 2d Superseding Indictment (Dkt. 292). Wilson filed a motion for a hearing to determine his mental competency (Dkt. 965), which the Court granted (Dkt. 976). Wilson has been evaluated at the Metropolitan Correctional Center-Chicago, and his competency hearing is set to begin on March 21, 2022. This matter is before the Court on Wilson's motion to file competency expert reports ex parte and under seal (Dkt. 1529), as well as his motion to expedite the Court's ruling (Dkt. 1563). The Court grants Wilson's motion

to expedite and now considers his motion regarding the competency experts. For the reasons that follow, Wilson's motion to file competency expert reports ex parte and under seal is denied.[1]

## I. BACKGROUND

The Court has described the factual background of this case in detail in other opinions. See, e.g., United States v. Mills, 378 F. Supp. 3d 563 (E.D. Mich. 2019) (denying motions to dismiss); United States v. Mills, No. 16-cr-20460, 2019 WL 1915762 (E.D. Mich. Apr. 30, 2019) (denying motions for bills of particulars); United States v. Mills, 367 F. Supp. 3d 664 (E.D. Mich. 2019) (granting in part and denying in part motion to preclude rap lyrics and videos). Accordingly, the Court need not set forth the full factual background again for purposes of the present motions.

As relevant here, Wilson previously filed several motions related to the upcoming competency proceeding (Dkts. 1178, 1190, 1212, 1246). In these motions, Wilson asked the Court to, among other things: (i) close the competency hearing to the public; and (ii) permit members of the defense team to testify as to their inability to confer with him at a sealed, ex parte, in camera proceeding. The Court rejected both requests. See 10/27/21 Op. (Dkt. 1513).

Regarding Wilson's request to close the competency hearing to the public, the Court explained that "[t]he Supreme Court has recognized that the public has a qualified First Amendment right to attend criminal proceedings, Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 580 (1980), which extends to proceedings beyond simply the trial phase, Press-Enter. Co. v. Superior Ct. of Cal., Riverside Cnty., 464 U.S. 501, 510–513 (1984) ("Press-Enterprise I")." 10/27/21 Op. at 6. "[A] criminal proceeding to which the First Amendment right of access attaches

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to Wilson's motion, the briefing includes the Government's response (Dkt. 1545) and Wilson's reply (Dkt. 1548).

2

should remain open unless the defendant's asserted interest in closure 'overrides' the public's First Amendment right of access." Id. at 7 (quoting Press-Enter. Co. v. Superior Ct. for Riverside Cnty., 478 U.S. 1, 9–10 (1986) ("Press-Enterprise II")).

As explained in the prior opinion, Wilson argued that his right to a fair trial overrode the public's right of access, but Wilson failed to support this argument. Id. at 7–9 (referencing United States v. Guerrero, 693 F.3d 990 (9th Cir. 2012)). Wilson also argued that his privacy interest in his medical and psychiatric information overrode the public's interest, but the Court found that Wilson had already publicly disclosed the potentially stigmatizing conclusion that he is incompetent and has provided some supporting documentation. Id. at 10 (citing Woods Report (Dkt. 965-1); Def. Mot. to Seal Competency Report at 3 (Dkt. 1178); Def. Mot. for Certain Procedures at 2 (Dkt. 1190)). Thus, the Court concluded that "[t]here is a minimal risk that keeping Wilson's competency hearing open will result in materially greater stigmatization," and "[t]his minimal risk simply does not outweigh the 'unbroken' and 'uncontradicted history' of the presumption of openness in criminal proceedings." Id. (quoting Richmond Newspapers, 448 U.S. at 573).

As for Wilson's request to demonstrate his incompetence through a sealed, ex parte, in camera presentation of testimony from his defense team members, Wilson argued that such a presentation was necessary to, among other things, preserve his Fifth and Sixth Amendment rights and to limit his waiver of the attorney-client privilege. Id. at 11 (citing Def. Mot. for Certain Procedures at 1).[2] The Court observed that "Wilson fail[ed] to cite any caselaw to support his contention that his Fifth [or] Sixth . . . Amendment rights would be infringed by his defense team's

---

[2] Wilson conceded that it is inevitable that some privileged information will be revealed during the competency hearing. Def. Mot. for Certain Procedures at 1.

testimony in the presence of the Government or the public at the competency hearing," and "the Court [was not] aware of any such caselaw." Id. Similarly, Wilson "fail[ed] to cite any caselaw proving that such a hearing is necessary to prevent the disclosure of privileged information." Id. at 12.

The Government argued that the defense team members could limit their testimony to their observations regarding Wilson's competency without disclosing confidential communications subject to attorney-client privilege. Id. at 13 (citing Gov't Resp. to Mot. for Certain Procedures at 8–10 (Dkt. 1205)). To determine whether the Government was correct, the Court examined the defense team members' sealed declarations setting forth the facts to which they plan to testify. Id. (citing Jacqueline Walsh Decl. (Dkt. 1287-2); Ashwin Cattamanchi Decl. (Dkt. 1287-3); David Freedman Decl. (Dkt. 1287-4); Felicia Sullivan Decl. (Dkt. 1287-5); Mary Pisula-Stewart Decl. (Dkt. 1287-6); Colin Byrne Decl. (Dkt. 1287-7)). The Court concluded that, "[b]ased on these declarations, . . . the defense team members could adequately describe Wilson's communication and comprehension difficulties without divulging specific details of their conversations." Id. at 13–14. "For instance, the defense team members can testify about Wilson's inability to understand the vulnerabilities in his case despite repeated efforts by his attorneys to explain them, without specifying the vulnerabilities." Id. at 14. Thus, the Court concluded, an ex parte, sealed, in camera presentation of the defense team's testimony was unnecessary to protect the attorney-client privilege. Id.

## II. ANALYSIS

According to Wilson, "experts in the medical field assessed [him] . . . for his competency to stand trial as did legal experts." Def. Mot. at 6. As part of this process, one "medical expert and [one of the two] attorney-expert[s] observed and listened to conversations between counsel

4

and . . . Wilson." Id. at 7.³ Wilson now seeks to file the reports of the two experts who observed his communications with counsel (the medical expert and the one legal expert) ex parte and under seal "to protect his constitutional rights and the attorney-client privilege." Id. at 1. Wilson also "requests that this Court permit the Defense to present expert testimony concerning . . . Wilson's competency in an ex parte, in camera, sealed hearing so as to protect . . . Wilson's Fifth and Sixth amendment rights [and the] attorney-client privilege . . . ." Id. at 2.⁴

The Government contends that through the present motion, Wilson is attempting to re-litigate his arguments for conducting part of the competency proceedings ex parte and under seal, which the Court has previously rejected. See Gov't Resp. at 3–4 (arguing that "[t]he Court should deny Wilson's Motion, particularly because it is nothing more than an untimely motion for reconsideration styled as a new motion" and "[t]his Court previously rejected Wilson's request for conducting part of the competency hearing ex parte and under seal") (citing 10/27/21 Op.). The Government thus asserts that the Court should deny the instant motion for the same reasons that it denied Wilson's prior motions.

The Court agrees with the Government. Once again, Wilson cites no legal support for his contention that his Fifth or Sixth Amendment rights would be violated by the presentation of his

---

³ Wilson represents that the other legal expert, "whose report is not at issue in [Wilson's instant] . . . motion, did not observe the communication between counsel and . . . Wilson." Def. Mot. at 7 n.6.

⁴ Wilson's Sixth Amendment argument appears to be premised on his counsel's fear that disclosure of attorney-client communications will hurt the "stability" of Wilson's "working relationship with counsel." Def. Mot. at 20. However, as the Court explained in its prior opinion on competency procedures, "[t]o the extent that the defense attorneys fear that . . . testimony will risk disrupting the attorney-client relationship, this risk is inherent in any competency motion." 10/27/21 Op. at 14 n.8. This is because "[a]nytime that an attorney argues that his or her client is incompetent, there is some risk that the attorney-client relationship may be strained, as the client may feel degraded, disrespected, or embarrassed as a result of the attorney's statements." Id.

experts' testimony in the presence of the Government and the public. Accordingly, the Court will not consider Wilson's unsupported argument that his rights under these constitutional amendments are implicated. See 10/27/21 Op. at 11–12 ("The Court has no obligation to consider an argument for which a party has cited no legal authority.") (punctuation modified).[5]

Wilson's argument that an ex parte, sealed, in camera presentation of the experts' testimony is necessary to protect the attorney-client privilege is also almost completely devoid of any legal support. Wilson cites just one case—United States v. Green, No. 98-337(A) (C.D. Cal. Nov. 10. 2005)—to support his position. The Court previously declined to rely on this case, explaining:

> Wilson fails to cite any caselaw proving that [an ex parte, sealed, in camera presentation of defense counsel's testimony] . . . is necessary to prevent the disclosure of privileged information. . . . Wilson cites an unpublished, out-of-circuit district court order, United States v. Green, No. 98-337(A) (C.D. Cal. Nov. 10. 2005). See Green Order (Dkt. 1204-1). Wilson appears to rely on Green due to its one fleeting reference to an in camera proceeding: "[t]he Court heard, in camera, from members of the defense team." Id. at 8. However, Green contains no reference to an ex parte proceeding, and an in camera proceeding is not the same as an ex parte proceeding. Green likewise does not indicate that the in camera proceeding was sealed. Even if the in camera hearing in Green was also sealed and ex parte, there is no indication that the Government objected to a closed, ex parte contact between defense counsel and the court. By contrast, the Government objects to such contact here. As a result, Green is far from persuasive precedent that a court may properly, over the Government's objection, hear ex parte testimony from a defendant's lawyers about their contact and exchanges with him.

---

[5] Regarding Wilson's Fifth Amendment right against self-incrimination, the Court notes that a defendant's statements to doctors and testimony at a competency hearing cannot later be used against the defendant at trial, unless he puts his mental state at issue again. See Estelle v. Smith, 451 U.S. 454, 462, 465 (1981) (holding that when a court compels a defendant to submit to a competency examination and the defendant does not place his mental state at issue in the guilt or penalty phase, the prosecution may not call the psychiatrist to testify); Buchanan v. Kentucky, 483 U.S. 402, 421–424 (1987) (reasoning that Smith's holding "logically leads to" the proposition that "if a defendant requests a psychiatric evaluation or presents psychiatric evidence" as part of a mental status defense, "then, at the very least, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant requested").

10/27/21 Op. at 12–13.  Wilson now argues that Judy Clarke, the "Director of the Federal Death Penalty Resource Counsel Project and Resource Counsel for . . . Wilson's defense team, [who] was counsel of record for . . . Green," has "affirm[ed] that in fact an ex parte in camera sealed hearing did take place where the [c]ourt accepted privileged information . . . ." Def. Mot. at 4 n.1 (referencing Clarke Aff. (Dkt. 1529-1)).  This does not alter the Court's prior conclusion.  As the Court explained, "[e]ven if the in camera hearing in Green was also sealed and ex parte," Green is nevertheless distinguishable because "there is no indication that the Government [in Green] objected to a closed, ex parte contact between defense counsel and the court" whereas here, the Government does object to such contact.  10/27/21 Op. at 12–13.

Wilson fails to point to any other instance in which a court has ordered the relief that he seeks.  Absent such support, the Court is disinclined to take the extraordinary measure of preventing access to part of the competency hearing to both the public—which has a qualified First Amendment right to attend criminal proceedings, Richmond Newspapers, 448 U.S. at 580—and the Government, which bears the burden of proving Wilson's competency, see 10/27/21 Op. at 5 (discussing United States v. DiGilio, 538 F.2d 972, 988 (3d Cir. 1976)).  Although the Court is sympathetic to defense counsel's concerns about the preservation of confidential attorney-client communications, these concerns must be balanced against the "unbroken" and "uncontradicted history" of the presumption of openness in criminal proceedings.  See Richmond Newspapers, 448 U.S. at 573.  The best workable compromise is for the defense, to the extent possible, to reveal Wilson's incompetence without compromising privileged information.  The defense can do this by eliciting testimony that is confined to "things [that] are observable by anyone who talked with the client," such as the client's "demeanor" or "bearing," which are not protected by the attorney-client privilege.  United States v. Kendrick, 331 F.2d 110, 113–114 (4th Cir. 1964).

The Court denies Wilson's request to file under seal the reports of the two experts who observed attorney-client interactions. Likewise, the Court denies Wilson's request to present testimony from these experts through an ex parte, sealed, in camera hearing.

### III.  CONCLUSION

For the foregoing reasons, Wilson's motion to expedite (Dkt. 1563) is granted, and his motion to file competency expert reports ex parte and under seal (Dkt. 1529) is denied.

SO ORDERED.

Dated:  March 14, 2022  
        Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge