UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

United States of America,

    Plaintiff,                                        Criminal No. 2:16-cr-20460

v.                                             Honorable Mark A. Goldsmith

D-2 Carlo Wilson,

    Defendant.

## **GOVERNMENT'S SENTENCING MEMORANDUM**

6 Mile Chedda Grove, a violent street gang which operated on the eastside of Detroit, inflicted untold harm to rival gang members and innocent bystanders alike. To further the interests of 6 Mile, Carlo Wilson sold drugs and willingly committed violent crimes. Seeking revenge for the killing of a fellow 6 Mile member, Wilson agreed to commit murder. His actions not only caused the death of his intended target, but also took the life of an innocent 13-year-old girl, and severely injured two other children.

The parties have agreed that a sentence between 264 and 300 months is the appropriate disposition in this case. For the reasons stated in this memorandum, and consistent with the Rule 11 Plea Agreement (ECF No. 1670), the Government submits that the appropriate sentence for Carlo Wilson is **300 months** and asks the Court to impose that sentence. Such a sentence is "sufficient, but not greater than

1

necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008).

### I. STATEMENT OF FACTS

6 Mile Chedda Grove is a street gang that operated primarily on the east side of Detroit within the area bordered roughly by East McNichols Road to the north, Kelly Road to the east, Houston-Whittier Street to the south, and Chalmers Street to the west. At the center of that territory was the Hayes Troester Super Market (Troester Market), where 6 Mile members frequently hung out, sold drugs, and committed other crimes:



6 Mile Chedda Grove claimed this area as their territory. One of the main streets where 6 Mile sold drugs is Cedargrove Street, which turned into "Chedda Grove" as part of the gang's name. "Chedda" being a reference to the lucrative profits 6 Mile made selling drugs there. 6 Mile associates also sold and distributed controlled substances in Michigan, Ohio, Kentucky, Tennessee, Alabama, and West Virginia. Carlo Wilson participated in the drug distribution activities of 6 Mile by selling drugs, including prescription narcotics within 6 Mile territory, and by traveling out of state with 6 Mile members to sell drugs.

6 Mile members and associates gained position, status, and respect within the gang by being loyal to the gang and by engaging in various criminal activities including murders, robberies, and the distribution of illegal narcotics. 6 Mile members were expected to retaliate against others who offended or attacked fellow gang members.

Late in 2015, members of 6 Mile Chedda Grove believed that S.H. killed Vincent Johnston—a member of 6 Mile known as "Slick V"—over a dispute involving the sale of fake drugs. Because of Johnston's killing, 6 Mile was actively looking for S.H. to retaliate for the shooting and preserve the gang's reputation for violence in the community. They got their chance on December 1, 2015. S.H. pulled into the Troester Market at approximately 4pm driving a black Dodge Challenger. In the front-passenger seat of his vehicle sat A.T., a 13-year-old girl.

3

Another 13-year-old girl, M.A., and her 7-year-old brother, T.A., were riding on the hood of S.H.'s vehicle as it entered the Troester Market parking lot.

The Troester Market is a busy market located at 13001 Hayes Street on the corner of Hayes and Troester on the eastside of Detroit. Hayes is a heavily traveled street running north and south. The Troester Market sits near the middle of the territory claimed by 6 Mile. Members frequented the store and trafficked controlled substances outside and within the store itself. Law enforcement set up covert pole cameras both north and south of the store to actively monitor the market in late 2015. In addition to the pole cameras, the Troester Market also had its own surveillance system.

After a brief trip inside the store, S.H. returned to his car where A.T. was waiting, and M.A. and T.A. climbed back onto the hood. S.H. began to pull out of the parking lot towards Hayes Street:



*Still image from City of Detroit bus, captured on December 1, 2015.*

As the vehicle left the parking lot, 6 Mile members Carlo Wilson and Edwin Mills, both wearing hooded sweatshirts, crossed Hayes on foot, rushed towards S.H.'s vehicle, drew handguns, and began firing multiple shots at and into the vehicle. Mills can be seen on the right side of the still image, next to the hood of S.H.'s vehicle, wearing a blue hooded sweatshirt, while Wilson can be seen on the left side of the image near the building wearing a dark hooded sweatshirt as he removes his firearm from the area of his waistband:



***Still image from Pole Camera, Gov't Ex. 1, filed using media file upload.***

Wilson and Mills intended to kill S.H. as revenge for the killing of 6 Mile gang member Vincent Johnston. As both Wilson and Mills shot at S.H.'s car and the car moved forward, M.A. and T.A. slid off the hood. M.A. pushed T.A. away from the direction of the shooters in an attempt to protect him:

6



*Still image from Pole Camera, Gov't Ex. 1, filed using media file upload.*

S.H. was shot and lost control of the vehicle, which ran over both M.A. and T.A. as it rolled across Hayes before crashing into an unoccupied building across the street. The shooting was captured by the FBI pole cameras. The image below depicts both Mills and Wilson continuing to shoot at S.H.'s car just before it crashes:



*Still image from Pole Camera, Gov't Ex. 1, filed using media file upload.*

Wilson and Mills fled the scene, running westbound up Troester Street behind the market:



*Still image from Pole Camera, Gov't Ex. 1, filed using media file upload.*

Detroit Police Department Evidence Technicians responded to the scene. Where Mills stood firing his weapon, twelve .40 caliber shell casings were recovered. Where Wilson was firing, two .45 caliber shell casings were recovered. S.H.'s car had multiple bullet holes and bullet strike marks in the passenger door (the side of the car closest to the shooters) and the windshield. The rear window was completely shattered:



Case 2:16-cr-20460-MAG-RSW   ECF No. 1706, PageID.20136   Filed 03/02/23   Page 10 of 19



***Photographs of S.H.'s vehicle taken by DPD***

Intact fired bullets and fragments of bullets of .45 and .40 caliber were both on the floor of the vehicle and lodged in the passenger and driver's side doors. Wilson's .45 caliber handgun was forensically linked to one of the bullets recovered from the interior of S.H.'s car.

During the shooting, S.H. sustained a total of five gunshot wounds, one of which was to his head. He was pronounced dead at the scene. A.T., his thirteen-year-old passenger, also suffered a gunshot wound to the head, and died en route to the hospital. M.A., the other thirteen-year-old, suffered a severe, compound fracture to her leg when she was run over by S.H.'s vehicle. She was hospitalized for weeks. T.A., the seven-year-old boy, was also run over by S.H.'s vehicle. He

was pinned under the vehicle until bystanders lifted the vehicle off him. He was initially admitted to the hospital in serious condition, where he was treated for abrasions and bruising. The manner of death for both S.H. and A.T. was ruled as homicide by the Wayne County Medical Examiner caused by fatal gunshot wounds to the head.

## II. BACKGROUND

In June 2016, Wilson was one of two defendants named in a seven-count Indictment filed with the Court. He was charged with 2 Counts of Murder in Aid of Racketeering, 18 U.S.C. § 1959(a)(1), among other charges. (ECF No. 1). In November, nine other defendants were added in a Superseding Indictment. A charge of Racketeering Conspiracy, 18 U.S.C. § 1962(d) was added for Wilson. (ECF No. 39).

On February 28, 2018, a Second Superseding Indictment was filed in the United States District Court for the Eastern District of Michigan adding a Notice of Special Findings for Wilson and Edwin Mills. (ECF No. 292).

On March 1, 2018, a Notice of Intent to Seek the Death Penalty was filed. (ECF No. 293). That notice was withdrawn by the government on October 28, 2021. (ECF No. 1515).

On June 25, 2019, the defendant filed a motion for a hearing to determine his mental competency to stand trial. (ECF No. 965). Between March 24, 2022, and April 26, 2022, the Court conducted a competency hearing for Wilson.

On August 2, 2022, the Court issued an Opinion and Order finding Wilson competent to stand trial. (ECF No. 1661).

On August 24, 2022, Wilson was named in a single-count Third Superseding Information charging Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d) taking place between 2008 and continuing to November 30, 2016. (ECF No. 1661).

Later the same day, Wilson appeared before the Court and entered a guilty plea to Count 1 of the Third Superseding Information pursuant to a written Rule 11 Plea Agreement. (ECF No. 1670). The Court accepted his guilty plea and took the Rule 11 Plea Agreement under advisement.

### III. THE ADVISORY GUIDELINES

The Probation department calculated Wilson's Guideline range to be 360 months to life with a total offense level of 41 and a criminal history category of II. (PSR ¶ 103). Wilson objects to the scoring of the First Degree Murder guidelines in ¶ 34. Wilson's position is that Second Degree Murder is the appropriate underlying offense, consistent with how Probation scored the murder of A.T, who was killed in the same course of action (PSR ¶ 40), and consistent with the

elements of the count of conviction and factual basis laid out in the Rule 11 Plea Agreement (ECF No. 1670, PageID.19907-10 at Sections 4.6, 5).

## IV. SENTENCING FACTORS, TITLE 18 U.S.C. § 3553

Congress has provided, through 18 U.S.C. § 3553(a), the relevant objectives and factors to be considered by sentencing courts in imposing a "sentence sufficient, but not greater than necessary[.]" Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation, and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution.

The most relevant factors are evaluated below, beginning with number four, the sentencing guidelines.

### A. The Advisory Guideline Range

In *United States v. Rita*, 551 U.S. 338 (2007), the Supreme Court restated that the goals of the United States Sentencing Commission in formulating the Sentencing Guidelines are to carry out the objectives of 18 U.S.C. § 3553(a).

In *United States v. Gall*, 552 U.S. 38 (2007), the United States Supreme Court provided a template for sentencing proceedings in the district court. The Court held that a district court should begin sentencing proceedings by correctly calculating the applicable guidelines. *Gall*, 552 U.S. at 49.

Probation scored Wilson's advisory guideline range as 360 months to life. But the parties entered into a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), which if accepted by the Court, requires a sentence between 264 and 300 months.[1] The Government requests the Court accept the plea agreement under Rule 11(c)(1)(C) and impose a sentence on Wilson of 300 months imprisonment. This is consistent with the parties' agreement and would be consistent with the advisory guideline range if the Court sustains Wilson's objection to the scoring.

## B. The 18 U.S.C. § 3553(a) factors

Wilson's offenses are incredibly serious. Because of his actions in furtherance of 6 Mile Chedda Grove, a young man and a child are dead. Two other children were seriously injured and have had significant lifelong impacts as a result. Harmful drugs were sold by Wilson and the gang in Detroit and elsewhere.

---

[1] Rule 11(c)(1)(C) permits the parties to enter into a plea agreement where upon they "agree that a specific sentence or sentencing range is the appropriate disposition of the case, . . ." and such agreement "binds the court once the court accepts the plea agreement."

14

The impact of his crimes is significant—not only on the individuals directly affected by his actions, such as S.H., A.T., M.A., and T.A., but also on the entire community. These serious offenses, taking into consideration all of the § 3553(a) factors, warrant serious punishment and a sentence at the top of the agreed upon sentencing range of 300 months.

"A just punishment takes into account the consequences of a defendant's crimes, and their impact on the victims, others, and the community." *United States v. Haughawout*, 502 F. Supp.3d 1234, 1238 (N.D. Ohio 2020). It cannot be disputed that the impact of Wilson's crimes has been significant. Through his membership in a violent criminal street gang, Wilson's conduct terrorized law-abiding citizens in the community. Wilson's actions at the Troester Market shooting illustrate his brazen and callous disregard for others. In broad daylight, in the presence of innocent bystanders—including children—Wilson chose to exact revenge for his gang by shooting at a rival. The prospect of injuring and even killing others, who were plainly in his line of sight when shooting, did not deter his behavior. Wilson's loyalty to 6 Mile was all that mattered to him. The activities of 6 Mile Chedda Grove contributed to the decimation of the neighborhood they claimed as their territory and continue to have lasting negative effects on the remaining residents.

A sentence of 300 months would be either slightly below the bottom of the guideline range (360 months to life) if the Court applies first degree murder guidelines for the murder of S.H., or near the mid-point of the guideline range (262 to 327 months) if the Court applies second degree murder guidelines for the murder of S.H. Such a sentence adequately reflects the seriousness of Wilson's offenses and would impose just punishment upon him.

Wilson himself was also negatively impacted by violence at a young age through abuse and neglect and then again when his father was murdered. Rather than take advantage of the opportunities presented to him by positive influences in his life, Wilson took to the streets and chose to exact the same violence and pain on others he had experienced by joining 6 Mile Chedda Grove, selling drugs, and killing rivals.

The Court is intimately familiar with Wilson's mental health condition, having presided over a lengthy competency hearing and ultimately finding Wilson competent to stand trial. While the government acknowledges that Wilson has some learning disability and limitations, there is no doubt that Wilson was fully aware of his actions and conduct when he killed S.H. and A.T. on behalf of 6 Mile. The video evidence is clear that Wilson and Mills both charged forward at S.H.'s car and fired multiple shots. At least one of the bullets from Wilson's .45 caliber reached the intended target and was found inside the car. There is no evidence that

Wilson was under duress or cajoled into participating. Instead, all of the evidence points to Wilson being a voluntary member of 6 Mile Chedda Grove and a willing and eager participant in the murders. Whatever his "relative" culpability to Mills may be, a sentence of 300 months[2] is warranted and consistent with the sentencing factors under 18 U.S.C. § 3553(a).

A substantial sentence, 300 months, is necessary for Wilson. That sentence will provide a significant punishment for Wilson that under the circumstances of this case is just punishment. A lengthy prison term will protect the public from further crimes of Wilson, not only for the time period he is incarcerated, as he is still a danger to the community, but also will provide sufficient time for rehabilitation. Finally, a sentence of 300 months for a violent gang member like Wilson sends a message to other violent gang members that there are serious consequences for their behavior, and maybe, just maybe, it will have some deterrent effect within the community, especially within the community Wilson participated in terrorizing.

The Court's sentence must also avoid unwarranted disparities among similarly situated defendants. A sentence of 300 months will avoid unwarranted

---

[2] Edwin Mills has also entered into a plea agreement where Mills and the government agreed pursuant to Rule 11(c)(1)(C) that a sentence of 300 months is the appropriate sentence for Mills. (ECF No. 1685, PageID.19967).

disparities among defendants with similar records who have been or will be sentenced for similar offenses.

## V. CONCLUSION

For all of these reasons, the government recommends a sentence of 300 months.

Respectfully submitted,

DAWN N. ISON,
United States Attorney

*s/ Andrew R. Picek*
ANDREW R. PICEK
ROBERT A. MORAN
Assistant United States Attorneys
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9652
E-Mail: andrew.picek@usdoj.gov
Bar No. OH0082121

Dated: March 2, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record for Defendant Carlo Wilson.

*s/ Robert A. Moran*
Robert A. Moran
Assistant United States Attorney